UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

*******************************************
SUSAN COONEY,                              )
    Plaintiff                              )

v.                                         )      AMENDED CIVIL COMPLAINT
                                                                                   AND DEMAND FOR JURY TRIAL
SAYBROOK GRADUATE SCHOOL AND               )
RESEARCH CENTER, and                       )
MAUREEN O'HARA, Individually               )
    Defendants                             )
*******************************************

PARTIES / JURISDICTION

1. Plaintiff, Susan Cooney ( "Cooney and/or Plaintiff'), is an individual residing at 1445 Centre Street, Newton Centre, Middlesex County, Massachusetts, 02459.

2. Defendant, Saybrook Graduate School and Research Center ("Saybrook"), which formerly did business as Saybrook Institute, is a corporation licensed by the State of California, with a business address of 747 Front St., 3rd Floor, San Francisco, CA 94111.

3. Defendant, Maureen O'Hara, Ph.D. ("O'Hara"), is a faculty member and former President of Saybrook. Maureen O'Hara has a business address of 747 Front St., 3rd Floor, San Francisco, CA 94111.

4. On or about June 1, 2004, Cooney filed a civil action against Saybrook and O'Hara in Middlesex Superior Court (Docket No. MICV2004-02246). Pursuant to M.G.L. Chapter 223A, § 3, Massachusetts had jurisdiction over Saybrook and O'Hara, as the defendants:

1

 (a) transacted business in Massachusetts;

 (b) contracted to supply services in Massachusetts;

 (c) caused tortious injury by an act or omission in Massachusetts; and/or

 (d) caused tortious injury by an act or omission outside of Massachusetts and by regularly doing or soliciting business, engaging in other persistent conduct, or deriving substantial revenue from services rendered in Massachusetts.

5. On or about July 19, 2004, Defendants removed this case to the United States District Court, District of Massachusetts.

6. The District Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a) because the Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7. Saybrook provides instruction to out of state graduate students through a distance learning model. In Saybrook's Interim Catalogue for the 1994-95 academic year ("Saybrook Interim Catalogue"), Saybrook advised Cooney and other prospective students as follows:

> Because our programs are structured to meet the personal and professional needs of adult learners, and those persons not able or willing to travel to fixed classrooms, Saybrook uses a distance learning format, an adaptation of the European tutorial model which emphasizes one-to-one interaction between students and faculty.   Saybrook Interim Catalogue 1994-95, p. 2.

8. Saybrook advised prospective graduate students who intend to become licensed psychologists that they must qualify for licensure through the state licensing board. The <u>Saybrook Interim Catalogue</u> indicates that Saybrook will provide assistance to enable students to be licensed: "Saybrook is committed to assisting those students who plan to seek licensure in the <u>state of their choice."</u> Id., p. 3 (emphasis added).

9. Saybrook advised its students that Saybrook actively monitored licensure requirements in all fifty states and assisted students in determining if they met licensure requirements.

10. Saybrook advised Cooney and other students that it was qualified and competent to provide training sufficient for licensure in Massachusetts. The <u>Saybrook Interim Catalogue</u> reports: "Saybrook graduates have been licensed in the states of Arizona, Califonria, Connecticut, Florida, Georgia, Hawaii, Maryland, <u>Massachusetts...</u> " Id. (emphasis added).

11. Plaintiff enrolled in Saybrook in or about the Fall of 1995 as a graduate student in the Doctor of Philosophy in Psychology program.

12. At the time of her application and admission to Saybrook, and at all times during her course of her study, Cooney was a resident of Massachusetts who intended to practice psychology in Massachusetts.

13. At a Residential Orientation Conference in September, 1995, Cooney reviewed Massachusetts regulations for the licensure of psychologists with a Saybrook faculty member or staff member, who determined that a Saybrook education met the requirements of Massachusetts. Throughout her course of study, Cooney had subsequent

        discussions with Saybrook faculty and staff regarding her objective to become a licensed Massachusetts psychologist.

14. Throughout her entire course of study, no one at Saybrook advised Cooney that she would encounter any difficulties in becoming licensed as a Massachusetts psychologist.

15. At the time of Cooney's matriculation in 1995, Saybrook knew, or reasonably should have known, that Saybrook's graduate program in psychology did not comply with, or was unlikely to comply with, then-current Massachusetts regulations. In or about 1995 or 1996, Saybrook also knew, or reasonably should have known, that Massachusetts was preparing to adopt proposed regulations for licensure ("Proposed Regulations"), which did not recognize graduate degrees in psychology from programs like Saybrook.

