# EXHIBIT A

LEXSEE 119 CAL. APP. 3D 516

**BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY et al., Petitioners, v. THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent; EUGENE DONG, JR., Real Party in Interest**

**Civ. No. 49998**

**Court of Appeal of California, First Appellate District, Division One**

*119 Cal. App. 3d 516; 174 Cal. Rptr. 160; 1981 Cal. App. LEXIS 1766*

**May 28, 1981**

**SUBSEQUENT HISTORY: [***1]**

A petition for a rehearing was denied June 24, 1981, and the petition of real party in interest for a hearing by the Supreme Court was denied August 19, 1981.

**DISPOSITION:**

**SUMMARY: CALIFORNIA OFFICIAL REPORTS SUMMARY**

A university's board of trustees, the chairman of the department of surgery of the university's medical school, and a council for medical affairs and assistant vice-president of the university petitioned in the Court of Appeal for a writ of mandate to have set aside a trial court's discovery order in a defamation action against them and others filed by a professor formerly employed by the university. According to the complaint in the defamation action the basis for the action was certain malicious acts and publications by a former medical research professor of the university and the university's republication of certain of his publications. The discovery order granted the university professor's demand under *Code Civ. Proc., § 2031*, for inspection and copying of the university's personnel, tenure, and promotion files on the medical research professor and all documents and communications, including grants, contracts, and awards made to or by the university and others, including the Department of Health, Education and Welfare and the United States Senate in respect of the medical research professor and medical research performed by him at the university. It also granted to the university professor discovery of all documents and communications considered by the university's committees that investigated him after complaints to the university as to his alleged misconduct, as well as the committees' conclusions from their investigations. In addition the order permitted the university professor's discovery of his own personnel, tenure, and pro-

The peremptory writ of mandate will issue. The superior court will set aside the "Order for Production of Document and Things" [*sic*], filed June 17, 1980, and on the present record enter a new and different order not inconsistent with the views we have expressed.

motion files, save and except letters of recommendation or reference to the university concerning him that were written when he was being considered for employment.

The Court of Appeal granted the writ with directions to the trial court to set aside its discovery order in the defamation action and to enter a different order not inconsistent with the views in the opinion. It held that the trial court abused its discretion in granting discovery of the personnel, tenure, and promotion records and files of the research professor and of documents and communications in relation to the research professor and research performed by him at the university, since no direct relevance of such material to the issues of the defamation action was apparent and no compelling state interest for such discovery was discernible. It also held the court abused its discretion in granting discovery of communications considered by the university's committees in their investigations of the university professor and of the committees' conclusions from the investigations, since it appeared the investigations had no direct relevance to the defamation action issues, and since it appeared that the communications were within the constitutionally protected area of privacy in that they were tendered under a guarantee of confidentiality. It also held that the order allowing the university professor discovery of his employment, tenure, and promotion files, save and except letters of reference or recommendation to the university concerning him when he was being considered for employment was error insofar as it failed to provide appropriate protection of the privacy interests of those who had furnished confidential information for the files after

the university professor's employment. It further held that such protection should have been afforded not only to those who had furnished confidential information for consideration with respect to the professor's prospective employment, but also to those who had subsequently furnished confidential information as to the professor's qualifications for employment, promotion, additional compensation, or termination. It finally held that since there was no compelling state purpose for confidentiality of the contents of letters of reference in the file, the professor was entitled to disclosure of the letters, subject to protection of their authors by withholding their names and other identification. (Opinion by Elkington, J., with Racanelli, P. J., and Newsom, J., concurring.)

## HEADNOTES:    CALIFORNIA    OFFICIAL REPORTS HEADNOTES

Classified to California Digest of Official Reports, 3d Series

(1) **Constitutional Law § 58--First Amendment and Other Fundamental Rights of Citizens--Scope and Nature--Right of Privacy--Discovery.** --The inalienable right of privacy protected by Cal. Const., art. I, § 1, is a fundamental interest of our society, essential to those rights guaranteed by U.S. Const., 1st, 3d, 5th and 9th Amends., but another state interest lies in facilitating the ascertainment of truth in connection with legal proceedings. The constitutional right of privacy is not absolute, but it may be abridged only when there is a compelling and opposing state interest. Where discovery is sought of inadmissible and irrelevant matter, even though such discovery might lead to other relevant admissible evidence, such discovery can not be constitutionally justified, if it involves an inquiry into one's private affairs.

