UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

*******************************************
SUSAN COONEY,                              )
    Plaintiff                              )
v.                                         )
                                           )
SAYBROOK GRADUATE SCHOOL AND               )
RESEARCH CENTER, and                       )
MAUREEN O'HARA, Individually               )
    Defendants                             )
*******************************************


# PLAINTIFF'S MOTION TO COMPEL FURTHER DISCOVERY RESPONSES FROM DEFENDANTS SAYBROOK AND O'HARA

Pursuant to F.R.C.P. Rule 37(a) and Local Rule 37.1, Plaintiff Susan Cooney ("Cooney") moves the Court to compel defendants, Saybrook Graduate School and Research Center ("Saybrook") and Maureen O'Hara ("O'Hara"), to provide further responses to plaintiff's discovery requests. As grounds for allowance of this motion, plaintiff states that defendants have provided incomplete and evasive responses to important and reasonable discovery requests. As required by the local rules, plaintiff's counsel initiated discovery conferences, which did not resolve the issues addressed in this motion. See <u>Plaintiff's Certification of Compliance with Local Rules 7.1(A)(2) and 37.1(A)</u>, which appears on page 16.

## OVERVIEW OF PLAINTIFF'S DISCOVERY REQUESTS

On September 2, 2005, Plaintiff served interrogatories and document requests on Saybrook and O'Hara. Plaintiff's counsel' granted two extensions for Defendants to respond. On November 18, 2008, Saybrook and O'Hara responded to discovery, though O'Hara submitted

"DRAFT" answers. On December 6, 2005, O'Hara served signed answers, which were substantially different than her draft answers. Saybrook and O'Hara's answers largely consisted of pro forma objections and argumentative, non-responsive answers. For example, in various answers, Saybrook and O'Hara argue that Cooney is to blame for not discovering stricter licensure standards in Massachusetts during her years at Saybrook (1995-2002). Defendants' argumentative answers fail to confront two critical facts—defendants knew of the expected regulatory changes in Massachusetts by January, 1996, and failed to warn students until 2004.

Saybrook's initial production of documents consists of 1968 pages of disordered records. There are no exhibit labels or page dividers to reveal which documents are responsive to which document requests. During a telephone conference to discuss discovery issues, Defendants' counsel correctly argued that defendants may produce records "as they are kept in the usual course of business," pursuant to F.R.C.P. Rule 34(b).[1] Given the haphazard order of these documents, Saybrook would appear to be a highly disorganized enterprise.[2] As the documents lack any coherent order, plaintiff was substantially hindered in analyzing these documents. Moreover, the initial production of 1968 pages contains dozens of blank pages and duplicate records, and hundreds of pages of irrelevant and non-responsive documents.[3] Indeed, the vast

---

[1] Defendant Saybrook began to provide specific Bates-number references with its Supplemental Response to plaintiff's document requests, which was served on January 6, 2006.

[2] Saybrook's records are not organized by subject matter or chronologically. For example, Saybrook produces voluminous records on residential conferences ("RCs") for the years, 1996 to 2001 (Bates Nos. S00014 to S00251). If one skips ahead approximately 400 pages, Saybrook produces additional RC records for the years 1996 to 2002 (Bates Nos. S00654 to S01209). In between these two sets of RC materials, Saybrook produces a so-called "APA Accreditation" file and "Susan Cooney" file. The Cooney file is followed by more APA documents. Oddly, in the second set of RC materials, Saybrook provides further APA materials (S001099 to S001114).

[3] For example, Saybrook produced over 150 pages of scholarly articles about Carl Rogers, a pioneer of the humanistic psychology movement. These articles are not responsive to any request, and irrelevant to this litigation. Saybrook also produced twelve <u>completely identical</u> copies of a handout on Carl Rogers (Bates # S00969 – 981).

majority of Saybrook's document production relates to Saybrook's planning of residential conferences. Arguably, these records are marginally responsive to Document Request No. 5, which seeks records of Cooney's "<u>participation</u> in residential conferences at Saybrook…" (Emphasis added). However, Saybrook produced voluminous records related to conferences that Cooney did not attend. Moreover, Defendants produced hundreds of pages of irrelevant documents related to Saybrook's budgeting and scheduling of conferences, travel and honorarium arrangements for faculty, and student evaluations of residential conferences.

