EXHIBIT

D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO: 04 11572 JLT

| | |
|---|---|
| SUSAN COONEY,<br>　　　　　Plaintiff,<br><br>v.<br><br>HUMANISTIC PSYCHOLOGY<br>INSTITUTE, d/b/a SAYBROOK<br>INSTITUTE and MAUREEN O'HARA,<br>Individually,<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT HUMANISTIC PSYCHOLOGY INSTITUTE D/B/A SAYBROOK INSTITUTE'S SUPPLEMENTAL ANSWERS TO THE PLAINTIFF'S FIRST SET OF INTERROGATORIES

The defendant, improperly named as Humanistic Psychology Institute d/b/a Saybrook Institute, ("Saybrook"), pursuant to Fed. R. Civ. P. 26 and 33, supplements its answers to certain of the Plaintiff's First Set of Interrogatories without waiving the following:

(i)　　the right to object on any grounds to the use of any of the following answers in any other subsequent proceedings or at the trial of this or any other action;

(ii)　　the right to object on any grounds to any demand for further answers to these Interrogatories or any other discovery procedure relating to the subject matter of these Interrogatories; and

(iii)　　the right at any time to revise, correct, add to or clarify any of the following answers.

## GENERAL OBJECTIONS

1.　　Saybrook objects to the Interrogatories to the extent they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure.

963619v1

2.      Saybrook objects to the Interrogatories to the extent that they are overly broad, duplicative, vague and ambiguous, or unduly burdensome.

3.      Saybrook objects to the Interrogatories to the extent that they call for information protected from discovery because it is subject to the attorney-client privilege or constitutes materials prepared by or for Saybrook or its representatives in anticipation of litigation or for trial and/or which would disclose the mental impressions, conclusions, opinions or legal theories of counsel.

4.      Saybrook objects to the Interrogatories to the extent that they call for information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to discovery of admissible evidence.

5.      Saybrook objects to the Interrogatories to the extent that they seek information not within its possession, custody or control.

6.      Saybrook objects to the Interrogatories as inherently burdensome and oppressive to the extent that they seek information already in the possession of the plaintiff.

7.      Saybrook's failure to object to the Interrogatories on a particular ground shall not be construed as a waiver of its right to object on that ground or any additional grounds at a later time.

8.      Saybrook incorporates by reference, as if set forth at length, the General Objections to the Interrogatories into each and every Answer below.

## INTERROGATORIES AND ANSWERS

## INTERROGATORY NO. 3

For each academic year between 1995-96 and the present, identify the name and address of every graduate student who was enrolled at Saybrook and who maintained an address in Massachusetts.

963619v1

## ANSWER NO. 3

Saybrook objects to this Interrogatory on the grounds that it requests information that if disclosed would violate the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, 34 C.F.R. 99, as well as various state privacy laws.    Additionally, Saybrook objects to this Interrogatory on the grounds that it is overly broad.  Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Saybrook states as follows:

Saybrook is allowed to disclose pursuant to the Family Educational Rights and Privacy Act that the plaintiff maintained an address in Massachusetts from the time she enrolled in 1995 through the time she obtained her degree.  Saybrook is aware of two addresses for Ms. Cooney. The first address was P.O. Box 4, Watertown, Massachusetts.  At some point during her studies, Ms. Cooney changed her address it 831 Beacon Street #148, Newton Center, Massachusetts.  In further response, pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the plaintiff to a list of Massachusetts addressed residents who are degreed Ph.D.'s from Saybrook by major, as well as a list of current students who are residents of Massachusetts, both of which are being forwarded to the plaintiff under separate cover.

## SUPPLEMENTAL ANSWER NO. 3

Subject to the objections contained in Answer 3, Saybrook supplements its Answer as follows:

In addition to the plaintiff's address, pursuant to Fed. R. Civ. P. 33(c), Saybrook refers the plaintiff to a list of Massachusetts addressed residents who are degreed Ph.D.'s from Saybrook since 1995.  The documents, which is enclosed, is bate-stamped S02041.

3

963619v1

**INTERROGATORY NO. 4**

If any of the students identified in your answer to Interrogatory No. 3 received a Saybrook degree, specify the name and date of the degree that was awarded.

**ANSWER NO. 4**

Saybrook objects to this Interrogatory as it request information that if disclosed would violate the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, 34 C.F.R. 99, as well as various privacy laws.  Additionally, Saybrook objects to this Interrogatory on the grounds that it is overly broad.  Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Saybrook states as follows:

Saybrook is allowed to disclose pursuant to the Family Educational Rights and Privacy Act that the plaintiff obtained a Ph.D. in Psychology in October 2002.  In further response, pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the plaintiff to a list of Massachusetts addressed residents who are degreed Ph.D.'s from Saybrook by major, which is being forwarded to the plaintiff under separate cover.

