EXHIBIT
G

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO: 04 11572 JLT

|  |  |
|---|---|
| SUSAN COONEY,<br>            Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| HUMANISTIC PSYCHOLOGY<br>INSTITUTE, d/b/a SAYBROOK<br>INSTITUTE and MAUREEN O'HARA,<br>Individually,<br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT, MAUREEN O'HARA'S ANSWERS TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

The defendant, Maureen O'Hara ("Dr. O'Hara"), pursuant to Fed. R. Civ. P. 33, answers the Plaintiff's First Set of Interrogatories without waiving the following:

(i)     the right to object on any grounds to the use of any of the following answers in any other subsequent proceedings or at the trial of this or any other action;

(ii)    the right to object on any grounds to any demand for further answers to these Interrogatories or any other discovery procedure relating to the subject matter of these Interrogatories; and

(iii)   the right at any time to revise, correct, add to or clarify any of the following answers.

## GENERAL OBJECTIONS

1.     Dr. O'Hara objects to the Interrogatories to the extent they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure.

2.     Dr. O'Hara objects to the Interrogatories to the extent that they are overly broad, duplicative, vague and ambiguous, or unduly burdensome.

3.    Dr. O'Hara objects to the Interrogatories to the extent that they call for information protected from discovery because it is subject to the attorney-client privilege or constitutes materials prepared by or for Dr. O'Hara or her representatives in anticipation of litigation or for trial and/or which would disclose the mental impressions, conclusions, opinions or legal theories of counsel.

4.    Dr. O'Hara objects to the Interrogatories to the extent that they call for information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to discovery of admissible evidence.

5.    Dr. O'Hara objects to the Interrogatories to the extent that they seek information not within her possession, custody or control.

6.    Dr. O'Hara objects to the Interrogatories as inherently burdensome and oppressive to the extent that they seek information already in the possession of the plaintiff.

7.    Dr. O'Hara's failure to object to the Interrogatories on a particular ground shall not be construed as a waiver of her right to object on that ground or any additional grounds at a later time.

8.    Dr. O'Hara incorporates by reference, as if set forth at length, the General Objections to the Interrogatories into each and every Answer below.

## INTERROGATORIES

## INTERROGATORY NO. 1

Please identify your name and current residential address(es).

## ANSWER NO. 1

Dr. Maureen O'Hara, Greenbrae, California.

2

963623v1

**INTERROGATORY NO. 2**

Please identify the name and address of any individuals, <u>other than your attorney,</u> who provided information or assistance to you in answering these interrogatories and specify the interrogatory answers to which each individual contributed.

**ANSWER NO. 2**

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states that following:

I obtained the information to answer these interrogatories from my own knowledge, and from information gathered by and through the various employees, representatives and agents of Saybrook with the assistance of my attorneys. The information gathered was not used to respond to any one Interrogatory, but was used to respond to all such Interrogatories.

**INTERROGATORY NO. 3**

Please describe all positions and offices that you have held at any time at Saybrook, providing a detailed description of your duties and dates of service for each position or office.

**ANSWER NO. 3**

From 1999 through July 31, 2005, I was the President of Saybrook. Prior to becoming President, I was the Dean of Saybrook from 1997 until 1999. I am now president emeritus and faculty member on sabbatical.

**INTERROGATORY NO. 4**

Please describe your participation in any Saybrook committees, providing a detailed description of each committee, the goals and objectives of each committee, any leadership positions you occupied within the committee, and your dates of service for each committee.

963623v1

**ANSWER NO. 4**

Dr. O'Hara objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence.  Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. O'Hara states the following:

Prior to July 1, 2005, as President, I participated in the following committees or groups during my employment at Saybrook.

| Committee/Unit Meeting | Description | Role |
|---|---|---|
| President's Senior Mgt Team | Periodic meetings of department heads, function managers or other managers employed in school examining or discussion school operations. | Role varied from time to time. Led or chaired meetings or participated, when meeting led by others. |
| Executive Faculty Meeting | Meeting of executive faculty periodically. | Participated in meetings when serving as VPAA and then occasionally attended to interact with and provide information to faculty from time to time. |
| Academic Affairs Committee of the Board of Trustees | Periodic meetings of trustees concerned with academic affairs of the school including awarding of degrees to graduates. | Served as staff resource to committee when serving as VPAA and occasionally invited to attend other meetings when President. |
| Development Committee of the Board of Trustees | Periodic meetings of trustees concerned with promoting Saybrook Graduate School and obtaining donations on behalf of the school. | Served as staff resource and later as committee member to this committee after election to board. |
| Finance Committee of the Board of Trustees | Periodic meetings of trustees concerned with financial operation of Saybrook Graduate School. | Served as staff resource and member of committee after election to board. |
| President & Vice President's Meeting | Periodic informal meeting of President and vice presidents | Engaged in dialogue with direct reports concerning |

