UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
SUSAN COONEY,                                  )
    Plaintiff                                  )
v.                                             )
                                               )
SAYBROOK GRADUATE SCHOOL AND                   )
RESEARCH CENTER, and                           )
MAUREEN O'HARA, Individually                   )
    Defendants                                 )
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

### INTRODUCTION

Plaintiff Susan Cooney opposes Defendants' Motion for Reconsideration and Opposition to the Plaintiffs' Motion to Amend, which was allowed by the Court on January 26, 2006. Through her Motion to Amend, Plaintiff has added counts of Negligence and Negligent Infliction of Emotional Distress against Saybrook Graduate School and Research Center ("Saybrook"). Plaintiff's amended claims are supported by Defendants' recent production of documents in December, 2005 and January, 2006. These documents reveal that Saybrook and defendant Maureen O'Hara ("O'Hara") had knowledge, in or about January, 1996, that Massachusetts was implementing regulations that would disqualify Saybrook graduates from becoming Massachusetts psychologists. Saybrook had a duty to warn Cooney and other Massachusetts students of these regulatory changes. Saybrook breached its duty to Cooney by withholding its knowledge of Massachusetts regulatory changes during Cooney's seven years of graduate study (September, 1995 through October, 1992). Saybrook's negligent conduct prevented Cooney from becoming a licensed psychologist, and also caused her severe emotional distress.

Defendants now argue that Plaintiff's Motion to Amend should be reevaluated under the "good cause" standard of F.R.C.P. Rule 16(b). In addition, defendants claim that plaintiff's negligence-based counts should be denied as "futile." Finally, defendants argue that plaintiff's negligence-based claims would be "highly prejudicial" to defendants. Each of Defendants' arguments is without merit, and the Court should deny Defendants' Motion for Reconsideration.

## ARGUMENT

I. <u>Plaintiff's Motion to Amend Was Filed in a Timely and Reasonable Manner</u>

Defendants argue that the Court should reevaluate the Motion to Amend under the "good cause" standard of F.R.C.P. Rule 16(b) rather than the more permissive standard of Rule 15(a). Defendants argue that Rule 16(b) is controlling because the parties stipulated that motions to amend would be filed by October 3, 2005. However, Defendants fail to explain that the Court did not adopt any of the parties' proposed deadlines from the Joint Statement. After the scheduling conference, the Court ordered that the parties complete discovery by January 31, 2006, but imposed no other procedural deadlines. Interestingly, Saybrook first served responses to plaintiff's discovery requests on November 18, 2005—<u>more than six weeks after the purported October 3, 2005 deadline for amended pleadings</u>. O'Hara first provided signed answers to interrogatories on December 6, 2005--<u>more than two months after the purported October 3, 2005 deadline</u>. Defendants then supplemented their discovery responses on January 6 and 13, 2006. According to defendants' logic, the Court should reward a party that provides critical documents late in the discovery process by rejecting motions to amend that consider these documents. As plaintiff sought to amend her complaint during the discovery period, the Court properly allowed

her motion under the Rule 15(a) standard, which provides that leave to amend should be "freely given." Wilson v. Mendon, 294 F.3rd 1, 7 n. 16 (1st Cir. 2002); Mills v. Maine, 118 F.3d 37, 53 (1st Cir. 1997); USM Corp. v. GKN Fasteners Ltd., 578 F.2d 21, 23 (1st Cir. 1978).

Defendants also claim that plaintiff's motion to amend is untimely, arguing that Cooney could have asserted her negligence-based claims at the time she filed her complaint on June 1, 2004. By June of 2004, Cooney was aware that her Saybrook degree did not meet Massachusetts regulatory standards. However, at this time, Cooney had seen no evidence to suggest that Saybrook knew of Massachusetts regulatory changes while Saybrook was training her between 1995 and 2002. Cooney first obtained evidence that Saybrook knew of regulatory changes in Massachusetts--in or about January, 1996--as a result of defendants' supplemental document responses and O'Hara's interrogatory answers, which were served on December 6, 2005. However, even if the Court were to apply Rule 16(b)'s "good cause" standard, the Court should still allow the motion to amend. As defendants furnished critical documents that support plaintiff's negligence-based claims in December, 2005, plaintiff had "good cause" to amend her complaint in January, 2006.

