UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

```
*********************************
SUSAN COONEY,                          )
        Plaintiff                      )
v.                                     )
                                       )
SAYBROOK GRADUATE SCHOOL AND           )
RESEARCH CENTER, and                   )
MAUREEN O'HARA, Individually           )
        Defendants                     )
*********************************
```

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Plaintiff Susan Cooney opposes Defendants' Motion for Protective Order, which was filed on February 3, 2006. Defendants claim that plaintiff should not be entitled to obtain documents or to ask deposition questions regarding (1) Saybrook's knowledge of obstacles to psychology licensure in states other than Massachusetts; and (2) Defendant O'Hara's recent resignation as president of Saybrook. Plaintiff contends that discovery of the first issues is relevant to Cooney's claim that Saybrook withheld its knowledge of licensure obstacles from Cooney and numerous other students. Plaintiff maintains that discovery of the second issue is relevant to Cooney's claim that O'Hara's resignation was connected to policy disagreements at Saybrook regarding the review and disclosure of licensure obstacles; APA accreditation; and the impact of these issues on Saybrook's goal of increasing student enrollment. Defendants have failed to articulate any legitimate basis to limit discovery regarding these important issues. Consequently, the Court should deny the requested protective order.

## ARGUMENT

I. <u>DEFENDANTS HAVE FAILED TO PLEAD ANY OF THE REQUIRED ELEMENTS FOR LIMITING DICOVERY OR FOR GRANTING A PROTECTIVE ORDER.</u>

Pursuant to F.R.C.P. Rule 26(b), a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…" The Court may impose discovery limitations in three situations: (1) when proposed discovery is "unreasonably duplicative or cumulative," or available from other sources with less burden or expense; (2) where the party seeking discovery "has had ample opportunity… to obtain the information sought"; or (3) where the burden of the discovery outweighs its likely benefit. F.R.C.P. Rule 26(b)(2). Defendants have failed to allege that any of the above factors warrant limitation of discovery requested by the plaintiff.

In addition, defendants have failed to plead any recognized basis for a protective order. Under F.R.C.P. Rule 26(c), a protective order is justified "to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Defendants have failed to establish that defendants require protection from annoyance, oppression, or undue burden. Consequently, there is no basis for defendants' requested protective order. Defendants have argued two justifications for their proposed order. First, defendants claim that the requested discovery is irrelevant. Second, defendants claim that requested discovery impinges on O'Hara's privacy interests under the California constitution. Both arguments are without merit.

## II. PLAINTIFF IS ENTITLED TO BROAD DISCOVERY THAT IS RELEVANT TO ANY CLAIMS OR DEFENSES.

Defendants Saybrook and O'Hara have improperly objected to discovery that is relevant to the plaintiff's claims. In this civil action, plaintiff alleges that Saybrook engaged in two types of misconduct. First, defendants failed to provide Cooney with a psychology degree that would qualify her for her stated goal of licensure in Massachusetts. Second, defendants failed to advise Cooney of their knowledge that Massachusetts would not recognize a Saybrook degree.

### A. Saybrook's Knowledge of Licensure Obstacles in Other States is Relevant to Cooney's Claim that Saybrook Withheld Information Concerning Licensure Obstacles From Cooney and Other Students.

Saybrook is a distance learning program that recruits graduate students in psychology throughout the United States. In or about September, 1995, Saybrook advised Cooney that her degree would enable her to obtain licensure in Massachusetts. Based on this assurance, Cooney began her graduate studies at Saybrook; she earned her Ph.D. in psychology in October, 2002. In or about January, 1996, Saybrook and O'Hara became aware of expected regulatory changes in Massachusetts that would disqualify Cooney and other students from becoming Massachusetts psychologists. Unfortunately, from 1996 through early 2004, defendants withheld this information from Cooney and other students.

As Saybrook is a distance learning program, it recruits and educates students from various states. Saybrook's consistent failure to inform its students of licensure obstacles in other states is

3

relevant to Cooney's claim Saybrook deceived her and other students. In or about September, 1995, Saybrook advised students that five states that did not recognize a Saybrook degree: (1) Oregon; (2) Iowa; (3) Connecticut; (4) Georgia; and (5) Maryland. Saybrook also noted that Florida was not "conducive to alternative psychology programs." Plaintiff has attached the relevant Saybrook communication as **Exhibit A**. In or about February, 2004, Saybrook advised its students that eighteen (18) states were unlikely to accept a Saybrook degree based on APA or residency obstacles, and that seven (7) other states may also have licensure obstacles. See Saybrook's Letter of February 18, 2004, which is attached as **Exhibit B**. In the nine year period between 1995 and 2004, Saybrook became aware of a five-fold increase in jurisdictions that may not accept a Saybrook degree.

