```
              BEFORE THE BOARD OF PSYCHOLOGY EXAMINERS
                       OF THE STATE OF IOWA
```

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION   * | |
| FOR LICENSURE OF:   * | |
|    * | FINDINGS OF FACT |
| JOHN CANNON, Ph.D.   * | CONCLUSIONS OF LAW |
|    (Appellant)   * | DECISION AND ORDER |
|    * | |
| DIA No: 04DPHPS001   * | |

STATEMENT OF THE CASE AND PROCEDURAL HISTORY

A hearing was held on May 14, 2004 at 9:02 a.m. in the Fifth Floor Hearing Room 518, Lucas State Office Building, Des Moines, Iowa, on the appeal of John Cannon, Ph.D. (the Appellant) from the denial of his application for licensure as a psychologist by the Board of Psychology Examiners. The Appellant appeared and was represented by attorney Ron Pogge. The State was represented by Assistant Attorney General Christen C. Odell. Martin Francis, Administrative Law Judge from the Iowa Department of Inspections and Appeals, presided at the hearing.

The following members of the Board were present for the hearing: Jacob O. Sines, Ph.D., Chairperson; Ana Lopez-Dawson, Ph.D.; Francisco Barrios, Ph.D.; Sandra Dirks, R.Ph., Public Member; Ruth Daggett, Public Member; Gerald Jorgensen, Ph.D.; and Susan Enzle, Ph.D., Secretary. The hearing was recorded by a certified shorthand reporter and was also tape-recorded.

After hearing the testimony and examining the exhibits, the Board convened in closed executive session, pursuant to Iowa Code section 21.5(1)(f)(1993) to deliberate. Deliberations continued on June 7, 2004 at 1:00 p.m. The Administrative Law Judge was directed to prepare the Board's decision, in conformance with their deliberations.

ISSUE

Whether the Board properly denied the Appellant's application for licensure as a psychologist on the basis that the Appellant's graduate degree program from which he obtained his Ph.D. did not meet the requirements of 645 IAC 240.3(2)(i) which requires that such a program include a minimum of one year's residency at the educational institution granting the doctoral degree.

DECISION

DIA Docket No: 04DPHPS001
Page 2


The Board upholds its prior decision to deny the application for licensure.

## THE RECORD

The record includes the Notice of Hearing, the testimony of witnesses, and the exhibits entered by the parties.

Sharon Dozier, Board Administrator was called as witness by the State.  The Appellant testified on his own behalf and also called Dr. William Bruff, Associate Vice-President for Academic Affairs of Saybrook Graduate School and Research Center.

The State also consented to the Appellant's request that the testimony of Dr. Kjell Rudestan, Associate Dean of the Fielding Institute to be produced in the companion hearing in the Appeal of Carol Hinman, Ph.D. (held later the same day) be included in the record of this matter as well.

The parties entered a number of exhibits for the Board's consideration.  The State entered Exhibits A through M.  The Appellant entered Exhibits 1 through 24.

## FINDINGS OF FACT

1.  The Appellant received his Ph.D. in psychology from Saybrook Graduate School and Research Center (Saybrook) on October 21, 2002. Saybrook is accredited by the Senior Colleges and Universities Commission of the Western Association of Schools and Colleges – a regional accrediting authority for high schools, undergraduate, and graduate learning institutions.  Saybrook is not accredited by the American Psychological Association (APA) or the Association of State and Provincial Psychology Boards (ASPPB).

2.  The Appellant filed an application for a license to practice psychology in Iowa on November 19, 2002 (Exhibits B & 4).  Prior to and following application, the Appellant and the Board corresponded concerning the Appellant's educational experience relative to licensure as a psychologist.  (See Exhibits C - H and Exhibits 1 – 3 & 5 – 12.)  In a letter dated May 9, 2003, the Board specifically requested that the Appellant provide information and documentation concerning his hours of residency study, verification of specific internship requirements completed, and specific courses completed.

DIA Docket No: 04DPHPS001
Page 3

3.  The Board requirements for licensure as a psychologist are set out in 645 IAC Chapter 240. The educational requirements are specifically set out in 645 IAC 240.3. When the Board receives an application there follows a two-step process for approval. The first step is to determine whether the doctoral program from which the applicant received a degree is accredited by the APA. If the program is so accredited, the Board Administrator may approve the application without review by the Board and the applicant may sit for examination. If the program is not APA accredited, the board reviews the application to determine if the doctoral program meets the requirements of 645 IAC 240.3(2)(a – k). The Appellant's application was reviewed by the Board as the Saybrook program is not APA accredited. (Testimony of Board Administrator Sharon Dozier.)

