UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

*******************************************
| SUSAN COONEY, | ) |
| Plaintiff | ) |
| v. | ) |
| | ) |
| SAYBROOK GRADUATE SCHOOL AND | ) |
| RESEARCH CENTER, and | ) |
| MAUREEN O'HARA, Individually | ) |
| Defendants | ) |
*******************************************

## PLAINTIFF'S MOTION TO COMPEL DEFENDANTS O'HARA AND SAYBROOK TO SUBMIT TO FURTHER DISCOVERY

Pursuant to F.R.C.P. Rule 37, plaintiff Susan Cooney ("Cooney") moves the Court to compel defendants O'Hara and Saybrook to produce further responses to plaintiff's discovery requests and to order O'Hara to submit to three hours of further deposition questioning. In support of this motion, plaintiff relies on the following facts.

<u>O'Hara's Refusal to Testify about Her Resignation from Saybrook</u>

1.  Pursuant to an agreement between counsel, the depositions of Maureen O'Hara and five other Saybrook employees occurred in San Francisco during the week of March 13 to 17, 2006. The Court had ordered defendants to pay the travel and lodging expenses of plaintiff's counsel for the California depositions. Counsel for the parties agreed that Maureen O'Hara would be deposed on March 13 and 14th. The parties agreed to standard stipulations, including the reservation of all objections, except as to form of the question, to the time of trial.

2.  Before the California depositions, on or about February 3, 2006, defendants filed a motion for protective order to bar plaintiff from inquiring about O'Hara's resignation or

termination from Saybrook. Defendants argued that the circumstances of O'Hara's resignation or termination were subject to a confidentiality agreement. On or about March 1, 2006, the Court denied the motion for protective order. Even though the Court had denied O'Hara's motion for a protective order, defendants' counsel took no steps to advise plaintiff's counsel, prior to his arrival in California on March 12, 2006, that O'Hara would refuse to testify on this subject.

3.  At Dr. O'Hara's deposition, the witness refused to provide any testimony regarding the circumstances of her termination or her policy differences with Saybrook's board. See <u>Excerpt from O'Hara's deposition</u>, which is attached **Exhibit A**, pages 420 to 426. Plaintiff is entitled to explore the circumstances of O'Hara's resignation or termination and to inquire about policy differences between O'Hara and Saybrook's Board. Defendants should be required to bear all expenses related to the further deposition of O'Hara on this subject.

<u>O'Hara's Writings and Communications Regarding Licensure</u>

4.  In plaintiff's discovery requests to Saybrook and O'Hara, plaintiff requested that defendants produce all writing and communications regarding their knowledge of licensing obstacles. Specifically, plaintiff requested Dr. O'Hara's writing and communications regarding licensure of psychologists. Document Request No. 16 to O'Hara requested all "writings, research or other documents prepared by you on obstacles, challenges, or restrictions facing Saybrook graduates… seeking licensure as psychologists in Massachusetts or any other jurisdiction during the period of 1990 to the present." Plaintiff also requested that Saybrook produce O'Hara's writing and research (Doc. Request No. 15 to Saybrook). Both O'Hara and Saybrook indicated that they possessed no responsive documents.

5.  Both O'Hara and Saybrook failed to produce an important article by O'Hara entitled, "Wake Up Call for Humanistic Warriors." This article details Dr. O'Hara's knowledge, in or about 1994, of expected regulatory changes that would impact graduates from humanistic psychology programs, including Saybrook. A copy of this article, which was Exhibit 61 to O'Hara's deposition, is attached as **Exhibit B** to this motion. O'Hara writes:

> A third threat to humanistic psychology professionals comes from changes underway in accreditation criteria being applied by states for the right to sit for licensure.... <u>many state psychology boards are attempting to make graduation from a doctoral program on the designated list of the State and Provincial Psychology Board/National Register a prerequisite for licensure</u>... Increasingly, however, graduates from humanistically oriented schools are being refused licensing. <u>As it becomes clear that degrees from alternative schools will fare badly in the marketplace, graduate opportunities for humanistic studies will dry up</u>. (Emphasis added.)

6.  Defendants Saybrook and O'Hara had a duty to produce all documents in their possession, custody or control that constituted O'Hara's writings and research on licensing obstacles. Neither defendant produced O'Hara's article, which concerned regulatory changes that would impact graduates of humanistic psychology programs. O'Hara and Saybrook should be compelled to produce any other writings of O'Hara or other Saybrook faculty regarding licensing standards and licensing obstacles.

7.  O'Hara also failed to produce any e-mail or written communications with Saybrook faculty or staff regarding licensing issues in Massachusetts. Plaintiff requested these documents in Request No. 14 to O'Hara. In her deposition, O'Hara testified that she used e-mail routinely to communicate with her colleagues at Saybrook. However, O'Hara has been unable to

3

locate any e-mails or other documents regarding Saybrook communications about licensure issues.

  8. Saybrook and O'Hara should be compelled to produce all e-mail and written communications, including internal Saybrook e-mails and memoranda, regarding licensing issues in Massachusetts or other states. To the extent that further documents are produced regarding O'Hara's communications regarding licensing issues, plaintiff should be entitled to pursue further deposition questioning of O'Hara about this critical issue.

