**Page 125**

1  produce e-mails regarding issues of licensure?
2      MS. GARCIA: Objection.
3      THE WITNESS: No.
4      MR. MORENBERG: Q. In your efforts to
5  locate documents responsive to these requests, did
6  you ask Saybrook faculty and staff to produce e-mails
7  related to the subject of accreditation?
8      MS. GARCIA: Objection.
9      THE WITNESS: I did not communicate with all
10 Saybrook staff and all Saybrook faculty.
11     MR. MORENBERG: Q. Did you communicate with
12 any Saybrook staff and faculty and not in the
13 presence of counsel whereby you specifically
14 requested their e-mails regarding the subject of
15 accreditation.
16     MS. GARCIA: Objection.
17     THE WITNESS: I'm sorry. I don't recall
18 being required to answer all questions about all
19 accreditation.
20     MR. VARTAIN: You're right. You're right.
21 But answer his question, if you can. Read the
22 question back.
23     (The record was read back as follows:
24     Q. "Did you communicate with any Saybrook
25 staff and faculty and not in the presence of

**Page 126**

1  counsel whereby you specifically requested their
2  e-mails regarding the subject of accreditation.")
3      MS. GARCIA: Objection.
4      THE WITNESS: No.
5      MS. GARCIA: Do you need a break by the way
6  or are you okay?
7      THE WITNESS: No, I'm okay.
8      MR. MORENBERG: Q. Did you specifically
9  request e-mails from Saybrook faculty and staff
10 regarding communications to or from Saybrook students
11 or graduates from Massachusetts regarding licensing
12 problems?
13     MS. GARCIA: Objection.
14     THE WITNESS: I asked the people who
15 controlled Saybrook's official files for information
16 with respect to correspondence related to
17 Massachusetts students.
18     MR. MORENBERG: Q. But you haven't
19 addressed e-mail. Did you make any specific request
20 of Saybrook faculty and staff and not in the presence
21 of counsel whereby you asked them to search for
22 e-mails regarding communications to or from
23 Massachusetts students regarding licensing obstacles?
24     MS. GARCIA: Objection.
25     THE WITNESS: Yes.

**Page 127**

1      MR. MORENBERG: Q. When did you do that?
2      A. At the time that I made requests of
3  Dr. Bruff or any other person relating to the various
4  requests for production of equipment -- response
5  material, I asked them to check all possible sources.
6      Q. Did you make inquiries of all faculty
7  advisers to Saybrook students from Massachusetts
8  regarding e-mail or other communications regarding
9  licensing obstacles?
10     MS. GARCIA: Objection.
11     THE WITNESS: No.
12     MR. MORENBERG: Q. And did you make any
13 inquiries of Dr. Greening regarding e-mail
14 communications to or from Massachusetts students or
15 graduates from Saybrook regarding licensing
16 obstacles?
17     MS. GARCIA: Objection.
18     THE WITNESS: No.
19     MR. MORENBERG: Q. Are you satisfied, as
20 you sit here today, that there are no e-mail
21 communications to or from Saybrook faculty or staff
22 regarding licensing obstacles encountered by
23 Massachusetts students at Saybrook?
24     MR. VARTAIN: Objection.
25     THE WITNESS: No.

**Page 128**

1      MR. MORENBERG: Q. Would you agree Attorney
2  Vartain those are relevant to this complaint?
3      MR. VARTAIN: I didn't even know what you're
4  talking about.
5      MS. GARCIA: The answer actually was fine.
6  I am absolutely fine with the response to that
7  question.
8      MR. VARTAIN: What are you asking me?
9      MR. MORENBERG: I believe the witness has
10 testified that he's not satisfied, he's determined
11 that there are no e-mails regarding licensing
12 obstacles.
13     MS. GARCIA: That wasn't your question and
14 why don't you read the question back, again, please.
15     (The record was read back as follows:
16     Q. "Are you satisfied, as you sit here
17 today, that there are no e-mail communications to
18 or from Saybrook faculty or staff regarding
19 licensing obstacles encountered by Massachusetts
20 students at Saybrook?
21     A. No.")
22     MR. MORENBERG: No, he's not satisfied.
23     MS. GARCIA: He didn't. His answer was no.
24     MR. MORENBERG: The question was, are you
25 satisfied --

**Page 129**

MS. GARCIA: And the answer was "no."

