# EXHIBIT C



**Elizabeth L. Leonard, Ph.D.**
**Neurocognitive Associates, P.C.**
20 Hope Avenue Suite 601
Waltham, MA 02453
Phone: 781.788.8484 Fax: 781.788.8485
www.neurocognitiveassociates.com

Child and Adult Psychology
Clinical Neuropsychology
Forensic Neuropsychology

## REPORT OF NEUROPSYCHOLOGICAL CONSULTATION

**Name:   Cooney, Susan**
**Dates of Record Review: 5/25/06, 5/27/06, 5/29/06**

I.  Basis for Referral:
    This record review was requested by Attorney Grace V. Bacon Garcia from the firm of Morrison Mahoney LLP in the matter of:

    <u>Susan Cooney v. Humanistic Psychology Institute et al.</u>
    U.S. District Court, Civil Action No. 04 11572 JLT

    Attorney Garcia represents the Defendants Saybrook Graduate School and Research Center, and Maureen O'Hara, Individually. Attorney Garcia requested a record review and an opinion based on that review for the purpose of determining whether there was evidence to support Dr. Cooney's allegation that she suffered "emotional harm" in regard to the above action.

II. Summary and Conclusions:

    Dr. Cooney is seeking damages for emotional distress as stated in her Amended Civil Complaint and Demand for Jury Trial and noted by Items 56, 57, 58, 59 and 60 for alleged negligent infliction of emotional distress against Saybrook. The allegation of emotional distress, as outlined in the Amended Civil Complaint is not substantiated by review of the clinical file obtained from her treating psychiatrist, David Reisen, MD.

*Neuropsychological Record Review: Cooney, Susan*
*Page 2 of 8*

Susan Cooney sought psychiatric consultation with Dr. David Reisen on 4/19/05, 5/16/05 and 5/26/05. The last visit occurred on 5/26/05 and clinical improvement was noted. In her deposition testimony on January 27, 2006, Dr. Cooney states that she saw Dr. Reisen "probably six" or up to eight visits (page. 294, line 14). There are only three patient encounters listed in Dr. Reisen's record.

There were significant stressors in Dr. Cooney's life consisting of life circumstance problems with her family, two failed marriages and a history of infertility and employment issues outside the scope of her graduate program. These factors would all contribute to the psychological symptoms as described to Dr. Reisen. Her educational problems in obtaining psychology licensure cannot be solely identified nor attributed as the proximate cause of her alleged emotional injuries as stated in Item 57 of her amended complaint.

In reviewing Dr. Reisen's notes there is no complete documentation of Dr. Cooney's psychiatric history. A complete diagnostic interview is not noted nor is a mental status examination. Critical information pertaining to Dr. Cooney's mental health that is not in the clinical record includes:

1. Chief complaint and reason for referral;
2. History of current concerns;
3. Past psychiatric history including use of psychotropic medications and indication of any prior psychiatric hospitalizations;
4. History of substance abuse;
5. Past social and developmental history;
6. Family history of psychiatric illnesses;
7. Medical history and systems review;
8. Mental status examination
9. Multiaxial diagnosis with current and past Global Assessment of Functioning
10. Treatment plan

From the record it appears that Dr. Cooney sought brief psychotherapy for symptoms of a mildly depressed mood (dysthymia) associated with mild sleep disturbances and mild anxiety. The onset of her symptoms is not documented. There is documentation to support symptom formation in response to several stressors including psychosocial events within her family of origin, her failed marriages and history of infertility, anticipated stressors associated with graduate education (dissertation research) and anger and disappointment that her graduate education at the Humanistic Psychology Institute et al. dba Saybrook was not compatible with requirements to obtain licensure as a

psychologist in the Commonwealth of Massachusetts although she was awarded a Ph.D. in psychology in 2002.

No single clinical complaint is present that would support an allegation that her symptoms resulted solely from distress associated with her doctoral program alone and/or the anticipation that upon completion of her degree she would be eligible to sit for the Psychology Licensure Examination in Massachusetts.

