UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO.: 04- 11572 JLT

| | |
|---|---|
| SUSAN COONEY, <br> Plaintiff, <br><br> v. <br><br> SAYBROOK GRADUATE SCHOOL AND RESEARCH CENTER and MAUREEN O'HARA, Individually, <br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Susan Cooney originally brought this action against Saybrook Graduate School and Research Center ("Saybrook") and Maureen O'Hara ("O'Hara") alleging that they were to blame for her claimed inability to gain employment in Massachusetts as a licensed psychologist, but has recently agreed to dismiss with prejudice her sole claim as to O'Hara and her negligence claim (Count IV) as to Saybrook. By way of this Motion for Summary Judgment, defendant Saybrook ask that the remaining Counts in her Amended Complaint likewise be dismissed owing to the fact that plaintiff has failed to establish the requisite elements of any of her various theories of liability against the defendant. Specifically:

- *Breach of Contract* (Count I): Plaintiff has no evidence of a contract with Saybrook that would guarantee her licensure in Massachusetts.

- *Promissory Estoppel* (Count II): There is no evidence that Saybrook promised that she would be eligible for licensure or that she reasonably relied on such a promise so as to sustain her claim for promissory estoppel.

- *M.G.L. Chapter 93A* (Count III): There is no evidence that defendant acted unfairly or deceptively or was engaged in trade or commerce.

- *Negligent Infliction of Emotional Distress* (Count V): Plaintiff has failed to establish the existence of any "duty" owed by Saybrook or the requisite elements of injury to support recovery.

I.  **CONCISE STATEMENT OF UNCONTESTED FACTS**

Saybrook is a graduate school and research center located in San Francisco, California that offers a human science approach to psychology graduate studies. See Amended Complaint ¶ 2 (Exhibit 1 to Affidavit of Grace Garcia ("Garcia Aff.")); Saybrook's 1994-95 Interim Catalogue ("1994-95 Catalogue") at 1 (Exhibit 2 to Garcia Aff.). Saybrook provides its education through a distance learning model and its mission is to "provide a unique and creative environment for graduate study, research, and communication in humanistic psychology and human science, focused on understanding and enhancing the human experience." See Amended Complaint ¶ 7; 1994-95 Catalogue at (i) (Exhibit 2 to Garcia Aff.). Saybrook informs its prospective and current students that its primary emphasis is to "prepare its graduates as scholars and researchers in the broad domain of human experience." Id. at 3. For those students who wish to work as licensed psychologists, "[s]uch students are advised that they should contact the licensing board in the state in which they plan to practice to obtain the detailed requirements, because regulations differ from state to state." Id. at 3.

Susan Cooney entered into a course of study at Saybrook in 1995. Her acceptance of admission was based on the condition that her admission into the program was as stated in Saybrook's 1994-95 Interim Catalogue. See Signed Offers of Acceptance dated January 8, 1995 and April 26, 1995 ("Signed Offers"), (Exhibit 3 to Garcia Aff.). Cooney began her studies at Saybrook in the fall of 1995.[1] See Amended Complaint ¶ 11. In October 2002, after Cooney completed the necessary academic curriculum, she received a doctorate in psychology from Saybrook. Id. at 23.

---

[1] Prior to gaining acceptance to Saybrook, Cooney's applications for admission had been rejected by five other schools. Cooney Dep. at Vol. I. 134.

