# EXHIBIT 8

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

SUSAN COONEY,

        Plaintiff,

vs.                    Docket No. 0411572 JLT

SAYBROOK GRADUATE SCHOOL and
RESEARCH CENTER, and MAUREEN
O'HARA, Individually,

        Defendants.
_____/



Deposition of

WILLIAM K. BRUFF, Ph.D.

MARCH 15, 2006

NOTICING ATTORNEY, PAUL W. MORENBERG, ESQ.

REPORTED BY:  JEANINE FARRELL, CSR NO. 7774

G O L D E N   G A T E   R E P O R T E R S   L L C
35 Mitchell Boulevard Suite 8
San Rafael CA 94903-2010
(415) 491-4611 * 800-442-4611
FAX (415) 491-4635

e-mail: ggr35@depos.com   web:  http://www.depos.com

1  re-written the law.

2  Q. So does Saybrook now have a policy that it
3  will not admit students from Massachusetts who have a
4  clinical focus in psychology?

5  A. No.

6  Q. What is the policy?

7  A. The policy is the students are responsible
8  for determining their license eligibility. So, for
9  example, a student could live in one state, be
10 licensed in another state or another jurisdiction.

11 Q. Sure. But I want to understand what you
12 meant by,

13    "Saybrook will not take students from those
14    states, example Massachusetts."

15       MS. GARCIA:  Objection.

16       MR. MORENBERG:  Q. Do you know what you
17 meant by that?

18 A. Yes. If you read the rest of the sentence.
19 If they intend to be licensed as a psychologist to
20 practice in that state.

21 Q. And I thought that was what my prior
22 question said, but I will state it again.

23       Is it Saybrook's policy currently that it
24 will not admit a Massachusetts resident who has an
25 interest in clinical licensure in Massachusetts?

86

```
 1  information?
 2       A.  This list reflected anecdotal reports.
 3       Q.  Weren't you concerned, Mr. Bruff, that you
 4  could have received incorrect information from the
 5  student or graduate in relying on an anecdotal
 6  report?
 7       A.  No.
 8       Q.  What if, in fact, one of these states will
 9  license a Saybrook student and you're falsely warning
10  students they may have a problem?
11           MS. GARCIA:  Objection.
12           THE WITNESS:  We routinely ask students to
13  determine for themselves with their licensing board
14  will they be eligible to license or not.  It seemed
15  -- yeah.
16           MR. MORENBERG:  Q.  Do you know if
17  Dr. Bohart or anyone else did any independent
18  checking to verify that this list was indeed correct?
19       A.  For this specific list, no.
20       Q.  Since this list has there been any
21  independent checking to make sure this information is
22  correct?
23       A.  Yes.
24       Q.  And who did that checking?
25       A.  I believe Alan Vaughan.
```

```
 1  with the licensing coordinator?
 2       A.   Yes.
 3       Q.   And that is Dr. Vaughan?
 4       A.   That is Dr. Vaughan.
 5       Q.   And I believe you also testified that you
 6  briefed Dr. O'Hara and Dr. Clark?
 7       A.   About my role in testifying, yes.
 8       Q.   How would Saybrook share the information
 9  that you received regarding licensing obstacles in
10  Iowa with its students?
11            MS. GARCIA:  Objection.
12            THE WITNESS:  Through informal conversations
13  with the licensing coordinator or whatever, materials
14  he was developing and handing out.  But, again, it's
15  critical to understand that Saybrook doesn't take the
16  direct responsibility to manage licensing for its
17  students in fifty jurisdictions.  I think we have
18  clearly stated over and over again, in all of our
19  publications, that responsibility is a relationship
20  between the student and their licensing board.
21            MR. MORENBERG:  Q.  I understand Saybrook's
22  position.
23       A.   Okay.
24       Q.   What steps, if any, did you take to share
25  your knowledge of Susan Cooney's problems in
```

148

```
 1        A.   No.  No.
 2        Q.   Did she ever write you an e-mail about
 3   Massachusetts?
 4        A.   No.
 5        Q.   Did she ever ask you to commit to provide
 6   her with whatever information you or the school might
 7   have about Massachusetts?
 8        A.   No.
 9        Q.   Did you ever tell Susan Cooney that you were
10   relieving her of her obligations under the student
11   handbook to find out for herself about Massachusetts
12   law?
13        A.   No.
14        Q.   Do you know if anyone at Saybrook that
15   relieved, that is, that told Susan Cooney that she
16   was relieved of her obligation under the student
17   handbook and catalog to get her own information
18   directly from Massachusetts if she wanted to have
19   licensing information?
20        A.   No.
21        Q.   Did you ever promise Susan Cooney that
22   Saybrook would take over her obligation to get her
23   own Massachusetts information herself?
24        A.   No.
25        Q.   Do you know of anyone else on behalf of
```

158