# EXHIBIT 13

LEXSEE 212 CAL. APP. 3D. 382

LOUISE CHEVLIN, Plaintiff and Appellant v. LOS ANGELES COMMUNITY COLLEGE DISTRICT et al., Defendants and Respondents

No. B031967

Court of Appeal of California, Second Appellate District, Division Two

*212 Cal. App. 3d 382; 260 Cal. Rptr. 628; 1989 Cal. App. LEXIS 793*

July 6, 1989

**PRIOR HISTORY:** [***1]

Superior Court of Los Angeles County, No. C456226, Miriam A. Vogel, Judge.

**DISPOSITION:**

The judgment is affirmed.

**SUMMARY: CALIFORNIA OFFICIAL REPORTS SUMMARY**

A student who was terminated from a community college district's program in nuclear medicine technology and from her employment with a hospital as a program intern, brought an action against the district seeking money damages for breach of contract, negligence, fraudulent concealment, inducing breach of contract, interference with prospective economic advantage, and violation of federal civil rights. The trial court sustained the district's demurrer to the student's third amended complaint without leave to amend, and entered judgment in favor of the district. (Superior Court of Los Angeles County, No. C456226, Miriam A. Vogel, Judge.)

The Court of Appeal affirmed. It held that the trial court did not err in sustaining the district's demurrer to the student's cause of action for negligence for breach of a mandatory duty imposed by Ed. Code, § 84500.5 (supervision of health sciences education programs). The trial court also did not err in sustaining the district's demurrer as to the student's causes of action for general negligence and breach of contract, since these causes amounted to claims of educational nonfeasance against a public institution, and the law refuses to hold a public school system liable on the basis of such a claim. Further, the court held, the trial court properly sustained the district's demurrer to the student's cause of action for tort based on a district instructor's alleged fraudulent concealment from the student of "on the job learning objectives" required to complete the program successfully, since the immunity provided government entities under Gov. Code, § 818.8, for misrepresentation applies not only to the first two types of deceit described in Civ. Code, § 1710 (intentional misrepresentation and negligent misrepresentation), but also to concealment (suppression of fact). Finally, the court held, the trial court did not err in sustaining the district's demurrer to the student's cause of action for violations of her civil rights pursuant to *42 U.S.C. § 1983* and *41 U.S.C. § 1985*(3). The student had previously been denied relief in a grievance proceeding with the college and district, had been denied relief when she petitioned the superior court for administrative mandamus, and failed to appeal that decision; implicit in the trial court's refusal to issue a writ was the finding that the district afforded the student due process in terminating her from the program, and she could not relitigate that issue in a subsequent action. (Opinion by Compton, J., with Roth, P. J., and Gates, J., concurring.)

**HEADNOTES:    CALIFORNIA    OFFICIAL REPORTS HEADNOTES**

Classified to California Digest of Official Reports, 3d Series

**(1) Appellate Review § 128--Rulings on Demurrers.** --In reviewing the sufficiency of a complaint, the appellate court must treat the demurrer as admitting all material facts properly pleaded but not contentions, deductions or conclusions of fact or law. The allegations of the complaint and attached exhibits therefore must be accepted as true. Unless clear error or abuse of discretion is demonstrated, the trial court's judgment of dismissal following the sustaining of a demurrer will be affirmed on appeal.

**(2a) (2b) Government Tort Liability § 14--Community Colleges--Health Care Education Programs--Supervision of Programs.** --In an action against a community college district by a student in the district's program in nuclear medicine technology, the trial court did not err in sustaining the district's demurrer to the student's cause of action for negligence, which cause alleged that the district breached a mandatory duty imposed by *Ed. Code, § 84500.5* (supervision of health sciences education programs), when it forced her to report to unlicensed hospital staff members at two hospitals, and that she was terminated from the program as a result of the district's compelling her to work with unlicensed personnel. The Legislature enacted § 84500.5 to protect the public from improperly trained health care workers, and there is nothing in the statute's language to indicate that the law was also designed to prevent the improper expulsion of students from a clinical program by their immediate supervisor.

