# EXHIBIT 14

LEXSEE 1997 U.S. DIST. LEXIS 23796

**Continental Insurance Co., Plaintiff v. Anthony Bahnan, Defendant.**

Civil Action No. 94-11304-NMG

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

*1997 U.S. Dist. LEXIS 23796*

November 6, 1997, Decided

**DISPOSITION:** [*1] Plaintiff's motion for summary judgment on defendant's counterclaims (Docket No. 48) ALLOWED, IN PART, with respect to Counts IV, V, VI, VIII and IX and DENIED, IN PART, with respect to Counts I, II, III and VII; plaintiff's motions to strike the affidavits of Anthony Bahnan (Docket No. 59), Edward Shamgochian (Docket No. 58), John W. Spillane (Docket No. 61) and Shankar L. Garg, M.D. (Docket No. 60) DENIED.

**COUNSEL:** For CONTINENTAL INSURANCE CO., Plaintiff: James T. Hargrove, Goulston & Storrs, Boston, MA.

For ANTHONY BAHNAN, Consolidated Plaintiff: John W. Spillane, Worcester, MA.

For ANTHONY BAHNAN, Defendant: John W. Spillane, Joseph W. Spillane, Worcester, MA.

Anthony Bahnan, Defendant, Pro se, Auburn, MA.

For CONTINENTAL INSURANCE CO., Consolidated Defendant: Lawrence E. Lafferty, Law Offices of F.J. McDonald, Boston, MA.

For ANTHONY BAHNAN, Counter-Claimant: John W. Spillane, Worcester, MA.

Anthony Bahnan, Counter-Claimant, Pro se, Auburn, MA.

For CONTINENTAL INSURANCE CO., Counter-Defendant: James T. Hargrove, Goulston & Storrs, Boston, MA.

**JUDGES:** Nathaniel M. Gorton, United States District Judge.

**OPINIONBY:** Nathaniel M. Gorton

**OPINION:**

### MEMORANDUM AND ORDER

GORTON, [*2] J.

On June 24, 1994, the plaintiff, Continental Insurance Company ("Continental"), filed claims for intentional misrepresentation, negligent misrepresentation and unfair or deceptive acts in violation of sections 2 and 11 of the Massachusetts Consumer Protection Act, M.G.L. c.93A ("Chapter 93A") against Anthony Bahnan ("Bahnan"), the owner of an insured apartment building that had been destroyed by fire a year earlier. n1

> n1 Continental alleges that, in order to induce it to insure the apartment building, Bahnan falsely stated that the building complied with section 197 of the Massachusetts Lead Poisoning Prevention Law, M.G.L. c.111, § § 189A-199B ("the Lead Paint Law"). Continental seeks damages of $ 68,000, which includes the amount it paid to Bahnan's mortgagee for the loss plus expenses incurred investigating, and double or treble damages under Chapter 93A.

Bahnan filed compulsory counterclaims for intentional breach of contract, interference with advantageous business relations, deceit, emotional distress, [*3] unfair or deceptive acts under Chapter 93A, § § 2, 9 and 11, and unfair insurance claim settlement practices under the Massachusetts Insurance Law, *M.G.L. c.176D, § 3 (9)* ("Chapter 176D"). Bahnan seeks to recover the replacement value of his lost property, $ 169,806, plus interest, costs and double or treble damages under Chapters 93A and 176D. Pending before this Court is Continental's motion for summary judgment under *Fed.R.Civ.P. 56(c)*

Case 1:04-cv-11572-JLT   Document 50-16   Filed 08/21/2006   Page 3 of 7

1997 U.S. Dist. LEXIS 23796, *                                             Page 2

on all counterclaims brought by Bahnan and various motions to strike.

## I. The Background Facts

On or about April 23, 1993, Bahnan applied to Continental to insure property including apartments and vacant land at 17 Mott Street, Worcester, Massachusetts. As part of the application, he submitted to Feingold & Feingold Insurance Agency, Inc. ("Feingold & Feingold") three letters confirming that the apartment building complied with the Lead Paint Law. Continental subsequently issued an insurance policy numbered "BOX 7295653" which provided coverage from April 20, 1993 to April 20, 1994.

