

**The Union Institute**

440 East McMillan Street
Cincinnati, Ohio 45206-1925
513/861-6400 ♦ 800/486-3116
TDD 800/486-9968 ♦ FAX 513/861-0779

EXHIBIT 98
Schwartz
4/28/06 QR

RECD
MAR 7 1997

EXHIBIT 12
to Plaintiff's Opposition

Office of the Dean
The Graduate School

February 28, 1997

Robert G. Coutu, Ph.D. Chair
Board of Registration of Psychologists
L. Saltonstall Building
Government Center
100 Cambridge St, 15th Floor
Boston, MA 02202

Dear Dr. Coutu,

The purpose of this letter is to register an official expression of protest regarding the changes proposed to the educational qualifications required for eligibility for psychologist licensure in Massachusetts.

First, let me thank your office for forwarding to me the copy of the proposed changes. That copy was received on February 18, 1996. The copy which I received did not include any notice of the public hearing regarding the changes. On this date, I phoned the Board office and learned that the public hearing will be March 14, 1997. As the Dean of the Union Institute Graduate College of Professional Psychology, my office has corresponded with your office many times. In each instance The Union Institute has identified itself as an interested and impacted party, since The Union Institute has a number of current and potential students and graduates who are currently in the process of seeking or who will eventually seek psychologist licensure in Massachusetts. As an interested party, I sincerely wish that you would have informed me of the date of the hearing so that I could have made plans to attend the public hearing. Like many behaviors that the Massachusetts Board has demonstrated in the past, this public constituent once again feels excluded. In the future, I respectfully request that you inform me, as an interested and impacted party, of any public hearings regarding proposed changes to your laws/rules.

Secondly, please consider the following points in opposition to the proposed changes:

1. The Association of State and Provincial Psychology Boards (ASPPB) like The American Psychological Association (APA) is a private organization. A state government should not include in its laws/rule provision for exclusive affiliation with a private organization. In a free and democratic society there are many reasons why citizens might choose not

to have direct or indirect affiliation with a private organization. If a private organization is included or named in its laws/rules because of its representation of the standards of the profession, there should be provision for the demonstration of equivalence to those standards.

2. In addition, since ASPPB is essentially a professional guild, its primary mission is to look out for the interests of its members and constituents. ASPPB does not necessarily represent the full spectrum of consumer issues (especially those of equal opportunity, access, and restraint of trade) which are the responsibility of the Massachusetts Board of Psychology in its role as a public body supported by public monies. In fact, the interests of ASPPB as a professional guild are likely to be contrary to the issues of equal opportunity and access.

3. ASPPB is not an agency which has any official governmental recognition. ASPPB is not an accrediting body, nor is it recognized by the U. S. Department of Education. As a result, its ability to represent the standards of the profession are questionable.

4. In the past, the ASPPB designation list has been sharply criticized by a number of significant APA figures and by other eminent scholars in the field of psychology. Systematic studies of the ASPPB designation list have revealed that many of the programs which have ASPPB designation do not actually meet the criterion stated by ASPPB. The proposed rule/law revision will open the door for the professional licensure as psychologists in the Commonwealth of Massachusetts graduates of numerous programs who have not had appropriate training for the professional practice of psychology.

5. While the ASPPB designation list includes several hundred programs, it does not include numerous quality regionally accredited doctoral programs in The United States and Canada programs whose philosophy, mission and curriculum are specially designed to prepare psychologists for professional practice. The proposed revision will "carte blanche" exclude hundreds of graduates of those quality accredited doctoral programs. The basic impact of the rule/law revision will be exclusion and potential discrimination. State laws and rules should be revised to weed out such discriminatory or potentially discriminatory clauses.

6. The proposed rule revision does not provide any mechanism for licensure applicants from non-ASPPB designated programs to demonstrate equivalence to the ASPPB designation criteria. That exclusion increases the discriminatory nature of the proposed rule/law change. It provides the opportunity for discrimination which will impact hundreds of individuals (especially women, minorities, older individuals and

handicapped individuals), who have chosen to further their education and professional standing by completing quality regional accredited doctoral programs in programs which do not have ASPPB designation.

7. The proposed revision unfairly privileges graduates of foreign educational institutions, by granting them the opportunity to achieve acceptance for licensure eligibility, by providing a mechanism for demonstrating that they meet the standards of domestic recognized institutions. This is a significant breach of equal opportunity. If graduates of foreign institutions (which are not ASPPB designated) are afforded the opportunity to demonstrate equivalence to the ASPPB standards, it is only fair that graduates of non-ASPPB designated domestic institutions (U. S. and Canadian) should also be afforded the opportunity to demonstrate equivalence to the ASPPB standards.

8. If enacted, the revision will have serious and drastic consequences for hundreds of candidates who have matriculated in and invested their energy, time and funds in quality regionally accredited doctoral programs which are not ASPPB designated without providing them an opportunity to complete their doctoral programs and other experience requirements and to qualify for licensure in Massachusetts without being severely harmed by the proposed law/rule change. Most doctoral programs in professional psychology take approximately five post-baccalaureate years. Most professional psychology program graduates take an additional one to three years to acquire the required post doctoral experience before they apply for licensure. The proposed enactment of rule/law change for September 1, 2000, does not allow for enough time for currently matriculated students to complete their programs and to have an appropriate amount of time to acquire the post doctoral supervised experience. Again, the proposed rule/law change has very damaging impact on many current Massachusetts residents and potential Massachusetts residents.

9. The enactment of the proposed rule/law change will represent serious over-regulation and over-reaching of governmental function. In addition, the proposed change inter-links the bureaucracies of a private organization (ASPPB) with the business of government in Massachusetts.

