**EXHIBIT 13**
to Plaintiff's Opposition

**The Union Institute**

440 East McMillan Street
Cincinnati, Ohio 45206-1947
513/861-6400 ♦ 800/486-3116
TDD 800/486-9968 ♦ FAX 513/861-0779

Office of the Dean
The Graduate School

> Rudy —
> Good letter in terms of
> outlining various arguments
> to be made w/ lic.
> boards.
>
> use in writing
> ...
> letters to lic
> psych boards, as
> appropriate
> Gerry

January 16, 1996

Robert G. Coutu, Ph.D.
Board of Registration of Psychologists
Leverett F. Saltonstall Building, Government Center
100 Cambridge Street
Boston, MA 02201

Dear Dr. Coutu:

Thank you for the opportunity to speak at the January 12, 1996 hearing regarding the proposed revisions in the rules pertaining to the licensure of psychologists in Massachusetts.

This letter provides details regarding my strong objections to the proposed rule revision:

1. If adopted, the law will discriminate against individuals especially older persons, women, minorities, and disabled persons who choose to engage in quality regionally accredited doctoral programs which include alternatively formatted formulae consistent with the intent of the Massachusetts law relating to residency in the doctoral programs qualifying for psychologist licensure eligibility.

2. The proposed clauses are contrary to the original intent of the Massachusetts law which was clearly written to provide alternative paths for completing the educational requirements for psychologist licensure. The proposed clauses serve to restrict those alternative paths. The Commonwealth of Massachusetts has a long history of equitable government and affirmative concern for law, order, nondiscriminatory access and inclusion, and for the voices and rights of citizens. The proposed clauses are contrary to those tenets. The proposed clauses are representative of unnecessary additional governmental control, and unnecessary additional government restriction and interference with trades and professions.

3. The proposed clauses serve to deprive a set of appropriately trained individuals, especially older persons, women, minorities, and disabled persons the property of a license to practice psychology. That deprivation limits access to the profession, an act which is discriminatory and which constitutes a restraint of trade, and which will ultimately drive up the costs of health care in Massachusetts by limiting competition.

S01985  (3 pg)

EXHIBIT 54
03-14-06



Page 2

4. There is absolutely no evidence which has been presented by the Board or which has appeared in the professional literature which conclusively proves that individuals who engaged in psychology doctoral programs with "traditional", "on campus" residency formulae as indicated in the proposed change in the board's laws and rules are any better trained, educated, acculturated, and socialized as psychologists than individuals who have graduated from doctoral programs which have alternative but equivalent residency formulae.

5. The proposed clauses manifest complete disregard for contemporary educational philosophy and technology especially as applied to the population of adult mid-career professions for whom the traditional model of "on campus" education has proved to be inaccessible, ineffective, and inordinately expensive to the state and to citizens. The proposed clauses are contrary to all tenets of contemporary educational philosophy including the writings of Malcolm Knowles and the very recent publication of the American Psychological Association pertaining to "learner-Centered Psychological Principles: A Framework for School Redesign and Reform." The APA document emphasizes the nature of the learning process and successful learning as being active, goal directed, self regulating. It indicates that "technologies and instructional practices must be appropriate for learners' level of prior knowledge, cognitive abilities; and their learning and thinking strategies." The proposed clauses are restrictive and presume that all learners are at the same level and are likely to learn via the same strategy—the very limited strategy of instruction in the on-campus classroom.

6. The proposed change represents an act of overreaching by the Board extending well beyond its established domain of consumer protection. No evidence has been presented which indicates that consumers are harmed by individuals who have achieved licensure and who have graduated from accredited doctoral programs which include alternatively formatted but equivalent residency formulae.

7. The adoption of the new clauses (especially without a grandfathering clause) will irrevocably harm many current and potential Massachusetts residents who have studied the current working of the Massachusetts law (for which psychologist licensure precedent has been set), and who have in good faith invested considerable time, effort, and money on the basis of the currently published and effective Massachusetts laws and rules.

8. The Union Institute residency is accepted for licensure eligibility in many other states including but not limited to Ohio, Michigan, Pennsylvania, Kentucky, Georgia, New Jersey, Wisconsin, Minnesota, Vermont, New York, California, Colorado, Texas, Oregon, Washington, and Virginia. The adoption of the new rules makes Massachusetts laws inconsistent with other states.

S01986

54.2

9. A number of UIGS graduates have been licensed in Massachusetts. There is no data to suggest that those individuals are any less prepared, trained or educated than individuals who graduated from programs which include a traditional residency formula.

Please inform me as to when the adoption of the proposed rules will be further discussed and voted by the Board.

Sincerely,

Lawrence J. Ryan, Ph.D., Dean

LJR/mm

cc: All Board Members
Clark Moustakas, Ph.D.
Marsha Hammond, Ph.D.
Robert Lee, Ph.D.
Robert Macy

S01987

54.3