UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SUSAN COONEY, | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| SAYBROOK GRADUATE SCHOOL AND | ) |
|     RESEARCH CENTER. | ) |
|     Defendant | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF SUSAN COONEY'S RESPONSE TO DEFENDANT SAYBROOK'S STATEMENT OF MATERIAL FACTS

Pursuant to F.R.C.P. 56 and Local Rule 56.1, plaintiff Susan Cooney ("Cooney") responds to the Statement of Material Facts of Defendant Saybrook Graduate School and Research Center ("Saybrook").

A. **PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS.**

1. Undisputed.

2. Undisputed.

3. <u>Disputed</u>. Further responding, plaintiff notes that the phrase "broad domain of human experience" is vague and confusing. Saybrook's 1994-95 Interim Catalogue also establishes that Saybrook provides training to students seeking licensure as psychologists in many states. <u>1994-95 Interim Catalogue</u> (**Ex. 2** to <u>Garcia Affidavit; Plaintiff's Motion for Summary Judgment</u>), p. 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

*******************************************
SUSAN COONEY,                              )
    Plaintiff                              )
                                           )
v.                                         )
                                           )
SAYBROOK GRADUATE SCHOOL AND               )
    RESEARCH CENTER.                       )
    Defendant                              )
*******************************************

## PLAINTIFF SUSAN COONEY'S RESPONSE TO DEFENDANT SAYBROOK'S STATEMENT OF MATERIAL FACTS

Pursuant to F.R.C.P. 56 and Local Rule 56.1, plaintiff Susan Cooney ("Cooney") responds to the Statement of Material Facts of Defendant Saybrook Graduate School and Research Center ("Saybrook").

A. **PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS.**

    1.    Undisputed.

    2.    Undisputed.

    3.    <u>Disputed</u>. Further responding, plaintiff notes that the phrase "broad domain of human experience" is vague and confusing. Saybrook's 1994-95 Interim Catalogue also establishes that Saybrook provides training to students seeking licensure as psychologists in many states. <u>1994-95 Interim Catalogue</u> (**Ex. 2** to <u>Garcia Affidavit; Plaintiff's Motion for Summary Judgment</u>), p. 2

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. <u>Disputed</u>. Defendant alleges that Saybrook instructed Cooney at the time of her matriculation to consult with state authorities. Defendant has incorrectly cited ¶ 8 of <u>Plaintiff's Amended Complaint</u> (**Ex. 1** to <u>Garcia Affidavit</u>), which provides no support for defendant's allegation.

9. Undisputed.

10. <u>Disputed</u>. Defendant has distorted Cooney's deposition testimony. Cooney inquired about Board requirements for licensure in 1995. <u>Cooney Deposition, Vol. I</u> (**Ex. 2** to <u>Plaintiff's Opposition</u>), pages 71-72. Cooney reviewed the requirements with a Saybrook agent. <u>Cooney Deposition, Vol. II</u> (**Ex. 3** to <u>Plaintiff's Opposition</u>), pp. 48-49.

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. <u>Disputed</u>. Defendant has selectively quoted and distorted Dr. Schwartz's testimony. Although the Board did not mail notices of regulatory changes to all graduate schools, Dr. Schwartz was unable to determine if Saybrook had notice of the regulatory changes. <u>Deposition of Dr. Schwartz</u> (**Ex. 6** to <u>Garcia Affidavit</u>), pp. 146-147 ("I have no information about what Saybrook did or didn't know.")

15. Undisputed.

2

B.   **PLAINTIFF'S CONCISE STATEMENT OF ADDITIONAL MATERIAL FACTS FOR WHICH THERE ARE TRIABLE ISSUES.**

1.   At all times relevant to the Complaint, Susan Cooney has been a resident of Massachusetts. Plaintiff's Amended Civil Complaint ("Amended Complaint") (**Ex. 1** to Garcia Affidavit), ¶¶ 1, 12.

2.   Cooney informed Saybrook that her professional objective was to become a licensed clinical psychologist in Massachusetts. Deposition of Susan Cooney, Vol. II, (**Ex. 3**, p. 118);

3.   In the 1994-95 Interim Catalogue ("Catalogue"), Saybrook advised prospective students that its graduates have been licensed as psychologists in many jurisdictions, including Massachusetts. Catalogue (**Ex. 2** to Garcia Affidavit), p. 3.

4.   The Catalogue also states that Saybrook will assist students to become licensed in the state of their choice, and that Saybrook will monitor regulatory changes:

> Saybrook is committed to assisting those students who plan to seek licensure in the state of their choice. To this end, the Institute is a member of the Consortium of Diversified Psychology Programs (CDPP), which is active in state-by-state efforts to monitor and influence existing and changing regulations which permits graduates from alternative programs to sit for licensure.