16. In or about 1995 and thereafter, Saybrook advised various students, including Cooney, that Saybrook was actively pursuing accreditation through the American Psychological Association. Saybrook advised Cooney and other students that APA accreditation would occur prior to Cooney's graduation. During Cooney's studies, Saybrook never applied for APA accreditation.

17. Throughout the period of 1995 through August, 2003, Saybrook and its officers failed to provide any communication, or to take any action, to inform Cooney and other students from Massachusetts of its knowledge that Massachusetts would not recognize Saybrook degrees for licensure as a psychologist.

18. In 1995 through 2002 and thereafter, Saybrook provided educational services to Cooney and other Massachusetts students seeking to become licensed psychologists.

19. Cooney satisfactorily completed all required coursework at Saybook to obtain a PhD in clinical psychology.

20. Cooney met all other academic requirements that were established by Saybrook, including but not limited to first and fourth year reviews of student progress; internships; clinical research; and residential conferences in or about the San Francisco area.

21. Cooney satisfactorily researched, wrote, edited, and defended a doctoral dissertation that was required for the award of her doctoral degree in psychology.

22. Cooney met all of her financial obligations to Saybrook, including full payment of all expenses for tuition, residential conferences, books and supplies, student fees, and all other costs and charges.

23. Cooney was awarded her doctorate in clinical psychology on or about October, 2002.

24. In or about late 2002 and early 2003, Cooney had verbal and written communications with the Board inquiring about procedures for applying for licensure as a psychologist in the Commonwealth of Massachusetts.

25. The Board advised Cooney that she was ineligible for licensure as a psychologist because the Commonwealth of Massachusetts did not recognize Saybrook as an accredited and qualified institution to train psychologists.

26. In or about March, 2003, the Board advised Cooney that Saybrook had knowledge that the Board would not provide licensure to Saybrook students.

27. On various dates in late 2002 and 2003, Cooney contacted representatives at Saybrook to attempt to resolve the Board's objections to her training from Saybrook.

28. Cooney has requested assistance from O'Hara and other Saybrook agents to resolve this

dispute, but did not receive appropriate assistance that would enable her to qualify for licensure as a Massachusetts psychologist.

29. Saybrook suggested that Cooney commence legal action against the Board, and proposed defraying a limited portion of her legal costs. Saybrook has never offered to pay for Cooney's entire legal costs in taking such legal action.

30. Saybrook has not initiated legal action on its own behalf against the Board.

31. Pursuant to Massachusetts General Laws, Chapter 93A, on or about September 15, 2003, Cooney wrote a demand letter to advise Saybrook that it has engaged in unfair and deceptive trade practices in providing her graduate training in psycholo    that would not allow her to qualify for licensure in Massachusetts, and in failing to advise her of Saybrook's knowledge that its graduates would be ineligible for licensure.

32. By its counsel, Saybrook responded to this demand letter on October 21, 2003, beyond the prescribed thirty-day period for responses to a Chapter 93A demand letter. Saybrook did not make a reasonable offer of settlement.

## COUNT 1,
## BREACH OF CONTRACT
(Against Saybrook)

33. Plaintiff reaffirms the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

34. By paying tuition to Saybrook and by enrolling in a course of graduate study as described in the Saybrook Catalogue, a contract was formed between Plaintiff and Saybrook.

35. Cooney performed all her obligations under the contract.

36. Saybrook breached this contract by failing to provide appropriate training to qualify Cooney for licensure in Massachusetts and by failing to disclose its knowledge that Saybrook did not meet Massachusetts standards for graduate programs in psychology.

37. Due to Saybrook's breach of contract, Cooney received a degree that would not qualify her to become a licensed Massachusetts psychologist and to earn a living in her chosen profession. In connection with this breach, Cooney has suffered damages for which Saybrook is liable.

## COUNT II
## PROMISSORY ESTOPPEL
(Against Saybrook)

38. Plaintiff reaffirms the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

39. By receiving tuition and fees from Cooney and by providing a course of graduate study as described in the Saybrook Interim Catalogue, Saybrook made a promise that it was qualified to deliver professional training that would qualify her for licensure as a psychologist in Massachusetts.

40. Saybrook made a related promise to Cooney that it would assist her in monitoring and complying with licensure standards in Massachusetts.