(2) **Discovery and Depositions § 34--Protections Against Improper Discovery--Privileges--Right of Privacy.** --Since judicial discovery orders relating to private matters inevitably involve state-compelled disclosure of presumptively protected information, the principles of the Constitution recognizing the inalienable right of privacy (Cal. Const., art. I, § 1) have equal application to purely private litigation. The custodian of private information has a right and duty to resist attempts at unauthorized disclosures and the person who is the subject of it is entitled to expect that his right will be thus asserted. Of course, the custodian of such private information may not waive the privacy rights of persons who are constitutionally guaranteed their protection. Even where, because of a compelling state purpose, the balance weighs in favor of disclosure of private information, the scope of such disclosure will be narrowly circum-

scribed; such an invasion of the right of privacy must be drawn with narrow specificity. Where it is possible to do so, the courts should impose partial limitations rather than outright denial of discovery.

(3) **Discovery and Depositions § 24--Inspection of Records and Things--Scope--Relevancy of Material.** --In a defamation action by a university professor against his former university employer based in part on the allegedly malicious acts and publications of a medical research professor formerly employed by the university, the trial court abused its discretion in allowing plaintiff discovering of the personnel tenure, and promotion records and files of the research professor and of documents and communications, including grants, contracts and awards, in relation to medical research performed by the research professor at the university. No direct relevance of such material to the issues of the defamation action was apparent, nor was a compelling state interest requiring such discovery discernible. Even assuming arguendo that some of the material might have had some relevance to the defamation action, a proper balancing of the competing values necessarily weighted in favor of the right of privacy of the research professor.

(4) **Constitutional Law § 58--First Amendment and Other Fundamental Rights of Citizens--Scope and Nature--Right of Privacy--Discovery.** --The trial court abused its discretion in granting a professor who had filed a defamation action against his former university employer discovery of communications considered by the university's committees in respect of their investigations of him and of the conclusions of the committees, where their investigations resulted in neither charges of misconduct, nor disciplinary proceedings, nor punishment. There appeared to be no direct relevance to the committees' investigations of the professor to the issues of his defamation action against the university, and it appeared that such communications of the university's faculty members as were considered by the committees with respect to the professor were tendered under a guarantee of confidentiality and were thus manifestly within the constitutionally protected area of privacy. Even if it could be assumed the investigations of the professor had relevance to his defamation action, "careful balancing" disclosed no transcendent or compelling public need for discovery as opposed to the fundamental right of privacy.

(5a) (5b) **Discovery and Depositions § 33--Protections Against Improper Discovery--Confidential Materials.** --The trial court's discovery order in a professor's defamation action against his former university employer that allowed the professor discovery of his tenure and promotion files, save and except letters of recommendation or reference to the university

concerning the professor written when he was being considered for employment constituted error insofar as it failed to provide appropriate protection of the privacy interest of those who had furnished confidential information for the files after the professor's employment. Protection should have been afforded not only to those who had furnished confidential information prior to the professor's employment, but also to all those who had subsequently furnished confidential information concerning the professor's qualifications for employment, promotion, additional compensation, or termination. Since there was no compelling state purpose in maintenance of confidentiality of the contents of letters of reference in the file, the professor was entitled to the disclosure thereof, subject to protection of the confidential communications' authors by withholding their names and other identification. Courts should impose partial limitations rather than outright denial of discovery when by doing so otherwise affected constitutional rights may be preserved.

**(6a) (6b) (6c) Privacy § 3--Nature and Extent of Right--Confidential Information in Employee's Personnel File Maintained by Employer--Protection Due Furnishers' of Information.** --Properly construed, the statute that permits inspection by an employee of personnel files maintained on him by his employer ( *Lab. Code, 1198.5*) does not violate the privacy interest of those whose confidential communications are in the files to have protected from disclosure their names, addresses, and phone numbers. Although the statute permits an employee to inspect such personnel files that are use or have been used to determine his qualifications for employment, promotion, additional compensation or termination or other disciplinary action, it further provides the right to such inspection shall not apply to letters of reference, and as used in the statute letters of reference connote answers in writing from persons to whom inquires as to character or ability can be made. The manifest purpose of the statute is to insure privacy of all furnishers of confidential information maintained in such files. It would be unreasonable to ascribe an arbitrary legislative intent with respect to such confidential communications made before an employee's employment but to dishonor those made after his employment. When possible, courts are under a duty to interpret statutes so as to make them reasonable.