Saybrook and O'Hara have resisted providing any meaningful information related to the important themes of plaintiff's discovery requests. First, Saybrook has declined to tell the plaintiff which Saybrook faculty or staff assisted Susan Cooney in reviewing Massachusetts licensure standards. Second, Saybrook has not divulged the dates or substance of internal communications concerning Massachusetts licensure standards and licensing obstacles encountered by Susan Cooney, Richard Francis, John Burke, and other Massachusetts students. Third, defendants have failed to divulge any communications regarding licensure obstacles encountered by Saybrook students outside Massachusetts. Fourth, Saybrook has not disclosed information regarding student legal claims against Saybrook or licensing boards. Fifth, defendants have not produced all Saybrook communications with its Board of Trustees regarding licensure obstacles, student legal claims, or APA accreditation.[4] Finally, Saybrook has declined to produce important bi-monthly and quarterly publications for students.

---

[4] Defendants have provided one 1997 memorandum by a faculty member regarding the pros and cons of APA accreditation. Defendants also produced a small number of 2003 and 2004 records that discuss APA accreditation. Unfortunately, defendants have produced no e-mails, memoranda, or meeting notes regarding Saybrook's institutional response to the faculty discussion on APA accreditation, and no communications from 1997 to 2002.

Counsel for the parties had over two hours of telephone conferences to discuss the disputed areas of discovery. See <u>Certification</u>, *infra*, p. 16. These conferences were largely unsuccessful in narrowing key areas of disagreement.[5] Defendants' counsel did agree to make further inquiries and to provide supplemental responses if appropriate. Saybrook did serve Supplemental Answers to Interrogatories on January 6, 2006, and produced some additional documents on January 6 and 13, 2006. Defendants' supplementation adds to the quantity, but not the quality of defendants' discovery responses. Unfortunately, Saybrook's supplemental discovery responses did not resolve any of the major issues raised in the parties' telephonic discovery conferences.

The balance of this motion addresses plaintiff's specific objections to defendants' discovery responses. Plaintiff's counsel has not produced copies of defendants' document production, which exceed two thousand pages and which are mostly irrelevant to this litigation. If the Court so requests, plaintiff can produce any portions of defendants' document production. Plaintiff has included all relevant discovery responses, as follows:

| | |
|---|---|
| **Exhibit A** | <u>Defendant Saybrook's Response to Cooney's Document Requests</u>; |
| **Exhibit B** | <u>Defendant Saybrook's Supplemental Response to Document Requests</u>; |
| **Exhibit C** | <u>Defendant Saybrook's Answers to Cooney's Interrogatories</u>; |
| **Exhibit D** | <u>Defendant Saybrook's Supplemental Answers to Interrogatories</u>; |
| **Exhibit E** | <u>Defendant O'Hara's Response to Cooney's Document Requests</u>; |
| **Exhibit F** | <u>Defendant O'Hara's Supplemental Response to Document Requests</u>; and |
| **Exhibit G** | <u>Defendant O'Hara's Answers to Cooney's Interrogatories</u>. |

---

[5] Defendants did address two discovery issues raised by plaintiff. First, O'Hara produced some records related to the Consortium of Diversified Psychology Programs. Second, Defendants belatedly produced a communication from Saybrook's vice-president to the Massachusetts Board of Registration of Psychologists regarding Richard Francis. Unfortunately, Saybrook has failed to disclose any internal memoranda, e-mails, reports, or meeting notes regarding licensure obstacles faced by Richard Francis, John Burke, the plaintiff, or other students.

4

**PLAINTIFF'S REQUESTS FOR FUTHER RESPONSES TO DISCOVERY**

I. <u>SAYBROOK AND O'HARA'S COMMUNICATIONS WITH SUSAN COONEY REGARDING MASSACHUSETTS LICENSURE AND PLAINTIFF'S LEGAL CLAIMS, WHICH PLAINTIFF REQUESTED IN THE FOLLOWING DISCOVERY REQUESTS:</u>

<u>Document Requests to Saybrook,</u> Nos. 7, 9, 10, and 12 (See **Exhibits A and B**);
<u>Interrogatories to Saybrook</u>, No. 7, 8 and 12 (See **Exhibits C and D**);
<u>Document Requests to O'Hara,</u> Nos. 5, 7 (See **Exhibits E and F**); and
<u>Interrogatories to O'Hara</u>, No. 12 (See **Exhibit G).**