**SUPPLEMENTAL ANSWER NO. 4**

Subject to the objections contained in Answer 4, Saybrook supplements its Answer as follows:

Pursuant to Fed. R. Civ. P. 33(c), Saybrook refers the plaintiff to bate-stamped documents S00004 through S00009.  In addition to the plaintiff, the following Saybrook graduated received degrees since 1995:

(1) Richard Francis – Ph.D. in Psychology, 1997;

(2) Melanie Joy - Ph.D. in Psychology, 2003;

(3) Dorothy Appleton-Carino - Ph.D. in Psychology, 2002;

(4) Barbara Owen - Ph.D. in Psychology, 1995;

(5) Susan Schwartz - Ph.D. in Psychology, 2003;

(6) Mary Lewis - Ph.D. in Psychology, 2005;

(7) Cheryl Cook - Ph.D. in Psychology, 1995;

(8) Carol Maxym - Ph.D. in Psychology, 1997

(9) Richard Larkin - Ph.D. in Psychology, 2001

(10) Claire Douglas - Ph.D. in Psychology, 1984

(11) Kirk Schneider - Ph.D. in Psychology, 1984

## INTERROGATORY NO. 5

Identify every state in the United States in which Saybrook students or graduates have encountered problems in qualifying for licensure as a psychologist, on account of their Saybrook degree, at any time between 1990 and the present.

## ANSWER NO. 5

Saybrook objects to this Interrogatory as it request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Saybrook states the following:

Saybrook is unable to determine which graduates, if any, encountered problems qualifying for licensure as a psychologist solely on account of their Saybrook degree. Specifically, the statutory and regulatory licensing standards are diverse among the states and the actual judgment of each state licensing board varies from case to case, and year to year.

In further answering, based on the discovery in this case, it appears that subsequent to September 1, 2000, an application by the plaintiff for a clinical psychology license from the Commonwealth of Massachusetts may not, absent special request for an exception, which she failed without good cause to present, have been accepted for further evaluation by the Board of

5

963619v1

Psychology, because she did not obtain her degree from a doctoral program designated by the Association of State and Provincial Psychology Boards. Prior to September 1, 2000, it would appear from some interpretations of Massachusetts law, that had the plaintiff by that date submitted a completed application to the Commonwealth of Massachusetts for a clinical psychology license, she would have been evaluated by the Board of Psychology for licensure notwithstanding that Saybrook was not a doctoral program so designed. Saybrook is unable to determine, however, whether there would be other reasons, such as failure to fulfill all of the requirements set out by the Massachusetts Board of Registration of Psychologists, including the written examination, which could also prevent the plaintiff from qualifying for licensure as a psychologist. Plaintiff did not, at any time during her matriculation at Saybrook, or prior to her graduation from Saybrook in late 2002 with her Ph.D. degree, inform Saybrook of changes to Massachusetts laws or regulatory interpretations that occurred after her enrollment, despite her obligation on her own to learn of such matters in her home state. Plaintiff failed to fulfill her obligation during her matriculation at Saybrook from 1996 to 2002, to acquire information regarding her home state's revisions to existing laws governing licensure, despite being advised by Saybrook that she should do so and that Saybrook had neither undertaken the obligation to do so nor had undertaken the obligation to inform her of such laws or revisions to laws.

## SUPPLEMENTAL ANSWER NO. 5

Subject to the objections contained in Answer 5, Saybrook supplements its Answer as follows:

Saybrook avers that the phrase "solely on account of their Saybrook degree" is vague and ambiguous. Saybrook has given the phrase the reasonable meaning, "solely on account of the Saybrook Ph.D. degree was from a doctoral program not designated by the Association of State and Provincial Psychology Boards."

6

Saybrook further responds that Plaintiff did not inform Saybrook that she did not intend to, and/or did not, acquire information regarding her home state's laws governing licensure.

In addition to the plaintiff, Dr. Richard Francis was a Saybrook Ph.D. graduate, who obtained a clinical psychology license in the Commonwealth of Massachusetts in or about year 2001.

## INTERROGATORY NO. 6

For each state identified in your answer to Interrogatory No. 5, specify the year when Saybrook first learned that its graduates would face obstacles in qualifying for licensure as a psychologist, on account of their Saybrook degree, and describe Saybrook's understanding of the precise nature of each obstacle.

## ANSWER NO. 6

Saybrook objects to this Interrogatory on the grounds that it is overly broad and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence.  Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Saybrook states the following:

Saybrook is unable to state the precise nature of each obstacle that a Saybrook graduate may have faced seeking licensure in any particular state as Saybrook does not license graduates and does not participate on behalf of any state licensing board in the licensing process.  In further answering, it came to Saybrook's attention that its graduates may face obstacles obtaining a license in Massachusetts in 2003, by the plaintiff who informed it of such.  After being informed of the obstacle, Saybrook learned that effective September 1, 2000, Massachusetts required that its applicants obtain their degrees from a doctoral program designated by the Association of State and Provincial Psychology Boards.