963623v1

| | of school. | general and strategic operation of the school. |
|---|---|---|
| Academic Leadership Team | Periodic informal meetings of Deans, Directors and other designated personnel between Sept 2003 to Aug 2004. | Served as chair for individuals reporting to President and other key managers to address strategic matters. |
| Institutional Advancement Leadership Team | Periodic meetings of Dean of Admissions, Director of Development, vice presidents and president addressing questions of marketing advertising, image, etc. | Served as chair for this meeting of direct reports and other key personnel. |
| Strategic Planning Teams | Occasional meetings of staff, faculty and trustees concerned with setting and developing strategy of school | Key participant. Usually engaged others to serve as facilitators for planning activity. |
| Board of Trustees | Periodic meetings of trustees of school. | Served as staff resource until elected a member of board and as member of board thereafter. |
| Rollo May Committee of the Board of Trustees | Periodic meeting of committee charged with promoting research at Saybrook. | Served as staff resource to this committee and later served as Director of Research for Rollo May Center. |
| Governance Committee of Board of Trustees | Periodic meetings of committee charged with governance and trustee recruiting for Saybrook Graduate School. | Served as staff resources to this committee and later as member after being elected to position of trustee. |
| Administration and Faculty Leadership Committee | Periodic meetings of senior administration and academic leadership to discuss the interface between administrative and academic issues. | Chaired meetings. |
| Accreditation Committee | Prepared documents for accreditations and manages self study and reports to accrediting agencies | Chaired meetings and assisted in the preparation of the necessary documents. |

In an academic institution committees are created and dissolved from time to time and actual

dates of these committees may not be recorded.  I do not have access to actual dates of these

committees. I do recall, however that I served ex-officio for the Rollo May Committee of the Board of Trustees from AY 1997-98 to 1999, and I also was a member of the Accreditation Committee, which was in existence from 1997-2000.

**INTERROGATORY NO. 5**

During the period of 1990 to the present, please describe your participation in any committees or sections sponsored by the American Psychological Association or any other organization related to psychology or humanistic psychology, providing a detailed description of each committee, the goals and objectives of each committee, any leadership positions you occupied within the committee, and your dates of service for each committee.

**ANSWER NO. 5**

Dr. O'Hara objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. O'Hara states the following:

I am a member of the APA with the status of "Fellow." In addition to general membership of the APA, I am also a member of Division 32—the division of Humanistic Psychology. I have served as an elected member of the Executive Committee of that Division twice and I am currently in the final year of a three-year term. This function involves directing the activities of the Division. Division 32 is an academic division and has no authority or activities with regard to licensure. I currently serve as Chair of the Fellows committee, which is a committee that evaluates candidates for election to Fellow status.

Prior to my employment with Saybrook, I attended Consortium of Diversified Programs in Psychology ("CDPP") meetings as Division 32 representative. The CDPP, which was active

in state-by-state efforts to monitor and influence existing and changing regulations, which permit graduates from alternative programs to sit for licensure, was also greatly concerned with identifying scientific and philosophical basis for an alternative - namely Humanistic - approach to psychology. Division 32's interest in the CDPP was intellectual and philosophical, not with regards to applied psychology.

In further answering, pursuant to Fed. R. Civ. P. 33(d), I have already produced a curriculum vitae which describes offices, honors and such positions.

## INTERROGATORY NO. 6

Please describe any and all reasons and circumstances underlying your resignation as president of Saybrook, describing any policy disagreements between you and Saybrook's Board of Trustees.

## ANSWER NO. 6

Dr. O'Hara objects to this Interrogatory as it request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. It is also a matter of constitutional right of privacy in California as to my personnel privacy. It is also subject to a confidential employment agreement setting forth my continuing relationship with Saybrook. It is my belief that my change of position from President to President Emeritus was not related to plaintiff or the facts and circumstances alleged in her lawsuit.

## INTERROGATORY NO. 7

Please describe the location, purpose, and objectives of your one-year sabbatical from Saybrook.

## ANSWER NO. 7

Dr. O'Hara objects to this Interrogatory as it request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of

7

963623v1

admissible evidence. It is also a matter of constitutional right of privacy in California as to my personnel privacy. It is also subject to a confidential employment agreement setting forth my continuing relationship with Saybrook. It is my belief that my change of position from President to President Emeritus was not related to plaintiff or the facts and circumstances alleged in her lawsuit.

## INTERROGATORY NO. 8

Please describe your understanding of any regulatory, statutory, or other obstacles that restrict Saybrook students or graduates from qualifying for licensure as a psychologist in Massachusetts and specify the year when Defendant first determined that Saybrook students or graduates would encounter these obstacles.

## ANSWER NO. 8

Dr. O'Hara objects to this Interrogatory on the grounds that it seeks a legal conclusion. Additionally, Dr. O'Hara objects as it seeks the mental impressions, conclusions, opinions and/or legal theories of counsel, which is protected by the attorney work-product privilege. Notwithstanding nor waiving these objections and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

Saybrook was a member of the Consortium of Diversified Programs in Psychology ("CDPP"). The CDPP was active in state-by-state efforts to monitor and influence existing and changing regulations, which permit graduates from alternative programs to sit for licensure. As a result of Saybrook's membership with the CDPP, and my direct participation in CDPP, I was aware in 1997 that Saybrook graduates may face challenges in obtaining a license as a psychologist in Massachusetts. It is my understanding that in early 1996, the CDPP became aware that Massachusetts was considering changing its residency requirements to require one

year on site. Despite the challenge, it is my understanding that Saybrook graduates have in fact been granted licenses in Massachusetts.