Defendants' Motion for Reconsideration entirely disregards the fact that plaintiff could still assert a timely complaint of negligence against Saybrook in 2006. As noted in the Motion to Amend, under Massachusetts law, negligence claims accrue at the time that negligent conduct is discovered. Williams v. Ely, 423 Mass. 467, 473 (1996) (negligence action accrues when a plaintiff "knows or reasonably should know that he or she has sustained appreciable harm as a result of the [defendant's] conduct"). Cooney first learned that her Saybrook degree would not meet Massachusetts standards in or about March, 2003. Even if plaintiff's negligence-based

claims could have been predicted at this time, plaintiff would still have until March of 2006 to file claims of negligence against Saybrook.   See Plaintiff's Motion to Amend, ¶ 11.

## II.     Plaintiff Has Asserted Proper Negligence-Based Claims

### a.     Cooney Has Asserted a Viable Claim of Negligence

Defendants argue that plaintiff cannot establish that Saybrook owed her any duty that would form a basis for negligence claims.  As Defendants correctly point out, Massachusetts courts evaluate duty based on "existing social values and customs, as well as… appropriate social policy." Cottam v. CVS Pharmacy, 436 Mass. 316, 320 (2002).  Without exploring any Massachusetts case law involving colleges, defendants argue that graduate schools do not owe a duty of care to their students.  However, Massachusetts courts have long held that colleges and universities owe a duty of care to their students.  In Mullins v. Pine Manor College, 389 Mass. 47, 51 (1983), the Supreme Judicial Court ruled that "colleges of ordinary prudence customarily exercise care to protect the well-being of their resident students, including seeking to protect them from the criminal acts of third parties."  A copy of Mullins v. Pine Manor College is attached as **Exhibit A**.  The Court also noted that a college's negligence can be grounded in another theory—that a duty voluntarily assumed must be performed with due care. Id. at 52-53.  Citing the Second Restatement of Torts, § 323, the court observed that a party that undertakes a duty to protect a person or her things is liable for any harm that results from a failure to exercise reasonable care. Id. at 53.

The Mullins case involved allegations that negligent security measures failed to prevent a student rape, but other Massachusetts courts have applied these negligence principles in a

4

broader context. In Moose v. Massachusetts Institute of Technology, 43 Mass.App.Ct. 420, 422-425 (1997), an appellate court held that a college may be found negligent for its failure to foresee that a student athlete could be injured at pole vaulting practice. A copy of Moose v. MIT is attached as **Exhibit B**. In this case, the court affirmed a jury verdict that MIT coaches negligently failed to warn a student athlete that his approach was too fast, and that he was practicing in an area that was not adequately padded. Id. In Shin v. Massachusetts Institute of Technology, 2005 WL 1869101, p. 10, (Mass. Super. 2005), a Massachusetts Superior Court ruled that the parents of a student who committed suicide could sue MIT administrators for their negligent failure to respond to the decedent's escalating threats of suicide. A copy of Shin v. MIT is attached as **Exhibit C**. Citing the Restatement and Mullins v. Pine Manor, the superior court noted that a special duty exists between a college and a student, and this duty requires a college to take action to prevent foreseeable harm to its students. Id.

Without citing any case law, Defendants advance the hypothetical argument that law schools without ABA-accreditation are permitted to award degrees to students whose home states require an ABA-accredited degree for bar admission. The Defendants would like the Court to assume that unaccredited law schools are invulnerable to negligence-based claims. However, this assumption is at odds with recent federal case law from the First Circuit. In a 2004 decision, the Court of Appeals for the First Circuit held that a law student can assert tort-based claims against a Massachusetts law school related to misleading accreditation claims. In Rodi v. Southern New England School of Law, 03-2502 (1st Cir. 11/10/2004), a law school graduate sued his law school for misrepresenting its high level of confidence in achieving ABA accreditation. The court noted that fraudulent misrepresentation claims, which are a "species" of Massachusetts

5

tort claims, must be asserted within three years after a plaintiff reasonably learns of tortious conduct. In Jolicoeur v. Southern New England School of Law, 104 Fed. Appx. 745, 746-47 (1st Cir. 2004), another law student brought claims of negligence and other torts when his law school failed to disclose known accreditation problems. The Court of Appeals dismissed the case as time-barred, but the dismissal was not on the merits of Jolicoeur's claims of negligence or related torts. Id.