Between 1995 and January, 2004, plaintiff believes that Saybrook failed to provide timely notice of known licensure obstacles to students from these twenty (20) additional jurisdictions. Massachusetts was among these jurisdictions. Cooney contends that she is entitled to explore when Saybrook first learned of licensure obstacles in these twenty additional states, and why Saybrook withheld this information from its students.

Defendants want this Court to draw a bright line between Saybrook's knowledge of licensure obstacles in Massachusetts, and its knowledge of licensure obstacles in all other states. However, these two issues are inseparable, as Saybrook is a "distance learning" program that has offered graduate studies in psychology to students in more than thirty states. Saybrook withheld its knowledge of licensure obstacles not only in Massachusetts, but also in many other states. Plaintiff should be entitled to explore Saybrook's knowledge of licensure obstacles outside Massachusetts, as this discovery may lead to evidence that Saybrook engaged in a pattern of

4

monitoring licensure obstacles and withholding this information from affected students.

Saybrook's knowledge of licensure restrictions in other states is relevant to the Plaintiff's claims in two important ways. First, it is believed that Saybrook learned of licensing restrictions in various jurisdictions, but failed to advise students from these jurisdictions. Plaintiff may be able to offer these facts as evidence of similar "wrongs" or "acts." While such evidence is inadmissible to prove character, it is admissible for other evidentiary purposes, including proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident..." F.R.E., Rule 404(b).[1] Second, Saybrook's discussions of licensure restrictions in other states may yield evidence of Saybrook's knowledge of Massachusetts' standards. For example, Saybrook advised the Iowa Board of Psychology Examiners that Massachusetts would not recognize a Saybrook degree. See In the Matter of the Application for Licensure of John Cannon, Ph.D., Board of Psychology Examiners of the State of Iowa (DIA No. 04DPHPS001), which is attached as **Exhibit C**. Based on testimony from Saybrook's vice-president, William Bruff, the Iowa Board made the following finding of fact:

> 7. Saybrook is aware that certain states will not admit its graduates to licensure as a psychologist and will not take students from those states **(e.g. Massachusetts)** if they intend to be licensed as a psychologist to practice in that state (Testimony of Dr. William Bruff).

Id., p. 4 (Emphasis added). Defendants may argue that Dr. Bruff gave this testimony in May, 2004, and that Dr. Bruff may be referring to Saybrook's knowledge of Massachusetts restrictions after Susan Cooney's legal claims. Plaintiff counters that there are many possible interpretations

---

[1] F.R.E. Rule 404(b) applies equally to criminal and civil matters. See e.g., Hynes v. Coughlin, 79 F.3d 285 (2nd Cir. 1996); USA v. Hetherington 256 F.3d 788 (8th Cir. 2001); Jannotta v. Subway Sandwich Shops 125 F.3d 503 (7th Cir. 1997)

of Dr. Bruff's testimony, and plaintiff should be entitled to obtain further discovery on this issue. Also, as noted above, Plaintiff should be permitted to develop evidence of Saybrook's knowledge of licensure restrictions in Idaho, and its apparent failure to advise John Cannon of these restrictions. Saybrook's knowledge of licensure restrictions in Iowa and other states is relevant to plaintiff's claim that Saybrook breached a duty and contractual obligation to advise students of licensure obstacles.

  B. <u>O'Hara's Resignation from Saybrook Is Relevant to Cooney's Claims that Saybrook and O'Hara Concealed Their Knowledge of Licensure Obstacles in Various States to Meet Institutional Goals for Enrollment and Tuition.</u>

Plaintiff intends to obtain documents and to pose deposition questions regarding O'Hara's recent resignation from Saybrook. Plaintiff maintains that these documents and communications may reveal that sharp policy differences between O'Hara and Saybrook led to her resignation. Plaintiff believes that O'Hara, other Saybrook administrators, and Saybrook's Board of Trustee had significant conflicts regarding three issues. First, these parties disagreed about Saybrook's ethical and legal obligation to monitor licensure standards in various jurisdictions and to advise students of known problems. Second, these parties had conflicts regarding Saybrook's efforts to seek accreditation from the American Psychological Association. Finally, these parties had conflicts regarding institutional goals to expand Saybrook's enrollment. Plaintiff believes that she is entitled to explore these conflicts. In pursuit of this information, plaintiff should be entitled to explore if any policy conflicts influenced O'Hara's decision or obligation to resign.

Defendants claim that O'Hara should be protected from discovery in these areas due to her privacy interests under California law. However, Plaintiff believes that any alleged privacy rights of O'Hara should be evaluated under Massachusetts law. When sitting in diversity, a district court must apply the substantive law of the forum state. Correira v. Fitzgerald, 354 F.3rd 47, 53 (1st Cir. 2003). In the present case, the substantive law of Massachusetts governs Cooney's claims and O'Hara's defenses. Massachusetts law also governs defendants' rights to assert privilege or discovery objections. Defendants have failed to explain why the Court should consider California privacy laws with respect to a discovery dispute in a Massachusetts district court. The Court should evaluate O'Hara's request for a protective order under Massachusetts privacy laws.