4.  In a letter dated September 7, 2003, the Board notified the Appellant that it had voted to deny his application for Iowa licensure based on the Board's determination that the Saybrook Graduate School psychology program from which the Appellant obtained his degree did not meet the criteria set out in 645 IAC 240.3(2)(i) – "The program shall require a minimum of one year's residency at the educational institution granting the doctoral degree" (Exhibits I & 13). In a letter dated November 14, 2003, the Board notified the Appellant that the denial letter should have been dated November 7, 2003 (Exhibits J & 14).

5.  Saybrook is a non-traditional learning institution that provides for its enrollees learning-at-a-distance through correspondence or e-mail. Saybrook presents its program as a doctoral program for mid-career professionals, in that it provides for a course of study leading to a degree that allows enrollees to remain in their present homes and employment. Saybrook does not have traditional campus facilities and rooms on site that are used for routine classroom instruction, and most of the learning takes place through enrollee reading of course materials and preparation of papers submitted to instructors for evaluation. Saybrook evaluates the work of most students on a credit/no credit basis, but allocates credit for completion of a course on the basis that "credit" would reflect a grade of B or above. (Testimony of Appellant and Dr. William Bruff.)

6.  Saybrook graduates have been licensed as psychologists in other jurisdictions that have a residency requirement similar to that in Iowa. Saybrook recognized the need to provide its students a means of meeting this residency requirement and requires enrollees to attend conferences twice yearly for six days meeting up to 12 hours a day with instructors and fellow students in seminars and informal settings. The Appellant attended eleven such conferences and received credit for 792 hours of residency at Saybrook. (Testimony of Appellant and Dr. William Bruff.)

DIA Docket No: 04DPHPS001
Page 4

7. Saybrook is aware that certain states will not admit its graduates to licensure as a psychologist and will not take students from those states (e.g. Massachusetts) if they intend to be licensed as a psychologist to practice in that state (Testimony of Dr. William Bruff).

8. The Fielding Institute (Fielding) is another non-traditional learning center offering a doctoral degree in psychology. Fielding students also obtain residency credits by attending semi-annual conferences meeting with instructors and fellow students in formal and informal settings. Fielding was accredited by the APA in 1991. Fielding began the process of seeking APA accreditation in 1986, and Fielding brought suit against the APA before accreditation was granted by that body. (Testimony of Dr. William Bruff and Dr. Kjell Rudestan.)

CONCLUSIONS OF LAW

1. 645 Iowa Administrative Code 240.3(2)(i) provides in relevant part:

> **240.3(2)** The program from which the doctoral degree in psychology is granted must be accredited by the American Psychological Association or shall meet all the following criteria:
> ...
> i. The program shall require a minimum of one year's residency at the educational institution granting the doctoral degree.

2. The Appellant asserts that the only matter at issue here is whether his hours of residency accumulated in his course of study at Saybrook meet the requirements of rule 645 IAC 240.3(2)(i). The Board agrees that the basis of denial was the failure to meet the requirements of that rule. The core of the Appellant's argument is that the rule does not require that residency at the educational institution be continuous. The Appellant also raises constitutional challenges to the Board's application of rule 240.3(2)(i) to deny him licensure on the basis of equal protection and due process. The Board rejects the Appellant's reasoning.

3. The Appellant argues that the language of the rule is ambiguous to the extent that it does not specify that the residency must be continuous. The Appellant contends that it would be improper for the Board to read such a meaning into the statute, but at the same time the Appellant desires that the rule encompass non-continuous residential instruction administered in time-intensive

DIA Docket No: 04DPHPS001
Page 5

settings.  The Appellant also would have the Board read the requirements of the rule to allow an "equivalent" period of non-continuous residency to be determined through a calculation of hours accumulated in special residency instruction in nontraditional programs as compared to the classroom hours of instruction received at a conventional institution.  Again, this is a considerable amount of additional language to be read into the text of the rule.

4.  The argument as to the meaning of the rule reflects that presented also by the appellant in the companion case heard this same day, The Appeal of Carol Hinman, Ph.D (Hinman).  In both cases Appellants cite to several rules of statutory construction, available also to construe administrative rules, and maintain that they should be applied to resolve the ambiguity.  The Appellants, however, find resolution of the ambiguity in the plain meaning of the words of the rule, which they contend do not prohibit a determination of residency as they urge.  The Board does not consider the text of the rule to be ambiguous, but in the face of Appellant's contentions the Board considers the better rule to be that cited by Counsel for the State in <u>TLC Health Care v. Iowa Dept. of Human Services</u>, 638 N.W. 2d 708 (Iowa 2002), at 713 (State's Brief at page 2).  There the Court held that the focus of statutory construction is to give effect to the intent of Congress; here the focus would be on the intent of the Board, which adopted the rule originally.