Saybrook's Failure to Produce and Describe Faculty Communications Regarding Licensure

  9. Saybrook has also failed to produce any e-mails or written communications regarding licensing issues in Massachusetts. Plaintiff requested these documents in Request. No. 12 to Saybrook. Saybrook's vice-president, Jack Reho, who coordinated Saybrook's production of documents and who signed Saybrook's interrogatory answers, acknowledged at his deposition that he failed to inquire if Saybrook faculty were aware of licensing obstacles in Massachusetts. Specifically, Reho acknowledges his failure to speak to Saybrook professors who had knowledge about these obstacles, including Thomas Greening and Ilene Serlin. See Excerpt from Jack Reho's Deposition, which is attached as **Exhibit C**, pages 125 to 140.

  10. Specifically, Saybrook failed to disclose letters from Dr. Greening and Irene Serlin, supporting Richard Francis' application to become licensed in Massachusetts. See also Plaintiff's Motion for Leave of Court to Depose Thomas Greening. Saybrook failed to produce any e-mails or written communications between Saybrook faculty and Massachusetts students regarding licensure. Saybrook should be compelled to make inquiry of all faculty who advised

4

their Massachusetts students and graduates, and to describe and to disclose communications regarding Massachusetts licensure standards or obstacles to licensure.

Saybrook's Failure to Disclose Documents Regarding Its Efforts to Monitor Licensing Standards

11.    About eighteen months after Cooney's graduation, Saybrook produced a letter to all students in February, 2004 regarding Saybrook's knowledge of licensing obstacles in eighteen to twenty-five states. Defendants produced no other documents related to this letter, such as research documents, prior drafts, e-mails, or any other written communications. It defies logic that Saybrook would issue a critically important communication regarding licensing obstacles in eighteen to twenty-five states without any communications between faculty or administrators. O'Hara claimed that Saybrook based this report on anecdotal reports from students and lacked any specific research on licensing obstacles.

12.    O'Hara's deposition testimony is contradicted by the testimony of Alan Vaughan, who testified that he prepared a document on licensing standards and obstacles in 2003. Vaughan testified that he prepared a licensing information bulletin for Saybrook's web site in the Spring of 2003. See Excerpt from Vaughan's Deposition, which is attached as **Exhibit D**, pages 16 to 19. Nevertheless, defendants have failed to produce this Dr. Vaughan's web information bulletin concerning Saybrook's knowledge of licensing standards and restrictions in various states. Vaughan's research is clearly responsive to plaintiff's discovery requests. Request Nos. 12 and 13 seek information on licensing standards in Massachusetts and other states.[1] Saybrook should

---

[1] Document Request No. 12 to Saybrook seeks the following documents: "All Saybrook communications (including internal documents) relating to any statutory, regulatory, or other restrictions affecting the licensure of Saybrook graduates as psychologists in Massachusetts during the period of 1990 to the present." Request No. 13 is similar, requesting information pertaining to licensure standards in other states.

be compelled to produce Vaughan's licensing information bulletin as well as any other Saybrook e-mails, reports, memoranda, or notes related to licensing standards.

13.   At the deposition of Alan Vaughan, plaintiff also learned that Vaughan reviewed and then discarded materials from the Consortium of Diversified Psychology Programs ("CDPP"), which is a committee through which Saybrook and other schools monitored licensing standards in various states.  Vaughn testified that he joined Saybrook in early 2003, and he conducted research on licensing standards in various jurisdictions in 2003.  Vaughan testified that he retained the CDPP documents for "three years and they just---I wasn't really using them."  See Excerpt from Vaughan's Deposition, **Exhibit D**, pages 26 to 27.  Vaughan's testimony suggests that he possessed the CDPP documents until 2006, which was long after Cooney filed her complaint and requested discovery from Saybrook regarding CDPP communications.  Vaughan's testimony suggests that he discarded the CDPP documents after plaintiff requested them from Saybrook.  Vaughan was unable to describe the contents of the documents he discarded.

13.   Even though both O'Hara and Saybrook were members of the Consortium, neither defendant produced any documents regarding CDPP's activities between January, 1996 and the present.  O'Hara and Saybrook should be compelled to make further efforts to locate CDPP documents.  To the extent that further CDPP documents are discovered, plaintiff should be entitled to depose O'Hara regarding these communications.

COMPLIANCE WITH LOCAL RULES 7.1(A)(2) AND 37.1(A)

14.   On or about April 10, 2006, counsel for plaintiff and Saybrook discussed the discovery disputes described in plaintiff's motion to compel.  Despite a good faith consultation,

counsel were unable to narrow their areas of disagreement.

## CONCLUSION

For the reasons outlined above, the Court should compel O'Hara and Saybrook to produce further discovery responses concerning the subjects outlined above. The Court should also compel O'Hara to submit to three hours of further deposition questioning on issues related to her resignation and to her writings and communications regarding licensing obstacles. Plaintiff has enclosed a Proposed Order, which is attached as **Exhibit E**.

**WHEREFORE**, plaintiff requests that the Court compel defendants to produce further discovery responses and order Dr. O'Hara to appear for up to three (3) hours of further deposition questioning, as outlined in the Proposed Order.

Respectfully submitted,

SUSAN COONEY,
By her counsel,

/s/ Paul W. Morenberg, BBO # 631101

_____
E. Steven Coren, BBO #
Paul W. Morenberg, BBO # 631101
Kerstein, Coren, Lichtenstein & Finkel, LLP
60 Walnut Street, 4th Floor
Wellesley, Massachusetts  02481
(781) 997-1600

Dated:        April 10, 2006