MR. MORENBERG: No, he's not satisfied.

3  MS. GARCIA: Whatever you want. I'm okay to
4  continue.
5  MR. MORENBERG: Sure. We're going to
6  continue.
7  Q. Mr. Reho --
8  THE WITNESS: I would like to consult with
9  counsel for a minute.
10  MR. MORENBERG: No, I would like to finish
11  up this line in inquiry. Mr. Reho, I just want to
12  clarify your previous answer.
13  Q. Is it fair to say that you can't say
14  definitively that there exists no e-mails to or from
15  Saybrook faculty or staff concerning licensing
16  obstacles encountered by Saybrook students or
17  graduates from Massachusetts?
18  MR. VARTAIN: Objection.
19  MR. MORENBERG: Q. Do you want it read back
20  to you?
21  A. No.
22  Q. Okay.
23  A. I'm satisfied that all official
24  correspondence between Saybrook and Massachusetts
25  students had been provided to you that we have

**Page 130**

1  available.
2  Q. And --
3  A. I am not satisfied that any personal
4  correspondence which took place outside of Saybrook
5  system and was of an informal or personal nature
6  between a faculty member and a student. I have no
7  idea how or where or when that may have taken place
8  at any time in history.
9  Q. And when you say outside of Saybrook's
10  system, are you referring to communications that were
11  not done on Saybrook e-mail accounts?
12  MS. GARCIA: Objection.
13  THE WITNESS: Yes. Actually.
14  MR. MORENBERG: But you testified that you
15  made no inquiry of all faculty advisers to
16  Massachusetts students and graduates about their
17  e-mail communications regarding licensing obstacles
18  in Massachusetts, correct?
19  MS. GARCIA: Objection.
20  MR. VARTAIN: Objection. Now you're
21  mischaracterizing his testimony.
22  MR. MORENBERG: What you're doing is totally
23  improper. The witness can respond to the question.
24  The question is proper.
25  MR. VARTAIN: I am not going to let him

**Page 131**

1  respond to what his prior testimony was because
2  that's another record. If you want to ask another
3  question, that's fine, but you are not allowed to --
4  and it is the rules in this district you can't -- and
5  the court would grant my motion for protective order
6  -- you can't ask the witness what his testimony was
7  earlier in the proceeding. That's been litigated and
8  it's up on appeal in the --
9  MR. MORENBERG: Unfortunately we are not
10  operating under California rules of procedure and
11  you're incorrect that I can't do that in
12  Massachusetts.
13  MR. VARTAIN: Well, I'm going to instruct
14  the witness not to answer any more questions about
15  what his testimony was previously in this deposition.
16  I won't instruct him as to any new questions you want
17  to ask.
18  MR. MORENBERG: Mr. Reho --
19  MR. VARTAIN: And I actually think you're
20  now getting right under the border, counsel, of
21  harassment.
22  MR. MORENBERG: You're objections throughout
23  this deposition and you're speaking objections have
24  been totally inappropriate. And I think you're
25  getting on the edge of sanctions.

**Page 132**

1  Q. Mr. Reho, I will ask you the question,
2  again. Did you contact all Saybrook faculty advisers
3  to Massachusetts students or graduates who reside --
4  strike that.
5  Did you contact all Saybrook faculty
6  advisers to students or graduates of Saybrook who
7  reside in Massachusetts to determine if they have
8  received or sent any e-mails including Saybrook
9  e-mails regarding licensing obstacles in
10  Massachusetts?
11  MS. GARCIA: Objection.
12  THE WITNESS: No. Can I take a five minute
13  break?
14  MR. MORENBERG: Yeah.
15  (Short break. 1:55-2:03)
16  MR. MORENBERG: Mr. Reho, are you aware of
17  any Saybrook administrators other than yourself who
18  made inquiries to Saybrook's faculty advisers to
19  Massachusetts students or graduates of Saybrook who
20  may have encountered licensing obstacles in
21  Massachusetts?
22  MR. VARTAIN: Objection.
23  MR. MORENBERG: Read me back the question.
24  (The record was read back as follows:
25  Q. "Mr. Reho, are you aware of any