Only her current concerns are documented. There were no screening measures, like the Beck Depression and Anxiety Scales, administered to measure the clinical magnitude of her depression or anxiety. The onset, duration and intensity of her symptoms were not recorded. A comprehensive assessment of her psychological distress was not recorded.

Review of Dr. Reisen's file notes, at best, mild depression accompanied by mild anxiety and transient disturbances in sleep that occurred over the approximately six week period when she was seen. At the time of her last visit on 5/26/06 she was better and elected not to return for care. Although Dr. Cooney experienced some mild symptoms that may have responded to treatment with antidepressant and sleep medication, she elected not to pursue any psychopharmacological intervention for symptom relief. On the basis of three visits, she did not engage in a significant period of psychotherapy that addressed the origin of her symptoms, intrapsychic or behavioral interventions for symptom relief. Based on Dr. Reisen's notes, it appears that three office visits were sufficient to establish clinical improvement and no further treatment was sought. This statement presumes that there are no other treating mental health clinicians of record.

An individual who is experiencing emotional distress is significantly impaired by prominent symptoms of depression with neurovegatative findings, anxiety, and feelings of despair marked by a sense of helplessness and hopelessness which interferes with daily activities nearly daily for a minimum of two weeks and can persist for several months with and without treatment. In more severe cases, individuals may experience active and/or passive suicidal and homicidal ideation and psychosis. None of these symptoms are documented in Dr. Reisen's clinical record.

During the time that Dr. Cooney sought consultation with Dr. Reisen she was able to maintain her daily functions and usual activities. These included exploring employment opportunities, engaging in day trading, selling real estate and maintaining adequate social relationships.

*Neuropsychological Record Review: Cooney, Susan*
*Page 4 of 8*

In Exhibit 26, Plaintiff Susan Cooney's Sworn Statement Pursuant to Local Rule 26.1 (B), Dr. Cooney states under oath in Section b, Number 12 that Dr. Reisen is "expected to testify about the devastating loss" that Dr. Cooney allegedly experienced "due to her inability to gain psychology licensure in Massachusetts." The term "devastating loss" as it relates to psychologically based symptoms implies serious, debilitating symptoms of sufficient duration and intensity to prevent an individual from fully functioning consistent with their premorbid state of mental health. Based on review of the treatment provided by Dr. Reisen, there is nothing in his clinical record to indicate to a duly licensed mental health professional, that Dr. Cooley experienced any symptoms of this intensity, magnitude or duration. There is no psychological evidence to support Dr. Cooney's allegations of emotional harm.

The allegations made in Dr. Cooley's deposition testimony on January 27, 2006 opine that her experience in not being able to become licensed as a psychologist in Massachusetts resulted in a terrible loss to her life (p. 289, line 21). Yet when afforded a remedy that might lead to licensure by obtaining additional training, Dr. Cooney failed to exercise this option that likely would have allowed her to qualify to sit for the licensure examination. This disclosure was made during a visit with Dr. Reisen regarding matriculation at the Massachusetts School of Professional Psychology. Further, Dr. Cooley opines that she "suffered severe emotional anxiety" (p. 291, line 8) while writing her doctoral dissertation.

It is acknowledged that dissertation research and writing is almost universally stressful for all psychology doctoral students who are required to revise and re-write their thesis as a major requirement for obtaining a doctoral degree. There is no indication in the materials provided by defense counsel, that Dr. Cooney's experience was more traumatic than that generally experienced by doctoral candidates. Therefore, there is no substantive reason to conclude that Dr. Cooney's experience was consistent with cause to attribute her dissertation "re-writes" to severe emotional anxiety any more than they would be to most doctoral candidates. Further if her anxiety was severe enough as to be significantly impairing, there is no indication of the level of severity. It is not uncommon for graduate students to experience stress during this phase of their doctoral education. Many students who are stressed consult with their advisor and if necessary are referred to a mental health clinician for evaluation and to learn stress reduction techniques that enables them to complete their dissertation in a timely manner. The record does not reflect that then graduate student, Susan Cooley, was that symptomatic.