2

At the time of Cooney's matriculation in 1995, she was told by Saybrook that she should consult with the appropriate state authorities if she planned to become a licensed psychologist. Id. at 8. Saybrook's 1994-95 Catalogue advised students that they should be aware "that states review applications individually to be sure all requirement of the state licensing board have been met. Regulations are constantly changing." See 1994-95 Catalogue at 3. However, Cooney ignored this advice and waited until 2003 before she "inquired" of the Massachusetts Board of Registration of Psychologists (the "Board") concerning the procedures for obtaining a license to practice as a psychologist within the Commonwealth of Massachusetts . See Amended Complaint ¶¶ 8, 24; see also Deposition of Susan Cooney ("Cooney Dep.") at Vol. 1, 56-7, 72 (stating that she did not make inquiry of the Board regarding the requirements for licensure as a psychologist until early 2003) (Exhibit 4 to Garcia Aff.). At that time, the Board informed Cooney that Saybrook did not have the necessary accreditation required by the Board for her to be eligible for licensure. See Amended Complaint ¶ 25; see also October 20, 2004 Letter from the Board (Exhibit 5 to Garcia Aff.). While Cooney had been completing her degree program at Saybrook, the Board had adopted a new regulation requiring that applicants filing after September 1, 2000 must have graduated from a doctoral program designated by the Association of State and Provincial Psychology Boards ("ASPPB"). See id.; see also Deposition of Dr. Karen Schwartz ("Schwartz Dep.") at 73-74, (Exhibit 6 to Garcia Aff.). Prior to that date, the Board had not required applicants to graduate from a school with such a designation. See, e.g., Schwartz Dep. at 94-95, 101 (stating that two Saybrook graduates were approved for licensure prior to September 1, 2000). The Board did not circulate notice of this change to graduate schools, nor was notice of the new regulation made known to Saybrook, as the Board does not correspond with schools. Id. at 48.

3

Saybrook is fully accredited by the Western Association of Schools and Colleges, but not designated by the ASPPB. See 1994-95 Catalogue at (i); Schwartz Dep. at 79. As a result of her alleged inability to be licensed by the Board, Cooney filed this lawsuit in 2004.

## II.    ARGUMENT

### A.    Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure allows for the prompt disposition of controversies on their merits without a trial if no real dispute as to their salient facts exists. Fed. R. Civ. P. 56(c). In particular, summary judgment is appropriate if the plaintiff cannot sustain crucial legal elements of her claims. As the First Circuit stated in McCarthy v. Northwest Airlines, Inc., 56 F.3d 313 (1st Cir. 1995):

> As to issues on which the summary judgment target bears the ultimate burden of proof, [plaintiff] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be 'material' and the dispute over it must be 'genuine' . . . .
>
> When all is said and done the trial court must 'view the entire record in the light most hospital to the party opposing summary judgment, indulging all reasonable inference it that party's favor,' but paying no heed to 'conclusory allegations, improbable inferences, [or] unsupported speculation.' If no genuine issue of materiel fact emerges, then the motion for summary judgment may be granted.

Id. at 315 (internal citations omitted). Indeed, in Celotex Corp. v. Catrett, 417 U.S. 316 (1986), the United States Supreme Court held that summary judgment for the defendant is mandated, not merely permitted, "where the Plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case upon which the Plaintiff would have the burden of proof at trial." Id. at 322. By this standard, Saybrook is entitled to summary judgment, as Cooney cannot sustain her burden of proof.

B.  **Under Both Massachusetts or California Law, Summary Judgment is Merited**

In determining choice of law, the forum state's rules apply. Daynard v. MRRM, P.A., 335 F. Supp.2d 156, 160 (D. Mass. 2004). Massachusetts provides a functional choice of law approach that responds to the interests of the parties, the states involved, and the interstate system as a whole. Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985). Specifically, the following factors are weighed in determining the substantive law to be applied: the predictability of the result, the interstate systems' needs, simplification of the judicial tasks, the forum's relevant policies, and the ease in applying the law. Id. at 632, 634. If, however, applying either the substantive law of either interested state, here Massachusetts or California, would not make a material difference in the outcome, it is appropriate to omit the analysis. See Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003)(stating that when the result of a case will not be affected by the choice of law, the analysis of the choice may be bypassed); OneBeacon Ins. Co. v. Georgia-Pacific Corp., 376 F. Supp.2d 10, 11 (D. Mass. 2005). In this case, Defendants are entitled to summary judgment on all counts, without regard to whether the claims are considered pursuant to the law of California or Massachusetts.

C.  **Plaintiff Cannot Sustain The Legal Elements of Her Various Claims**

Plaintiff has variously sought recovery against Saybrook on theories of breach of contract (Count I); promissory estoppel (Count II); 93A (Count III) and negligent infliction of emotional distress (Count V).[2] Plaintiff originally also sued Maureen O'Hara, who was Saybrook's President at the time that this suit was filed, for a claimed violation of Massachusetts General Laws, Chapter 93A (Count III) but has recently agreed to dismiss this claim with prejudice.

---

[2] Plaintiff originally also sued Saybrook on a theory of negligence (Count IV) but has recently agreed to dismiss this count with prejudice.