**(3) Government Tort Liability § 2--Failure to Discharge Statutory Duty.** --In deciding under *Gov. Code, § 815.6* (public entity's failure to discharge statutory duty), whether liability should attach for violation of a duty, the controlling question is whether the enactment at issue was intended to impose an obligatory duty to take specified official action to prevent particular foreseeable injuries, thereby providing an appropriate basis for civil liability. If injury of the kind sustained by the plaintiff was not one of the consequences that the Legislature sought to prevent through imposition of the alleged mandatory duty, liability does not obtain under § 815.6.

**(4) Government Tort Liability § 14--Community Colleges--Health Care Education Programs--Inadequate Education.** --In an action against a community college district by a student in the district's program in nuclear medicine technology, the trial court did not err in sustaining the district's demurrer to the student's cause of action for negligence, which cause was based on allegations that the district owed her a duty of care to supervise and train her adequately, notify her of the learning objectives she needed to meet, and provide written evaluations, and that the district's failure to satisfy these duties resulted in her dismissal from the program without good cause. The student was in effect alleging that the district breached its duty of care to provide her with an education, and for policy reasons the law refuses to hold a public school system liable to a student who claims he was inadequately educated.

**(5) Government Tort Liability § 14--Community Colleges--Health Care Education Programs--Inadequate Education--Breach of Contract.** --In an action against a community college district by a student in the district's nuclear medicine technology program who had been terminated from the program and her employment as a program intern with a hospital, the trial court did not err in sustaining the district's demurrer to the student's cause of action for breach of contract, which was based on the student's alleged standing as a third-party beneficiary to the district's agreements with two hospitals, and on contractual duties owed her as an enrollee in the program. The student was suing a public institution and seeking compensatory damages for her inability to find employment as a nuclear medicine technologist; to permit her to recover under a breach of contract theory based on educational nonfeasance would be tantamount to permitting her to sue for negligence based on educational nonfeasance, and that is not allowed.

**(6) Government Tort Liability § 14--Community Colleges--Health Care Education Programs--Fraudulent Concealment of Learning Objectives.** --In an action against a community college district by a student in the district's program in nuclear medicine technology, the trial court did not err in sustaining the district's demurrer to the student's cause of action for tort based on a district instructor's alleged fraudulent concealment from her of "on the job learning objectives" required to complete the program successfully. The immunity provided government entities under *Gov. Code, § 818.8*, for misrepresentation applies not only to the first two types of deceit described in *Civ. Code, § 1710* (intentional misrepresentation and negligent misrepresentation), but also to concealment--suppression of fact.

**(7) Civil Rights § 6--Education--College District.** -- In an action against a community college district by a student in the district's program in nuclear medicine technology, the trial court did not err in sustaining the district's demurrer to the student's cause of action for violations of her civil rights pursuant to *42 U.S.C. § 1983* and *41 U.S.C. § 1985*(3), which cause of action was based on the assertion that she had a federal constitutional right to seek a nuclear medicine technologist's license and that the district, without either procedural or substantive due process, prevented her from obtaining that goal. She had previously been denied relief in a grievance proceeding with the college and district, had been denied relief when she petitioned the superior court for administrative mandamus, and failed to appeal that decision. Implicit in the trial court's refusal to issue a writ was the finding that the district afforded the student due process in terminating her from the program; she could not relitigate that issue in a subsequent action.

COUNSEL:

Louise Chevlin, in pro. per., and Melanie A. Calvert for Plaintiff and Appellant.

212 Cal. App. 3d 382, \*; 260 Cal. Rptr. 628, \*\*;
1989 Cal. App. LEXIS 793, \*\*\*

Warren S. Kinsler, Veatch, Carlson, Grogan & Nelson and Mark A. Weinstein for Defendants and Respondents.

**JUDGES:**

Opinion by Compton, J., with Roth, P. J., and Gates, J., concurring.