On July 19, 1993, three months into the coverage period, a fire occurred at the property. While investigating the fire, Continental determined that the [*4] property did not comply with the Lead Paint Law. As a result of the investigation, Continental attempted to rescind the insurance contract by corresponding with Edward Shamgochian, an attorney-acquaintance of Bahnan who had accompanied him to a hearing regarding the fire on December 9, 1993. Continental sent Shamgochian the following three items:

> 1) a letter dated March 28, 1994 informing Shamgochian that Continental would not pay Bahnan's claim due to alleged (unspecified) fraudulent statements and documents, material misrepresentations during the investigation, and the company's belief that the fire was not fortuitous;
>
> 2) a letter dated June 7, 1994 informing Shamgochian that, "pursuant to the rescission of [Bahnan's] policy," the company enclosed a check refunding the premium paid; and
>
> 3) a check for $ 1,019 enclosed with the above letter.

In March, 1994, Shamgochian suggested to Bahnan that he consult a lawyer concerning his insurance claim. Through much of 1994, Shamgochian was absent from his law practice due to an illness which was later diagnosed as colon cancer. He did not see the June letter or discuss the refund with Bahnan.

In June, 1994, Bahnan [*5] was informed by someone in Shamgochian's office that Shamgochian had received a check for Bahnan. Without reading the letter from Continental, Bahnan deposited the check. In his affidavit, Bahnan states that, because he was confused by multiple correspondence, including notices of cancellation and bills from Continental with respect to 17 Mott Street and other properties, he believed the check was a refund for an overpayment of premiums. He provides evidence of the following correspondence:

> 1) a notice dated October 4, 1993, 2 1/2 months after the fire, that his policy would be cancelled shortly thereafter because the building had remained unoccupied for over 60 days;
>
> 2) a notice dated October 14, 1993, stating that his policy would be cancelled on November 6 for failure to pay the premium;
>
> 3) a notice dated February 25, 1994, with a copy of a letter dated January 25, 1994, stating that he owed $ 1,019 on his premium;
>
> 4) a notice of cancellation dated February 25, 1994, stating that Continental would not renew the policy after it expired April 20, 1994; and
>
> 5) a bill dated March 8, 1994 for $ 1,029.

Bahnan consulted David Feingold, his agent at Feingold [*6] & Feingold, after receiving the first and second cancellation notices and was reassured both times that his policy would not be cancelled. After receiving the February notice, he told Feingold that he was confused about billing because he had not been receiving regular bills. After receiving the March bill, he understood from a conversation with Feingold that he was required to pay the bill, but that he would be receiving a "credit back to me." As a result, he paid $ 1,029 to Continental by check, and, when he deposited the check received from Continental in June, he believed it was a "return of premium" for the nine months following the fire during which he continued to pay for coverage.

## II. The Motion for Summary Judgment

### A. The Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)* (quoting *Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990))*. The burden is upon the moving party to show,

based upon the pleadings, discovery on file and affidavits "that [*7] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine triable issue. *Celotex Corp. v. Catrett, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The nonmovant, however, may not rest upon mere allegation or denial of the pleadings. *Fed.R.Civ.P. 56(e)*. The Court must view the record in the light most hospitable to the non-moving party and indulge all reasonable inferences in his favor. *O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993)*.

B. Counts I, II and III: Counterclaims for Intentional Breach of Contract, Interference with Advantageous Relations and Deceit

Continental argues that Bahnan's counterclaim for intentional breach of contract and derivative counterclaims for interference with advantageous relations and deceit fail because the insurance contract was effectively rescinded when Bahnan deposited the check from Continental. Continental relies on the decision of the Supreme Court [*8] of Minnesota in *Mutual of Omaha Ins. Co. v. Korengold, 308 Minn. 457, 241 N.W.2d 651 (1976)* for the proposition that, where an insurer contends in good faith that it had the right to rescind and offers the putative insured a return of premium, it effectively rescinds the policy.