10. Like the changes proposed in 1996, the current proposed change is contrary to the original intent of the Massachusetts law which was clearly written to provide alternative paths for completing the educational requirements for psychologist licensure. The proposed change restricts the path to professional licensure. The Commonwealth of Massachusetts has a long history of equitable government and affirmative concern for law, order, nondiscriminatory access and inclusion and for the voices and rights of citizens. The

proposed change is contrary to those tenets. The proposed change is representative of unnecessary additional governmental control, and unnecessary additional government restriction and interference with trades and professions.

Thank you for your consideration.

Sincerely,

Lawrence J. Ryan, Ph.D.
Licensed Psychologist
Dean

LJR/cam

cc:  Massachusetts File
     William F. Weld, Governor
     L. Scott Harshbarger, Attorney General
     William Wood, Director
     Craig Chamberlain
     David Ramsey
     Atty, Joel Stein, General Counsel
     Rude Melone
     Robert Lee
     Marsha Hammond
     Clark Moustakas




**The Union Institute**

440 East McMillan Street
Cincinnati, Ohio 45206-1925
513/861-6400 ◆ 800/486-3116
TDD 800/486-9968 ◆ FAX 513/861-0779

Office of the Dean
The Graduate School

May 8, 1997

William G. Wood, Director
Commonwealth of Massachusetts
Division of Registration
Leverett Saltonstall Building, Government Center
100 Cambridge Street
Boston, MA 02202

Dear Mr. Wood,

Thank you for your letter dated May 1, 1997. It is good to know that someone from your agency received and read the letter which I sent pertaining to the proposed changes in the licensure laws/rules for psychologists in Massachusetts. While your response is greatly appreciated, your letter did not substantively engage most of the issues which I raised in my February 28, 1997 letter. I hope that you will read it again.

In addition, I sincerely implore you to intervene in the implementation of the proposed revisions to the laws/rules. Please consider the following three points:

1. I am aware that at the only public hearing regarding this matter conducted on March 14, 1997, expressed opinion was unanimously against the proposed revisions to the psychology licensure laws. At that hearing absolutely noone spoke in favor of the revisions. In fact, a broad diversity of constituents, including the representatives from the Massachusetts Psychological Association and the Massachusetts School of Professional Psychology as well constituents from The Union Institute among others, presented logical and reasoned opposition to the proposed changes. I am also aware that at its subsequent meeting on April 11, 1997 the Board, nonetheless voted to adopt the proposed revisions. I am aware that the Board had not presented to the public any rationale for the adoption of the new rules. Does the above course of events make sense in a country and state/commonwealth which are supposed to be known for their democratic processes?

2. The implication in your letter that the proposed changes constitute no essential change in the law is an oversimplification of the matter. When one examines the situation carefully, by adopting the proposed

rule/law changes The Commonwealth of Massachusetts is institutionalizing an affiliation with a private organization, ASPPB. While ASPPB purports to represent the interests of state licensure boards, it remains a private, exclusionary and guild type of organization. There are many reasons why an individual or an institution may choose not to seek affiliation with a private organization. Some of those reasons may be theoretical, organizational or even financial. Many academic institutions consider organizations such as ASPPB and others to constitute a threat to the concept of academic freedom which the institutions have a responsibility for upholding. To have such affiliation required and imposed by governmental rule for an individual to advance in his/her chosen profession should be unconstitutional. The proposed rule changes in Massachusetts impose such an affiliation and will ultimately serve to disadvantage and exclude a group of individuals who have chosen to complete doctoral level professional psychology training in quality regionally accredited programs which do not have an affiliation with ASPPB. Those individuals are primarily older individuals, women, minorities and disabled persons. Does it make sense for Massachusetts to exclude such individuals from advancing in their chosen profession?

3. In your letter you imply a dicotomotization between "Non-traditional programs" and traditional programs. In today's environment of rapidly changing educational technology and program innovation, especially at the doctoral level, such a dicotomization is meaningless. What are perceived as traditional doctoral programs frequently operate with models, methods and formulae which one might characterize as non-traditional. On the converse frequently what are perceived as non-traditional doctoral programs operate with very traditional methods. Exactly how do you define traditional? Furthermore, how do you assure that the definition is applied equally to each institution and program?. Is it just and in the service of the current and future citizens of Massachusetts to delegate the enforcement of that standard to ASPPB, a private organization which is not even recognized by the U. S. Department of Education as an accrediting agency? Is it not more equitable to delegate what constitutes a viable doctoral program to one of the six regional accrediting agencies which are recognized by the U. S. Department of Education?

I will look forward to your response to the above items.

Sincerely,

Lawrence J. Ryan, Ph.D.
Dean
Licensed Psychologist

LJR/cam

cc: Clark Moustakas, Ph.D.
    Rudy Melone, Ph.D.
    Marsha Hammond, Ph.D.
    Robert Lee, Ph.D.
    Arletta Ciofari
    Susan goeller
    Larry Shobert
    Miller Newton
    Dan Dill
    Robert DuWors
    Donna Janas
    Paul Youd
    Stan Edelson
    Robert Macy
    Kenneth Bennet
    Steven James
    Walter Dybik
    Jude Sokol
    Ronna Hoffman
    Linda Hartling
    Robert Coutu, Ph.D.
    Karen Schwartz, Ph.D.
    William F. Weld, Governor
    L. Scott Harshbarger, Attorney General
    Craig Chamberlain
    David Ramsey
    Atty. Joel Stein
    Representative Chip Clancy