5.   In the Catalogue, Saybrook advises students seeking clinical licensure to "contact the licensing board in the state in which they plan to practice to obtain the detailed requirements, because regulations differ from state to state." Id. After students have obtained licensure requirements, Saybrook does not direct students to monitor regulatory changes—a function that Saybrook and CDPP had agreed to perform. See id.

3

6. In Saybrook's 1996-1998 Catalogue, Saybrook reiterated its commitment to monitor existing and changing regulations through its active membership in CDPP. 1996-1998 Catalogue (**Ex. 4** to Plaintiff's Opposition), p. 6. In the 1998-99 academic year and thereafter, Saybrook began to delete references to its efforts to monitor licensure standards through its affiliation with CDPP. However, this apparent policy change did not apply to Cooney or other students who matriculated in 1995. William Bruff, Ph.D., Saybrook's Associate Vice President for Academic Affairs, stated that students are only "bound by the catalogue that they're admitted with." Deposition of Dr. Bruff, (**Ex. 5** to Plaintiff's Opposition), pp, 21, 49. Moreover, Saybrook does not mail or distribute subsequent catalogues absent a specific request. Id, pp. 51-53.

7. Per Saybrook's instructions, Cooney contacted the Massachusetts Board of Registration of Psychology ("the Board) in the summer of 1995 and obtained a copy of licensure standards for psychologists. See Deposition of Cooney, Vol. I (**Ex. 2** to Plaintiff's Opposition), pp. 71-72.

8. At a Residential Orientation Conference in the Fall of 1995, Cooney met with a female Saybrook representative, who reviewed Massachusetts regulations and advised her that Saybrook's program met Massachusetts requirements for licensure. Cooney Deposition, Vol. II (**Ex. 3** to Plaintiff's Opposition), pp. 48-49.

9. At or about the time of the orientation conference, Saybrook provided Cooney with a list of jurisdictions that do not accept a Saybrook degree for licensure as a psychologist. The list included Oregon, Iowa, Connecticut, Georgia, and Maryland. Information about the CDPP and NPAA (**Ex. 6** to Plaintiff's Opposition). Saybrook failed to alert Cooney that Massachusetts was implementing regulatory changes that would disqualify Saybrook graduates. See Cooney Deposition, Vol. II (**Ex. 3** to

4

Plaintiff's Opposition), pp. 57-58. See also ¶¶ 12, 14-16, *infra*.

10.     Cooney was also informed that Saybrook would stay abreast of any changes to licensure requirements. See <u>Cooney Deposition, Vol. II</u> (**Ex. 3** to <u>Plaintiff's Opposition</u>), pp. 48-49, 52-53, 59-64; <u>Catalogue</u> (**Ex. 2** to <u>Garcia Affidavit</u>)., p. 3.

11.     Saybrook's Interim President, Rudy Melone, represented Saybrook on the CDPP and served as co-chair of CDPP. See <u>CDPP Memorandum and Conference Call Documents</u> (**Ex. 7** to <u>Plaintiff's Opposition</u>), p. 1.

12.     Before Cooney matriculated at Saybrook in the Fall of 1995, Saybrook and Melone were aware that Saybrook students would face licensure obstacles in Massachusetts. In March, 1995, Melone contacted the Board to protest its rejection of a Saybrook graduate, John Burke, Jr.  <u>Letter of Rudy Melone dated March 20, 1995</u> (**Ex. 8** to Plaintiff's Opposition). See also <u>Greening's Memorandum re APA Accreditation</u>, (**Ex. 9** to <u>Plaintiff's Opposition</u>), p. 13 ("..Saybrook students have on occasion hired themselves a lawyer… and indicated that a suit would be pending…. John Burke was successful in so challenging the Massachusetts board…"). Dr. Karen Schwartz of the Board indicated that the Board failed to determine if Dr. Burke met its residency requirement, and that a mistake was made by the Board as to Dr. Burke's file. See <u>Deposition of Karen Schwartz</u> (**Ex. 10** to <u>Plaintiff's Opposition</u>), p. 101.

13.     In his March, 1995 communication with the Board, Melone noted his role in monitoring Massachusetts regulations: "Dr. Burke and I have worked to ensure that prospective Saybrook Institute Ph.D. candidates in Massachusetts understand and keep abreast of the Regulations pertaining to the practice of psychology." <u>Letter of Melone, March 20, 1995</u> (**Ex. 8** to <u>Plaintiff's Opposition</u>), p. 1.