41. Saybrook knew, or reasonably should have known, that Cooney would rely on its promises and would expect that her Saybrook doctoral degree would qualify her for

licensure as a psychologist in Massachusetts.

42. Saybrook breached its promises to Cooney, thereby denying her the opportunity to complete requirements necessary to receive licensure as a psychologist from the Commonwealth of Massachusetts.

43. Due to Saybrook's breach of promise, Plaintiff was damaged in that she has been precluded from obtaining state licensure. In connection with this breach, Cooney has suffered damages for which Saybrook is liable.

## COUNT III
## CHAPTER 93 VIOLATION
(Against Saybrook and O'Hara)

44. Plaintiff reaffirms the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45. Cooney sent multiple copies of a Chapter 93A demand letter to Saybrook and various administrators at Saybrook.

46. Cooney served her Chapter 93A demand letter on Maureen O'Hara, President of Saybrook.

47. Saybrook and O'Hara knowingly provided graduate training in clinical psycholo that would not qualify Cooney for licensure as a Massachusetts psychologist, and knowingly deceived Cooney by withholding information that Massachusetts did not recognize Saybrook as a qualified graduate program.

48. Saybrook and O'Hara knowingly collected tuition and fees from Cooney and other

      Massachusetts students under false pretenses, after receiving actual or constructive notice that Saybrook was not a qualified graduate program in psychology for purposes of Massachusetts licensure.

49. Saybrook and O'Hara did not provide a timely response within thirty days of their receipt of Cooney's 93A demand letter. Saybrook and O'Hara did not extend a reasonable offer of settlement in its response to Cooney's 93A demand letter.

## COUNT IV
## NEGLIGENCE
(Against Saybrook)

50. Plaintiff reaffirms the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51. As a graduate school offering doctoral studies to students seeking professional licensure as a psychologist, Saybrook has a duty of care to provide a degree program that meets the regulatory standards in all jurisdictions from which Saybrook admits students. Saybrook also has a duty of care to monitor professional licensure standards in these jurisdictions, and to advise students when it learns of actual or proposed regulatory standards that may limit or preclude licensure for Saybrook graduates.

52. At all times relevant to this Amended Complaint, Saybrook presented itself to Cooney and other Massachusetts students as a graduate school that is qualified to offer doctoral studies in clinical psychology and that possessed the necessary expertise, resources, and accreditation status to qualify students for licensure as a psychologist in Massachusetts.

53. Saybrook breached its duty to Cooney by failing to provide a degree that met Massachusetts standards for graduate programs in psychology, and by failing to inform Cooney that Massachusetts did not recognize Saybrook as a qualified graduate program in psychology.

54. As a result of Saybrook's negligence, Cooney has suffered damages for which Saybrook is liable.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Against Saybrook)

55. Plaintiff reaffirms the allegations contained in paragraphs 1 through 54 as if fully set forth herein.

56. As a result of Saybrook's negligent conduct, Cooney has experienced emotional distress related to her inability to meet her career objectives, to pursue her dream of becoming a clinical psychologist, and to earn a living as a licensed clinical psychologist.

57. Saybrook's negligent conduct was the proximate cause of the emotional injuries that Cooney has sustained.

58. As a result of Saybrook's negligent conduct, Cooney has experience physical and psychological harms that are manifested by objective symptomology, including sleeplessness, difficulties in working and concentrating, anxiety, and depression.

59. A reasonable person in the same circumstances as Cooney would experience emotional distress as a result of Saybrook's conduct.

60. As a result, Cooney has suffered damages for which Saybrook is liable.

WHEREFORE, Plaintiff Susan Cooney asks for judgment against Defendants for:

a. Actual damages for costs incurred in obtaining a graduate degree from Saybrook, including but not limited to reimbursement for costs of tuition, related educational and living expenses, travel, and interest on student loans;

b. Actual damages for past and future lost earnings;

c. Damages for emotional distress;

d. Treble damages and attorneys fees, pursuant to Massachusetts General Laws, Chapter 93A.

e. Prejudgment and postjudgment interest;

f. Costs of Suit; and

g. All other relief that the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

Respectfully submitted,

SUSAN COONEY,
By her counsel,

E. Steven Coren, BBO #
Paul W. Morenberg, BBO # 631101
Kerstein, Coren, Lichtenstein & Finkel, LLP
233 Needham Street
Newton, Massachusetts 02464
(617) 969-7139

Dated:      January 23, 2004