**(7) Statutes § 48--Construction--Reference to Other Laws--Construction With Reference to Constitutional Restrictions.** --If the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statutes will be given that meaning, rather than another in conflict with the Constitution.

**(8) Statutes § 22--Construction--Reasonableness--Accomplishment of Legislative Purpose--Considerations in Determining Proper Construction.** --Statutes should be construed so as to be given a reasonable result consistent with the legislative purpose. The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation on the same subject, public policy, and contemporaneous construction. The apparent purpose of a statute will not be sacrificed to a literal construction.

**COUNSEL:**

McCutchen, Doyle, Brown & Enersen, David M. Heilbron and Stephen A. Zovickian for Petitioners.

Donald L. Reidhaar and Gary Morrison as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Niesar, Moody, Hill, Massey & Kregstein and Richard P. Hill for Real Party in Interest.

Van Bourg, Allen, Weinberg & Roger, Robert J. Bezemek and Bennett & Bezemek as Amici Curiae on behalf of Real Party in Interest.

**JUDGES:**

Opinion by Elkington, J., with Racanelli, P. J., and Newsom, J., concurring.

**OPINIONBY:**

ELKINGTON

**OPINION:**

[*521] [**162] The Board of Trustees of Leland Stanford Junior University (University), James B.D. Mark, M.D., chairman of the department of surgery of the University's medical school, and John J. Schwartz, counsel for [***2] medical affairs and assistant vice president of the University, have petitioned this court for an extraordinary writ of mandate. They seek thereby annulment of an order of the superior court requiring allowance of discovery of certain communications, in an action commenced against them, and others, by one Eugene Dong, Jr., M.D., who is the named real party in interest of the petition.

Another defendant of the superior court action is Clayton Rich, M.D., dean of the University's school of medicine and vice president for [*522] medical affairs. He was not served with summons in the action and, not being subject to the superior court's order, has not joined as a petitioner of the proceedings before us.

Having issued an alternative writ of mandate, our task is the reconciliation of the "strong public policy" in favor of discovery (see *Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 377 [15 Cal.Rptr. 90, 364 P.2d 266]),* with the state's constitutionally confirmed *"inalienable right"* to pursue and obtain "privacy" (Cal. Const., art. I, § 1).

The record before us including Dr. Dong's complaint discloses, or at least alleges, the following factual context. [***3]

Dr. Dong and Zoltan J. Lucas, M.D., were faculty members of the University's school of medicine independently engaged, in part, in medical research funded by the federal Department of Health, Education and Welfare.

In 1973, "after a careful study," Dr. Dong made complaint to the chairman of the school of medicine against Dr. Lucas, charging research misconduct and seriously impugning his personal and professional integrity. Successive faculty committees were appointed to investigate that, and other, complaints against Dr. Lucas. In June 1975, Dr. Dong submitted an additional report, critical of Dr. Lucas, to one of the committees. Dr. Lucas responded with a [**163] letter to the committee charging, among other things, that Dr. Dong "committed the same misdeed [of which] he accused me, . . ." He "suggested" also that Dr. Dong's motives were "personal aggrandizement" and jealousy, and that certain of his research publications constituted "public as well as scientific fraud."

The Department of Health, Education and Welfare became interested in the dispute insofar as it concerned its funded research. In a conversation with persons of that agency, the above-noted John J. Schwartz [***4] "spoke the following words of and concerning the plaintiff: that in his (Mr. Schwartz') opinion Dr. Dong has a 'vendetta' going against Dr. Lucas."

On or about June 6, 1978, Dr. Lucas sent a letter to the above-noted Dr. Rich, dean of the school of medicine, accusing Dr. Dong of an "avid hunger for publicity," "consumer fraud," "serious violations of scientific [*523] ethics" and of having "precious little data to back [his] grossly exaggerated claims."

Following five years of complaints and recriminations, the University and its respective committees took no action on Dr. Lucas' accusations against Dr. Dong. But as a result of investigation of the accusations of Dr. Dong and others, Dr. Lucas was subjected to disciplinary proceedings which led to suspension from his employment, without pay, for three months.