These discovery requests ask Saybrook and O'Hara to describe their knowledge of Cooney's interest and efforts to become licensed as a Massachusetts psychologist, as well as Saybrook's efforts to assist Cooney in achieving Massachusetts licensure. In <u>Interrogatory No. 12 (to Saybrook)</u>, plaintiff seeks the identity of all Saybrook agents who assisted Cooney in understanding licensure, a summary of all communications, and a description of any documents. Interestingly, Saybrook's only objection is that the interrogatory is "burdensome." Saybrook then provides an evasive and nonresponsive answer, briefly quoting from Plaintiff's application for admission. Saybrook then describes a communication with Richard Francis, even though such communications are beyond the scope of this interrogatory.

Saybrook has evaded the plain meaning of this interrogatory. Saybrook has a duty to investigate its own communications with the plaintiff regarding licensure. Yet Saybrook fails to identify any staff members, administrators, or faculty who assisted in Cooney in reviewing Massachusetts regulations at her Residential Orientation Conference in September, 1995, or during any subsequent periods. In her interrogatory answers and deposition testimony, Cooney has testified that a female employee at Saybrook, whose name is unknown, provided the plaintiff

5

with counseling regarding Massachusetts licensure standards.  Presumably, Saybrook has the ability to determine which of its employees provided assistance to Cooney regarding licensure requirements at the September, 1995 orientation conference, or at any other times.  As Plaintiff is scheduled to take depositions of Saybrook's California employees during the week of March 13 to 17, it is of paramount important that Saybrook disclose the name and address of any staff or faculty members that counseled the plaintiff regarding licensure in Massachusetts, and the substance of these communications.

Saybrook and O'Hara have also provided no internal documents related to Cooney's efforts to obtain licensure, or her legal claims.  These documents are plainly requested in <u>Document Request No. 7 to Saybrook</u> **(Ex. A and B)**, and <u>Document Request Nos. 5 and 7 to O'Hara</u> **(Ex. E and F)**.  Defendants have only produced several Saybrook's letters and e-mails to Cooney regarding plaintiff's claims, and Saybrook's notice of claim to its insurance company.  However, Saybrook has provided no internal e-mails, memoranda, or other documents regarding Cooney's interest in Massachusetts licensure or Cooney's legal claims against Saybrook.  Defendants have cited attorney-client privilege objections, but have produced no privilege log.  Defendants should be compelled to produce all Saybrook documents regarding Cooney's interest in Massachusetts licensure, as well as Saybrook's internal discussions and analysis of Cooney's claims, unless defendants can demonstrate that these communications were privileged.

[CONTINUED ON NEXT PAGE]

II. SAYBROOK AND O'HARA'S KNOWLEDGE AND ACTIONS REGARDING LICENSURE OBSTACLES IN MASSACHUSETTS, WHICH PLAINTIFF REQUESTED IN THE FOLLOWING DISCOVERY REQUESTS:

Document Requests to Saybrook, Nos. 8, 9, 10, and 12 (See **Exhibits A and B);**
Interrogatories to Saybrook, Nos. 5, 6, 7, 8 and 14 (See **Exhibits C and D);**
Document Requests to O'Hara, Nos. 3, 4, and 8 (See **Exhibits E and F**); and
Interrogatories to O'Hara, Nos. 8 and 9 (See **Exhibit G).**

These discovery requests direct Saybrook to describe its assessment of, and its response to, Massachusetts licensure standards from 1990 to the present. Specifically, Saybrook is asked to describe its understanding of any licensure obstacles in Massachusetts, the year when Saybrook discovered these obstacles, and the students who were impacted. In its initial answer to Interrogatory No. 5, Saybrook suggests it had no awareness of licensure obstacles in Massachusetts until it received discovery from the Plaintiff. In its Supplemental Answer to Interrogatory No. 5, Saybrook arbitrarily limits its response to licensure obstacles related to the Association of State and Provincial Psychology Boards. Using this arbitrary definition, Saybrook reveals that Richard Francis, a 1997 graduate of Saybrook, encountered licensure obstacles in Massachusetts in late 2000 or 2001.