7

Plaintiff did not, at any time during her matriculation at Saybrook, or prior to her graduation from Saybrook in late 2002 with her Ph.D. degree, inform Saybrook of any changes to Massachusetts laws or regulatory interpretations. Plaintiff failed to exercise her obligation during her matriculation at Saybrook from 1996 to 2002, to acquire information regarding her home state's revisions to existing laws governing licensure, despite being advised by Saybrook that she should do so and that Saybrook had neither undertaken the obligation to do so nor had undertaken the obligation to inform her of such laws or revisions to laws.

## SUPPLEMENTAL ANSWER NO. 6

Subject to the objections contained in Answer 6, Saybrook supplements its Answer as follows:

Saybrook became aware that the following individual faced additional issues and questions in the course of obtaining their license in Massachusetts on the following date:

(1) Dr. Richard Francis – late year 2000 or early 2001.

Saybrook did not thereby become aware that the difficulties of Dr. Francis were due to the fact that his Saybrook Ph.D. degree was from a doctoral program not designated by the Association of State and Provincial Psychology Boards or that graduates who applied after September 1, 2000 would not be accepted for review.

## INTERROGATORY NO. 7

Please describe Saybrook's understanding of any regulatory, statutory, or other obstacles that restrict Saybrook students or graduates from qualifying for licensure as a psychologist in Massachusetts, on account of their Saybrook degree, and specify the year when Saybrook first determined that its students or graduates would encounter these obstacles.

963619v1

## ANSWER NO. 7

Saybrook objects to this Interrogatory on the grounds that it seeks a legal conclusion. Additionally, Saybrook objects as it seeks the mental impressions, conclusions, opinions and/or legal theories of counsel, which is protected by the attorney work-product privilege. Notwithstanding nor waiving these objections and subject to the General Objections specifically incorporated herein, Saybrook states as follows:

It appears effective September 1, 2000, Massachusetts required that its applicants graduate from a doctoral program that is designated by the Association of State and Provincial Psychology Boards. Saybrook first became aware of this change after plaintiff graduated. Prior to September 1, 2000, it would appear from some interpretations of Massachusetts law, that had the plaintiff by that date submitted a completed application to the Commonwealth of Massachusetts for a clinical psychology license, she would have been evaluated by the Board of Psychology for licensure notwithstanding that Saybrook was not a doctoral program so designated.

Plaintiff did not, at any time during her matriculation at Saybrook, or prior to her graduation from Saybrook in late 2002 with her Ph.D. degree, inform Saybrook of changes in Massachusetts laws or regulatory interpretations. Plaintiff failed to exercise her obligation during her matriculation at Saybrook from 1996 to 2002, to acquire information regarding her home state's revisions to existing laws governing licensure, despite being advised by Saybrook that she should do so and that Saybrook had neither undertaken the obligation to do so nor had undertaken the obligation to inform her of such laws or revisions to laws.

## SUPPLEMENTAL ANSWER NO. 7

Subject to the objections contained in Answer 7, Saybrook supplements its Answer as follows:

963619v1

Saybrook was a member of the Consortium of Diversified Programs in Psychology ("CDPP"). The CDPP made efforts to monitor and influence existing and changing regulations, which permit graduates from alternative programs to sit for clinical psychology licensure. As a result of Saybrook's membership with the CDPP, during some point in the mid-late 1990's (specific date uncertain), a now deceased officer of Saybrook was possibly aware that Saybrook graduates with a Ph.D in a clinical concentration, who were to apply for a clinical license in some states, might require special assistance to overcome difficulties not presented in other states, in regards to obtaining a license as a clinical psychologist from a program (such as Saybrook's) that does not entirely consist of work in residence at the physical site of the granting institution.

Saybrook further answers that it was known by Saybrook that its graduates had in fact been granted clinical psychology licenses in Massachusetts; and it was not known by Saybrook that because the Saybrook Ph.D. degree was from a doctoral program not designated by the Association of State and Provincial Psychology Boards, its graduates would be prohibited from consideration by Massachusetts for licensure as a clinical psychologist.

Saybrook was unaware until after the plaintiff graduated from Saybrook, that Massachusetts had already enacted legislation and/or regulation that appeared to require for those who applied for a license after September 1, 2000 that its applicants for a clinical psychology degree graduate from a doctoral program that is designated by the Association of State and Provincial Psychology Boards.