I was unaware, however, until after the plaintiff graduated from Saybrook, that Massachusetts required that its applicants graduate from a doctoral program that is designated by the Association of State and Provincial Psychology Boards. It appears that change became into effective September 1, 2000. Prior to September 1, 2000, as I now understand it, it would appear from some interpretations of Massachusetts law, that had the plaintiff by that date submitted a completed application to the Commonwealth of Massachusetts for a clinical psychology license, she would have been evaluated by the Board of Psychology for licensure notwithstanding that Saybrook was not a doctoral program so designated.

I am informed that plaintiff did not, at any time during her matriculation at Saybrook, or prior to her graduation from Saybrook in late 2002 with her Ph.D. degree, inform me of Massachusetts laws or regulatory interpretations; and that plaintiff failed to exercise her obligation during her matriculation at Saybrook from 1996 to 2002, to acquire information regarding her home state's revisions to existing laws governing licensure, despite being advised by Saybrook that she should do so and that Saybrook had neither undertaken the obligation to do so nor had undertaken the obligation to inform her of such laws or revisions to laws.

## INTERROGATORY NO. 9

Describe your knowledge of the dates and contents of all communications that Saybrook or Defendant provided to any students or graduates regarding regulatory, statutory, or other obstacles that face students who seek licensure as a psychologist in Massachusetts.

**ANSWER NO. 9**

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome and not limited in time. Notwithstanding nor waiving the objection, and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

Saybrook was a member of the Consortium of Diversified Programs in Psychology ("CDPP"). The CDPP was active in state-by-state efforts to monitor and influence existing and changing regulations, which permit graduates from alternative programs to sit for licensure. As a result of Saybrook's membership with the CDPP, Saybrook encouraged its students to become a member of the National Psychology Advisory Association ("NPAA"), which was a related organization of the CDPP, comprised of students and graduates of alternative programs. Saybrook encouraged its students to become active in the NPAA through communications in its Catalogues as well as during its Residential Conferences.

Additionally, I am informed that during the time that the plaintiff was a student, Saybrook communicated to the plaintiff, as well as all students, that it was her responsibility to contact the local licensing boards in the state in which she planned to practice in order to obtain detailed licensure requirements. It further informed her that such legal regulations are constantly changing and thus she should monitor such regulations. At no time did Saybrook, to my knowledge, or I, inform the plaintiff that Saybrook or I would monitor those regulations on her behalf; nor did Saybrook or I give her legal advice; nor did Saybrook or I exempt plaintiff from her responsibility to stay informed of Massachusetts laws and changes thereto; nor did Saybrook or I guarantee the plaintiff that there would never be changes to Massachusetts laws that could adversely affect her application for a Massachusetts clinical psychology license.

Specifically, at each residential conference, while both Executive Vice President and President, I participated in a town hall meeting with all students. At these meetings and during

963623v1

the residential conference in general, students were free to ask me whatever questions they wanted. From time to time students would raise the question of licensure. Although I have no recollection of the names of the specific students I may have spoken with, my answer was standard and truthful vis, "All states differ in their requirements and these requirements are constantly changing—the only way you can know what your situation is, is to remain in close contact with the licensing board." I regularly gave my opinion that licensing requirements were becoming more restrictive and that Saybrook recognized that our commitment to an alternative delivery model—individualized mentorship—meant that Saybrook students might encounter obstacles. It should be understood that I am not a clinical psychologist myself, I am an academic psychologist, so most specific questions about licensing requirements were beyond the scope of my expertise. Because of the unique theoretical and pedagogical orientation of Saybrook, published in all our materials since our founding, Saybrook students who expressed an interest in becoming licensed as a Psychologist, were routinely told by me and by everyone else at Saybrook that they should stay up to date with what was happening in their respective states. As I recall, we specifically counseled all students who expressed interest in becoming licensed to put a letter on file with their state licensing board requesting to be informed should any change in licensing laws be proposed or anticipated.

In further answering, pursuant to Fed. R. Civ. P. 33(d), Dr. O'Hara refers the plaintiff to its Interim Catalog 1994-1995, Student Handbook 1994-1995, Student Handbook 1996-1997, Student Handbook 1997-1998, Student Handbook 1998-1999, Student Handbook 1999-2000, Student Handbook 2000-2001, Saybrook Catalogue 1996-1998, Saybrook Catalogue 1998-1999, Saybrook Catalogue 1999-2000, Saybrook Catalogue 2000-2001, and Saybrook Catalogue 2001-2002, all of which were previously provided to the plaintiff in its Automatic Disclosures.

11

963623v1

Additionally, Dr. O'Hara refers the plaintiff to a February 2004 alert letter to students who are or may be seeking clinical psychology licensure, and related March 2004 documents, which were previously forwarded by Saybrook to the plaintiff.

**INTERROGATORY NO. 10**

Describe your knowledge of the dates and contents of all communications that Saybrook or Defendant provided to any students or graduates regarding regulatory, statutory, or other obstacles that face students who seek licensure as a psychologist in states other than Massachusetts.

**ANSWER NO. 10**

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

I am informed that during the time that the plaintiff was a student, Saybrook communicated to plaintiff (and other students as well, but communications to other students or non-communications to other students is inapposite to the communications to plaintiff) that it was the plaintiff's responsibility to contact the local licensing boards in the state in which she planned to practice in order to obtain detailed licensure requirements. I am informed that Saybrook further informed her that regulations are constantly changing and thus she was responsible to monitor the regulations.