In the present case, Cooney has asserted a viable negligence claim by pleading that Saybrook assumed a duty to warn her of changes in Massachusetts regulations that would impact her prospects for licensure. This duty arose from Saybrook's acceptance of students whom Saybrook knew were seeking licensure as Massachusetts psychologists. Saybrook's duty to Cooney is reasonably founded on Massachusetts law, which obligates colleges and graduate schools to protect their students from foreseeable risks of harm. Pine Manor, 389 Mass. at 52. When a college assumes a duty to its students, the college must take action to guard against foreseeable harm. Here, Saybrook assumed a duty to monitor state regulations and to apprise students of any changes that would impact their eligibility for licensure.[1]

Massachusetts courts have also ruled that colleges owe a duty of care arising from their special relationship with students. This special relationship creates a duty to protect its students from foreseeable harm. Under this reasoning, a college owes a duty of care to protect students from dangerous conditions at an athletic practice facility (see Moose v. MIT), and to protect students who have made suicidal threats (see Shin v. MIT). In the present case, Cooney has

---

1 Plaintiff has alleged that Saybrook assumed a duty to monitor regulatory requirements in all fifty states, and to assist students in obtaining licensure in the state of their choice. Defendant assumed this duty through statements contained in its 1994-95 Interim Catalogue, and through other communications.

6

alleged that a special relationship exists between Saybrook and its graduate students who seek to become licensed psychologists. Based on this special relationship, Cooney alleges that Saybrook had a duty to disclose its knowledge of expected Massachusetts regulatory changes that would disqualify her from seeking Massachusetts licensure. Saybrook breached its duty by withholding its knowledge of Massachusetts regulatory changes, thereby causing injury and substantial damages to Cooney.

After failing to examine any Massachusetts case law on negligence by colleges, Defendants proceed to cite irrelevant case law from California. When sitting in diversity, a district court must apply the substantive law of the forum state. Correira v. Fitzgerald, 354 F.3rd 47, 53 (1st Cir. 2003). In the present case, the substantive law of Massachusetts governs Cooney's negligence-based claims. Defendants have failed to explain the relevance of California law to plaintiff's negligence claims, and the Court should disregard the California cases cited by the defendants.

b.   Cooney Has Pled a Viable Claim of Negligent Infliction of Emotional Distress

Defendants next argue that plaintiff has failed to assert a viable claim of negligent infliction of emotional distress. Specifically, Defendants claim that Cooney has failed to plead that she has suffered physical harms manifested by objective symptoms. Contrary to defendants' argument, Plaintiff has done more than allege "mere upset, dismay, and grief." Indeed, Cooney has alleged the following objective symptoms: "sleeplessness, difficulties in working and concentrating, anxiety and depression." Amended Complaint, ¶ 58.

Massachusetts courts have construed the requirement of objective symptoms broadly, with a stated goal of permitting juries to evaluate mental distress claims. <u>Sullivan v. Boston Gas Co.</u>, 414 Mass. 129, 139-140. In the <u>Sullivan</u> case, the Court ruled that symptoms such as "headaches, concentration problems, or sleeplessness, correspond to common manifestations of posttraumatic stress disorder." <u>Id</u>. See also <u>Rodriguez v. Cambridge Housing Auth.</u>, 443 Mass. 697 (emotional distress claim is properly supported by symptoms such as "major depression, nightmares, and suicidal thoughts").

In the present case, Cooney has plead a sufficient level of physical symptoms, including sleeplessness and concentration difficulties, to permit a jury to evaluate her emotional distress claims. Moreover, Cooney has provided defendants with counseling records from Dr. Reisen, which offer objective evidence that Cooney has experienced profound stress and anxiety, sleep disorders, and depression in connection with Saybrook's negligent conduct. Under Massachusetts law, Cooney's claim of emotional distress should be evaluated by a jury.

### III. **Defendants Have Failed to Show that the Amended Complaint Has Caused Substantial Prejudice**

Finally, Defendants claim that the plaintiff's motion to amend will cause them substantial prejudice. Defendants have made no showing of prejudice, but claim that discovery may have to be reopened.[2] As noted in the Motion to Amend, Defendants received the amended complaint in advance of the plaintiff's recent deposition. Indeed, during day two of Susan Cooney's

---

2 As a courtesy, plaintiff has indicated that Defendants may submit further requests for written discovery on the amended claims.

deposition, Attorney Garcia questioned the plaintiff extensively about her claims of negligence and negligent infliction of emotional distress. Defendants have failed to establish any need to reopen discovery, or any prejudice that could result from allowance of the motion to amend.

## CONCLUSION

For all of the foregoing reasons, Plaintiff asserts that the Court properly allowed her Motion to Amend on January 26, 2006. Consequently, the Court should deny Defendants' Motion for Reconsideration.

                                  Respectfully submitted,

                                  SUSAN COONEY,
                                  By her counsel,

                                  /s/ Paul W. Morenberg
                                  _____
                                  E. Steven Coren, BBO #
                                  Paul W. Morenberg, BBO # 631101
                                  Kerstein, Coren, Lichtenstein & Finkel, LLP
                                  233 Needham Street
                                  Newton, Massachusetts   02464
                                  (781) 997-1600

Dated:       February 14, 2006