Massachusetts law protects individuals from unwarranted intrusions into private information. M.G.L. Chapter 214, § 1B, provides, in pertinent part, that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Massachusetts courts have interpreted this law to prohibit disclosure of highly personal or intimate information "when there exists no legitimate, countervailing interest." See, e.g., Cort v. Bristol-Myers Co., 385 Mass. 300, 307--308 (1982). In Bratt v. International Business Machines Corp., 392 Mass. 508, 520-21 (1984), the Supreme Judicial Court ruled that an "employer may seek certain personal information concerning an employee when the importance of the information in assessing the employee's efficacy in his work outweighs the employee's right to keep this information private." To assess potential violations of Section 1B, the court utilizes a balancing test. "[I]t is necessary to balance the employer's legitimate business interest in obtaining and publishing the information against the substantiality of the intrusion on the employee's privacy

resulting from the disclosure." Id at 521. After applying this balancing test, the SJC ruled that IBM properly obtained medical information without violating Bratt's privacy interests. Id. at 523-24. In reaching this conclusion, the court noted that a physician may properly disclose a patient's medical condition that was relevant to the evaluation of a legal claim. Id.

At the outset, plaintiff must disagree with O'Hara's claim that the circumstances of her resignation constitute "highly personal" or "intimate" information that would be subject to protection under Massachusetts privacy laws. Plaintiff is not seeking disclosure of sensitive or delicate information. Rather, plaintiff seeks to explore if O'Hara's resignation was related to differences regarding important policy issues at Saybrook. Plaintiff believes that O'Hara and Saybrook had significant policy disputes regarding Saybrook's review and disclosure of licensure obstacles; Saybrook's efforts to gain APA accreditation; and Saybrook's efforts to increase student enrollment. These policy issues were openly discussed between O'Hara and other Saybrook administrators, and between O'Hara and Saybrook's Board. Presumably, O'Hara and Saybrook's Board engaged in regular discussions about Saybrook policies and goals, and O'Hara's vision for Saybrook's future. Plaintiff maintains that O'Hara has articulated no legitimate privacy interest in these communications. Plaintiff should be entitled to explore policy differences between O'Hara and Saybrook, and the extent to which these policy differences led to O'Hara's resignation. Even if these communications were protected by Massachusetts privacy laws, the Court can authorize the disclosure of business communications that are relevant to the legal claims of a Massachusetts citizen.

While plaintiff believes that California privacy laws have no relevance to this discovery dispute, plaintiff contends that California law would also permit plaintiff to obtain discovery

8

regarding O'Hara's resignation. California has stricter privacy laws than Massachusetts. Nonetheless, O'Hara has failed to demonstrate how disclosure of communications regarding her resignation would violate her constitutional rights to privacy. Moreover, California law recognizes that private information may be subject to discovery. In Board of Trustees of Leland Stanford Junior University v. Superior Court of Santa Clara County, 119 Cal. App. 3d 516 (1981), the Court of Appeal of California observed there is a state interest in "facilitating the ascertainment of truth in connection with legal proceedings." Id. at 525. Where discovery of private information is relevant to litigation, there must be a "careful balancing" of the public need for discovery and the "fundamental right to privacy." Id. Here, the court ruled that the university should protect confidential records regarding its investigation of a professor, Dr. Lucas, finding these records were not directly relevant to the claims of Dr. Dong, a fellow professor. Id. at 526-27. However, the court also authorized the disclosure of the personnel records of Dr. Dong, while ordering the redaction of certain confidential information. Thus, California law permits the discovery of personnel records and related information, provided that the courts conduct a balancing of competing interests. The court also observed that judges should impose "'partial limitations rather than outright denial of discovery' when by doing so otherwise affected constitutional rights may be preserved." Id. at 531-32.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' request for a protective order. Plaintiff asserts that she is entitled to obtain discovery on (1) Saybrook's knowledge and communications regarding licensure obstacles in other states; and (2) the reasons underlying O'Hara's resignation from Saybrook. To the extent that the Court determines that discovery may reveal private information about O'Hara, Plaintiff believes that the Court should fashion reasonable and partial limitations on discovery. These partial limitations could include: (i) a confidentiality order; and/or (ii) *in camera* review of any documents alleged to contain highly confidential information.

                              Respectfully submitted,

                              SUSAN COONEY,
                              By her counsel,

                              /s/ Paul W. Morenberg
                              _____
                              E. Steven Coren, BBO #
                              Paul W. Morenberg, BBO # 631101
                              Kerstein, Coren, Lichtenstein & Finkel, LLP
                              233 Needham Street
                              Newton, Massachusetts 02464
                              (781) 997-1600

Dated:      February 17, 2006