5.  The Appellant and Counsel for the State introduced a considerable amount of evidence concerning the quality of the Appellant's educational experience at Saybrook in the context of the hours of residency accumulated, but it is the Board's opinion that the rule as written contemplated residency only as actual attendance and study at the educational institution from which the degree was obtained over the course of an academic year.  It is also the Board's present opinion that there is a value to residential study at an institution over the course of a year that extends beyond the mere value of the hours spent in a classroom setting.  The rule in its present form was adopted at a time when dispersed study programs such as that offered by Saybrook were not at all common and of a dubious reputation.  This is the first occasion on which this issue has been presented to the Board, and while it is settled that administrative agencies may pursue policy through administrative rulings as well as through adoption of rules, it is the opinion of the Board that such a policy change would better be pursued through consideration of change to the rules.

6.  The value of policy change through administrative rule is exemplified by both Appellants' comparisons of their programs' residency requirements to that of the Fielding Institute, an

DIA Docket No: 04DPHPS001
Page 6

educational institution certified by the APA to offer a doctoral degree in psychology through a dispersed study program. Both Appellants concentrated their comparisons to Fielding's residential studies programs and the hours of attendance required and the reasoning employed by Fielding to equate their residential studies program to residency at a traditional institution. Nothing was explored in terms of any other aspects of that program that the APA may have considered in granting accreditation to that program. Neither Appellant offered any other such dispersed studies program as accredited by the APA. While both Appellants did cite that other states have admitted graduates of their institution to licensure with a similar residency requirement to that in rule 240.3(2)(i), there was no information as to the process followed by the licensing boards in those states to determine the eligibility of those graduates to licensure in those states. Clearly such dispersed studies programs represent a relatively new development in doctoral education that must be considered by the Board to guarantee that applicants of such programs are qualified for licensure. Just as clearly such consideration is within the duties of the Board to assure the public interest in licensure of candidates and the best setting to present the results of the Board's duty in that regard is through the rule-making process. It is also worth noting from the reasoning set out above that the so-called ambiguity in the rule language cited by both Appellants rises not so much from the language of the rule but from the change in circumstances in the increased availability of dispersed studies programs.

7. The constitutional challenges raised by the Appellant here were raised by Hinman in her appeal as well. Both Appellants contend that denying them licensure as a psychologist when a graduate of Fielding would be allowed to take the federal and state exams for licensure in Iowa without going before the Board constitutes a denial of equal protection. Both parties contend that this distinction between Fielding graduates and graduates of their institutions does not meet the rational basis test for such a distinction to be drawn on similarly situated graduates. Both Appellants maintain that it is irrational for the Board to grant licensure to Fielding graduates when their residency requirement is fulfilled in the same manner as that rejected by the Board on their application for licensure. As Counsel for the State points out, however, the focus of Appellants on the calculation of residency misses the point as the Appellants are not really similarly situated to Fielding graduates. Fielding graduates would be making application from an APA accredited institution and that is a profound difference in their situation from that of the Appellants. The evidence indicates that neither of the institutions attended by the Appellants has attempted to obtain APA accreditation for various reasons. That is the source of the distinction drawn by the Board and neither Appellant offered any substantial evidence

DIA Docket No: 04DPHPS001
Page 7

that differential treatment by the Board accorded to graduates from APA accredited institutions versus those of non-APA accredited institutions is irrational. The Board concludes that there was no denial of equal protection to the Appellant in its denial of licensure.

8. Both Appellants also raise a due process constitutional challenge to the Board's denial of licensure on the basis that the text of rule does not clearly require that residency be "continuous." Both Appellants essentially contend the rule does not give adequate notice of its meaning so that a person exercising common sense can sufficiently understand the statute and fulfill its proscription. (Citing to Pottawattamie County v. Iowa Dept. of Environmental Quality, 272 N.W.2d 452 (Iowa 1978) at 452.) The evidence adduced at both hearings, however, indicated that the Appellants realized that they might have difficulty obtaining licensure in Iowa due to the residency requirement in rule 240.3(2)(i). Both Appellants were also aware that they were pursuing their doctorate through a non-traditional studies program and the evidence indicates that they were aware that their programs were not accredited by the APA. Counsel for the State contended that due process requirements are met by notice and opportunity for hearing and both Appellants were accorded that. Both Appellants had opportunity to be heard before the Board on this issue. It is the conclusion of the Board that neither Appellant was denied due process in their application for licensure before the Board.

DECISION AND ORDER

IT IS THEREFORE ORDERED that the Board upholds its prior decision and the application of John Cannon, Ph.D. for a license to practice psychology in Iowa is DENIED.

**This Findings of Fact, Conclusions of Law, Decision and Order is approved by the board on July 14, 2004.**

**Judicial review of the Board's action may be sought in accordance with the terms of the Iowa Administrative Procedure Act. 645 IAC 11.29. The cost of preparing a copy of the record or of transcribing the hearing record shall by paid by the requesting party. 645 IAC 11.23.**