GOLDEN GATE REPORTERS LLC - 800-442-4611
JOHN REHO - 3/16/06

**Page 133**

1  Saybrook administrators other than yourself who
2  made inquiries to Saybrook's faculty advisers to
3  Massachusetts students or graduates of Saybrook
4  who may have encountered licensing obstacles in
5  Massachusetts?")
6      THE WITNESS: I'm sorry. Is there some way
7  you might restate that question.
8      MR. MORENBERG: Sure I'll withdraw the
9  question. I will ask a different one.
10         (Plaintiff's Exhibit 80, Plaintiff's
11            first set of interrogatories, was
12            marked for identification.)
13     MR. MORENBERG: Q. Do you recognize Exhibit
14  80?
15     A. Yes.
16     Q. Can you look at page 28 on the back of the
17  document. Did you sign that under penalties of
18  perjury?
19     A. Yes.
20     Q. If you can look at page 7, Interrogatory No.
21  6 and read it to yourself.
22     MS. GARCIA: For him to answer any questions
23  on that because it refers to Interrogatory No. 5, he
24  will also need to read Interrogatory No. 5.
25     MR. MORENBERG: Sure. That's fine.

**Page 134**

1     A. Okay.
2     Q. Would you agree that in your answer to this
3  interrogatory the only Massachusetts student you
4  identify who encountered licensing obstacles was
5  Richard Francis?
6     A. Yes.
7     MS. GARCIA: Objection.
8     THE WITNESS: Yes.
9     MR. MORENBERG: Q. Did you contact all
10  Saybrook faculty advisers to other Massachusetts
11  students -- strike that.
12     Did you contact all faculty advisers to
13  Saybrook students or graduates from Massachusetts to
14  determine if any of their advisees encountered
15  licensing obstacles in Massachusetts?
16     MS. GARCIA: Objection.
17     THE WITNESS: No.
18     MR. MORENBERG: Q. So how are you able to
19  answer that Dr. Francis is the only Massachusetts
20  student or graduate of Saybrook who encountered
21  licensing obstacles in the Commonwealth of
22  Massachusetts?
23     MS. GARCIA: Objection.
24     MR. VARTAIN: Counsel. He has signed a
25  verification.

**Page 135**

1     MR. MORENBERG: You have no right to make
2  this speeches. And you should stop doing so. It's a
3  legitimate question. What you want to accomplish is
4  achieved by the word objection.
5     THE WITNESS: Can you read that back please.
6     (The record was read back as follows:
7     Q. "So how are you able to answer that
8  Dr. Francis is the only Massachusetts student or
9  graduate of Saybrook who encountered licensing
10  obstacles in the Commonwealth of Massachusetts.
11     MS. GARCIA: Objection.
12     THE WITNESS: No.
13     MR. MORENBERG: Q. So how are you able
14  to answer that Dr. Francis is the only
15  Massachusetts student or graduate of Saybrook who
16  encountered licensing obstacles in the
17  Commonwealth of Massachusetts?")
18     THE WITNESS: That was the only student for
19  whom we had official information and documentation in
20  our files.
21     MR. MORENBERG: Q. But you would agree that
22  you didn't make inquiry of other Saybrook faculty
23  advisers to other Saybrook students and graduates
24  from Massachusetts, correct?
25     MS. GARCIA: Objection.

**Page 136**

1     THE WITNESS: Yes.
2     MR. MORENBERG: Q. So is it fair to say
3  that you can not be sure that you've produced --
4  strike that.
5     Is it fair to say that you cannot be sure
6  that you've identified all Saybrook students or
7  graduates from Massachusetts who communicated
8  licensing obstacles to Saybrook faculty advisers?
9     MS. GARCIA: Objection.
10    THE WITNESS: Yes.
11    MR. VARTAIN: Where are you at, counsel, in
12  your timing?
13    MR. MORENBERG: I am wrapping up. I think
14  you're making things worse by making these speaking
15  objections that take a minute for each one.
16    MR. VARTAIN: How much more do you have?
17    MR. MORENBERG: I think I can wrap up in
18  fifteen to twenty minutes.
19    MR. VARTAIN: Do you want a break?
20    THE WITNESS: No, I'm fine. I'm okay.
21  Thank you.
22    MR. MORENBERG: Maybe sooner.
23    Q. I'm wrapping up. Are you satisfied that
24  Saybrook produced all official correspondence from
25  its staff or faculty that concerned licensing