*Neuropsychological Record Review: Cooney, Susan*
*Page 5 of 8*

This opinion is supported by the following:

III. <u>Summary of Bases for Opinion:</u>

    A. <u>Records Reviewed</u>

1. Amended Civil Complaint and Demand for Jury Trial;
2. Defendant's Amended Answer to Plaintiff's Amended Complaint and Jury Demand;
3. Saybrook Institute Interim Catalog 1994-1995;
4. Deposition of Susan Cooney taken on 1/26/06, 1/27/06;
5. Records produced by David Reisen, MD;
6. Deposition Exhibits 1-28;
7. Saybrook's Production of Document Bate Stamped S01784-S01804; S01809-SO1925; SO 1966-SO 1967; SO2042-SO2045; SO2071-SO2084;
8. Deposition of Dennis K. Norman taken on 5/2/06

    B. <u>Review of Psychiatric History:</u>

Susan Cooney consulted psychiatrist David Reisen, MD who practices in Suite 501 at 209 Harvard Street in Brookline, MA on 4/19/05. Results of the initial consultation reveal an incomplete Information Sheet which identifies the patient as Susan Cooney whose occupation is listed as Real Estate, Town and Country Properties. At the time of this visit Dr. Cooney listed her primary care physician as Dr. Catherine Taylor at Massachusetts General Hospital (MGH). She was not taking any medication. Past illnesses were listed as a "basal cell" 25 years prior to this evaluation. There is a drug allergy to Penicillin.

The total record from Dr. Reisen includes:

1) Letter to Attorney Garcia dated 12/6/05 noting production of records in response to an affidavit;
2) Information Sheet from Dr. Reisen, pages 1-2;
3) Treatment record with entries dated 4/19/05, 5/16/05, 5/26/05
4) Billing record
5) Affidavit of Keeper of Records dated 12/6/05

The chart entries are handwritten notes which will be summarized based on what is contained in the clinical record as reviewed by Dr. Reisen's signed notes.

*Neuropsychological Record Review: Cooney, Susan*
*Page 6 of 8*

Dr. Cooney was initially seen on 4/19/05. At that visit Dr. Reisen obtained a partial psychiatric history. This information stated that Dr. Cooney married at least twice and amicably divorced her last husband Paul Durr. The record reflects that she neglected Paul and worked on a dissertation and was on the 'fast track at MGH. The record states that they (MGH) asked Dr. Cooney to be a psychologist and she got her Ph.D. There is a note reflecting Trauma Care Givers and the Road to Resiliency. The record reflects that this occurred in 10/02 at which time "MGH bid for her." Further stated are the comments that she was unable to obtain a license because of the school she went to and that this was not pursued by Saybrook. Dr. Cooney reported to Dr. Reisen that the new head of psychology, Norman Sanders, didn't like Saybrook. There is a fragmentary sentence that reflects that Dr. Cooney lost her marriage, miscarried and lost her job. She reported that she was a LCSW who never obtained independent licensure.

The history notes that the Massachusetts School of Professional Psychology (MSSP) was willing to admit her but that did not work out. She entertained an idea of becoming licensed in New York. Dr. Cooney was involved in day trading and had applied for teaching positions. She did not know what to do with the rest of her life because her goal was to get licensed and is currently suing Saybrook.

The record reflects that her attorney contact is Dan Finn in Newton and that she has $180,000.00 in school loans, having spent nine years in school. Notation is made that Dr. Cooney would like her tuition money returned and that she finds herself exhausted. The word dysthymic is used but it is not clear whether this is a description that was made by Dr. Cooney or a clinical observation/diagnosis made by Dr. Reisen.

The family history indicates that Dr. Cooney's father had a large company and was left quadriplegic in a car accident and was disabled. The record reflects that the "company was in trouble and that Cathy and Diane refused to cover the company." Dr. Cooney "stepped in" and experienced overwhelming stress related to her family responsibilities, she stated "I was like a stuck rat-I couldn't abandon my parents."