5

Accordingly, the claims against O'Hara and the issue of whether this Court has jurisdiction over her have not been addressed in this Motion as they are now moot.

As detailed below, plaintiff's several claims must fail as two years of intensive discovery has developed a comprehensive factual record that clearly shows that the plaintiff cannot satisfy her burden of proving the legal elements of her claim.

### 1.  *Plaintiff Cannot Recover For Breach of Contract*

Cooney cannot recover for breach of contract because she has no proof that she had a contract with Saybrook that guaranteed her that she would qualify for Massachusetts licensure as a psychologist. To succeed on a breach of contract action, Cooney must demonstrate that (1) the parties reached a valid and binding contract supported by consideration that Saybrook would provide her with full eligibility for a license in Massachusetts; (2) Cooney was ready, willing and able to perform her obligations under the contract; (3) Saybrook breached the terms of the contract; and (4) Cooney suffered damages as a result of that breach. Singarella v. City of Boston, 342 Mass. 385, 387 (1961). Here, there is no evidence of a binding contract guaranteeing licensure, and thus summary judgment is appropriate.

Cooney does not possess any evidence of a contract for which Saybrook guaranteed her that she would be eligible for licensure in Massachusetts. Cooney alleges that Saybrook had contracted to provide her with training to qualify her for licensure in Massachusetts and had contracted to disclose information it allegedly had regarding Massachusetts licensure standards. See Amended Complaint ¶ 36. Yet, there is absolutely no evidence of such a contract. The only terms of Cooney's enrollment at Saybrook are as stated in the 1994-95 Catalogue. See Signed Offers; Cooney Dep. at Vol. I 237-39. Indeed, Cooney admitted in her deposition testimony in this case that "The criteria of the agreement was specified in that [C]atlogue." Id. at Vol. II 44.

6

1017517v1

Under these terms, it was Cooney's responsibility to verify the licensure requirements of Massachusetts and to regularly check such requirements. See 1994-95 Catalogue at 3-4. Cooney understood this section on "Licensure" as stated in the 1994-95 Catalogue and had no objections to it. See Cooney Dep. at Vol. I 243-245, 249. Furthermore, Cooney cannot point to anything to suggest that Saybrook changed the terms of the 1994-95 Catalogue:

> Q: Did they ever contradict their statement in the catalogue that regulations about licensure are constantly changing and students should check with their individual state? Did they ever contradict that?
>
> A: I just don't recall. It's so long ago. I mean, are you asking for the specifics of a conversation 11 years ago? I don't remember.
>
> Q: Do you have any notes or any basis which you could refer to that would refresh your recollection?
>
> A: No.

See Cooney at Vol. I 248-49.

The only agreement Saybrook had with Cooney was to provide an academic experience according to its mission. See, e.g., Okmyansky v. Herbalife Int.'l of Am., 343 F. Supp.2d. 57, 60-61 (D. Mass. 2004)(under both Massachusetts and California law, absent ambiguity, the plain meaning of the contract controls). Saybrook provided an education in psychology, it did not train clinical psychologists. See 1994-95 Catalogue; Deposition of Maureen O'Hara ("O'Hara Dep.") at 63-64, 97 (Exhibit 7 to Garcia Aff.). As such, it had a responsibility to provide an education in psychology to the students who applied for a doctoral program, which it did. Id. at 233.

Cooney has acknowledged that the academic experience and teaching at Saybrook was fine. See Cooney Dep. at Vol. I 205. In fact, Saybrook fulfilled any contractual obligation it had to Cooney by bestowing her a Ph.D. after she completed the academic requirements. See Amended Complaint ¶ 23.

Not only is there no evidence that Saybrook contracted with Cooney to qualify her for Massachusetts licensure, but there is no evidence that Saybrook contracted to disclose or keep Cooney informed of Massachusetts regulations. Saybrook, not only through its Catalogue, but also through its administrators and professors, repeatedly informed students that it was their responsibility to learn and keep informed of their state licensing laws. See, e.g., O'Hara Dep. at 137-38, 218-19, 232; 449-50, 453-54; Deposition of William Bruff ("Bruff Dep.") at 86, 90, 148 (Exhibit 8 to Garcia Aff.). Despite this clear direction, Cooney has admitted that between 1995 and 2002, a time when she was working only a few blocks from the Board's office, she never followed up to see if there had been any change in the pertinent requirements for licensure in the Commonwealth.