**OPINIONBY:**

COMPTON

**OPINION:**

[\*385] [\*\*629] Plaintiff Louise Chevlin appeals from a judgment entered after the trial court sustained without leave to amend a demurrer filed by defendant Los Angeles Community College District (District). We affirm.

[\*386] (1) It is axiomatic, of course, that in reviewing the sufficiency of a complaint an appellate court must "treat the demurrer as admitting all material facts properly pleaded but not contentions, deductions or conclusions of fact or law. The allegations of the complaint and attached exhibits therefore must be accepted as true. [Citations.] Unless clear error or abuse of discretion is demonstrated, however, the trial court's judgment of dismissal following the sustaining of a demurrer will be affirmed on appeal. [Citations.]" [\*\*\*2] ( *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1076-1077 [195 Cal.Rptr. 576].)

Applying the foregoing rules, the record reveals that the District, a public entity, through its Los Angeles City College campus, offered curriculum in the field known as nuclear medicine technology. Graduates of the two-year program were then eligible to sit for a national registry exam. Passage of the examination is a prerequisite for employment in the field as a nuclear medicine technologist.

In order to afford students the opportunity to receive clinical experience, the final course in the program was a one-year, paid internship in the nuclear medicine department of a local hospital. The District offered the course, known as "NMT 81," pursuant to a Cooperative Work Experience Education plan as defined under title 5, chapter 3 of the California Code of Regulations. Section 55255 of those regulations authorizes the District to enter into "learning agreements" with employers provided that the District coordinates and supervises the program, and evaluates the progress of the students. (See also § 55257.) Section 55250 requires the District to formulate [\*\*\*3] a plan designed to gain students "realistic learning experiences through work." Among other provisions, the plan must also describe how the district will "[a]ssure that students' on-the-job learning experiences are documented with written measurable learning objectives." (Cal. Code Regs., Tit. 5, ch. 3, § 55251, subd. (a)(4)(C).) Moreover, the plan must demonstrate how the District will, with the assistance of the employer, "evaluate students on-the-job learning experiences." (Tit. 5, ch. 3, § 55251, subd. (a)(4)(D).)

Chevlin enrolled in the program in November 1980. On July 1, 1981, she began her clinical studies at the Veterans Administration's Wadsworth Hospital, a signatory to the District's learning agreement. Chevlin, who received a small monthly stipend for working at the hospital, successfully completed the fall 1981 semester. During that period, she never received a reprimand concerning the performance of her duties. Her relationship with the hospital staff, however, deteriorated during the following spring semester when she reported to her supervisor, Jerome Gambino, that two of the facility's technologists had misplaced radioactive "cobalt markers" for a [\*387] [\*\*\*4] three-month period. Additionally, Chevlin complained to Gambino that she was being systematically denied on-the-job learning experiences without just cause, and also being blamed for clinical errors committed by other personnel. Furthermore, John Radtke, was responsible for giving Chevlin her grade in the course, never personally observed her job performance at Wadsworth.

In March 1982, Gambino informed Chevlin that, as a condition of her continued employment, she was required to submit to psychological examination by a hospital [\*\*630] counselor. In her complaint, Chevlin alleged "[t]he primary purpose of this was to harass plaintiff and to build a record which would serve as the basis for terminating" her from the hospital and the District's program.

In April 1982, Radtke, at the behest of Gambino, removed Chevlin from Wadsworth and placed her at Garfield Medical Center, a facility not affiliated with the District. At the time of the transfer, Radtke left Chevlin with the false impression that she was assigned to Garfield for testing and training. Chevlin averred that the true reason for her transfer was to prevent her from protesting her wrongful termination from Wadsworth. [\*\*\*5]

On May 5, 1982, Radtke informed Chevlin that she had been terminated from both her employment at Wadsworth and the District's program. Accordingto Chevlin, Radtke warned her not to obtain legal advice and to follow his directives "or else."