Continental overstates the breadth of the Minnesota Supreme Court's holding. That court, in distinguishing effective from ineffective rescission, emphasized the insured's understanding that cashing the check would constitute an agreement to rescind:

> The mere fact that an insured cashes or retains a refund check is not by itself sufficient to constitute rescission as a matter of law. There may be many instances in which an uninformed and unsophisticated insured will cash a refund check sent to him by an insurance company, which intends by sending the check to divest itself of responsibility under the policy. In such a case rescission should not be established solely because the insured cashes the check.

*Id.* at 457-58 (citations omitted). Relying on the Minnesota holding, Continental fails to cite any other authority for the proposition that the insured's deposit [*9] of a refund check issued in good faith constitutes rescission per se.

In this case, Bahnan produces sufficient evidence to demonstrate a genuine issue of material fact with respect to his understanding of the significance of the return premium check. Based on the evidence in the record, a reasonable jury could find that

> 1) Shamgochian never undertook representation of Bahnan in this matter, and letters regarding Bahnan's insurance coverage were improperly addressed to him;
>
> 2) Shamgochian was not Bahnan's agent, and his knowledge of letters from Continental could not be imputed to Bahnan;
>
> 3) Shamgochian did not learn of the letter expressing Continental's intent to rescind the insurance contract until after Bahnan deposited the check; and/or
>
> 4) neither Bahnan nor any agent of Bahnan understood that the return premium check was intended to rescind the insurance contract.

Contrary to Continental's contention that it successfully rescinded the contract, Bahnan has demonstrated the existence of a genuine issue of fact material to the validity and enforceability of the insurance contract. Continental's motion for summary judgment on the counterclaims for [*10] intentional breach of contract, interference with advantageous business relations and deceit will, therefore, be denied.

C. Counts IV, V, VI, VII and VIII: Counterclaims Pursuant to Chapter 176D and Chapter 93A, §§ 2, 9 and 11

In five counts of Bahnan's counterclaim, he alleges unfair and deceptive insurance practices in violation of Chapter 176D, Chapter 93A or both. In considering the pending motion for summary judgment, this Court must determine which, if any, of the counterclaims may survive as a matter of law.

1. Count IV: Counterclaim Pursuant to Chapter 176D for Unfair Insurance Claim Settlement

Alleging violations of Chapter 176D, Bahnan cites numerous provisions prohibiting unfair insurance claim settlement practices. See *M.G.L. c.176D § 3 (9)(b)*-(f), (i), and (m)-(n). Chapter 176D, however, does not create a private right of action for individuals injured by such

practices. See *Pariseau v. Albany Int'l Corp.*, 822 F. Supp. 843, 845 (D. Mass. 1993); *Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72, 75, 365 N.E.2d 802 (1977), *overruled on other grounds, Van Dyke v. St. Paul Fire and Marine Ins. Co.*, 388 Mass. 671, 675, 448 N.E.2d 357 (1983); [*11] *Mahaney v. John Hancock Mut. Life Ins. Co.*, 6 Mass. App. Ct. 919, 921, 380 N.E.2d 140 (1978); see also *M.G.L. c.176D § 6* (providing for enforcement by the Commissioner of Insurance for the Commonwealth). Continental is therefore entitled to summary judgment with respect to Bahnan's counterclaim directly under Chapter 176D (Count IV).

2. Counts V and VI: Counterclaims Pursuant to Chapter 176D for Unfair Insurance Claim Settlement Practices and Chapter 93A for Unfair or Deceptive Acts

A consumer may recover damages for violations of both the unfair claim settlement provisions of Chapter 176D and the unfair or deceptive acts provision of Chapter 93A pursuant to the latter statute. *M.G.L. c.93A § 9 (1)*; see *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 754, 610 N.E.2d 912 (1993); *Noyes v. Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 725-26, 389 N.E.2d 1046 (1979). Continental argues that it is, nevertheless, entitled to summary judgment on Bahnan's counterclaims pursuant to § 9 (Counts V and VI) because Bahnan does not have standing to bring claims under that section.