14.     On behalf of Saybrook, Melone continued to monitor regulatory changes

5

in Massachusetts and other states. Melone led a CDPP conference call regarding five states that were considering regulations that could harm students from humanistic psychology programs. <u>CDPP Memorandum and Conference Call Documents</u> (**Ex. 7** to <u>Plaintiff's Opposition</u>), pp. 3-5. CDPP identified five "Hot spots," including Massachusetts. <u>Id.</u>, p. 4. Melone noted a "need for continued vigilance." <u>Id.</u>

   15.   In February, 1996, Melone wrote two letters to the Board to protest a new regulation to amend Massachusetts residency standards for graduate schools. <u>Letters of Melone to Board Dated February 13, 1996</u> (**Ex. 11** to <u>Plaintiff's Opposition</u>), pp. 1-4.

   16.   In 1996 and early 1997, the Board proposed and adopted a new regulation to require applicants for Massachusetts licensure to have graduate degrees from schools that are designated by the Association of State and Provincial Psychology Boards ("ASPPB"). According to public records of the Board, Melone and Saybrook received notice of these developments. In 1997, the Board received letters from Dr. Lawrence Ryan of Union Institute[1] to protest the Board's recommendation and adoption of the ASPPB requirement. <u>Letters of Lawrence Ryan, Ph.D. to Board Dated February 28 and May 8, 1997</u> (**Ex. 12** to <u>Plaintiff's Opposition</u>), pp 1-7. Dr. Ryan sent both letters to Rudy Melone of Saybrook. Id., pp. 4, 7. Dr. Ryan also sent copies to Marcia Hammond, whom Saybrook hired as a consultant on licensing issues. Id.

   17.   In or about late 1996, Dr. Gerald Bush assumed the presidency of Saybrook. Saybrook produced one document showing Gerald Bush's awareness of recent licensure obstacles in Massachusetts. <u>See Letter of Lawrence Ryan Dated January 16, 1996 with Handwritten Note from Bush to Melone.</u> (**Ex. 13** to <u>Plaintiffs'</u>

---

[1] Like Saybrook, Union Institute was a leading humanistic psychology program and an active member of the CDPP.

6

Opposition).

18. Saybrook was unable to produce letters, memoranda, or other documents from Dr. Bush regarding licensure. <u>Deposition of Jack Reho</u> (**Ex. 14** to <u>Plaintiff's Opposition</u>), p. 119. Saybrook also did not produce documents from Rudy Melone. <u>Id.</u>, p. 117-19. Mr. Reho, Saybrook's Vice President of Operations, testified Saybrook has no document retention policy with respect to presidential files.[2] <u>Id.</u>, p 119.

19. Maureen O'Hara joined Saybrook as a vice-president and faculty member in 1997 and became president in 1999. <u>Deposition of Maureen O'Hara</u>, (**Ex. 7** to <u>Garcia Affidavit</u>), p. 103. In 1997, O'Hara claims that she learned Saybrook graduates "may face challenges in obtaining a license as a psychologist in Massachusetts." See <u>Maureen O'Hara's Answers to Interrogatories</u>, (**Ex. 15** to <u>Plaintiff's Opposition</u>), p. 8.

20. Dr. O'Hara further claims that she was unaware, in 1997, that Massachusetts had adopted regulations mandating ASPPB-designation of graduate programs in psychology. Dr. O'Hara alleges that she learned of this regulatory change after Cooney graduated in 2002. <u>Id.</u>, p. 9. The Union Institute informed both Rudy Melone and Marsha Hammond, in May of 1997, that the Board approved the new regulation. <u>Letters of Dr. Ryan to Board</u> (**Ex. 12** to <u>Plaintiff's Opposition</u>), pp. 5, 7. Upon information and belief, O'Hara and Melone were informed that Massachusetts had adopted the ASPPB regulation through the CDPP, which conducted regular meetings in 1997, and which provided written notices regarding licensure issues.

21. Moreover, in or about January, 1995, O'Hara had published an article to

---

[2] Dr. Reho was unable to explain why Dr. O'Hara possessed some CDPP documents from 1994 to early 1996, but no documents thereafter.

7

inform humanistic psychology schools that many jurisdictions were considering new regulations to mandate that prospective psychologists graduate from ASPPB-approved schools. "Wake Up Call for Humanistic Warriors," AHP Perspective, January/February, 1995 (**Ex. 16** to Plaintiff's Opposition), p. 2. O'Hara warned humanistic psychology schools that once students become aware that "degrees from alternative schools will fare badly in the marketplace, graduate opportunities for humanistic psychology will dry up." Id. See also ¶ 24, *infra*.