Dr. Dong thereafter commenced the above-noted superior court action against the instant petitioners, i.e.,

the University, John J. Schwartz and Dr. Mark, and against Dr. Rich and Dr. Lucas. The action sought damages for "libel, conspiracy to defame, conspiracy to place plaintiff in false light, conspiracy to intentionally inflict emotional distress, negligent infliction [***5] of emotional distress, breach of covenant of good faith in employment contract." In this court Dr. Dong more tersely explains that the gravamen of his complaint is that he has been "defamed."

The basis of Dr. Dong's action against the University is the doctrine of respondeat superior, and particularly its vicarious responsibility under that principle for the malicious acts and publications of Dr. Lucas in the course of his employment. It is alleged that the remaining petitioners and Dr. Rich, the University's officials, (1) had *republished* Dr. Lucas' countercomplaints to "numerous academic and administrative personnel in the Stanford scientific community" and to the Department of Health, Education and Welfare, and (2) had "willfully concealed from plaintiff [Dr. Dong] the true evaluations of at least one committee of academic peers appointed to evaluate charges of scientific misconduct against the defendant Lucas, and during the period of such concealment, misrepresented the true nature of said evaluations, plaintiff's role in said evaluations, and plaintiff's attitude concerning the preservation of the integrity of the Stanford academic community, to the courts, the public, [***6] and officials of the United States government, . . ."

(We are not called upon to, and do not, determine whether such a "republication" of charges by one university faculty member against another to interested and involved university officials and government agencies, can form the basis of a "defamation action." Nor do we determine [*524] whether Dr. Dong's complaint states a cause of action for defamation, or otherwise.)

In Dr. Dong's superior court action he made demand, under *Code of Civil Procedure section 2031,* upon the University for inspection and copying of what may reasonably be narrowed to the following:

1. The personnel, tenure, and promotion files of *Dr. Lucas;*

2. All documents and communications, including grants, contracts, and awards made to or by the University, and others, including the Department of Health, Education and Welfare and the United States Senate and officials thereof, in respect of *Dr. Lucas* and medical research performed by him at the University;

3. All documents and communications considered by, and conclusions of, the above mentioned committees in respect of their investigation of *Dr. Dong;*

4. The personnel, tenure, and promotion [***7] files of *Dr. Dong.*

[**164] (Many other of Dr. Dong's discovery requests were either acceded to by the University or were withdrawn by him.)

Following a hearing, the superior court ordered that the University comply with each of the above four requests, "save and except" letters of recommendation or reference to the University concerning Dr. Dong or Dr. Lucas, "written when said persons were being considered for employment at [the University]."

The filing of the instant petition for a writ of mandate followed.

Effective November 5, 1974, the people of California added to the state's Constitution its present article I, section 1, which states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy.*" (Italics added.)

(1) Article I, section 1's, "inalienable right" of privacy is a "fundamental interest" of our society, essential to those rights """guaranteed by the First, Third, Fourth, Fifth and Ninth Amendments to the U.S. [*525] Constitution."" ( *City of Santa Barbara v. Adamson* [***8] *(1980) 27 Cal.3d 123, 130 [164 Cal.Rptr. 539, 610 P.2d 436]; White v. Davis (1975) 13 Cal.3d 757, 774-775 [120 Cal.Rptr. 94, 533 P.2d 222].)* But another state interest lies in """facilitating the ascertainment of truth in connection with legal proceedings' . . . ." ( *Britt v. Superior Court (1978) 20 Cal.3d 844, 857 [143 Cal.Rptr. 695, 574 P.2d 766]; In re Lifschutz (1970) 2 Cal.3d 415, 432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; Morales v. Superior Court (1979) 99 Cal.App.3d 283, 290 [160 Cal.Rptr. 194].)* The constitutional right of privacy is "not absolute"; it may be abridged when, but only when, there is a "compelling" and opposing state interest. *City of Santa Barbara v. Adamson, supra, 27 Cal.3d p. 131; Britt v. Superior Court, supra, 20 Cal.3d pp. 855-856; Loder v. Municipal Court (1976) 17 Cal.3d 859, 864 [132 Cal.Rptr. 464, 553 P.2d 624].)*