Unfortunately, Saybrook fails to describe its knowledge of other Massachusetts students who encountered licensure obstacles. For example, John Burke, PhD, who graduated from Saybrook in 1993, encountered obstacles to qualifying for licensure in Massachusetts. Upon information and belief, Burke retained an attorney to challenge the Massachusetts Board of Registration in Psychology ("the Board"), and was eventually awarded a license in or about 1997. Saybrook should be required to disclose its understanding of the timing and nature of

7

licensure obstacles that affected John Burke, Richard Francis, and other Saybrook graduates from Massachusetts.

Saybrook and O'Hara have also failed to provide any internal e-mails, memoranda, meeting notes, or other records concerning John Burke, Richard Francis, or other Massachusetts students who encountered licensure obstacles.  These documents are plainly requested in Document Request Nos. 8 and 12 to Saybrook **(Ex. A and B)**, and Document Request Nos. 8 and 9 to O'Hara **(Ex. E and F)**.  Saybrook has produced one draft letter from William Bruff to the Board of Registration of Psychologists regarding Richard Francis.  However, Saybrook has produced no e-mails or letters between Francis and Saybrook.  Defendants have also not produced any internal e-mails, memoranda, or other documents regarding Francis, Burke, or other Massachusetts students who encountered licensure obstacles.  Defendants have cited attorney-client privilege and Family Educational Rights and Privacy Act (FERPA) objections, but have produced no privilege log.  Defendants should be compelled to disclose and produce all internal communications regarding John Burke, Richard Francis, and other Massachusetts students, except to the extent that Defendants assert and document legitimate privilege issues.

III. SAYBROOK AND O'HARA'S KNOWLEDGE AND ACTIONS REGARDING LICENSURE OBSTACLES IN OTHER STATES, WHICH PLAINTIFF REQUESTED IN THE FOLLOWING DISCOVERY REQUESTS:

Document Requests to Saybrook, Nos. 11, 13, 19 and 20 (See **Exhibits A and B);**
Interrogatories to Saybrook, Nos. 5, 6, 9, 10 and 15 (See **Exhibits C and D);**
Document Requests to O'Hara, Nos. 4, 13 and 15 (See **Exhibits E and F**); and
Interrogatories to O'Hara, Nos. 10 and 11 (See **Exhibit G).**

8

In the above-noted discovery requests, Plaintiff inquires as to defendants' knowledge of licensure obstacles in states outside Massachusetts. In <u>Document Request No. 11 to Saybrook</u> **(Ex. A and B)** and <u>Document Request Nos.10 and 11 to O'Hara</u> **(Ex. E and F)**, Defendants are asked to furnish Saybrook and student communications with licensing boards outside Massachusetts. In <u>Interrogatory No. 5, 6, 9 and 10 to Saybrook</u> **(Ex. C and D)** and <u>Interrogatory Nos. 10 and 11 to O'Hara</u> **(Ex. G)**, Plaintiff asks the Defendants to describe their understanding of licensure standards in other states, and defendants' efforts to monitor these standards and to assist its students. Defendants object that each of these discovery requests are overboard and not reasonably calculated to lead to admissible evidence. However, these document requests and interrogatories are clearly relevant to Plaintiff's claim that Saybrook concealed its evolving knowledge of licensure obstacles facing Saybrook students.

In or about the 1994-1995 academic year, Saybrook advised its students of licensure obstacles in <u>four or five</u> states. About nine years later, in 2004, Saybrook advised its students of licensure obstacles in <u>eighteen</u> (18) states, including Massachusetts. Clearly, Massachusetts and other states were enacting stricter regulations between 1995 and 2003. Unfortunately, Defendants have refused to provide any information to help plaintiff ascertain when and how Saybrook learned of regulatory changes in these eighteen states, and why Saybrook withheld this information from its students.

According to documents produced by O'Hara, Saybrook's officers were aware of expected regulatory changes in Massachusetts and other states in or before January, 1996. At this time, Saybrook's acting president, Rudy Melone, led a conference call of the Consortium of Diversified Psychology Programs ("CDPP") regarding the changing landscape of psychology

9

licensing regulations.  See CDPP Conference Call Minutes, Wednesday, January 24, 1996, which is attached as **Exhibit H**.  The conference call participants identified five "Hot spots," including "Alabama, Florida, Massachusetts, North Carolina, South Carolina."  The committee members discussed their concerns about expected regulatory changes in all of these states.  President Melone also noted a "need for continued vigilance."