Saybrook, through its handbooks, residential conferences, advisor processes, faculty, administrators, instructors, external consultants, dissertation advisers, in writing, orally and at conferences, made available to plaintiff, and obliged plaintiff and other students, to inquire of her

home state, to ascertain and keep abreast of current and prospective licensing qualifications information in that state. Had plaintiff discharged this obligation, an obligation to Saybrook that she had undertaken as a student of Saybrook, plaintiff could have discovered that Massachusetts had enacted legislation and/or regulation that appeared to require for those who applied for a license after September 1, 2000 that, applicants for a clinical psychology license have graduated from a doctoral program that is designated by the Association of State and Provincial Psychology Boards. Plaintiff thereby breached her obligations to Saybrook. Plaintiff also failed to inform Saybrook that she had not obtained from Massachusetts its licensing qualifications and information.

## INTERROGATORY NO. 8

Describe the dates and contents of all communications that Saybrook provided to any students or graduates regarding regulatory, statutory, or other obstacles that face students who seek licensure as a psychologist in Massachusetts.

## ANSWER NO. 8

Saybrook objects to this Interrogatory on the grounds that it is unduly burdensome and not limited in time. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Saybrook states as follows:

During the time that the plaintiff was a student, Saybrook communicated to plaintiff that it was her responsibility to contact the local licensing boards in the state in which she planned to practice in order to obtain detailed licensure requirements. It further informed her that such legal regulations are constantly changing and thus she should monitor such regulations. At no time did Saybrook inform the plaintiff that Saybrook would monitor those regulations on her behalf; nor did Saybrook give her legal advice; nor did Saybrook exempt the plaintiff from her responsibility to stay informed of Massachusetts laws and changes thereto; nor did it guarantee

plaintiff that there would never be changes to Massachusetts laws that could adversely affect her application for a Massachusetts clinical psychology license. In further answering, pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the plaintiff to its Interim Catalog 1994-1995, Student Handbook 1994-1995, Student Handbook 1996-1997, Student Handbook 1997-1998, Student Handbook 1998-1999, Student Handbook 1999-2000, Student Handbook 2000-2001, Saybrook Catalogue 1996-1998, Saybrook Catalogue 1998-1999, Saybrook Catalogue 1999-2000, Saybrook Catalogue 2000-2001, and Saybrook Catalogue 2001-2002, all of which were previously provided to the plaintiff in its Automatic Disclosures. Additionally, Saybrook refers the plaintiff to a February 2004 alert letter to students who are or may be seeking clinical psychology licensure, and related March 2004 documents, which are being forwarded to the plaintiff under separate cover.

**SUPPLEMENTAL ANSWER NO. 8**

Subject to the objections contained in Answer 8, Saybrook supplements its Answer as follows:

Saybrook, through its handbooks, residential conferences, advisor processes, faculty, administrators, instructors, external consultants, dissertation advisers, in writing, orally and at conferences, made available to plaintiff and other students, to inquire of her home state, to ascertain and keep abreast of current and prospective licensing qualifications information in that state. Had plaintiff discharged this obligation, an obligation to Saybrook that she had undertaken as a student of Saybrook, plaintiff could have discovered that Massachusetts had enacted legislation and/or regulation that appeared to require for those who applied for a license after September 1, 2000 that, applicants for a clinical psychology license have graduated from a doctoral program that is designated by the Association of State and Provincial Psychology Boards. Plaintiff thereby breached her obligations to Saybrook. Plaintiff also failed to inform

12

Saybrook that she had not obtained from Massachusetts its licensing qualifications and information.

Saybrook further states that during the time that plaintiff was matriculated at Saybrook, the other students were informed by Saybrook, through its handbooks, faculty, administrators, instructors, dissertation advisers, in writing, orally and at conferences, to inquire of the home state, to ascertain and keep abreast of current and prospective licensing qualifications information. During that period of time, several students who had Massachusetts addresses, elected to withdraw from matriculation at Saybrook.

Saybrook did not learn until after plaintiff filed her claim with Saybrook, that for applications filed after September 1, 2000 applicants for a clinical psychology license must graduate from a doctoral program that is designated by the Association of State and Provincial Psychology Boards.

## INTERROGATORY NO. 10

For the period of 1995 to the present, please describe all efforts that were undertaken by, or on behalf of Saybrook, to determine if Saybrook students or graduates would meet regulatory, statutory, or other requirements for licensure as a psychologist in each of the fifty states of the Unites States, describing:

     (a) the names and addresses of all persons who researched these issues;

     (b) the nature and extent of their research; and

     (c) the date(s) of their research.

## ANSWER NO. 10

Saybrook objects to this Interrogatory on the grounds that it is unduly burdensome. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Saybrook states as follows:

Saybrook never made a determination that its students would meet regulatory, statutory, or other requirements for licensure as a psychologist in each of the fifty states as it could not make that determination because it is not a licensing board. Saybrook did not undertake the responsibility to research various states licensing requirements, but rather made it clear to its students that such was their own responsibility. Saybrook received information about some states' licensing requirements, but it has no knowledge of any officer or managing agent of Saybrook, or any Saybrook employee, before or during the matriculation of plaintiff at Saybrook, receiving knowledge that Massachusetts changed its laws, effective September 1, 2000, so as to restrict the ability of graduates of schools not designated by the Association of State and Provincial Psychology Boards, to apply for such a license.