Specifically, at each residential conference, while both Executive Vice President and President, I participated in a town hall meeting with all students. At these meetings and during the residential conference in general, students were free to ask me whatever questions they

12

wanted. From time to time students would raise the question of licensure. Although I have no recollection of the names of the specific students I may have spoken with, my answer was standard and truthful vis, "All states differ in their requirements and these requirements are constantly changing—the only way you can know what your situation is, is to remain in close contact with the licensing board." I regularly gave my opinion that licensing requirements were becoming more restrictive and that Saybrook recognized that our commitment to an alternative delivery model—individualized mentorship—meant that Saybrook students might encounter obstacles. It should be understood that I am not a clinical psychologist myself, I am an academic psychologist, so most specific questions about licensing requirements were beyond the scope of my expertise. Because of the unique theoretical and pedagogical orientation of Saybrook, published in all our materials since our founding, Saybrook students who expressed an interest in becoming licensed as a Psychologist, were routinely told by me and by everyone else at Saybrook that they should stay up to date with what was happening in their respective states. As I recall, we specifically counseled all students who expressed interest in becoming licensed to put a letter on file with their state licensing board requesting to be informed should any change in licensing laws be proposed or anticipated.

In further answering, pursuant to Fed. R. Civ. P. 33(d), Dr. O'Hara refers the plaintiff to its Interim Catalog 1994-1995, Student Handbook 1994-1995, Student Handbook 1996-1997, Student Handbook 1997-1998, Student Handbook 1998-1999, Student Handbook 1999-2000, Student Handbook 2000-2001, Saybrook Catalogue 1996-1998, Saybrook Catalogue 1998-1999, Saybrook Catalogue 1999-2000, Saybrook Catalogue 2000-2001, and Saybrook Catalogue 2001-2002, all of which were previously provided to the plaintiff in its Automatic Disclosures. Dr. O'Hara also refers the plaintiff to a February 2004 alert letter to students who are or may be

13

seeking clinical psychology licensure, and related March 2004 documents, which were previously forwarded by Saybrook to the plaintiff.

## INTERROGATORY NO. 11

For the period of 1995 to the present, please describe your knowledge of all efforts that were undertaken by you, or by or on behalf of Saybrook, to determine if Saybrook students or graduates would meet regulatory, statutory, or other requirements for licensure as a psychologist in any of the fifty states of the Unites States, describing:

     (a) the names and addresses of all persons who researched these issues;

     (b) the nature and extent of their research; and

     (c) the date( s) of their research.

## ANSWER NO. 11

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

In order to assist Saybrook graduates in obtaining a psychology license in the state of their choosing, Saybrook was a member of the Consortium of Diversified Programs in Psychology ("CDPP"). The CDPP was active in state-by-state efforts to monitor and influence existing and changing regulations, which permit graduates from alternative programs to sit for licensure.

Neither I, nor based on my understanding, Saybrook, however, ever made a determination that Saybrook students would meet regulatory, statutory, or other requirements for licensure as a psychologist in each of the fifty states as neither Saybrook nor myself could not make that determination because we are not licensing boards. I never undertook the responsibility to research various states licensing requirements, but rather believed that Saybrook

14

always made it clear to its students that such was their own responsibility. Over the years, it may be the case that employees of Saybrook received information about licensing requirements of some states, but I have no knowledge of any officer or managing agent of Saybrook, before or during the matriculation of the plaintiff at Saybrook, receiving knowledge of a Massachusetts change in its laws, effective September 1, 2000, so as to restrict the ability of graduates of schools not designated by the Association of State and Provincial Psychology Boards, to apply for such a license.

**INTERROGATORY NO. 12**

For every academic year between 1995-96 and the present, please describe your knowledge of any individuals at Saybrook, including yourself, who provided assistance to Saybrook students or graduates to help them understand professional licensure requirements for psychologists in any jurisdictions, stating separately for each academic year:

      (a) the names and addresses of all Saybrook employees who provided assistance; and

      (b) a description of the assistance that was provided.

**ANSWER NO. 12**

    Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

    Saybrook communicated generally to applicable students that it was the student's responsibility to contact the local licensing boards in the state in which they planned to practice in order to obtain detailed licensure requirements and that Saybrook did not undertake that responsibility. It further informed the students that regulations are constantly changing and thus they must monitor the regulations. This was communicated in its handbooks, catalogues, as well as during its residential conferences. If a student had a particular question regarding a state's

15

licensing requirements, Saybrook would include information that the student should contact that state's licensing board to discuss the requirement.

To the extent that Saybrook was able to assist in the basic understanding of a requirement, Saybrook undertook no obligation but would refer the student to external sources for knowledge of the requirement, but without guarantees of its accuracy or finality, since the student was advised to be responsible to obtain reliable information from their respective state authority and not second-hand from others.  I have no knowledge of any representations of fact to the plaintiff, of which it knew to be untrue, as to the state of the law in Massachusetts regarding licensure and I believe that neither Saybrook nor I had superior knowledge of that information as compared with plaintiff, and that the plaintiff in fact had at least equal or greater access to such information and was fully aware of how to access that information.  I do not know of any time that Saybrook or I informed plaintiff that during her ongoing matriculation at Saybrook it would or had undertook an obligation to inquire on her behalf, or otherwise, as to Massachusetts laws and changes thereto.  I am informed that at the time of plaintiff's enrollment with Saybrook, plaintiff had indeed inquired of Massachusetts as to its law and gained information that, at that at that time, attending Saybrook would not prohibit her from gaining licensure under Massachusetts law.   Plaintiff, however, failed thereafter to inquire of Massachusetts' authorities, and failed to read periodical information disseminated or available to her in Massachusetts.