**Page 137**

obstacles encountered by students or graduates to Saybrook who reside in Massachusetts?
3    MS. GARCIA: Objection.
4    THE WITNESS: Yes.
5    MR. MORENBERG: If I could turn your
6 attention to Exhibit 50. Maureen O'Hara's
7 deposition.
8    Q. Mr. Reho -- before you go through that I'm
9 haven't asked him any questions yet.
10    MS. GARCIA: Yes, but you did ask him to
11 turn your attention to Exhibit 50. So he's allowed
12 to look at that unless you tell him not to.
13    MR. MORENBERG: I rather you not look at it
14 yet.
15    MS. GARCIA: Okay.
16    MR. MORENBERG: Q. Did you have any
17 telephone discussions or in-person discussions with
18 Professor Serlin regarding any communications she
19 sent on behalf of a Saybrook student or graduate who
20 encountered licensing obstacles in Massachusetts?
21    MS. GARCIA: Objection.
22    THE WITNESS: No.
23    MR. MORENBERG: Q. Did you have any e-mail
24 communications with Dr. Serlin requesting that she
25 produce documents of any communications on behalf of

**Page 138**

1 a student or a graduate of Saybrook from
2 Massachusetts regarding licensing obstacles
3 encountered by that student in Massachusetts?
4    MS. GARCIA: Objection.
5    THE WITNESS: No.
6    MR. MORENBERG: Can you read back the first
7 part of the question.
8    (The record was read back as follows:
9    Q. "Did you have any e-mail communications
10    with Dr. Serlin requesting that she produce
11    documents of any communications")
12    MR. MORENBERG: Okay. That's fine.
13    Q. Did you have any telephone or in-person
14 discussions with Dr. Greening and, of course, not in
15 the presence of counsel by which you asked Dr.
16 Greening to produce documents regarding Saybrook
17 students or graduates who reside in Massachusetts who
18 had difficulty obtaining licensure in Massachusetts?
19    MR. VARTAIN: Objection.
20    THE WITNESS: No.
21    MR. MORENBERG: Turning your attention now
22 to Exhibit 50. If you could look at -- let's mark as
23 Exhibit -- page 8 of the document. If you could look
24 at the three pages starting -- strike that.
25    I'm directing your attention to a letter

**Page 139**

1 from Eileen Serlin on Saybrook letterhead to the
2 Board of Registration of Psychologists dated December
3 3, 2000. Could you look at that document, please.
4    A. Yes.
5    Q. Would you agree that you did not produce
6 this document on behalf of Saybrook?
7    A. Yes.
8    Q. To your knowledge, did anyone at Saybrook
9 produce this document?
10    A. No.
11    Q. If you could turn to what's marked as
12 exhibit -- strike that.
13    MR. VARTAIN: In my shortcut, I am happy to
14 tell you -- you might not know who that person is --
15 in terms of Professor Serlin. So I am happy to state
16 it on the record --
17    MR. MORENBERG: There is really no point to
18 what you're saying.
19    MR. VARTAIN: Fine. You're going to go down
20 a wild goose chase.
21    MR. MORENBERG: Q. Do you know who
22 Dr. Serlin is?
23    A. Yes.
24    Q. Is she alive?
25    A. Dr. Serlin is a former faculty member at

**Page 140**

1 Saybrook. And, to my knowledge, she's alive.
2    Q. Is Dr. Greening alive?
3    A. Yes. Dr. Greening is still alive.
4    Q. Is Dr. Greening a current faculty member of
5 Saybrook?
6    A. Dr. Greening is currently a faculty member
7 of Saybrook.
8    Q. Did you produce a letter by Dr. Greening
9 regarding licensing obstacles encountered by Richard
10 Francis in the Commonwealth of Massachusetts?
11    A. No. I did not produce his personal letter.
12    Q. Why didn't you produce it?
13    MS. GARCIA: Objection.
14    THE WITNESS: I produced all official
15 Saybrook documentation that we had in the students'
16 files.
17    MR. MORENBERG: Q. But you didn't talk to
18 Dr. Greening to see if he had any documents on behalf
19 of Richard Francis and concerning his candidacy for
20 licensure before the Massachusetts Board of
21 Registration of Psychologists, did you?
22    MS. GARCIA: Objection.
23    THE WITNESS: You've asked me that before.
24 The answer is the same, no, I have not had
25 conversations with Dr. Greening about Dr. Francis.