The intake note reflects that Dr. Cooney feels hurt over the loss of her Ph.D., career and doesn't want to start again. She remarked that she felt that she had been on a "pretty good track and is currently blackballed at MGH." The entry concludes with a statement of earnings for the three years prior to this initial visit. She reported that she gets along with her sisters and sees her ex-husband from "time to time."

A mental status examination was not performed by Dr. Reisen. The record reflects that Dr. Reisen discussed the possibility of prescribing antidepressant and sedative/hypnotic medications but Dr. Cooney declined to pursue this treatment option. Notations were made of sleep disturbance with a sleep onset latency of one hour and one night time awakening

*Neuropsychological Record Review: Cooney, Susan*
Page 7 of 8

about 4:30 AM and difficulty with day time napping. There is a notation that Dr. Cooney has "dealt with a Karen Schwartz at the Massachusetts Board."

No other treatment recommendations were offered. There was no multiaxial diagnosis made regarding standard psychiatric diagnostic procedures. No plan for follow-up visits was established.

The next office appointment occurred on 5/16/05. At that visit Dr. Cooney reported that she was interacting with her extended family. There is mention of multiple night time awakenings and an apparent lack of energy when Dr. Cooney is sleep deprived. Notations are made pursuant to apparent legal action with completion of discovery by December, with a conference in March and jury trial in April of 2006. Notations are made that the president of Saybrook is Maureen O'Hara and that she (Dr. Cooney) is requesting $200,000 returned for school loans for the pain for her good work. A graduation of Spring 2002 is noted.

Dr. Reisen noted that Dr. Cooney does not want to move, that real estate is going slowly and that Dr. Cooney sees herself as a "crummy saleswoman." There is a chart entry that reflects that B&W (presumably Brigham and Woman's Hospital) has night on-call jobs. There is mention of something about a psychology teaching position at Lasalle and the figure of $1200. Dr. Cooney apparently applied for a job (unknown) at Harvard and did not obtain this position. She was still looking for jobs at the time of this visit.

The chart reflects that Dr. Cooney did not want to try medication for sleep and felt that "it is reasonable to react as she is." Dr. Reisen reports that Dr. Cooney feared losing control on antidepressant medication, specifically a selective serotonin reuptake inhibitor. The record reflects that Dr. Cooney is taking calls from her family which contributed to discouragement.

There is a note about increased anxiety especially in regard to elevators and that her attorney is in a "penthouse with only an elevator. The record reflects that when Dr. Cooney is stressed she requires greater control and lacks patience with herself.

A suggested treatment plan is outlined for use of an antidepressant with the goal of decreasing anxiety, increasing sleep and decreasing depression. Notation is made apparently for psychotherapy to address defense mechanisms and obsessions.

No mental status examination was documented on which to base the above recommendations other than historical annotations. There is no inventory of psychiatric signs and symptoms or the degree to which they may or may not be impairing to Dr. Cooney. There is no multiaxial diagnosis offered. No plans are listed for ongoing care or follow-up.


*Neuropsychological Record Review: Cooney, Susan*
*Page 8 of 8*

The last visit to Dr. Reisen was on 5/2605. At that visit additional history was obtained about Dr. Cooney's family of origin and her marriages. Notation was made that she was "doing better" and had participated in a large family gathering which was attended by both her ex-husbands. The reason for her divorce with her second husband was attributed to his depression and irritable mood. She reported that she was in "pause mode" with regard to dating so that she can focus on obtaining employment and she is "worry, re the house." A clinical impression of "better" is noted with a plan for a return visit in two weeks.

There are no additional chart entries.

*[signature]*
Elizabeth L. Leonard, PhD
Clinical Neuropsychologist
Neurocognitive Associates, PC

Lecturer in Psychiatry
Program in Psychiatry and the Law
Department of Psychiatry
Beth Israel Deaconess Medical Center
Harvard Medical School