> Q. And on that same page, does it also state, quote, Such students are advised that they should contact the licensing board in the state in which they plan to practice to obtain the detailed regulations, because regulations differ from state to state? Do you see that?
>
> A. Yes.
>
> Q. Under the section called "Licensure"?
>
> A. Yes.
>
> Q. My question is this: Since you did read that in 1995, did you ever go back to the state bookstore and buy another set of licensure regulations between the first time you did it in 1995 and when you first called the Massachusetts board inquiring about getting a

       license which was in 2002?

      A.    No, I did not."

Cooney Dep. II at 55.

The undisputed evidence, therefore is not only that no one at Saybrook ever relieved Cooney of her obligation assigned through the 1994-95 Catalogue to be personally responsible for checking the state licensing board, but that she neglected to do so for eight years. See Bruff Dep. at 158. As there is no evidence that Saybrook breached a contract, and only evidence that Cooney failed to fulfill her responsibilities, summary judgment is merited on Count I of the Amended Complaint.

    2.    *__Plaintiff Cannot Support a Claim of Promissory Estoppel__*

In apparent recognition of the weakness of her contract claim, Cooney has claimed in the alternative that Saybrook is liable to her on a theory of promissory estoppel. Yet this claim must also fail as Cooney cannot show that Saybrook made a promise to her, much less one upon which she could have reasonably relied.

To prove promissory estoppel, Cooney must show that (1) Saybrook made a promise which it reasonably expected would induce Cooney to act or forbear an action of a definite and substantial character; (2) the promise did induce such action or forbearance; and (3) an injustice can only be avoided by the enforcement of the promise. Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004); see also US Ecology, Inc. v. State of Cal., 129 Cal. App. 4th 887, 904-05 (Cal. Ct. App. 2005)(requiring the same basic elements under California law to prove promissory estoppel). As such, Cooney must prove all elements necessary to prove a contract action except that she must prove reasonable reliance as a substitute for consideration. Trent Partners & Assoc. Inc. v. Digital Equip. Corp., 120 F. Supp. 84, 104 (D. Mass. 1999). Here, not only was there not a promise to form the basis of such a contract but any alleged oral

9

statement to Cooney was unreasonable for her to rely on in light of the written 1994-95 Catalogue.

In Count II (Promissory Estoppel) of her Amended Complaint, Cooney alleged that:

> 39. By receiving tuition and fees from Cooney and by providing a course of graduate study as described in the Saybrook Interim Catalogue, Saybrook made a promise that it was qualified to deliver professional training that would qualify her for licensure as a psychologist in Massachusetts.
>
> 40. Saybrook made a related promise to Cooney that it would assist her in monitoring and complying with licensure standards in Massachusetts.
>
> 41. Saybrook knew, or reasonably should have known, that Cooney would rely on its promises and would expect that her Saybrook doctoral degree would qualify her for licensure as a psychologist in Massachusetts.

Amidst these vague allegations, there is a complete absence of any suggestion that Saybrook ever promised Cooney that when she *graduated* from Saybrook she would be eligible for licensure. An essential element of a promissory estoppel claim is the existence of an unambiguous promise. Id. A promise is not sufficiently shown where it is "made with an understood intention that it is not to be legally binding, but only expressive of a present intention." Id., quoting, Rhode Island Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 850 (1995). There is, in fact, no statement in any student catalogue to support the contention in Paragraph 39. Indeed, it appears that Paragraph 39 was artfully drafted to suggest that an implied promise arose from the fact that Saybrook accepted her tuition. In fact, as detailed below, Saybrook's student catalogue made clear that students were individually responsible for issues involving state licensure.

After two years of discovery, Cooney can only point to a single conversation with a Saybrook representative that she recalls dealt in any way with Massachusetts licensure issues.