Thereafter, Chevlin approached James Fain, the chief nuclear medicine technologist at Harbor General Medical Center, a facility participating in the District's program. With Radtke's approval, Fain permitted Chev-

lin to receive training at Harbor with the intent that she could then qualify for the registry exam scheduled for October 1982. Chevlin alleged, however, that "Fain unjustifiably wanted plaintiff to remain at Harbor until April 1983 in order to exploit her valuable labor as a nuclear medicine technologist without just compensation to her." In July 1983, Chevlin informed Radtke that she was being discriminated against because for a three-month period Harbor refused to pay her a salary while her classmates received compensation.

In August 1982, Chevlin complained to the Joint Review Committee on Educational Programs, an accreditation agency, concerning certain conditions at Harbor. The next month Harbor dismissed Chevlin from its employment. [***6]

[*388] Pursuant to *Government Code section 911.2*, n1 Chevlin, on November 4, 1982, lodged her claim for money damages with the District. The District denied the claim on January 12, 1983. In April 1983, Chevlin commenced a student grievance hearing against Radtke in an attempt to become eligible for that year's registry exam. The college, however, found against Chevlin and the District subsequently denied her appeal. She then filed a petition with the superior court for a writ of administrative mandate to reverse the District's ruling. The trial court ultimately declined to issue the writ.

> n1 In 1982, that section provided that "[a] claim related to a cause of action . . . for injury to person . . . shall be presented . . . not later than the 100th day after the accrual of the cause of action."

Meanwhile, on June 9, 1983, Chevlin filed her complaint in this action. In June 1986, the District discontinued the nuclear medicine technologists program. On June 4, 1987, Chevlin [***7] filed her third-amended complaint, seeking money damages for breach of contract, negligence, fraudulent concealment, inducing breach of contract, interference with prospective business advantage, and violation of federal civil rights. On September 8, 1987, the District filed its demurrer. As noted, *ante*, the trial court sustained the demurrer without leave to amend, on various grounds.

We begin by discussing Chevlin's contention that the trial court erred in granting a demurrer to her cause of action for negligence.

(2a) She first asserts that she stated a cause of action for negligence based on *Education Code section 84500.5*. She contends that the District breached a mandatory duty imposed by that statute when it forced her to report to unlicensed hospital staff members at Wadsworth and Harbor. n2 [**631] She further averred that because the District compelled her to work with unlicensed personnel she was "terminated from the nuclear medicine technology program and deprived of her right to sit for the national registration examination."

> n2 Section 84500.5 provides: "For the purposes of health sciences education programs in community colleges, 'immediate supervision' means student participation in such programs wherein the person to whom the student is required to report for training, counseling, or other prescribed activity shares the responsibility for the supervision of the students in clinical activities with certificated personnel of the district. In all such cases the person to whom the pupil is required to report and who is not a certificated district employee shall possess a valid certificate or license to practice a healing art in California."

[***8]

*Government Code section 815.6* provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable [*389] diligence to discharge the duty." (3) However, in deciding whether liability should attach for violation of the duty "[t]he controlling question is whether the enactment at issue was intended to impose an obligatory duty to take specified official action to prevent particular foreseeable injuries, thereby providing an appropriate basis for civil liability. [Citation.] If injury of the kind sustained by [plaintiff] was not one of the consequences which the Legislature sought to prevent through imposition of the alleged mandatory duty, liability does not obtain under *Government Code section 815.6*. [Citations.]" (*Keech v. Berkeley Unified School Dist. (1984) 162 Cal.App.3d 464, 470 [210 Cal.Rptr. 7].)*

[***9] (2b) While we think it clear that the Legislature enacted *Education Code section 84500.5* to protect the public from improperly trained health care workers, there is nothing in the statute's language to indicate that the law was also designed to prevent the improper expulsion of students from a clinical program by their "immediate supervisor." Moreover, even assuming the Legislature intended the statute to encompass student disciplinary matters, the law still would not be applicable to Chevlin's dismissal. Although she alleged that she received a "wrongful grade" for the spring semester based on "Gambino's incompetent and malicious hearsay

evaluation," Chevlin concedes it was Radtke, the District's certificated instructor, who actually made the determination to terminate her from the program.