Standing to bring a § 9 claim is [*12] restricted to any person "other than a person entitled to bring an action under section eleven of this chapter." *M.G.L. c.93A § 9*. Section 11 entitles "any person who engages in the conduct of any trade or commerce" to bring an action for unfair and deceptive practices. *M.G.L. c. 93A § 11*; see *Employers Ins. of Wausau v. George*, 41 Mass. App. Ct. 719, 729, 673 N.E.2d 572 (1996)(finding that relief under § 9 is unavailable to a plaintiff engaged in trade or commerce), *appeal denied*, 424 Mass. 1104 (1997); *DiVenuti v. Reardon*, 37 Mass. App. Ct. 73, 79, 637 N.E.2d 234 (1994)(finding that the owner of business property may not recover for violations of Chapter 176D under § 9 of Chapter 93A). Cf. *Kiewit Constr. Co. v. Westchester Fire Ins. Co.*, 878 F. Supp. 298, 300 (D.Mass. 1995) (stating in dicta that the Supreme Judicial Court has never decided whether a person engaged in trade or commerce may sue under § 9).

"Trade or commerce," as defined in *M.G.L. c.93A, § 1(b)*, includes "the offering for sale, rent or lease [and] the sale, rent, lease or distribution of any . . . property." See *Linthicum v. Archambault*, 379 Mass. 381, 387, 398 N.E.2d 482 (1979) [*13] (holding that a plaintiff who used her entire house as a rental property at the time she purchased the defendant's services was engaging in "trade or commerce"), *overruled on other grounds by Knapp Shoes, Inc. v. Sylvania Shoe Manuf. Corp.*, 418 Mass. 737, 640 N.E.2d 1101 (1994); *DiVenuti*, 37 Mass. App. Ct. at 74, 79 (finding that owner of nine residential properties conducted "trade or commerce" under Chapter 93A).

In order to show that Bahnan was involved in "trade or commerce" and thus precluded from bringing a § 9 claim, Continental submits statements from Bahnan's sworn deposition which show that he did not reside at 17 Mott Street, that he bought the property with a partner and that his "job" was to collect rents there. In addition, the record shows that Bahnan owned four buildings, that in applying for insurance coverage for 17 Mott Street, he filled out a "Commercial Insurance Application" in which he stated that his business was "apartments," and he was issued a custom policy entitled "Business Owners Extra."

Supported only by evidence of his sole ownership (his partner having transferred the partner's interest to him), Bahnan argues [*14] in opposition that he owns the building for "family" rather than business purposes. Bahnan's unsubstantiated protestation fails, however, to demonstrate a genuine issue of material fact concerning his engagement in "trade" or "commerce." Because Bahnan is entitled to bring a claim pursuant to § 11, Continental is entitled to summary judgment on Bahnan's claims under Chapter 93A, § 9 (Counts V and VI).

3. Count VIII: Counterclaim Pursuant to Chapter 93A, § 11 for Unfair Insurance Claim Settlement Practices under Chapter 176D

Count VIII of Bahnan's counterclaim asserts a right to recover for violations of Chapter 176D pursuant to Chapter 93A, § 11, governing claims brought by businesses against other businesses for unfair or deceptive acts. Unlike § 9, § 11 does not grant the right to a business to recover directly for violations of Chapter 176D. See *Kiewit Construction Co.*, 878 F. Supp. at 300; *Polaroid Corp.*, 414 Mass. at 754; *Jet Line Servs., Inc. v. American Employers Ins. Co.*, 404 Mass. 706, 717 n.11, 537 N.E.2d 107 (1989); *DiVenuti*, 37 Mass. App. Ct. at 79; *Transamerica Ins. Group v. Turner Constr. Co.*, 33 Mass. App. Ct. 446, 452, 601 N.E.2d 473 (1992). [*15] Continental is, thus, entitled to summary judgment on Count VIII of Bahnan's counterclaim.

4. Count VII: Counterclaim Pursuant to Chapter 93A, § 11 for Unfair or Deceptive Acts under Chapter 93A, § 2

While businesses may not recover for violations of Chapter 176D pursuant to § 11 of Chapter 93A, businesses may recover pursuant to that section for unfair or deceptive insurance practices that violate Chapter 93A, §

2. See *Kiewit Const. Co.*, 878 F. Supp. at 300; *Dodd*, 373 Mass. at 78.

Bahnan alleges, in Count VII of his counterclaim, that Continental intentionally denied coverage when it was clear that liability was certain and that Bahnan had complied with the terms of the contract. Continental argues that it is entitled to summary judgment on that count because Bahnan fails to produce any evidence that it acted in bad faith when it denied his claim under the policy. Specifically, Continental relies on having "properly rescinded the subject insurance policy." There remain, however, genuine issues of material fact concerning Continental's good faith in attempting to rescind the policy. Continental is not, therefore, entitled to summary [*16] judgment with respect to Bahnan's counterclaim pursuant to Chapter 93A, § 11 (Count VII).