22.     In or about late 2000, Richard Francis advised Saybrook that he was rejected for licensure in Massachusetts. *See* Letter of William Bruff, Ph.D. to the Board Dated November 30, 2000 (**Ex. 17** to Plaintiff's Opposition). The Board determined that Saybrook students like Dr. Francis did not meet the Board's residency requirements under pre-1997 standards. Letter of Dr. Vicki Lyall to Richard Francis, **Ex. 18** to Plaintiff's Opposition, p. 1. Nonetheless, the Board granted licensure to Francis on account of his disability. Id.

23.     In 2003, Saybrook requested that Dr. Alan Vaughan develop a web page to help students understand licensing standards in various jurisdictions. Deposition of Alan Vaughan (**Ex. 19** to Plaintiff's Opposition), pp 17-22. In April or May of 2003, Vaughan began to research licensure standards and obstacles in various jurisdictions, and made this information available to the Saybrook community in or about July, 2003. Id., pp. 39-40. Dr. Vaughan determined that Massachusetts would not accept Saybrook graduates for licensure. Id., p.40.

24.     On or about February 18, 2004, Saybrook provided notice to current students about licensure obstacles in twenty-five jurisdictions, including Massachusetts. Saybrook Letters re APA and Residence Obstacles (**Ex. 20** to Plaintiff's Opposition).

8

25.  Between the 1999-2000 and 2002-2003 academic years, Saybrook had experienced strong enrollment growth. Between March, 2000 and March, 2003, Saybrook's total enrollment increased from 430 to 521. During this same period, enrollment of new and readmitted student enrollment increased from 138 (1999-2000) to 191 (2002-2003). For the 2004-2004 academic year, Saybrook's new enrollment figure declined to 156. President's Report (**Ex. 21** to Plaintiff's Opposition), p. 9. According to Jack Reho's data for 2004-2005, new enrollment further declined to about 120. Deposition of Reho (**Ex. 14** to Plaintiff's Opposition), pp. 62-65.

26.  In or about October, 2004, O'Hara reported to Saybrook's Board that Saybrook's enrollment had declined because "external pressures we were anticipating in 1998 are accelerating." President's Report of Dr. O'Hara to Saybrook's Board (**Ex. 21** to Plaintiff's Opposition), p. 1 (emphasis added). These pressures included "accreditation issues arising in professional licensing…." Id. Dr. O'Hara noted that "in some 17 states a clinical student from Saybrook may not be eligible to sit for licensing as a clinical psychologist… On advice from counsel we have moved to warn students wishing to sit for licensing that Saybrook may not be the right school…." Id., p. 5.

27.  On or about October 24, 2004, the Board provided formal notice to Cooney that she was ineligible for licensure as a Massachusetts psychologist, as she had not attended an ASPPB-designated program. Letter from Richard Monahan, Ph.D. (**Ex. 22** to Plaintiff's Opposition). The Board advised Cooney that 251 CMR 3.03(1)(b) went into effect on May 2, 1997. Id. According to the Board, as Cooney did not graduate from an ASPPB-designated program, there is nothing she could do to become eligible for licensure with her Saybrook degree. See Deposition of Schwartz (**Ex. 10** to Plaintiff's Opposition), pp. 85-89.

9

28. As a result of Saybrook's negligence, Cooney has asserted a claim for negligent infliction of emotional distress. <u>Amended Complaint</u> (**Ex. 1** to <u>Garcia Affidavit</u>), p. 10. Cooney testified that she has experienced "depression" and "existential los[s]" due to Saybrook's conduct. <u>Deposition of Cooney, Vol. II</u> (**Ex. 2** to <u>Plaintiff's Opposition</u>), pp. 289-90. Plaintiff testified that she has treated with her primary care physician, Dr. Catherine Taylor, and a therapist, Dr. David Reisen. <u>Id.</u>, p. 294.

29. Defendant's counsel did not ask Cooney about physical symptoms at her deposition. <u>Id.</u>, pp. 289-95. Cooney has experienced sleeplessness, difficulties in working and concentrating, anxiety and depression. <u>Amended Complaint</u> (**Ex. 1** to <u>Garcia Affidavit</u>), p. 10.

Respectfully submitted,

SUSAN COONEY,
By her counsel,

/s/ Paul W. Morenberg

_____
E. Steven Coren, BBO #
Paul W. Morenberg, BBO # 631101
Kerstein, Coren, Lichtenstein & Finkel, LLP
233 Needham Street
Newton, Massachusetts   02464

Dated:      September 19, 2006