In an effort to reconcile these sometimes competing public values, it has been adjudged that inquiry into one's private affairs will *not* be constitutionally justified simply because inadmissible, and irrelevant, matter sought to be discovered *might* lead to [***9] other, and relevant, evidence. (See *Greyhound Corp. v. Superior Court, supra, 56 Cal.2d 355, 390-393.)* """When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information.'" ( *Morales v. Superior Court, supra, 99 Cal.App.3d 283, 289; Fults v. Superior Court (1979) 88 Cal.App.3d 899, 904 [152 Cal.Rptr. 210]; see also Shelton v. Tucker (1960) 364 U.S. 479, 483-485 [5

*L.Ed.2d 231, 234-235, 81 S.Ct. 247]; Valley Bank of Nevada v. Superior Court (1975) 15 Cal.3d 652, 655-657 [125 Cal.Rptr. 553, 542 P.2d 977].)*

And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a "careful balancing" of the "compelling public need" for discovery against the "fundamental right of privacy." ( *City of Santa Barbara v. Adamson, supra, 27 Cal.3d 123, 130; Valley Bank of Nevada v. Superior Court, supra, 15 Cal.3d 652, 657; White v. Davis, supra, 13 Cal.3d 757, 774-775.)*

(2) Other apposite authority on the subject follows. Since "judicial [***10] discovery orders [relating to *private* matters] inevitably involve *state-compelled* disclosure of presumptively protected information, the principles [of art. I, § 1] have equal application to purely private litigation." ( *Britt v. Superior Court, supra, 20 Cal.3d 844, 856, fn. 3.)* "The custodian [*526] [of private information] has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is the subject of [it] is entitled to expect that his right will be thus asserted." ( *Craig v. Municipal Court (1979) 100 Cal.App.3d 69, 77 [161 Cal.Rptr. 19].)* And, of course, the custodian of such private information [**165] may not waive the privacy rights of persons who are constitutionally guaranteed their protection.

Even where the balance, because of a "'compelling state purpose,'" weighs in favor of disclosure of private information, the scope of such disclosure will be narrowly circumscribed; such an invasion of the right of privacy "'must be drawn with narrow specificity.'" ( *Britt v. Superior Court, supra, 20 Cal.3d 844, 856.)* And: "Where it is possible to do so, '. . . the courts should impose partial [***11] limitations rather than outright denial of discovery.'" ( *Valley Bank of Nevada v. Superior Court, supra, 15 Cal.3d 652, 658.)*

In light of these principles we consider first Dr. Dong's request for disclosure of the University's personnel, tenure, and promotion files relating to *Dr. Lucas.*

(3) It seems manifest, and we observe no contrary contention, that such records and files relate to the private affairs of Dr. Lucas, and are maintained in confidence by the University. No direct relevance to the issues of the defamation action is apparent, and again Dr. Dong takes no contrary position; he merely argues that such disclosure might lead to the required proof of malice of one or more of the several defendants of his action. And even were such records' and files' direct relevance more readily apparent, we are of the opinion that a proper balancing of the competing values would *here* necessarily weigh in favor of Dr. Lucas' right of privacy.

Nor is a "compelling state interest" requiring such disclosure discernible to us.

It is concluded that the superior court abused its discretion in granting Dr. Dong discovery of the personnel, tenure, and promotion records and files [***12] of Dr. Lucas in the custody of the University.

We reach the same conclusion in respect of the order requiring disclosure of documents and communications, including grants, contracts [*527] and awards, in relation to medical research performed by Dr. Lucas at the University. Here also no direct relevance to the issues of Dr. Dong's defamation action is discerned. And assuming arguendo some such relevance, it must reasonably be concluded that a balancing of the opposing state interests, under the facts and circumstances of the case before us, would weigh in the University's and Dr. Lucas' favor. And here also we observe no "compelling state interest" in the requested disclosure.

(4) We advert now to the request for discovery of the communications considered by, and conclusions of, the University's committees in respect of their *investigation* of Dr. Dong.

It may well be emphasized at this point that unlike the investigation of Dr. Lucas, the investigation of Dr. Dong resulted in neither charges of misconduct, nor disciplinary proceedings, nor punishment.