The work of CDPP demonstrates that Saybrook and other humanistic psychology schools were actively monitoring regulatory changes in Massachusetts and other states.  In 1996 alone, CDPP planned a further conference call in late January or February, 1996; a Spring Conference in May, 1996; and a June, 1996 meeting of CDPP's Accreditation Committee.  Upon information and belief, Saybrook and O'Hara actively participated in CDPP activities in 1996 through 2001 and beyond.  Unfortunately, Defendants have produced no documents related to their CDPP activities after January, 1996.  In the late 1990s and in the year 2000, Saybrook participated in the National Psychology Advisory Association ("NPAA"), a sister organization to CDPP.  However, Defendants have produced no NPAA minutes, reports, or communications.

Defendants want this Court to draw a bright line between Saybrook's knowledge of licensure obstacles in Massachusetts, and its knowledge of licensure obstacles in all other states.  However, these two issues are inseparable, as Saybrook is a "distance learning" program that has offered graduate studies in psychology to students in more than thirty states.  Saybrook withheld its knowledge of licensure obstacles not only in Massachusetts, but also in many other states.  Plaintiff should be entitled to explore Saybrook's knowledge of licensure obstacles outside Massachusetts, as this discovery may lead to evidence that Saybrook engaged in a pattern of monitoring licensure obstacles in various states and withholding this information from

10

affected students.

Saybrook's knowledge of licensure restrictions in other states is relevant to the Plaintiff's claims in two important ways.  First, it is believed that Saybrook learned of licensing restrictions in various jurisdictions, but failed to advise students from these jurisdictions.  Plaintiff may be able to offer these facts as evidence of similar "wrongs" or "acts."  While such evidence is inadmissible to prove character, it is admissible for other evidentiary purposes, including proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident…"  F.R.E., Rule 404(b).[6]  Second, Saybrook's discussions of licensure restrictions in other states may yield evidence of Saybrook's knowledge of Massachusetts' standards.  For example, Saybrook advised the Iowa Board of Psychology Examiners that Massachusetts would not recognize a Saybrook degree.  See In the Matter of the Application for Licensure of John Cannon, Ph.D., Board of Psychology Examiners of the State of Iowa (DIA No. 04DPHPS001), which is attached as **Exhibit I**.   Based on testimony from Saybrook's vice-president, William Bruff, the Iowa Board made the following finding of fact:

> 7.  Saybrook is aware that certain states will not admit its graduates to licensure as a psychologist and will not take students from those states **(e.g. Massachusetts)** if they intend to be licensed as a psychologist to practice in that state (Testimony of Dr. William Bruff).

Id., p. 4 (Emphasis added).  Defendants may argue that Dr. Bruff gave this testimony in May, 2004, and that Dr. Bruff may be referring to Saybrook's knowledge of Massachusetts restrictions after Susan Cooney's legal claims.  Plaintiff counters that there are many possible interpretations of Dr. Bruff's testimony, and plaintiff should be entitled to obtain further discovery on this issue.

---

[6] F.R.E. Rule 404(b) applies equally to criminal and civil matters.  See e.g., Hynes v. Coughlin, 79 F.3d 285 (2nd Cir. 1996); USA v. Hetherington 256 F.3d 788 (8th Cir. 2001); Jannotta v. Subway Sandwich Shops 125 F.3d 503

Also, as noted above, Plaintiff should be permitted to develop evidence of Saybrook's knowledge of licensure restrictions in Idaho, and its apparent failure to advise John Cannon of these restrictions. Saybrook's knowledge of licensure restrictions in Idaho and other states is relevant to plaintiff's claim that Saybrook breached a duty and contractual obligation to advise students of licensure obstacles.

Plaintiff asks the Court to compel defendants to provide further discovery responses. First, Defendants should be required to describe the full extent of their participation in CDPP and NPAA activities in 1996 and thereafter, and to provide all relevant documents. Second, Saybrook should be required to describe its understanding of licensure obstacles in states other than Massachusetts. Saybrook must also reveal its specific knowledge of licensure obstacles faced by John Cannon of Idaho, and by Saybrook students in other states. Finally, Defendants should be required to produce all documents related to Saybrook's discussions and actions related to licensure obstacles.