## SUPPLEMENTAL ANSWER NO. 10

Subject to the objections contained in Answer 10, Saybrook supplements its Answer as follows:

Saybrook was a member of the Consortium of Diversified Programs in Psychology ("CDPP"). The CDPP made efforts to monitor and influence existing and changing regulations, which permit graduates from alternative programs to sit for clinical psychology licensure. As a result of Saybrook's membership with the CDPP, during some point in the mid-late 1990's (specific date uncertain), a now deceased officer of Saybrook was possibly aware that Saybrook graduates with a Ph.D in a clinical concentration, who were to apply for a clinical license in some states, might require special assistance to overcome difficulties not presented in other states, in regards to obtaining a license as a clinical psychologist from a program (such as Saybrook's) that does not entirely consist of work in residence at the physical site of the granting institution.

14

Saybrook further answers that it was known by Saybrook that its graduates had in fact been granted clinical psychology licenses in Massachusetts; and it was not known by Saybrook that because the Saybrook Ph.D. degree was from a doctoral program not designated by the Association of State and Provincial Psychology Boards, its graduates would be prohibited from consideration by Massachusetts for licensure as a clinical psychologist.

Saybrook was unaware until after the plaintiff graduated from Saybrook, that Massachusetts had already enacted legislation and/or regulation that appeared to require for those who applied for a license after September 1, 2000 that its applicants for a clinical psychology license have graduated from a doctoral program that is designated by the Association of State and Provincial Psychology Boards.

Saybrook, through its handbooks, residential conferences, advisor processes, faculty, administrators, instructors, external consultants, dissertation advisers, in writing, orally and at conferences, made available to plaintiff, and obliged plaintiff and other students, to inquire of her home state, to ascertain and keep abreast of current and prospective licensing qualifications information in that state.  Had plaintiff discharged this obligation, an obligation to Saybrook that she had undertaken as a student of Saybrook, plaintiff could have discovered that Massachusetts had enacted legislation and/or regulation that appeared to require for those who applied for a license after September 1, 2000 that, applicants for a clinical psychology license have graduated from a doctoral program that is designated by the Association of State and Provincial Psychology Boards.  Plaintiff thereby breached her obligations to Saybrook.  Plaintiff also failed to inform Saybrook that she had not obtained from Massachusetts its licensing qualifications and information.

Saybrook graduates had in fact been granted clinical psychology licenses in Massachusetts notwithstanding such issues.

Faculty, advisors and staff were informed to, and did inform students, at residential conferences, and in meetings with students, that they were responsible to contact their intended state of practice licensing board and continually check on the regulations.  In addition, students were free to ask Saybrook representatives whatever questions they wanted.  From time to time students would raise the question of licensure.  Saybrook representatives, as discussed among them, uniformly responded, informing the student that each state differed in their requirements, and such requirements were constantly changing.  As such, it was reiterated to the students that they were responsible to contact their intended state of practice licensing board and continually check the regulations.

## INTERROGATORY NO. 11

For every academic year between 1995-96 and the present, please identify all individuals at Saybrook who provided assistance to Saybrook students or graduates to help them understand professional licensure requirements for psychologists in any jurisdictions, stating separately for each academic year:

(a) the names and addresses of all Saybrook employee who provided assistance; and

(b) a description of the assistance that was provided.

## ANSWER NO. 11

Saybrook objects to this Interrogatory on the grounds that it is unduly burdensome. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Saybrook states as follows:

Saybrook communicated generally to applicable students that it was the student's responsibility to contact the local licensing boards in the state in which they planned to practice

16

in order to obtain detailed licensure requirements and that Saybrook did not undertake that responsibility. It further informed the students that regulations are constantly changing and thus they must monitor the regulations. This was communicated in its handbooks, catalogues, as well as during its residential conferences. If a student had a particular question regarding a state's licensing requirements, Saybrook would include information that the student should contact that state's licensing board to discuss the requirement. To the extent that Saybrook was able to assist in the basic understanding of a requirement, Saybrook undertook no obligation but would refer the student to external sources for knowledge of the requirement, but without guarantees of its accuracy or finality, since the student was advised to be responsible to obtain reliable information from their respective state authority and not second-hand from others. At no time did Saybrook make any representations of fact to plaintiff, of which it knew to be untrue, as to the state of the law in Massachusetts regarding licensure. Saybrook did not have superior knowledge of such information as compared with the plaintiff, and plaintiff in fact had at least equal or greater access to such information and was fully aware of how to access that information. At no time did Saybrook inform plaintiff that during her ongoing matriculation at Saybrook it would or had undertook an obligation to inquire on her behalf, or otherwise, as to Massachusetts laws and changes thereto. It appears that at the time of plaintiff's enrollment with Saybrook, plaintiff had indeed inquired of Massachusetts as to its law and gained information that at that time attending Saybrook would not prohibit her from gaining licensure under Massachusetts law; however, plaintiff failed thereafter to inquire of Massachusetts' authorities, and failed to read periodical information disseminated or available to her in Massachusetts. In addition to Saybrook's faculty, during plaintiff's matriculation the following individuals may have knowledge of these matters