Specifically, at each residential conference, while both Executive Vice President and President, I participated in a town hall meeting with all students.  At these meetings and during the residential conference in general, students were free to ask me whatever questions they wanted.  From time to time students would raise the question of licensure.  Although I have no

recollection of the names of the specific students I may have spoken with, my answer was standard and truthful vis, "All states differ in their requirements and these requirements are constantly changing—the only way you can know what your situation is, is to remain in close contact with the licensing board." I regularly gave my opinion that licensing requirements were becoming more restrictive and that Saybrook recognized that our commitment to an alternative delivery model—individualized mentorship—meant that Saybrook students might encounter obstacles. It should be understood that I am not a clinical psychologist myself, I am an academic psychologist, so most specific questions about licensing requirements were beyond the scope of my expertise. Because of the unique theoretical and pedagogical orientation of Saybrook, published in all our materials since our founding, Saybrook students who expressed an interest in becoming licensed as a Psychologist, were routinely told by me and by everyone else at Saybrook that they should stay up to date with what was happening in their respective states. As I recall, we specifically counseled all students who expressed interest in becoming licensed to put a letter on file with their state licensing board requesting to be informed should any change in licensing laws be proposed or anticipated.

In addition to Saybrook's faculty, during Plaintiff's matriculation the following individuals may have knowledge of these matters:

1.   William Bruff, Saybrook Graduate School and Research Center, 747 Front Street, San Francisco, CA;

2.   Rudy Melone, deceased, Saybrook Graduate School and Research Center, 747 Front Street, San Francisco, CA;

3.   Zonya Johnson, Saybrook Graduate School and Research Center, 747 Front Street, San Francisco, CA;

963623v1

4.    Alan Vaughn, Saybrook Graduate School and Research Center, 747 Front Street,

San Francisco, CA; and

5.    Marcia Hammond, address unknown.

## INTERROGATORY NO. 13

Please describe your knowledge of any communications between Susan Cooney and you or any Saybrook employees or agents at any time between 1995 and the present, regarding Ms. Cooney's intention or efforts to be licensed as a psychologist in Massachusetts, stating for each such communication:

(a) the date of the communication;

(b) the names and addresses of all persons who participated in the communication;

(c) a summary of what each participant said in the communication; and

(d) a description of any documents that memorialize the communication.

## ANSWER NO. 13

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

I do not recall any communications between the plaintiff and myself regarding her intention to become a licensed as a psychologist in Massachusetts prior to her correspondence to me dated June 10, 2003.

The plaintiff stated in her application for admission that she wished to pursue a Ph.D. in psychology and "planned to pursue a position in [Dr. Bessel Van der Kolk's] Trauma Clinic at the Eric Lindemann Mental Health Center which is part of Mass. General Hospital."

Furthermore, I am not aware of any efforts the plaintiff took to be licensed as a Massachusetts psychologist other than those alleged in the correspondence previously produced

18

963623v1

in the Automatic Disclosures, as well as the records produced by subpoena from the Massachusetts Board of Registration of Psychologists, which also have been produced to the plaintiff.

In further answering, pursuant to Fed. R. Civ. P. 33(d), Dr. O'Hara refers the plaintiff to all correspondence, including the June 10, 2003 correspondence, and the plaintiff's Application for Admission previously produced to the plaintiff in the Automatic Disclosures, as well as to Susan Cooney's claims-related file, which was previously forwarded by Saybrook to the plaintiff.

## INTERROGATORY NO. 14

Please describe your knowledge of all communications between Saybrook students other than Susan Cooney and yourself or other Saybrook administrators or staff, at any time between 1990 and the present, regarding the problems or issues that Saybrook graduates encountered in attempting to qualify for licensure as a psychologist in Massachusetts, stating for each such communication:

    (a) the date of the communication;

    (b) the names and addresses of all persons who participated in the communication;

    (c) a summary of what each participant said in the communication; and

    (d) a description of any documents that memorialize the communication.

## ANSWER NO. 14

Dr. O'Hara objects to this Interrogatory as it is ambiguous and requests information that if disclosed would violate the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, 34 C.F.R. 99, as well as various state privacy laws. Dr. O'Hara also objects to this Interrogatory on the grounds that it is unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible

evidence.  Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

I am presently aware that Saybrook had communications with one other graduate regarding problems encountered in obtaining a license from the Massachusetts Board of Registration of Psychologists.   I have been informed that the Massachusetts Board of Registration of Psychologists did grant the graduate a license to practice in Massachusetts.

Since becoming aware of the plaintiff's problems obtaining a license, I am aware that Saybrook has had communications with students who may have informed Saybrook that they wish to become licensed psychologists in Massachusetts.  The communications  have entailed informing the students that they may not be able to become licensed in Massachusetts as a psychologist based on recent changes in the law and reiterating that they should secure accurate information by direct contact with the Massachusetts Board of Registration of Psychologists.