10

1017517v1

As detailed below, however, even this conversation falls far short of Paragraph 40's "promise," much less what would be required to establish a claim for promissory estoppel under Massachusetts law. Thus, Cooney has testified that she was told by a Saybrook orientation counselor *in 1995* that it appeared *at that time* that Saybrook's education met the Massachusetts licensing requirements. See Cooney Dep. at Vol. II 59-60. Specifically, plaintiff testified:

> Q: Did Saybrook ever promise you that it would keep you informed of changes in licensing law specifically?
>
> A: When I went out to the orientation and I was supposed to bring my regulations, we met with that person who went over each person's regulations and she said that Massachusetts met the criteria and – and she said, "You're good to go."
>
> Q: Is that all she said?
>
> A: To the best of my recollection.
>
> Q: What else, if anything did that person say about future changes, if any, that might happen in Massachusetts?
>
> A: Nothing that I can recall.
>
> Q: Didn't she promise you that – Didn't she say to you, We are going to track Massachusetts law and keep you informed?
>
> A: No.
>
> Q: She never said that?
>
> A: No.
>
> Q: She never say anything to that effect; is that correct?
>
> A: It was 11 years ago. I would say she basically said, You meet the criteria. We'd love to have you come here, and you know, we understand you want to be a psychologist in Massachusetts and you'll be able to be.
>
> Q: Did she say to you that she would, or Saybrook would, monitor the regulations over the years that you would be at Saybrook and keep you informed?
>
> A: It was an understanding.
>
> Q: Did she say that?
>
> A: Did she specifically? I don't recall.

Id.

Cooney has no notes of this conversation and cannot recall the name or position of the individual in question. Id. at Vol. II 122-123. Even accepting her account as true, however, there is no evidence of a promise was not kept. As of 1995, Saybrook graduates were being accepted for licensure in Massachusetts; the Board did not change its policy until five years later. Schwartz Dep. at 94-95.

Notably, Cooney does not claim that Saybrook promised to monitor changes in state licensing rules over the next eight years. Indeed, such a promise would have been expressly contrary to statements made in the 1994-95 Saybrook Catalogue, which warned students to monitor state licensure developments themselves since "regulations are constantly changing." See 1994-95 Catalogue at 3. As there is no evidence of a specific and concrete promise, the plaintiff cannot prove her claim. See Trent Partners & Assoc. Inc., 120 F. Supp. at 104.

Prior to going to Saybrook, Cooney had already obtained the Massachusetts licensure regulations and had made her own judgment that she would be able to obtain her license after completing Saybrook's degree program.. See Cooney Dep. at Vol. I 73-74, 76, 82. Cooney also testified that after enrolling at Saybrook, she never asked any faculty members or Saybrook employees about whether she could be licensed in Massachusetts. See Cooney Dep. Vol. II 116-117. Thus, by her own sworn testimony, Cooney had concluded even before arriving at Saybrook that she would be eligible to practice in Massachusetts; she never received or relied on any communication from Saybrook in reaching that conclusion.

Even if Cooney did contend that the unidentified woman had promised her that Saybrook would commit to provide her with updated information over the next few years concerning licensure requirements in Massachusetts, any reliance on such a statement would have been unreasonable in light of the express written policy of Saybrook that students interested in

1017517v1

licensure are individually responsible for contacting state licensing boards. Reliance is unreasonable when a representation is in direct contradiction of a written contract. Trent Partners & Assocs., Inc., 120 F. Supp.2d at 105 (an oral statement made in the face of a written contract is not a "promise" for purposes of promissory estoppel because the existence of a written contract demonstrates the parties' intention that the written contract would govern their relationship); see also Steinke v. Sungard Fin. Sys., 121 F.3d 763, 776-77 (1st Cir. 1997)(finding lack of reasonable reliance as a matter of law).

Saybrook's 1994-95 Catalogue, which Cooney has testified that she read before deciding to enroll at Saybrook, advised students that those wishing to be licensed as psychologist "should contact the licensing board in the state in which they plan to practice to obtain the detailed requirements, because regulations differ from state to state." See 1994-95 Catalogue at 3. Saybrook further stated that despite the fact that its graduates had been licensed in several states, "Students are advised to be aware, however, that states review applications individually to be sure all requirements of the state licensing board have been met. Regulations are constantly changing." Id. There is no evidence anywhere in the 1994-95 Catalogue that promised students that they would be eligible for licensure.[3] Uncorroborated oral testimony regarding an alleged oral promise, "standing alone and in direct contradiction to the written contract and unsupported by any evidence . . . [is] not sufficient to create a jury question." Trent Partners & Assoc. Inc., 120 F. Supp.2d at 105 (ellipse and bracket in original), quoting, Buker v. Nat'l Manage. Co., 16