(4) Chevlin also contends that she has stated a cause of action under a general negligence theory. She argues that by enrolling in the program the District owed her a duty of care to, among other things, adequately supervise and train her, notify her of the learning objectives she needed to meet, and provide written evaluations of her performance. Chevlin [***10] contends that the District's failure to satisfy these duties resulted in her dismissal from the program without good cause.

In effect, Chevlin has alleged that the District breached its duty of care to provide her with an education. For policy reasons, however, the law refuses to hold a public school system liable to a student who claims he was inadequately educated. ( *Peter W. v. San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814 [131 Cal.Rptr. 854].) As the court there noted: "Few of our institutions, if any, have aroused the controversies, or incurred the public dissatisfaction, which have attended the operation of the public schools during the last few decades. Rightly or wrongly, but widely, they are charged with outright failure in the achievement of their educational objectives; according to some critics, they bear responsibility for many of the social and moral problems of our society at large. . . . To hold them to an actionable 'duty of care,' in the discharge of their academic functions, [*390] would expose them to the tort claims -- real or imagined -- of disaffected students and parents in countless numbers." ( *Id. at p. 825.*) [***11]

(5) Chevlin next urges that the trial court erred in granting a demurrer to her cause of action based on breach of contract. She argues that she has standing to sue as a third-party beneficiary to the District's affiliation agreements with Wadsworth and Harbor. Chevlin also asserts that she has standing to sue by virtue of the fact that the District owed her certain contractual duties as an enrollee in the program. We disagree.

[**632] In *Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1 [101 Cal.Rptr. 499, 51 A.L.R.3d 991], a student sued her college after her instructor refused to teach the final month of a sociology class in protest of the United States invasion of Cambodia. The trial court granted the general and special demurrers of the university without leave to amend. The Court of Appeal, however, reversed the judgment as to the breach of contract action. The court held that even though the university credited her with a "B" for the sociology class, the student was entitled to prove that the institution owed her a partial refund of her tuition. ( *Id. at pp. 10-11.*)

*Zumbrun*, of course, involved [***12] a private university, and the plaintiff there was only permitted to seek recovery for tuition and other fees. Here, however, Chevlin is suing a public institution and seeking compensatory damages for her inability to find employment as a nuclear medicine technologist. We think it obvious that to permit Chevlin to recover under a breach of contract theory based on educational nonfeasance would be tantamount to permitting her to sue for negligence which is precluded under the *Peter W.* decision. Whether framed as a negligence or breach of contract theory the harm which Chevlin seeks to redress is the same.

(6) Chevlin next claims that she has sufficiently alleged a tort action based on Radtke's fraudulent concealment from her of "on the job learning objectives" required to successfully complete the program. The argument is meritless.

*Government Code section 818.8* provides: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." As the court in *Harshbarger v. City of Colton* (1988) 197 Cal.App.3d 1335, 1343 [243 Cal.Rptr. 463] [***13] stated: "[T]he immunity provided governmental entities by section 818.8 for misrepresentation applies not only to the first two types of deceit described in *Civil Code section 1710* (intentional misrepresentation and negligent misrepresentation) but also to concealment -- suppression of fact. [Citations.]"

[*391] (7) Lastly, Chevlin contends that she has stated a cause of action for violations of her civil rights pursuant to *42 United States Code section 1983* and *41 United States Code section 1985*(3). She asserts that she has a federal constitutional right to seek a nuclear medicine technologist license and that the District, without either procedural or substantive due process, prevented her from obtaining that goal.

As noted earlier, Chevlin alleged that after being denied relief in her grievance proceedings with the college and the District, she petitioned the superior court for administrative mandamus. The trial court denied her relief and she failed to appeal the decision. The proper forum for asserting that the District denied Chevlin due process of law was in the mandamus litigation. [***14] Implicit in the trial court's denial to issue a writ is the finding that District afforded Chevlin due process in terminating her from the program. She cannot relitigate that issue in this subsequent action.

The judgment is affirmed.