D. Count IX: Counterclaim for Negligent Infliction of Emotional Distress

In order to sustain a claim for negligent infliction of emotional distress, the plaintiff must show physical harm manifested by objective symptoms as well as negligence, emotional distress, causation and that a reasonable person would have suffered emotional distress under the circumstances. See *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 132, 605 N.E.2d 805 (1992) (citing *Payton v. Abbott Labs*, 386 Mass. 540, 557, 437 N.E.2d 171 (1982)). Continental argues that it is entitled to summary judgment because Bahnan fails to produce evidence to prove those elements.

In opposition, Bahnan alleges that Continental negligently settled with Bahnan's mortgagee and that he suffered severe emotional distress as a result. He submits the affidavit of his doctor and former business partner, Shankar L. Garg, M.D., to show that he suffered from anxiety and depression as a result of Continental's negotiation of his insurance claim. That affidavit notwithstanding, Bahnan fails to produce evidence [*17] of physical harm manifested by objective symptoms. Continental is thus entitled to summary judgment on Bahnan's counterclaim for negligent infliction of emotional distress (Count IX).

III. Motions To Strike

A. The Legal Standard

Affidavits submitted in support of or in opposition to a motion for summary judgment must be based on personal knowledge, set forth facts that would be admissible in evidence and demonstrate the affiant's competency to testify to statements therein. *Fed.R.Civ.P. 56(e)*. Where portions of an affidavit are admissible, the court considers those portions in determining whether to allow or deny the motion and disregards inadmissible portions.

See *Lee v. National Life Assur. Co. of Canada*, 632 F.2d 524, 529 (1980); *Corley v. Life & Cas. Ins. Co. of Tenn.*, 111 U.S. App. D.C. 327, 296 F.2d 449, 450 (D.C. Cir. 1961) (holding affidavit showing genuine issues of material fact could be considered though admissibility of statements therein could not be conclusively established).

B. The Motions

1. Continental's motion to strike the affidavit of Anthony Bahnan will be denied because the statements relevant to [*18] the pending motion, namely PP16-19, are based on Bahnan's personal knowledge and are admissible to show Bahnan's state of mind with respect to the check he received from Continental. As to the remaining paragraphs, which have not been considered by this Court, the motion is moot.

2. Continental's motion to strike the affidavit of Attorney Edward Shamgochian will be denied because the paragraphs considered for purposes of the pending motion, namely PP 1-6, 9, 14 and 21 and the last sentences of PP 18 and 22, contain admissible, non-hearsay statements based on personal knowledge.

3. Continental's motion to strike the affidavit of John W. Spillane will be denied as moot because that affidavit has not been considered by this Court in reaching its decision on the pending motion for summary judgment.

4. Continental's motion to strike the affidavit of Shankar L. Garg, M.D. will be denied. Dr. Garg was Bahnan's treating physician and was qualified to make statements concerning Bahnan's mental and physical condition in the allegedly objectionable paragraphs, namely PP 4 and 6. The first sentence of P 4, which contains inadmissible hearsay, has not been considered by this Court. [*19]

ORDER

For the foregoing reasons:

1) plaintiff's motion for summary judgment on defendant's counterclaims (Docket No. 48) is **ALLOWED, IN PART**, with respect to Counts IV, V, VI, VIII and IX and **DENIED, IN PART**, with respect to Counts I, II, III and VII thereof;

2) plaintiff's motions to strike the affidavits of Anthony Bahnan (Docket No. 59), Edward Shamgochian (Docket No. 58), John W. Spillane (Docket No. 61) and Shankar L. Garg, M.D. (Docket No. 60) are **DENIED**.

So ordered.

Nathaniel M. Gorton

United States District Judge

1997 U.S. Dist. LEXIS 23796, *

Dated: November 6, 1997