A policy of the University was expressed under oath by its vice provost and dean of research, as follows: "The quality of [***13] our faculty depends on the soundness of the faculty peer evaluations and the honesty with which they are expressed. We are persuaded that the need to encourage candor, and to assure our faculty that candor will not destroy collegial relations among faculty members, require that peer evaluations be held in confidence. That guarantee of confidentiality is critical in the context of investigations of alleged impropriety by a faculty member, such as those conducted by the [University's] committees with respect to Dr. Lucas." It appears that such communications of the University's faculty members as were considered by the committees with respect to Dr. Dong were tendered under a guaranty of confidentiality. They were thus manifestly within the Constitution's protected area of privacy. (See *Matchett v. Superior Court (1974) 40 Cal.App.3d 623, 628-629 [115 Cal.Rptr. 317].)*

Here also we observe no direct relevance of the committees' investigation of Dr. Dong, to the issues of that party's superior court action for defamation. (See *Morales v. Superior Court, supra, 99 Cal.App.3d 283, 289; Fults v. Superior Court, supra 88 Cal.App.3d 899, 904.)* And again, were [***14] [**166] we to assume such relevance, under the facts and circumstances of the

case before us "careful balancing" discloses no transcendent or "compelling public need for discovery," as opposed to the "fundamental" right of privacy.

[*528] Moreover, we are advised of no area of our law, or argument in reason, providing that an investigatory body finding no misconduct, must nevertheless allow discovery to the investigation's subject, of the evidence considered and its detailed conclusions thereon. Indeed, sound public policy appears to be otherwise.

Again, we find an abuse of discretion.

(5a) We finally consider that portion of the superior court's order allowing discovery of Dr. Dong's personnel, tenure, and promotion files, save and except letters of recommendation or reference to the University concerning Dr. Dong, written when he was being considered for employment at the University.

Petitioners again point to the University's policy, as testified by its vice provost and dean of research. He stated: "Stanford's policy and practice are to afford faculty members access to material in the University's files which are used or have been used to determine that faculty member's [***15] qualifications for employment, promotion, additional compensation, termination or other disciplinary action with the exception of letters of reference. I understand 'letters of reference' to include written evaluations of an individual's qualifications and competence, and written notes of oral evaluations, when used to determine employment, promotion, additional compensation, termination, or other disciplinary action. We do not permit a faculty member to inspect letters or memoranda of reference obtained under expectation of confidence. We have consistently followed this policy with respect to references from peers on the Stanford faculty, and consider that it is equally important that such internal letters of reference be preserved in confidence as those from outside the University."

It is manifest that the subject documents and communications of Dr. Dong's personnel, tenure, and promotion files, whether relating only to his initial employment, or also to his "promotion, additional compensation, or termination," were communicated to the University in confidence, and were thus covered by the communicators' constitutional right of privacy. (See *Matchett v. Superior Court,* [***16] *supra, 40 Cal.App.3d 623, 628-629.)*

(6a) The instant dispute appears also to concern *conflicting* rights of privacy, i.e., Dr. Dong's right of access to private information about [*529] himself, vis-a-vis that of those whose confidential communications are in Dr. Dong's personnel, tenure, and promotion files. The privacy interest of such latter persons has often been considered. Their rights not to have their "names, ad-

dresses and phone numbers" divulged "also deserve protection." ( *Morales v. Superior Court, supra, 99 Cal.App.3d 283, 291.*) And of constitutional "concern is the privacy of citizens whose information gets into government files." ( *Black Panther Party v. Kehoe (1974) 42 Cal.App.3d 645, 655 [117 Cal.Rptr. 106].*)

In a balancing of such opposing interests the nation's high court in *Dept. of Air Force v. Rose (1976) 425 U.S. 352, 372 [48 L.Ed.2d 11, 27, 96 S.Ct. 1592]*, found that legislative concern "for the protection of the kind of confidential personal data usually included in a personnel file is abundantly clear." And federal Ninth Circuit authority, *McKillop v. Regents of University of California (N.D.Cal. 1975) 386 F.Supp.* [***17] *1270*, has passed upon a problem nearly identical to ours. There a university professor denied tenure sought judicial discovery of personnel files "concerning her hiring, evaluation, promotion and denial of tenure." (Pp. 1271–1272.) Such discovery had been denied as to communications "written in official confidence by . . . faculty members, administrators and committees and by scholars at other institutions . . . ." (P. 1272.) The court found an "important state interest in safeguarding the confidentiality necessary to foster [such] relationships," that [**167] such "confidentiality is a prerequisite to the effectiveness of a peer evaluation system of faculty selection," and that the university's "need to preserve the confidentiality of the tenure files in question decisively outweighs the plaintiff's need for their production." (Pp. 1273, 1276, 1278.)