IV. LEGAL ACTIONS BY SAYBROOKS STUDENTS AGAINST DEFENDANTS OR STATE LICENSING BOARDS, WHICH PLAINTIFF REQUESTED IN THE FOLLOWING DISCOVERY REQUESTS:

Document Requests to Saybrook, Nos. 22 and 23 (See **Exhibits A and B**);
Interrogatories to Saybrook, Nos. 27 and 28 (See **Exhibits C and D**);
Document Requests to O'Hara, No. 24 (See **Exhibits E and F**); and
Interrogatories to O'Hara, No. 25 (See **Exhibit G).**

Interrogatory No. 27 to Saybrook **(Ex. C and D)** asks Saybrook to identify and describe any legal actions by Saybrook or its students against state licensing boards. Interrogatory No. 28

---

(7th Cir. 1997)

to Saybrook **(Ex. C and D)** seeks information about legal claims filed against Saybrook by its own students. Saybrook objects to both interrogatories on the grounds that plaintiff propounded over twenty-five interrogatories. During a discovery conference, defendants' counsel was unwilling to assent to plaintiff's request to ask five additional interrogatories. Document Request Nos. 22 and 23 to Saybrook **(Ex. A and B)** seek documents related to legal actions by Saybrook or its students against licensing boards, and legal actions by students against Saybrook. Saybrook objects that these requests over overbroad, burdensome, and unreasonable.

For the reasons described in the preceding section, Plaintiff believes that these discovery requests are calculated to lead to the discovery of admissible evidence. In the John Cannon appeal, the Idaho Board made a finding of fact that Saybrook knew that Massachusetts students could not be licensed as psychologists. The Plaintiff should be permitted to examine all Saybrook documents regarding John Cannon's appeal, and any other legal claims by Saybrook students. Discovery of these documents will help the plaintiff to determine if Saybrook concealed its knowledge of regulatory barriers in Idaho and other states from its students. Such evidence would support plaintiff's claim that Saybrook breached its duty, and contractual obligation, to monitor regulatory changes and to advise students of licensure obstacles.

V. SAYBROOK AND O'HARA'S COMMUNICATIONS WITH THE BOARD OF TRUSTEES RE LICENSURE OBSTACLES; LEGAL CLAIMS BY SAYBROOK STUDENTS, AND APA ACCREDATION, WHICH PLAINTIFF REQUESTED IN THE FOLLOWING DISCOVERY REQUESTS:

Document Requests to Saybrook, Nos. 31, 32, and 33 (See **Exhibits A and B);**
Interrogatories to Saybrook, No. 29 (See **Exhibits C and D);**
Document Requests to O'Hara, No. 30 (See **Exhibits E and F**); and
Interrogatories to O'Hara, No. 26 (See **Exhibit G).**

The above-listed discovery requests ask Saybrook to disclose the dates, subjects, and outcomes of any Board of Trustee meetings or Trustee committee meetings regarding licensure obstacles, accreditation, or legal claims by Saybrook students regarding licensure.[7] Defendants object that the document requests are overbroad. Defendants also object to these interrogatories because they exceed twenty-five. As noted above, Defendants' counsel refused to assent to plaintiff's request to ask five more interrogatories.

During the recent two-day deposition of Susan Cooney, defense counsel represented that Saybrook was engaged in an active debate regarding APA accreditation throughout the 1990s. For this time period, Saybrook has produced a single faculty memo on APA accreditation from March, 1997. Defendants also produced several communications between O'Hara and the Board of Trustees in 2003 and 2004, including O'Hara's 2003 "State of the School" presentation. However, defendants have produced no information or documents on Trustee communications regarding licensure, student legal claims, or APA accreditation between 1995 and 2002.

Presumably, Saybrook's Board was not kept in the dark about the active debate at Saybrook in the 1990s regarding APA accreditation. At a minimum, Saybrook should provide all other "State of the School" addresses and similar reports to the Board of Trustees or its committees, from 1995 through the present. While Saybrook may argue that these reports address issues other than accreditation, Saybrook made no effort to redact the 2003 "State of the School" Report. Saybrook should also provide all communications with the Board of Trustees regarding obstacles to licensure in various states, student legal claims against Saybrook, or APA

---

7 Plaintiff had also sought discovery regarding apparent conflicts between O'Hara and Saybrook's Board of Trustees as to O'Hara's management of Saybrook and her recent resignation. Plaintiff does not seek to compel any further discovery responses on these issues. However, plaintiff does intend to question O'Hara and other Saybrook witnesses about any policy differences, and if such differences led to O'Hara's resignation. Plaintiff's counsel will

14

accreditation. To the extent that these communications contain confidential or sensitive information, defendants can address such concerns before trial by means of a motion in limine.