1. Dr. Maureen O'Hara, president emeritus, Saybrook Graduate School and Research Center, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

2. John W. Reho, Vice President of Operations and CFO, Saybrook Graduate School and Research Center, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

3. Dr. William Bruff, Associate Vice President of Academic Affairs, Saybrook Graduate School and Research Center, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

4. Donald Cooper, Director of Alumni Affairs, Saybrook Graduate School and Research Center, 747 Front Street, 3rd Floor, San Francisco, CA 94111.

5. Robert Schley, Director of Conferences, Saybrook Graduate School and Research Center, 747 Front Street, 3rd Floor, San Francisco, CA 94111.

6. Bruce Gordon, Director of Financial Aid, Saybrook Graduate School and Research Center, 747 Front Street, 3rd Floor, San Francisco, CA 94111.

## SUPPLEMENTAL ANSWER NO. 11

Subject to the objections contained in Answer 11, Saybrook supplements its Answer as follows:

Saybrook, through its handbooks, residential conferences, advisor processes, faculty, administrators, instructors, external consultants, dissertation advisers, in writing, orally and at conferences, made available to plaintiff and obliged plaintiff and other students, to inquire of her home state, to ascertain and keep abreast of current and prospective licensing qualifications information in that state. Had plaintiff discharged this obligation, an obligation to Saybrook that she had undertaken as a student of Saybrook, plaintiff could have discovered that Massachusetts had enacted legislation and/or regulation that appeared to require for those who applied for a license after September 1, 2000 that, applicants for a clinical psychology license have graduated from a doctoral program that is designated by the Association of State and Provincial Psychology Boards. Plaintiff thereby breached her obligations to Saybrook. Plaintiff also failed to inform

Saybrook that she had not obtained from Massachusetts its licensing qualifications and information.

Saybrook graduates had in fact been granted clinical psychology licenses in Massachusetts notwithstanding such issues.

Faculty, advisors and staff were informed to, and did inform students at residential conferences and in meetings with their students, that they were responsible to contact their intended state of practice licensing board and continually check on the regulations. In addition, students were free to ask Saybrook representatives whatever questions they wanted. From time to time students would raise the question of licensure. Saybrook representatives, as discussed among them, uniformly responded, informing the student that each state differed in their requirements, and such requirements were constantly changing. As such, it was reiterated to the students that they were responsible to contact their intended state of practice licensing board and continually check on the regulations.

Saybrook states that in addition to those previously disclosed , the following individuals may have knowledge of these matters:

1.    Professor Ruth Richards, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

2.    Professor Zonya Johnson;, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

3.    Professor John Wagoner, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

4.    President Arthur Bohart, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

5.    Professor Alan Vaughn, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

6.    Registrar JT Brown, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

7.    Professor Mark Pilasuk, 747 Front Street, 3rd Floor, San Francisco, CA 94111;

8.    Mindy Myers c/o Saybrook, 747 Front Street, 3rd Floor, San Francisco, CA 94111; and

9.    Marcia Hammond, 168 Virginia Avenue, Ashville, N.C.

## INTERROGATORY NO. 13

Please describe all communications between Saybrook students other than Susan Cooney and Saybrook administrators or staff, at any time between 1990 and the present, regarding the problems or issues that Saybrook graduates encountered in attempting to qualify for licensure as a Massachusetts psychologist, stating for each such communication:

> (a) the date of the communication;

> (b) the names and addresses of all persons who participated in the communication;

> (c) a summary of what each participant said in the communication; and

> (d) a description of any documents that memorialize the communication.

## ANSWER NO. 13

Saybrook objects to this Interrogatory as it is ambiguous and requests information that if disclosed would violate the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, 34 C.F.R. 99, as well as various state privacy laws. Saybrook also objects to this Interrogatory on the grounds that it is unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Saybrook states as follows:

Saybrook had communications with one graduate regarding problems encountered in obtaining a license from the Massachusetts Board of Registration of Psychologists in approximately late 2000 or early 2001. Saybrook is aware that the Massachusetts Board of Registration of Psychologists did grant the graduate a license to practice in Massachusetts.