Specifically, at each residential conference, while both Executive Vice President and President, I participated in a town hall meeting with all students.  At these meetings and during the residential conference in general, students were free to ask me whatever questions they wanted.  From time to time students would raise the question of licensure.  Although I have no recollection of the names of the specific students I may have spoken with, my answer was standard and truthful vis, "All states differ in their requirements and these requirements are constantly changing—the only way you can know what your situation is, is to remain in close contact with the licensing board."  I regularly gave my opinion that licensing requirements were becoming more restrictive and that Saybrook recognized that our commitment to an alternative delivery model—individualized mentorship—meant that Saybrook students might encounter obstacles.  It should be understood that I am not a clinical psychologist myself, I am an academic

20

psychologist, so most specific questions about licensing requirements were beyond the scope of my expertise. Because of the unique theoretical and pedagogical orientation of Saybrook, published in all our materials since our founding, Saybrook students who expressed an interest in becoming licensed as a Psychologist, were routinely told by me and by everyone else at Saybrook that they should stay up to date with what was happening in their respective states. As I recall, we specifically counseled all students who expressed interest in becoming licensed to put a letter on file with their state licensing board requesting to be informed should any change in licensing laws be proposed or anticipated.

In further answering, pursuant to Fed. R. Civ. P. 33(d), Dr. O'Hara refers the plaintiff to a February 2004 alert letter to students who are or may be seeking clinical psychology licensure, and related March 2004 documents, which was previously forwarded by Saybrook to the plaintiff.

## INTERROGATORY NO. 15

Please describe your knowledge of all communications by or between Defendant, Saybrook and the Board of Registration of Psychologists of Massachusetts, at any time from 1990 to the present, concerning efforts by any Saybrook students or graduates to obtain licensure in Massachusetts, stating for each such communication:

(a) the date of the communication;

(b) the names and addresses of all persons who participated in the communication;

(c) a summary of what each participant said in the communication;

(d) the name and address of each student who was seeking licensure; and

(e) a description of any documents that memorialize the communication.

963623v1

**ANSWER NO. 15**

Dr. O'Hara objects to this Interrogatory on the grounds that it is over broad and unduly burdensome. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

I have not had any communications with the Massachusetts Board of Registration of Psychologists and I am unaware of any communications anyone on behalf of Saybrook had with the Massachusetts Board of Registration of Psychologists. It is my understanding that in response to the plaintiff's communications to Saybrook regarding her problems in obtaining a license in Massachusetts, Saybrook offered to the plaintiff to speak with the Massachusetts Board of Registration of Psychologists to assist her in obtaining her license, but the plaintiff declined.

**INTERROGATORY NO. 16**

Please describe your knowledge of all communications by or between Defendant, Saybrook, and psychology licensing boards in states other than Massachusetts, at any time from 1990 to the present, concerning obstacles or restrictions facing Saybrook graduates, on account of <u>their Saybrook degree</u>, in qualifying for licensure as a psychologist, stating for each such communication;

   (a) the date of the communication;

   (b) the names and addresses of all persons who participated in the communication;

   (c) a summary of what each participant said in the communication;

   (d) identification of the state(s) in which licensure was sought; and

   (e) a description of any documents that memorialize the communication.

**ANSWER NO. 16**

Dr. O'Hara objects to this Interrogatory on the grounds that it is over broad, unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

I am unable to determine which graduates, if any, encountered problems qualifying for licensure as a psychologist solely on account of their Saybrook degree. Specifically, the statutory and regulatory licensing standards are diverse among the states and the actual judgment of each state licensing board varies from case to case, and year to year. Therefore, I am not aware of any communications with state licensing boards concerning obstacles or restrictions facing Saybrook graduates, solely on account of their degree in qualifying for licensure as a psychologist. Since becoming aware of the plaintiff's reported problems obtaining a license, I know that Saybrook has had communications with students informing the students that they may not be able to become licensed in Massachusetts as a psychologist based on recent changes in the law and that they should secure accurate information by direct contact with the Massachusetts Board of Registration of Psychologists.

In further answering, pursuant to Fed. R. Civ. P. 33(d), Dr. O'Hara refers the plaintiff to the February 2004 alert letter to students and March 2004 documents, which was previously forwarded by Saybrook to the plaintiff.

**INTERROGATORY NO. 17**

Please describe your knowledge of all communications by or between Defendant, Saybrook and elected officials or government agencies (other than psychology licensing boards) regarding

23

963623v1

obstacles or restrictions facing Saybrook graduates, <u>on account of their Saybrook degree</u>, in qualifying for licensure as psychologists in Massachusetts, stating for each such communication:

(a) the date of the communication;

(b) a description of all persons who participated in the communication;

(c) a summary of what each participant said in the communication;

(d) the name and address of each student who was seeking licensure;

(e) a description of any documents that memorialize the communication.

NOTE: The above interrogatory includes but is not limited to communications with Attorneys General, consumer protection agencies, higher education boards or agencies, state or federal legislators, and any other elected officials.