---

[3] Plaintiff may rely on the statement that "Saybrook is committed to assisting those students who plan to seek licensure in the state of their choice." 1994-95 Catalogue at 3. Such a statement, however, is not a specific promise that Saybrook guarantees licensure to its students, rather it is a generalized representation. See, e.g.,. Gukenberger v. Boston Univ., 974 F. Supp. 106, 150 (D. Mass. 1997)(the court did not decide whether the University's brochures were a contract, but rather stated that in order to be a valid contract, the promise must be "definite and certain so that the promisor should reasonably foresee that it will induce reliance."). Furthermore, there is evidence that Saybrook made efforts to assist Cooney after she brought her licensure problems to its attention in 2003 but that she never asked Saybrook to intercede with the Board. Cooney Dep. at Vol. II 145.

1017517v1

Mass. App. Ct. 36, 44 (1983). As such, summary judgment is merited on Count II of the Amended Complaint.

### 3. *Cooney Cannot Satisfy her Burden of Proof for a Ch. 93A Violation*

In support of her 93A claim (Count III), Cooney states in her Amended Complaint that:

> 47. Saybrook and O'Hara[4] knowingly provided graduate training in clinical psychology that would not qualify Cooney for licensure as a Massachusetts psychologist, and knowingly deceived Cooney by withholding information that Massachusetts did not recognize Saybrook as a qualified graduate program.
>
> 48. Saybrook and O'Hara knowingly collected tuition and fees from Cooney and other Massachusetts students under false pretenses, after receiving actual or constructive notice that Saybrook was not a qualified graduate program in psychology for the purpose of Massachusetts licensure.

This claim must fail for the reason that there is no evidence of any unfair or deceptive act or practice on the part of Saybrook. Far from acting under "false pretenses," the undisputed evidence is that Saybrook was never made aware of the Board's 2000 change in licensure policy. Furthermore, Saybrook cannot be sued under 93A because, as a non-profit educational institution, it was not engaged in trade or commerce.

#### a. Saybrook Did Not Engage In An Unfair Act or Practice

As a threshold matter, plaintiff has failed to present evidence that would support a finding that Saybrook engaged in any unfair and deceptive acts or practices in connection with the education provided to her. Specifically, Cooney cannot show that the defendants' conduct fell "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or is "immoral, oppressive or unscrupulous." PMP Assoc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1st Cir. 1975). For a violation of Chapter 93A, "the defendant's conduct

---

[4] Plaintiff has recently agreed to dismiss O'Hara from this claim.

must be not only wrong, but also egregiously wrong -- and this standard calls for determinations of egregiousness well beyond what is required for most common law claims." Mass. Sch. of Law at Andover, Inc., 142 F.3d at 41 (citations omitted). "Although . . . a Chapter 93A violation need not rest on an independent common law tort, the conduct must come within some shouting distance of some established concept of unfairness." Id. at 42 (citations omitted).

Cooney bases her claims on an allegation that the defendants "knowingly provided graduate training in clinical psychology that would not qualify Cooney for licensure as a Massachusetts psychologist, and knowingly deceived Cooney by withholding information that Massachusetts did not recognize Saybrook as a qualified graduate program." See Amended Complaint ¶ 48. Despite the allegations, Cooney did not inform Saybrook of her intention to become a licensed psychologist in Massachusetts until this lawsuit. See Deposition of Ruth Richards at 33-34, 43 (despite being Cooney's faculty advisor, Cooney did not inform her that she wanted to become a licensed psychologist, but rather simply told her she intended to work in the area of trauma) (Exhibit 10 to Garcia Aff.).

Nor is there evidence that Saybrook was ever made aware before the filing of this suit of the Board's 2000 change in Massachusetts licensure requirement. Cooney has vaguely suggested that two Saybrook administrators *may* have withheld information from her. Id. at Vol. II 149 (stating Gerry Bush and Maureen O'Hara may have withheld information). Yet, Cooney has since admitted that she knew that the first of these (Gerry Bush) died in 1997 or 1998, at a time when Saybrook graduates were still eligible for Massachusetts licensure. Id. at Vol. II 189. She also has presented no evidence that he knew of the particular obstacle that has prevented her from obtaining her license. Additionally, Cooney has conceded that she does not know whether O'Hara ever had any specific information that Saybrook graduates could not be licensed in