Legislative acts have shown similar consideration. The federal Public Disclosure Act *(5 U.S.C. § 552(b)(6))* exempts from its provisions "personnel . . . files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; . . ." California's Public Records Act ( *Gov. Code, § § 6250-6265*) [***18] also excepts from its disclosure provisions: "Personnel . . . or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." ( *Gov. Code, § 6254*, subd. (c).) *Evidence Code section 1040* bars disclosure of official information when "against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; . . ."

[*530] And California's "courts generally have concluded that the public interest in preserving confidential information outweighs in importance the interest of a private litigant . . . ." ( *City & County of S. F. v. Superior Court (1951) 38 Cal.2d 156, 163 [238 P.2d 581]*; to the same general effect see *Chronicle Pub. Co. v. Superior Court (1960) 54 Cal.2d 548, 566-570 [7 Cal.Rptr. 109, 354 P.2d 637]*; *State of California v. Superior Court (1980) 102 Cal.App.3d 25, 29 [162 Cal.Rptr. 78]*; *Black Panther Party v. Kehoe, supra, 42 Cal.App.3d 645, 657-*

658; *Matchett v. Superior Court, supra, 40 Cal.App.3d 623, 628-629; People v. Russel (1963) 214 Cal.App.2d 445, 453 [29 Cal.Rptr.* [***19] *562]; City Council v. Superior Court (1962) 204 Cal.App.2d 68, 75-76 [21 Cal.Rptr. 896]; Runyon v. Board etc. of Cal. (1938) 26 Cal.App.2d 183, 184-185 [79 P.2d 101].*)

However, it will be remembered that the superior court's here questioned order granting discovery was qualified by the language "save and except letters of recommendation or reference to defendant Stanford concerning plaintiff [Dr. Dong] or defendant Lucas, *written when said persons were being considered for employment at Stanford.*" (Italics added.)

*Labor Code section 1198.5* provides that "Every employer shall . . . upon the request of an employee, permit that employee to inspect such personnel files which are used or have been used to determine that employee's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action . . . . *This section . . . shall not apply to letters of reference.*" (Italics added.)

The trial court apparently construed the statutory term "letters of reference," as Dr. Dong does now, to relate *only* to such communications as were written when Dr. Dong was initially considered by the University for employment. [***20] The petitioners argue that the phrase will reasonably embrace all *confidential communications* concerning Dr. Dong's "qualifications for employment, promotion, additional compensation, or termination or other disciplinary action," either before, *or after*, his employment by the University.

It is, of course, a truism that if, and to the extent, *Labor Code section 1198.5* is in contravention of constitutional confirmation of the inalienable right of privacy of "all people," the Constitution will prevail. But here we observe no such contravention.

[*531] (7) If "'"the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.'"'" ( *Braxton v. Municipal Court (1973) 10 Cal.3d 138, 145 [109 Cal.Rptr. 897, 514 P.2d 697].*)

(6b) We inquire first into the proper interpretation of the phrase "*letters of reference.*"

It is undoubtedly true that the phrase will often mean communications concerning the "qualifications of a person seeking employment . . . given by someone familiar with them." But just as often [***21] it will connote answers in writing from persons "to whom inquiries as to character or [**168] ability can be made." (See Webster's New Collegiate Dict. (7th ed. 1972) "reference," p.

719.) As required by *Braxton* v. *Municipal Court* we reasonably ascribe to "letters of reference" the latter meaning.

**(8)** Moreover: "'Statutes should be construed so as to be given a reasonable result consistent with the legislative purposes.' . . . 'The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' . . . 'The apparent purpose of a statute will not be sacrificed to a literal construction.'" ( *Cossack v. City of Los Angeles (1974) 11 Cal.3d 726, 732-733 [114 Cal.Rptr. 460, 523 P.2d 260].)*

**(6c)** The manifest purpose of *Labor Code section 1198.5*, enacted within the year following adoption of the state's constitutional right of privacy provision, was to insure privacy of *all* furnishers of confidential information used to determine an "employee's qualifications for employment, promotion, additional compensation, or termination **[\*\*\*22]** or other disciplinary action." It would be unreasonable to ascribe an arbitrary legislative intent to respect such confidential communications made *before*, but to dishonor those made *after*, such employment. Courts are under a duty, when possible, to interpret statutes so as to make them "reasonable." ( *City of Santa Clara v. Von Raesfeld (1970) 3 Cal.3d 239, 248 [90 Cal.Rptr. 8, 474 P.2d 976].)*