VI. SAYBROOK'S MONTHLY AND QUARTERLY PUBLICATIONS FOR STUDENTS, WHICH PLAINTIFF REQUESTED IN THE FOLLOWING DISCOVERY REQUEST:

Document Requests to Saybrook, (**Exhibits A and/or B**), No. 38.

This document request seeks Saybrook's catalogues, bulletins, prospectuses, and related documents describing graduate programs offered between 1990-91 and 2005-06. Saybrook objected that the request is overbroad, but nonetheless has provided catalogues and student handbooks for this period. However, Saybrook has failed to provide any of its bi-monthly and quarterly publications, including the "Bulletin" and "The Forum."[8] These publications alert students of important developments and policy changes. Presumably, these publications would contain news and information regarding licensure, accreditation, and related Saybrook policies. Academic institutions are expected to archive and preserve institutional communications with their students. At the very least, Saybrook should produce all Bulletins and Forums from January 1, 1995 (the year of Cooney's admission to Saybrook) through the present. Saybrook should not be permitted to "pick and choose" which publications are relevant.
 To the extent these publications are silent or equivocal on relevant issues of licensure and accreditation, plaintiff should be entitled to explore these issues.

---

offer further legal argument on these issues in Plaintiff's Opposition to Defendants' Motion for Protective Order.
8       "The BULLETIN, published bi-monthly, is sent to all students. It contains notices of policy changes, job opportunities, and relevant information of a time-critical nature." Saybrook Interim Catalogue, 1994-95, p. 10. "The Forum, published quarterly, is sent to all members of the Saybrook community. It contains information about student activities, the professional achievements of faculty and alumni, and general news about Saybrook. The Saybrook community is encouraged to use the FORUM for communicating news, exchanging ideas, and expressing

COMPLIANCE WITH LOCAL RULES 7.1(A)(2) AND 37.1(A)

On or about November 30 and December 9, 2005, Attorney Morenberg, plaintiff's counsel, initiated a discovery conference with Attorney Garcia, counsel for the defendants. The parties spoke for more than two hours, but were unable to resolve the discovery disputes that are the subject of this motion.

Saybrook submitted Supplemental Answers to Interrogatories on January 6, 2006 as well as supplemental production of documents on January 6 and 13, 2006. On or about January 13, 2006, counsel for the parties had a further telephone discussion regarding Saybrook depositions and related discovery issues; Attorney Morenberg advised Attorney Garcia that defendants' supplemental production of documents did not resolve the disputed discovery issues, and that plaintiff would be filing a motion to compel. Counsel also had a brief follow-up discussion regarding this motion to compel on February 3, 2006.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff requests that Defendants supplement all interrogatories answers and discovery requests that are identified in the body of this motion. All of the disputed discovery requests are not privileged and are relevant to the claims and defenses in this litigation, as required by F.R.C.P. Rule 26(b)(1). Consequently, all of the disputed

---

opinions." Id.

in this litigation, as required by F.R.C.P. Rule 26(b)(1). Consequently, all of the disputed discovery requests are reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff also advises the Court that the depositions of Saybrook witnesses are scheduled for March 13 to 17, 2006 in California. Plaintiff therefore requests that the Court compel further discovery responses on or before March 1, 2006.

**WHEREFORE**, plaintiff requests that the Court order defendants to provide further responses to all disputed discovery requests in the manner described in the body of this motion. For the convenience of the Court, Plaintiff has attached a <u>Proposed Order</u> as **Exhibit J**.

Respectfully submitted,

SUSAN COONEY,
By her counsel,

/s/ Paul W. Morenberg, BBO # 631101

---

E. Steven Coren, BBO #
Paul W. Morenberg, BBO # 631101
Kerstein, Coren, Lichtenstein & Finkel, LLP
60 Walnut Street, 4th Floor
Wellesley, Massachusetts  02481
(781) 997-1600

Dated:          February 6, 2006