Since becoming aware of the plaintiff's problems obtaining a license, Saybrook has had communications with students who have informed Saybrook that they wish to become licensed psychologists in Massachusetts and informing the students that they may not be able to become

licensed in Massachusetts as a psychologist based on recent changes in the law and that they should secure accurate information by direct contact with the Massachusetts Board of Registration of Psychologists. In further answering, pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the plaintiff to its February 2004 alert letter to students and March 2004 documents, all of which are being forwarded to the plaintiff under separate cover.

## SUPPLEMENTAL ANSWER NO. 13

Subject to the objections contained in Answer 13, Saybrook supplements its Answer as follows:

Saybrook, through Associate Vice President William Bruff, had communications with Dr. Richard Francis regarding problems encountered in obtaining a license from the Massachusetts Board of Registration of Psychologists in approximately late 2000 or early 2001. Saybrook is aware that the Massachusetts Board of Registration of Psychologists did grant Dr. Francis a license to practice in Massachusetts. Pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the plaintiff to bate-stamped documents S02036 to S02037. Saybrook did not thereby become aware that Massachusetts had already enacted legislation and/or regulation to restrict eligibility to applicants for a clinical psychology license who have graduated from a doctoral program that is designated by the Association of State and Provincial Psychology Boards.

Since becoming aware of the plaintiff's problems obtaining a license, Saybrook has had communications with students who have informed Saybrook that they wish to become licensed psychologists in Massachusetts, and informing the students that they may not be able to become licensed in Massachusetts as a psychologist based on changes in the law and that they should secure accurate information by direct contact with the Massachusetts Board of Registration of Psychologists. In further answering, pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the

963619v1

plaintiff to its February 2004 alert letter to students and March 2004 documents, all of which were previously produced to plaintiff as bate-stamped documents S01926 et seq.

## INTERROGATORY NO. 14

Please describe all communications between Saybrook and the Board of Registration of Psychologists of Massachusetts, at any time from 1990 to the present, concerning efforts by any Saybrook students or graduates to obtain licensure in Massachusetts, stating for each such communication:

> (a) the date of the communication;
>
> (b) the names and addresses of all persons who participated in the communication;
>
> (c) a summary of what each participant said in the communication;
>
> (d) the name and address of each student who was seeking licensure; and
>
> (e) a description of any documents that memorialize the communication.

## ANSWER NO. 14

Saybrook objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Saybrook states as follows:

Saybrook is unaware of any communications with the Massachusetts Board of Registration of Psychologists. Saybrook offered to the plaintiff to speak with the Massachusetts Board of Registration of Psychologists to assist her in obtaining her license, but the plaintiff declined.

## SUPPLEMENTAL ANSWER NO. 14

Subject to the objections contained in Answer 14, Saybrook supplements its Answer as follows:

Saybrook had communications with Dr. Richard Francis regarding problems encountered in obtaining a license from the Massachusetts Board of Registration of Psychologists in approximately late 2000 or early 2001. Saybrook is aware that the Massachusetts Board of Registration of Psychologists did grant Dr. Francis a license to practice in Massachusetts.

Saybrook prepared a letter, addressed to the Board of Registration of Psychologists, prepared by or on behalf of Saybrook Associate Vice President William Bruff. Saybrook currently has not located the letter in form transmitted to the Board and will amend this response upon acquiring any further information. Pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the plaintiff to bate-stamped documents S02036 to S02037.

## INTERROGATORY NO. 16

Please describe all communications between Saybrook and elected officials or government agencies (other than psychology licensing boards) regarding statutory, regulatory, or other restrictions facing Saybrook graduates in qualifying for licensure as psychologists in Massachusetts, stating for each such communication:

    (a) the date of the communication;

    (b) a description of all persons who participated in the communication;

    (c) a summary of what each participant said in the communication;

    (d) the name and address of each student who was seeking licensure;

    (e) a description of any documents that memorialize the communication.

NOTE: This request includes but is not limited to Attorneys General, consumer protection agencies, higher education boards or agencies, state or federal legislators, and any other elected officials.

**ANSWER NO. 16**

Saybrook objects to this Interrogatory on the grounds that it is not relevant, overly broad, and unduly burdensome.  Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Saybrook states as follows:

Saybrook is unaware of such communications.

**SUPPLEMENTAL ANSWER NO. 16**

Subject to the objections contained in Answer 16, Saybrook supplements its Answer as follows:

Rudy Malone, Saybrook's past-president is deceased.  He was a member of the CDPP and was a Co-Chair.  Saybrook is now aware that Dr Malone's co-chair at the CDPP, transmitted in 1996 a letter to the Governor of Massachusetts.  Pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the plaintiff to bate stamped document S01989.

**INTERROGATORY NO. 18**

Please describe all communications between Saybrook and academic accrediting agencies regarding difficulties encountered by Saybrook graduates, on account of their Saybrook degree, in qualifying for licensure as psychologists, at any time between 1990 and the present.