## ANSWER NO. 17

Dr. O'Hara objects to this Interrogatory on the grounds that it is over broad and unduly burdensome. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

I am unable to determine which graduates, if any, encountered problems qualifying for licensure as a psychologist solely on account of their Saybrook degree. Specifically, the statutory and regulatory licensing standards are diverse among the states and the actual judgment of each state licensing board varies from case to case, and year to year. I am not aware of any communications with elected officials or government agencies concerning obstacles or restrictions facing Saybrook graduates in Massachusetts, solely on account of their degree in qualifying for licensure as a psychologist.

## INTERROGATORY NO. 18

Please describe your knowledge of communications by or between Defendant, Saybrook and elected officials or government agencies (other than psychology licensing boards) regarding

24

obstacles or restrictions facing Saybrook students, <u>on account of their Saybrook degree</u>, in qualifying for licensure as psychologists in jurisdictions other than Massachusetts, stating for each such communication:

     (a) the date of the communication;

     (b) a description of all persons who participated in the communication;

     (c) a summary of what each participant said in the communication;

     (d) identification of the state(s) in which licensure was sought; and

     (e) a description of any documents that memorialize the communication.

NOTE: The above interrogatory includes but is not limited to communications with Attorneys General, consumer protection agencies, higher education boards or agencies, state or federal legislators, and any other elected officials.

## ANSWER NO. 18

Dr. O'Hara objects to this Interrogatory on the grounds that it is over broad, unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

I am unable to determine which graduates, if any, encountered problems qualifying for licensure as a psychologist solely on account of their Saybrook degree. Specifically, the statutory and regulatory licensing standards are diverse among the states and the actual judgment of each state licensing board varies from case to case, and year to year. I am not aware of any communications with elected officials or government agencies concerning obstacles or restrictions facing Saybrook graduates, solely on account of their degree in qualifying for licensure as a psychologist.

25

**INTERROGATORY NO. 19**

Please describe your knowledge of communications by or between Defendant, Saybrook, and academic accrediting agencies regarding difficulties encountered by Saybrook graduates, <u>on account of their Saybrook degree</u>, in qualifying for licensure as psychologists, at any time between 1990 and the present.

**ANSWER NO. 19**

Dr. O'Hara objects to this Interrogatory on the grounds that it is over broad, unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

I am unable to determine which graduates, if any, encountered problems qualifying for licensure as a psychologist solely on account of their Saybrook degree. Specifically, the statutory and regulatory licensing standards are diverse among the states and the actual judgment of each state licensing board varies from case to case, and year to year. I am not aware of any communications with academic accrediting agencies concerning obstacles or restrictions facing Saybrook graduates, solely on account of their degree in qualifying for licensure as a psychologist other than regards to Susan Cooney and WASC.

**INTERROGATORY NO. 20**

Please describe your knowledge of communications by or between Defendant, Saybrook, and the American Psychological Association regarding difficulties encountered by Saybrook graduates, <u>on account of their Saybrook degree</u>, in qualifying for licensure as psychologists.

963623v1

**ANSWER NO. 20**

Dr. O'Hara objects to this Interrogatory on the grounds that it is over broad, unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving the objection and subject to the General Objections specifically incorporated herein, Dr. O'Hara states as follows:

I am unable to determine which graduates, if any, encountered problems qualifying for licensure as a psychologist solely on account of their Saybrook degree. Specifically, the statutory and regulatory licensing standards are diverse among the states and the actual judgment of each state licensing board varies from case to case, and year to year. I am not aware of any communications with the American Psychological Association concerning obstacles or restrictions facing Saybrook graduates, solely on account of their degree in qualifying for licensure as a psychologist.

**INTERROGATORY NO. 21**

Please describe any and all steps that Saybrook or Defendant has taken, at any time between 1990 and the present, to seek accreditation through the American Psychological Association.

**ANSWER NO. 21**

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. O'Hara states the following:

27

Neither Saybrook, to my knowledge, nor I have sought accreditation through the American Psychological Association; however, at different times in its history, different faculty and officers of Saybrook have given consideration to the possibility of exploring same.

In further answering, pursuant to Fed. R. Civ. P. 33(d), Dr. O'Hara refers the plaintiff to the APA-related documents, which was previously forwarded by Saybrook to the plaintiff.

## INTERROGATORY NO. 22

Please describe any and all steps that Saybrook or Defendant has taken, at any time between 1990 and the present, to be designated as a doctoral program in psychology by the Association of State & Provincial Psychology Boards.

## ANSWER NO. 22

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. O'Hara states the following:

Neither Saybrook to my knowledge, nor I, have sought to be designated as a doctoral program in psychology by the Association of State & Provincial Psychology Boards; however, at different times in its history, different faculty and officers of Saybrook have given consideration to the possibility of exploring same.

In further answering, pursuant to Fed. R. Civ. P. 33(d), Dr. O'Hara refers the plaintiff to the APA-related documents, which was previously forwarded by Saybrook to the plaintiff.

963623v1

## INTERROGATORY NO. 23

Please describe your knowledge of all research, tracking, and/or reporting that is done by, or on behalf of Saybrook, regarding the occupation, employment placement, or post-graduate studies of Saybrook graduates that received doctoral degrees in psychology or any allied field.