Massachusetts. Id. at Vol. II 191, 193. Not only did O'Hara not know that Cooney intended to seek licensure until this lawsuit, but O'Hara has testified that she never made a determination based on Massachusetts laws whether Saybrook graduates were eligible for licensure. See O'Hara Dep. at 214-15, 237. Indeed, neither Saybrook nor O'Hara knew that Massachusetts required applicants to have graduated from an ASPPB-designated school until Cooney informed them of the new Board policy in relation to this suit. Id. at 434-35; Saybrook's Answers to Ints. No. 6. (Exhibit 11 to Garcia Aff.); Schwartz Dep. at 35, 48, 138, 146-47 (stating the Board did not inform schools of the regulation change and she does not have any knowledge that Saybrook knew). Cooney has no evidence that anyone affiliated with Saybrook knew of the ASPPB requirement. As there is no basis for a 93A violation,[5] summary judgment is merited on Count III.

### b.   Saybrook Is Not Engaged in "Trade" or "Commerce"

In order to violate Chapter 93A, the alleged unfair act or practice must be done "in the conduct of any trade or commerce." G.L. ch. 93A, § 2. "A nonprofit or charitable corporation, however, is not engaged in trade or commerce 'if, in the transaction in question, the nonprofit is merely engaged in the customary business necessary to meet its charitable purpose.'" Trustees of Boston Univ. v. ASM Comms, Inc., 35 F. Supp.2d 66, 77 (D. Mass. 1998), quoting, Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n, 952 F. Supp. 884, 890 n.4 (D. Mass. 1997). Thus, in the context of nonprofit educational institutions, a school is not engaged in trade or

---

[5] Cooney also cannot base her ch. 93A claim against Saybrook on the alleged breach of contract or negligence counts. See generally Canal Electric Co. v. Westinghouse Electric Corp., 756 F. Supp. 620, 629-631 (D. Mass. 1991)(recognizing that a simple breach of contract action does not give rise to a Chapter 93A claim); Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 763 (1989)(in order for a breach of contract to also constitute a violation of 93A, it must be shown that beyond the breach itself, there was some unfair or deceptive act or practice); Wasylow v. Glock, Inc., 975 F. Supp. 370, 382 (1996)(where plaintiff's negligence claims fail, so to must his G.L. c. 93A claim, where plaintiff advanced no facts in support of such claim other than the facts underlying his negligence claims)(citing Kearney v. Philip Morris, Inc., 916 F. Supp. 61, 65 (1996)).

commerce when its activities are merely in furtherance of its mission. Id.; see also Thorton v. Harvard Univ., 2 F. Supp.2d 89 (D. Mass. 1998)(granting summary judgment on ch. 93A claim, finding that the school's operation of its financial aid program not to be "trade" or "commerce"). Saybrook is a non-profit institution. See O'Hara Dep. at 66. All the claims against Saybrook are regarding its provision of education, which is central to its mission. See Amended Complaint. As a result, summary judgment is merited on Count III in Saybrook's favor.

### 4. *Plaintiff Cannot Prove the Elements of Her Claim For Negligent Infliction of Emotional Distress*

Although plaintiff has agreed to drop her negligence claim (Count IV), she paradoxically continues to pursue her contention that Saybrook is liable to her on a theory of negligent infliction of emotional distress (Count V). For the plaintiff to succeed in such a claim, she must prove the following elements: (1) physical harm manifested by objective symptoms; (2) negligence; (3) emotional distress; (4) causation; and (5) that a reasonable person would have suffered emotional distress under the circumstances. Sullivan v. Boston Gas Co., 414 Mass. 129, 132 (1992). In this case, the plaintiff's cause of action must fail because, as a matter of law, no "duty" existed as between her and Saybrook that would support such a claim.

To prove a claim for negligence, a plaintiff must show that the defendant owed a duty of care to the plaintiff that it breached. Cottam v. CVS Pharmacy, 436 Mass. 316, 320 (2002). The existence of such a duty is a question of law for a judge and is determined by looking at "existing social values and customs, as well as to appropriate social policy." Id., quoting, Davis v. Westwood Group, 420 Mass. 739, 743 (1995).