**(5b)** As pointed out: "'[Courts] should impose partial limitations rather than outright denial of discovery,'" when by doing so otherwise affected constitutional rights may be preserved. ( *Valley Bank of Nevada v. Superior Court, supra, 15 Cal.3d 652, 658.)*

**[\*532]** Here, no compelling state purpose is seen in the maintenance of confidentiality of the *contents* of the letters of reference at issue. The privacy rights of our instant concern will be fully respected by the withholding of the names and other identification of the confidential communications' authors. In a closely similar context it was said that "'deletion of names and identifying characteristics of individuals would in some cases serve the underlying purpose [of a disclosure statute] which exempts **[\*\*\*23]** "personnel . . . and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy."'" ( *Dept. of Air Force v. Rose, supra, 425 U.S. 352, 375 [48 L.Ed.2d 11, 29].)*

In such circumstances it has been held by reviewing courts that the assurance of confidentiality of a communication will be adequately respected by a practice "not to disclose its source" ( *City & County of S. F. v. Superior Court, supra, 38 Cal.2d 156, 162-163)*, and that the "court may well conclude that portions of the requested material are protected, and it may be that identifying details or secret matters can be deleted from a document

to render it subject to disclosure" ( *Bristol-Myers Company v. F. T. C. (D.C.Cir. 1970) 424 F.2d 935, 938-939).*

And we observe that this principle of appropriate deletion has obtained statutory recognition in California. Giving effect to its finding that "In order to protect the privacy of individuals, it is necessary that the maintenance and dissemination of personal information be subject to strict limits" ( *Civ. Code, § 1798.1*, subd. (c)), the Legislature enacted the state's Information Practices Act of 1977 relating to disclosure **[\*\*\*24]** of *public records*, stating as relevant: "If information, including letters of recommendation, compiled for the purpose of determining suitability, eligibility, or qualifications for employment, advancement, renewal of appointment or promotion, . . . was received . . . with the understanding that the identity of the source of the information would be held in confidence and such source is not in a supervisory position with respect to the individual to whom the record pertains, the agency shall fully inform the individual of all personal information about that individual *without identification of the source. This may be done by providing a copy of the text of such material with only such deletions as are necessary to protect the identity of the source or by providing a comprehensive summary of the substance* **[\*\*169]** *of the material . . . ."* ( *Civ. Code, § 1798.38*; italics added.)

Appropriate deletions of identification of the sources of the confidential letters of reference of Dr. Dong's personnel, tenure, and promotion **[\*533]** files should have been made by the superior court. Such deletions would closely follow the state's high court's above-noted direction that: **[\*\*\*25]** "Where it is possible to do so, '. . . the courts should impose partial limitations rather than outright denial of discovery.'" ( *Valley Bank of Nevada v. Superior Court, supra, 15 Cal.3d 652, 658.)* And insofar as it permits invasion of the right of privacy, it does so with "'narrow specificity.'" ( *Britt v. Superior Court, supra, 20 Cal.3d 844, 856.)*

We accordingly hold that Dr. Dong is entitled to discovery of his personnel file, subject to appropriate safeguarding of the rights of privacy of those who had furnished information therein concerning his "qualifications for employment, promotion, additional compensation, or termination . . . ."

We observe no occasion for application of the doctrine of unclean hands against the petitioners, as argued for by Dr. Dong. And assuming, but only arguendo, such unclean hands of the petitioners, Dr. Lucas may not in reason be prejudiced thereby.

For the reasons above stated, the demurrer of Dr. Dong to the petition is overruled.

119 Cal. App. 3d 516, *; 174 Cal. Rptr. 160, **;
1981 Cal. App. LEXIS 1766, ***

(Although not necessary to the conclusions we have reached, we observe that the University's promulgated written "Terms and Conditions of Appointment" of faculty members provides that upon "grievances" [***26] such as here entertained by Dr. Dong: ". . . the rules shall provide that any communication solicited and received with the understanding that it would be kept in confidence shall be kept confidential and shall not be revealed to any person, including the grievant, who was not a party to the confidential communication or material, . . .")

The peremptory writ of mandate will issue. The superior court will set aside the "Order for Production of Document and Things" [sic], filed June 17, 1980, and on the present record enter a new and different order not inconsistent with the views we have expressed.