**ANSWER NO. 18**

Saybrook objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence.  Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Saybrook states the following:

Saybrook is unable to determine which graduates, if any, encountered problems qualifying for licensure as a psychologist solely on account of their Saybrook degree.

963619v1

Specifically, the statutory and regulatory licensing standards are diverse among the states and the actual judgment of each state licensing board varies from case to case, and year to year. Saybrook has information, after the filing of the Cooney claim that does not relate in any way to Massachusetts.

## SUPPLEMENTAL ANSWER NO. 18

Subject to the objections contained in Answer 18, Saybrook supplements its Answer as follows:

Saybrook had communications with Dr. Richard Francis regarding problems encountered in obtaining a license from the Massachusetts Board of Registration of Psychologists in approximately late 2000 or early 2001. Saybrook is aware that the Massachusetts Board of Registration of Psychologists did grant Dr. Francis a license to practice in Massachusetts.

Saybrook prepared a draft letter, addressed to the Board of Registration of Psychologists, prepared by or on behalf of Saybrook Associate Vice President William Bruff. Saybrook currently has not located the letter in the form transmitted to the Board and will amend this response upon acquiring any further information. Pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the plaintiff to bate-stamped documents S02036 to S02037.

## INTERROGATORY NO. 22

Please describe all research, tracking, and/or reporting that is done by, or on behalf of Saybrook, regarding the occupation, employment placement, or post-graduate studies of Saybrook graduates that received doctoral degrees in psychology or any allied field.

## ANSWER NO. 22

Saybrook objects to this Interrogatory on the grounds that it is unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these

963619v1

objections, and subject to the General Objections specifically incorporated herein, Saybrook states the following:

To the extent it is able to obtain the information, which is voluntarily given by its graduates, Saybrook has some, but not complete or systematic information regarding its graduates' occupations, employment placements, and post-graduate studies. This information normally comes through its Alumni Association.

## SUPPLEMENTAL ANSWER NO. 22

Subject to the objections contained in Answer 22, Saybrook supplements its Answer as follows:

Saybrook periodically surveys alums that are in its records. In the year 2005, it distributed bate-stamped document S00010, previously provided to the plaintiff, to alumni and this document reveals the kind of information sought. In the year 2003, it distributed bate-stamped document S00012, also previously provided to the plaintiff, to alumni and thus this document reveals the kind of information sought. It has not otherwise conducted survey of alumni's information in a systematic or complete fashion.

## INTERROGATORY NO. 24

Please identify all academic terms during which Susan Cooney attended Saybrook or received graduate instruction at Saybrook.

## ANSWER NO. 24

Saybrook objects to this request on the grounds that it is unduly burdensome as the plaintiff is already in possession of such information. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, pursuant to Fed. R. Civ. P. 33(d), Saybrook refers the Plaintiff to the Official Academic Transcript

previously given to the plaintiff in Saybrook's Automatic Disclosures as well as Susan Cooney's complete registrar's file, which is being forwarded to the plaintiff under separate cover.

**SUPPLEMENTAL ANSWER NO. 24**

Subject to the objections contained in Answer 24, Saybrook supplements its Answer as follows:

Saybrook further Answers that upon current information and belief, that at the time the plaintiff applied for and was admitted to student status by Saybrook, Massachusetts did not require applicants for a clinical psychology license to have graduated from a doctoral program that is designated by the Association of Sate and Provincial Psychology Boards and that applicants for a clinical psychology license who graduated from Saybrook were in fact granted such a license by Massachusetts.

It further Answers that upon current information and belief, that for approximately five years following when the plaintiff applied for and was admitted to student status by Saybrook, Massachusetts did not require applicants for a clinical psychology license to have graduated from a doctoral program that was designated by the Association of Sate and Provincial Psychology Boards; and that had plaintiff proceeded with her school work at Saybrook in a reasonable, timely fashion, without plaintiff's self-initiated delay and academic problems at Saybrook, plaintiff could have timely obtained consideration for a clinical license in Massachusetts.

963619v1

SIGNED UNDER THE PENALTIES OF PERJURY THIS _6_ DAY OF _January_ 2006.


   *The undersigned deposes and says that he signs the answers to Plaintiff's First Set of Interrogatories for and on behalf of himself and is authorized to do so; that the matters stated in the foregoing responses are not all within his personal knowledge; that such facts as are stated in said answers which are not within the personal knowledge of the deponent have been assembled by authorized agents, employees and counsel of said defendant and the deponent is informed and believes that the facts stated in said responses are true and so states under the pains and penalties of perjury.*

John W. Reho
Vice President of Operations & CFO


As to Objections:

Grace V. Bacon Garcia, BBO# 640970
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
617-439-7500

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on _1/6/06_

28