## ANSWER NO. 23

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. O'Hara states the following:

To the extent it is able to obtain the information, which is voluntarily given by its graduates, Saybrook has some, but not complete or systematic information regarding its graduates' occupations, employment placements, and post-graduate studies. This information normally comes through its Alumni Association.

## INTERROGATORY NO. 24

Please describe your knowledge of all seminars, presentations, information tables, or other recruitment efforts that Saybrook has conducted in Massachusetts from 1990 to the present, describing for each such effort:

(a) the date of the seminar, presentation, information, table, etc;

(b) the location where the presentation or information was offered;

(c) the names and titles of all Saybrook staff who attended the event;

## ANSWER NO. 24

29

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome and over broad. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. O'Hara states the following:

I do not have access to Saybrook's files and cannot comment with accuracy upon meetings or presentation held by other Saybrook Graduate School personnel in Massachusetts. I was in Massachusetts for one event while employed by Saybrook. While in Massachusetts to attend a seminar, I attended a small social gathering of Saybrook students and alumni organized by Dr. Eugene Taylor on Sunday September 22, 2002 at the Swedenborgian Chapel, in Cambridge. This was not a recruiting event. The event lasted about two and a half hours. As I recall there were about 10-12 attendees from Massachusetts and others from neighboring states—New York and Maine. I do not recall the specific names of any attendees and I do not believe that the plaintiff attended this event.

## INTERROGATORY NO. 25

Please describe all civil, criminal, or administrative complaints, demand letters, or other complaints filed against Defendant by any current or former student, at any time from 1990 to the present. For each such legal action, state the following:

    (a) the names and addresses of the parties;

    (b) the name and address of the court or agency at which the complaint was filed;

    (c) the docket number of the complaint, and the date of filing;

    (e) a description of all legal claims; and

    (f) a description of the current status of the legal claim.

## ANSWER NO. 25

Dr. O'Hara objects to this Interrogatory on the grounds that it is unduly burdensome and calls for information that is not relevant to the subject matter of this litigation and not reasonably

963623v1

calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. O'Hara states the following:

I know of no civil or criminal complaints filed against me by any current or former student.

## INTERROGATORY NO. 26

Describe the dates, subjects, and outcomes of any meetings of Saybrook's Board of Trustees, or any Trustee committees, in which Defendant participated and during which there was an agenda item, discussion, presentation, vote, order, or recommendation related to any of the following subjects:

    (a) Statutory, regulatory, or other restrictions that limit the ability of Saybrook graduates, on account of their degree, to qualify for licensure as a psychologist in Massachusetts or any other jurisdiction;

    (b) accreditation of Saybrook by the American Psychological Association;

    (c) designation of Saybrook as a doctoral program in psychology by the Association of State & Provincial Psychology Boards;

    (d) legal claims initiated by or against Saybrook or by or against Saybrook students related, in any way, to obstacles facing Saybrook graduates in qualifying for licensure as a psychologist.

## ANSWER NO. 26

Pursuant to Fed. R. Civ. P. 33 and Local Rule 26.1(C), Dr. O'Hara objects to this Interrogatory as the plaintiff is not entitled to serve more than 25 interrogatories without leave of the Court.

963623v1

**INTERROGATORY NO. 27**

Please describe any communications between you and any Saybrook trustees, officers, faculty, or staff regarding the reasons for your resignation from Saybrook:

> (a) the date of the communication;

> (b) a description of all persons who participated in the communication;

> (c) a summary of what each participant said in the communication;

> (d) a description of any documents that memorialize the communication.

**ANSWER NO. 27**

Pursuant to Fed. R. Civ. P. 33 and Local Rule 26.1(C), Dr. O'Hara objects to this Interrogatory as the plaintiff is not entitled to serve more than 25 interrogatories without leave of the Court.

**INTERROGATORY NO. 28**

Identify each person that you intend to call as an expert witness at trial, stating:

> (a) the subject matter on which the expert is expected to testify;

> (b) the substance of the facts and opinions to which the expert is expected to testify; and

> (c) a summary of the grounds for each such position.

**ANSWER NO. 28**

Pursuant to Fed. R. Civ. P. 33 and Local Rule 26.1(C), Dr. O'Hara objects to this Interrogatory as the plaintiff is not entitled to serve more than 25 interrogatories without leave of the Court.

963623v1

SIGNED UNDER THE PENALTIES OF PERJURY THIS _30th_ DAY OF _November_ 2005.

_Maureen O'Hara._

Dr. Maureen O'Hara

As to Objections:

Michael F. Aylward, BBO #024850
Grace V. Bacon Garcia, BBO# 640970
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210-1181
617-439-7500

33

963623v1

## CERTIFICATE OF SERVICE

I, Grace V. Bacon Garcia hereby certify that I served a true copy of the following documents:

1.  **Defendant, Maureen O'Hara's, Supplemental Response to Plaintiff, Susan Cooney's Request for Production of Documents;**

2.  **Defendant, Maureen O'Hara's, Answers to Plaintiff's First Set of Interrogatories**

on December 6, 2005 upon the following counsel of record via facsimile and first class mail in compliance with the F.R.C.P.:

> Paul W. Morenberg, Esq.
> Kerstein, Coren, Lichtenstein & Finkel, LLP
> 60 Walnut Street
> Wellesley, MA 02481

Grace V. Bacon Garcia

974970v1