Here, plaintiff has developed a fictitious duty for which she has no authority, based in either law, social values or custom or public policy. Specifically, the plaintiff alleges that Saybrook had a duty to not only "provide a degree program that meets the regulatory standards

17

in all jurisdiction from which Saybrook admits students," but also that Saybrook had "a duty of care to monitor professional licensure standards in these jurisdictions and to advise students when it learns of actual or proposed regulatory standards that may limit or preclude licensure for Saybrook graduates." See Amended Complaint ¶ 51. No such duty exists on the part of any school. Cooney simply cannot prove that a school owes a duty to provide education that fulfills the requirements for each states' licensing board in the areas for which it supplies an education.

There is no evidence that such a duty exists under law or social custom. Indeed, Dr. Karen Schwartz, who has been Program Coordinator of the Massachusetts Board of Registration of Psychologists since 1995 and currently performs the first review of all psychology applications, admitted that she does not expect schools to monitor or provide such information on licensing requirements to students. See Schwartz Dep. at 15, 21-22, 76. Specifically, she had no expectation that graduate programs that accepted Massachusetts students would meet the Board's regulations for licensure. Id. at 69.

As Massachusetts has not specifically addressed this issue, this Court should look to California, in which its courts have determined that a "duty of care" tort action in the educational context is not viable. Under California law, claims based on tort in the academic setting are not an "injury" within the meaning of the law. Peter W. v. San Francisco Unified Sch. Dt., 60 Cal. App. 3d 814, 825-26 (1976) (Exhibit 12 to Garcia Aff.). Educational methodology, "[u]like the activity on the highway or marketplace, . . . affords no readily acceptable standards of care, or cause, or injury." Id. at 824; Chevlin v. Los Angeles Comm. College Dt., 212 Cal. App. 3d. 382, 389-90 (1989)(college had no duty under tort law to student in program) (Exhibit 13 to Garcia Aff.).

Although plaintiff's failure to prove negligence is enough to grant summary judgment on Count V, Cooney also does not have evidence of physical harm manifested by objective symptoms. The plaintiff claims that her symptomology includes "sleeplessness, difficulties in working and concentrating, anxiety and depression." See Amended Complaint ¶ 58. Yet, these are not sufficient for the plaintiff to bring this cause of action. For instance, depression and anxiety are not enough to satisfy the element of physical harm as they are not objective symptoms. See, e.g., Continental Ins. Co. v. Bahnan, 1997 U.S. Dist. Lexis 23796 (D. Mass. 1997) (Gorton, J.)(despite an affidavit from a medical doctor that the defendant suffered anxiety and depression the court found that the defendant could not sustain his counterclaim because there was no evidence of physical harm manifested by objective symptoms) (Exhibit 14 to Garcia Aff.); cf. Rodriquez v. Cambridge Housing Auth., 443 Mass. 697, 702-703 (2005)(finding plaintiff's allegations of emotional distress sufficient because they went beyond alleging "mere upset, dismay, humiliation, grief and anger," and were objectively verifiable as the plaintiff had to be hospitalized for seventeen days).

In this case, Cooney has not made any showing of such objective symptoms. Yet, it is the plaintiff's burden to "corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial." Sullivan, at 137-38.

The only evidence the plaintiff has are three evaluations by Dr. Riesen, all of which indicate that there are many reasons why the plaintiff went to see him, other than this case. See Records of Dr. David Reisen (Exhibit 15 to Garcia Aff.). These records are insufficient to present to a jury as the reasons for any of her alleged distress are not clearly related to Saybrook.

1017517v1

Additionally, the plaintiff has failed to identify any expert in this area for trial. Therefore, summary judgment is appropriate.[6]

## CONCLUSION

For all of the foregoing reasons, Defendant Saybrook respectfully requests the Court to enter summary judgment in its favor on all the remaining counts of the Amended Complaint.

Counsel for Defendant,
SAYBROOK GRADUATE SCHOOL AND
RESEARCH CENTER

/s/Michael F. Aylward

---

Michael F. Aylward, BBO #024850
Grace V. Bacon Garcia, BBO #640970
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
Tel. (617) 439-7500

Dated: August 21, 2006

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 21, 2006.

/s/Michael F. Aylward

---

Michael F. Aylward, BBO #024850

---

[6] As stated above, the plaintiff could not assert a tort action under California law, therefore, like the negligence claim, the negligent infliction of emotional distress claim would also be barred under California law.

20

1017517v1