UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572  JLT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SUSAN COONEY, | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| SAYBROOK GRADUATE SCHOOL AND | ) |
|     RESEARCH CENTER, | ) |
|     Defendant | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## JOINT PRETRIAL MEMORANDUM

Pursuant to the Court's Pretrial Conference Order dated October 25, 2006, the

parties jointly submit this Pretrial Memorandum for the November 7, 2006 conference.

I.    SUMMARY OF EVIDENCE REGARDING LIABILITY AND DAMAGES

A.    PLAINTIFF'S SUMMARY

Plaintiff Susan Cooney has asserted claims against Saybrook Graduate School and

Research Center ("Saybrook") for breach of contract, promissory estoppel, negligent

infliction of emotional distress, and unfair and deceptive business practices (M.G.L. c.

93A).   Plaintiff expects the evidence to show the following:

At all times relevant to the Complaint, Cooney was and is Massachusetts resident.

Saybrook was and is a California graduate school, which offers training in humanistic

psychology through a "distance learning" model to students in various jurisdictions,

including Massachusetts.   Between 1995 and 2002, Cooney pursued a doctoral degree in

psychology at Saybrook in order to become a licensed psychologist in Massachusetts. During the entire period of Cooney's studies at Saybrook, Saybrook was aware that its graduates would face significant barriers or outright disqualification if they applied to become licensed psychologists in Massachusetts, but Saybrook failed to inform Cooney.

Through her application and through communications with faculty, Cooney informed Saybrook that her professional objective was to become a licensed clinical psychologist in Massachusetts. In its <u>1994-95 Interim Catalogue</u> ("Catalogue"), Saybrook advised prospective students that its graduates had been licensed in many jurisdictions, including Massachusetts. Saybrook assured Cooney and other students that Saybrook would assist students to become licensed in the state of their choice. Id. ("To this end, the Institute is a member of the Consortium of Diversified Psychology Programs (CDPP), which is active in state-by-state efforts to monitor and influence existing and changing regulations….").

Saybrook advised Cooney and other clinical students to "contact the licensing board in the state in which they plan to practice to obtain the detailed requirements, because regulations differ from state to state." <u>Id</u>. After students have obtained licensure requirements, Saybrook does not direct students to monitor regulatory changes—a function that Saybrook and CDPP agreed to perform. <u>Id</u>. Saybrook students are bound by the catalogue governing the academic year in which they are admitted. Saybrook did not mail or distribute subsequent catalogues to Cooney or her classmates absent a specific request.

Cooney contacted the Massachusetts Board of Registration of Psychologists ("the Board") in the summer of 1995 and obtained licensure standards for psychologists. At an orientation conference in the Fall of 1995, Cooney met with a Saybrook representative,

2

who reviewed Massachusetts regulations and advised her that Saybrook's program complied with Massachusetts requirements for licensure. In or about the Fall of 1995, Saybrook provided Cooney with a list of jurisdictions that do not accept Saybrook degrees for licensure as a psychologist. The list included Oregon, Iowa, Connecticut, Georgia, and Maryland. Cooney was informed that Saybrook would stay abreast of licensure standards and changes.

Saybrook's Interim President, Rudy Melone, represented Saybrook on the CDPP and served as its co-chair. Before Cooney matriculated at Saybrook in the Fall of 1995, Saybrook, Melone and other Saybrook faculty were aware that Saybrook students would face licensure obstacles in Massachusetts. Several months before Cooney began her studies at Saybrook, Melone contacted the Board to express Saybrook's concern that the Board had initially rejected Dr. Burke's application for licensure. Saybrook did not inform Cooney of the Board's rejection of Burke in 1995, and Saybrook did not advise Cooney of its knowledge that Burke required legal assistance to secure licensure in Massachusetts in or about 1997.

On behalf of Saybrook, Melone monitored regulatory changes in Massachusetts and other states in 1994 and thereafter. In early 1996, Melone led a CDPP conference call regarding five states that were considering regulations that could harm students from humanistic psychology programs. CDPP identified five "Hot spots," including Massachusetts. Id., p. 4. Melone noted the need for "continued vigilance." Id. In February, 1996, Melone wrote two letters to the Board to protest a proposed regulation to amend Massachusetts residency standards for graduate schools. In or about late 1996, Dr. Gerald Bush assumed the presidency of Saybrook. Gerald Bush was also aware of emerging licensure obstacles facing Saybrook graduates from Massachusetts in or about

1996, but he also failed to advise Cooney.

In 1996 and early 1997, the Board proposed and adopted a new regulation to require applicants for Massachusetts licensure to have graduate degrees from schools that are designated by the Association of State and Provincial Psychology Boards ("ASPPB") for applications filed after September 1, 2000. Melone and Saybrook received notice of these developments from Union Institute, but failed to inform Cooney.

Maureen O'Hara joined Saybrook as a vice-president and faculty member in early 1997 and became president in 1999. Prior to joining Saybrook, O'Hara had published an article to inform humanistic psychology schools that many jurisdictions were considering new regulations to mandate that prospective psychologists graduate from ASPPB-approved schools. "Wake Up Call for Humanistic Warriors," <u>AHP Perspective,</u> January/February, 1995. O'Hara warned humanistic psychology schools that once students become aware that "degrees from alternative schools will fare badly in the marketplace, graduate opportunities for humanistic psychology will dry up." <u>Id</u>.

In 1997, O'Hara learned that Saybrook graduates would face obstacles in obtaining a license as a psychologist in Massachusetts. Dr. O'Hara claims that she was unaware, in 1997, that Massachusetts had adopted regulations mandating ASPPB-designation of graduate programs in psychology. However, the Union Institute had informed both Rudy Melone (Saybrook's then president) and Marsha Hammond (a CDPP member and future licensing coordinator at Saybrook) in May of 1997. At this time, Maureen O'Hara was a vice-president at Saybrook. The evidence is also expected to show that O'Hara participated in CDPP meetings and other communications in or about 1997 and 1998 regarding the Massachusetts regulations. The evidence is also expected to show that Saybrook and O'Hara rejected recommendations of its former licensing

coordinator, in or about 2000, to inform students of known licensure obstacles in Massachusetts and other "hot spots."

In or about late 2000, Richard Francis advised Saybrook that he was rejected for licensure in Massachusetts. The Board determined that Saybrook students like Dr. Francis did not meet the Board's residency requirements under pre-1997 standards. Nonetheless, the Board granted licensure to Francis expressly on account of his physical disability. Id. The evidence is expected to show that Saybrook and O'Hara were aware of Dr. Francis's difficulty in applying for licensure, but failed to inform Cooney.

In 2003, Saybrook requested that Dr. Alan Vaughan develop a web page to help students understand licensing standards in various jurisdictions. Dr. Vaughan determined that Massachusetts and many other states would not accept Saybrook graduates for licensure. On or about February 18, 2004, Saybrook provided notice to then current students about licensure obstacles in twenty-five jurisdictions, including Massachusetts. At or about this time, Saybrook also began to require new students to declare their intentions regarding licensure, to read a disclosure statement regarding known licensure obstacles, and to agree that Saybrook was not responsible to monitor licensure standards.

Between March, 2000 and March, 2003, Saybrook's total enrollment increased from 430 to 521. For the same period, enrollment of new and readmitted students increased from 138 (1999-2000) to 191 (2002-2003). However, for the 2003-2004 academic year, Saybrook's new enrollment figure declined to 156. According to Jack Reho's data for 2004-2005, new enrollment further declined to about 120.

In or about October, 2004, O'Hara reported to Saybrook's Board that Saybrook's enrollment had declined because "external pressures we were anticipating in 1998 are accelerating." President's Report of Dr. O'Hara to Saybrook's Board. These pressures

included "accreditation issues arising in professional licensing…." Id. Dr. O'Hara noted that "in some 17 states a clinical student from Saybrook may not be eligible to sit for licensing as a clinical psychologist… On advice from counsel we have moved to warn students wishing to sit for licensing that Saybrook may not be the right school…." Id., p. 5.

Cooney graduated from Saybrook with a doctoral degree in psychology in or about October, 2002.   In or about 2003, the Board advised Cooney that she was ineligible for licensure as a Massachusetts psychologist, as she had not attended an ASPPB-designated program.  The Board advised Cooney that 251 CMR 3.03(1)(b) went into effect on May 2, 1997. Id. As Cooney did not graduate from an ASPPB-designated program, there was nothing she could do to become eligible for licensure with a Saybrook degree.

Saybrook's failure to alert Cooney about its knowledge of existing and emerging licensure obstacles in Massachusetts was a breach of its contractual obligations and promises to Cooney.   Saybrook breached its obligation to monitor licensure changes and issues and to disclose this information to assist Cooney in achieving licensure in Massachusetts.  Saybrook's breach of these contractual obligations caused substantial damages to Cooney.  She devoted seven years of her life to obtain a Saybrook degree, and paid substantial sums in tuition, fees, and interest, for which she did not receive the bargained-for value.   Cooney explored all possible avenues to qualify for licensure, but the Board informed Cooney that she was ineligible under current regulations.   As a result of Saybrook's breach of its contractual obligations, Cooney cannot pursue her academic and vocational objective to become a Massachusetts psychologist, and Cooney will be deprived of the additional earnings that she could achieve as a licensed psychologist. Cooney is now 51 years old and does not have the resources to pursue another doctoral

degree in psychology.

Plaintiff expects that the expert testimony of Norman Hursh, ScD, CRC, CVE, a vocational rehabilitation expert, will reflect the detailed opinions that Dr. Hursh provided in his expert report dated June 9, 2006, which was provided to defendant's counsel on June 13, 2006. Dr. Hursh's expert report is attached hereto as Exhibit A. Based on his interviews with the plaintiff and his review of pertinent records and vocational data, Dr. Hursh is expected to testify that Dr. Cooney would have been successful in her plan to work as a clinical psychologist but for her ineligibility to sit for licensure because Saybrook is not properly accredited. To a reasonable degree of vocational certainty, Dr. Hursh is expected to testify that Dr. Cooney would have qualified for licensure in late 2003 or early 2004, and would have been able to practice clinical psychology for twenty-five years and would have earned the average income for a clinical psychologist.

Plaintiff expects that the expert testimony of Dana C. Hewins, Ph.M., an economist, will reflect the detailed opinions that Dr. Hewins provided in his expert report dated June 10, 2006, which was provided to defendant's counsel on June 13, 2006. The expert report of Dr. Hewins is attached as Exhibit B. Based on his review of pertinent reports, records and data, Dr. Hewins is expected to testify that Susan Cooney's inability to practice as a clinical psychologist has resulted in an overall net loss of compensation equal to $1,056,095 (net present value).

Plaintiff expects the evidence to show that Cooney should prevail on her related claim of promissory estoppel. Based on the factual allegations that are described above, the evidence is expected to show that Saybrook promised Cooney that it would assist her in obtaining licensure in Massachusetts. Saybrook made the related promise that it would monitor licensing standards and regulatory changes. Saybrook knew or reasonably

7

should have forseen that Cooney would rely on its pledges, and that Saybrook's pledges

would induce Cooney to pursue her graduate studies at Saybrook and to pay tuition and

fees. By enrolling at Saybrook and devoting seven years of her life to obtaining her

degree, Cooney took action of a definite and substantial character. If Saybrook disclosed

its knowledge of licensure obstacles in Massachusetts before or during Cooney's studies,

it is likely that Cooney would have declined to attend Saybrook or would have sought to

transfer to another program. Saybrook has breached its promises to Cooney by failing to

inform her of licensures obstacles in Massachusetts, which were known to Saybrook

before and after Cooney matriculated. Cooney invested seven years of money and time

into her Saybrook degree, which she cannot utilize to qualify for licensure in

Massachusetts, and she has lost her expected ability to earn increased income as

psychologist. As a result, injustice can only be avoided if the Court enforces Saybrook's

promises and awards damages that are equivalent to Cooney's breach of contract

damages, which are described above.

Plaintiff expects the evidence to show that Cooney should prevail on her claim for

negligent infliction of emotional distress against Saybrook. Cooney has experienced

depression and a profound sense of loss due to Saybrook's failure to fulfill its obligations to

her. Cooney has treated with her primary care physician, Dr. Catherine Taylor, and a

therapist, David A. Riesen. Cooney has experienced sleeplessness, difficulties in working

and concentrating, anxiety and depression.

Plaintiff expects the evidence to show that Saybrook engaged in unfair and

deceptive trade practices, in violation of M.G.L. Chapter 93A. Plaintiff alleges that

Saybrook engaged in a trade or commerce when it provided services to Cooney that did

not meet her stated educational objective—to receive a degree that would qualify her to

apply for licensure as a Massachusetts psychologist.   Before Cooney matriculated,

Saybrook knew that its "distance learning" model may not satisfy the Board's

"residency" standards.  In or about the Spring of 1997, Saybrook learned that

Massachusetts had passed new regulations that require prospective psychologists to

attend ASPPB-designated schools.   Although Saybrook lacked ASPPB approval,

Saybrook continued to provide Cooney with graduate studies that could not possibly meet

Cooney's educational objective.  Saybrook's apparent motive was to collect tuition and

fees from Cooney and other Massachusetts students.  The foregoing facts create a triable

issue as to whether Saybrook provided Cooney with educational services to further its

charitable mission, or rather to maintain enrollment levels and tuition revenues.

Plaintiff has also alleged facts that suggest Saybrook intentionally withheld

critical information about licensure obstacles in order to protect its enrollment levels.  For

example, in Dr. O'Hara's report to Saybrook's Board about declining enrollment levels in

2004, she explained that "external pressures we were anticipating in 1998 are

accelerating."   Indeed, after Saybrook took steps to inform current and prospective

students of licensure obstacles in seventeen to twenty-five jurisdictions in February,

2004, Saybrook's new student enrollment levels began to plunge.

Charitable status does not insulate a party from liability under Chapter 93A for

unfair business conduct.   Linkage Corp. v. Trustees of Boston University, 425 Mass. 1,

25 (1997).   In Linkage, the Court found that defendant Boston University, a non-profit

entity, was engaged in a predominantly commercial transaction with the plaintiff, as its

primary objective was to deliver educational services for lucrative compensation.

Chapter 93A is designed "to encourage more equitable behavior in the marketplace . . .

[and to impose] liability on persons seeking to profit from unfair practices." Poznik, 417

Mass. at 53 (citing Manning v. Zuckerman, 388 Mass. 8, 12 (1983). When charitable entities engage in unscrupulous or unethical business practices to secure a financial advantage, it is appropriate to hold the so-called charity accountable under Chapter 93A. Linkage, 425 Mass at 25.

B.    DEFENDANT'S SUMMARY

Defendant, Saybrook Graduate School and Research Center ("Saybrook") expects the evidence will show that it neither breached a contract with the plaintiff nor was negligent, and therefore, it is not liable to the plaintiff for any of her alleged damages.

Saybrook informs its prospective and current students that the institution's mission is to "prepare its graduates as scholars and researchers in the broad domain of human experience." Those students who wish to work as licensed psychologists, "are advised that they should contact the licensing board in the state in which they plan to practice to obtain the detailed requirements, because regulations differ from state to state."

At no time did Cooney tell Saybrook of any intent to become a licensed psychologist. In fact, Cooney's advisor, Ruth Richards, when she recommended Susan Cooney for candidacy, relayed to the Committee what Cooney had told her -- namely, that she wanted to do crisis work in the public sector. Saybrook expects the evidence to show that performing crisis work, including clinical work, does not require one to be licensed as a psychologist. Thus, any reference to clinical work that Cooney made while at Saybrook, did not inform Saybrook of an intent that Cooney would seek licensure.

Cooney failed to fulfill her responsibility to verify the licensure requirements of Massachusetts and to regularly check such requirements. Although Saybrook graduates

have in fact become licensed as psychologists in Massachusetts, Saybrook never made any guarantee that future students would be licensed or that licensing laws would not be changed. The evidence will show that Cooney waited until 2003 before she "inquired" of the Massachusetts Board of Registration of Psychologists (the "Board") concerning the procedures for obtaining a license to practice as a psychologist within the Commonwealth of Massachusetts. At that time, the Board informed Cooney that Saybrook did not have the necessary accreditation required by the Board for her to be eligible for licensure.

With respect to plaintiff's counts, Saybrook will show that (1) Plaintiff has no evidence of a contract with Saybrook that would guarantee her licensure in Massachusetts; (2) there is no evidence that Saybrook promised that she would be eligible for licensure or that she reasonably relied on such a promise so as to sustain her claim for promissory estoppel; (3) there is no evidence that defendant acted unfairly or deceptively or was engaged in trade or commerce; and (4) Plaintiff has failed to establish the existence of any "duty" owed by Saybrook or the requisite elements of injury to support recovery. Specifically, Saybrook will show that it was under no obligation, contractual or otherwise to monitor or inform students of licensure changes in all states. Saybrook was clear with its students that this was their responsibility. As such, any involvement that any Saybrook employee had with the Consortium of Diversified Psychology Programs ("CDPP") is irrelevant to this case as such participation with the CDPP did not create an obligation to share with students licensing laws.

In addition, Saybrook expects to show that the plaintiff has not sustained damage to the extent she alleges. Saybrook will show that Cooney has received a valuable education that would allow her to work in a clinical setting if she so choose. Saybrook will show that despite Cooney's education, license as a social worker, and her experience,

she has failed to mitigate her damages by failing to seek and obtain positions in the clinical area.  The evidence regarding her damages with come through John Reho (CFO of Saybrook), Nancy Segreve, MA, CRC (Defendant's Vocational Expert), and Elizabeth L. Leonard, Ph.D.  (Defendant's Psychological Expert).

II.    AGREED FACTS

The parties stipulate that the following facts are agreed:

1.    At all times relevant to the complaint, Susan Cooney has been and is a resident of Massachusetts.

2.    At all times relevant to the complaint, Saybrook Graduate School and Research Center has been located in San Francisco, CA.

3.    Saybrook offers doctoral degrees in psychology, and trains students in Massachusetts and other states through a "distance learning" model.

4.    The plaintiff received and reviewed Saybrook's 1994-95 Interim Catalog in 1995.

5.    Cooney pursued graduate studies at Saybrook between 1995 and 2002, and received a Ph.D in or about October, 2002.

III.    CONTESTED ISSUES OF FACT

All factual issues that are not identified as Agreed Facts (Section II, supra) are contested.   See Section I, which provides each party's summary of the evidence.

IV.    JURISDICTIONAL QUESTIONS

There are no jurisdictional questions before the Court.

## V.    QUESTIONS RAISED BY PENDING MOTIONS

Defendant filed a motion for leave to file a reply brief that has not been ruled upon (Docket #55).  Due to the Court's, October 24, 2006 Decision denying the motion for summary judgment, the motion for leave is moot.

## VI.    ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS

### A. Plaintiff's Issues of Law

1.    Whether the Court or the jury will determine if Saybrook committed violations of M.G.L. Chapter 93A and the measure of damages.

2.    Whether Saybrook is obligated to produce current employees as witnesses at trial.  Saybrook has stated that it will not voluntarily produce any witnesses identified by the plaintiff.  Plaintiff maintains that Saybrook is obligated to produce at trial the following witnesses, who are current Saybrook officers and/or employees:

> a.    William Bruff, Oakland, CA  (Saybrook's associate vice-president and a current faculty member);
>
> b.    Maureen O'Hara, Greenbrae, CA (Saybrook's former president and current faculty member);
>
> c.    John Reho, Walnut Creek, CA (Saybrook's current vice-president, who answered Saybrook's interrogatories.)
>
> d.    Eugene Taylor, Cambridge, MA  (Saybrook faculty member); and
>
> e.    Other Saybrook faculty and staff (as necessary to authenticate any contested exhibits or to offer rebuttal testimony).

3.    In "Defendant's Issues of Law" (see next section), Saybrook repeats two arguments from its summary judgment motion, which was denied.  Again, Saybrook asks the court to dismiss plaintiff's claims for violation of Chapter 93A (Count III) and

Negligent Infliction of Emotional Distress (Count V).   As summary judgment was denied, these "legal issues" are not before the court.

B. Defendant's Issues of Law

1.      Count III: Violation of Mass. Gen. Laws ch. 93A: Saybrook submits that Count III should be dismissed as it cannot be sued under 93A because, as a non-profit educational institution, it was not engaged in trade or commerce.   In order to violate Chapter 93A, the alleged unfair act or practice must be done "in the conduct of any trade or commerce."  G.L. ch. 93A, § 2.  "A nonprofit or charitable corporation, however, is not engaged in trade or commerce 'if, in the transaction in question, the nonprofit is merely engaged in the customary business necessary to meet its charitable purpose.'" Trustees of Boston Univ. v. ASM Comms., Inc., 35 F. Supp.2d 66, 77 (D. Mass. 1998), quoting, Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n, 952 F. Supp. 884, 890 n.4 (D. Mass. 1997).  Thus, in the context of nonprofit educational institutions, a school is not engaged in trade or commerce when its activities are merely in furtherance of its mission.  Id.; see also Thorton v. Harvard Univ., 2 F. Supp.2d 89 (D. Mass. 1998) (granting summary judgment on ch. 93A claim, finding that the school's operation of its financial aid program not to be "trade" or "commerce").  Saybrook is a non-profit institution.  All the claims against Saybrook are regarding its provision of education, which is central to its mission.  See Amended Complaint.  As a result, Count III should be dismissed.

2.      Count V: Negligent Infliction of Emotional Distress: Saybrook submits that Count V should be dismissed because the plaintiff cannot prove that Saybrook owed her a duty of care, a necessary element to the claim.  The existence of such a duty is a

question of law for a judge and is determined by looking at "existing social values and customs, as well as to appropriate social policy." Cottam v. CVS Pharmacy, 436 Mass. 316, 320 (2002), quoting, Davis v. Westwood Group, 420 Mass. 739, 743 (1995). Here, plaintiff has developed a fictitious duty for which she has no authority, based in either law, social values or custom or public policy. Specifically, the plaintiff alleges that Saybrook had a duty to not only "provide a degree program that meets the regulatory standards in all jurisdiction from which Saybrook admits students," but also that Saybrook had "a duty of care to monitor professional licensure standards in these jurisdictions and to advise students when it learns of actual or proposed regulatory standards that may limit or preclude licensure for Saybrook graduates." See Amended Complaint ¶ 51. No such duty exists on the part of any school. Cooney simply cannot prove that a school owes a duty to provide education that fulfills the requirements for each states' licensing board in the areas for which it supplies an education.

This is not a case in which the plaintiff is claiming a failure to provide a safe environment. Rather, the plaintiff is claiming a tort based on an alleged duty that Saybrook had to monitor and inform her of licensure law. There is no evidence that such a duty exists under law or social custom. As Massachusetts has not specifically addressed this issue, this Court should look to California, in which its courts have determined that a "duty of care" tort action in the educational context is not viable. Under California law, claims based on tort in the academic setting are not an "injury" within the meaning of the law. Peter W. v. San Francisco Unified Sch. Dt., 60 Cal. App. 3d 814, 825-26 (1976). Educational methodology, "[u]like the activity on the highway or marketplace, . . . affords no readily acceptable standards of care, or cause, or injury." Id.

at 824; Chevlin v. Los Angeles Comm. College Dt., 212 Cal. App. 3d. 382, 389-90 (1989) (college had no duty under tort law to student in program).

       3.     Preclude References to Insurance: Saybrook requests an order precluding the parties, witnesses and counsel involved in the action from making any reference, direct or indirect, during the trial, with regard to insurance, whether such reference be by way of a question, answer, or documentary exhibits or evidence, as well as opening statements, closing arguments, or other comments or remarks by counsel.

       Defendant further moves that this Court rule that this prohibition includes not only references to insurance, but also to insurance companies, insurance coverage, insurance adjustors or investigators, counsel retained by insurance companies, statements made to insurance adjustors or investigators, and any other similar references or allusions to insurers or insurance coverage. As grounds therefore, Saybrook states that ordinarily a plaintiff may not show that the defendants are insured against liability. Goldstein v. Gontarz, 364 Mass. 800, 808 (1974). "Exposing juries to such information is condemned because it is not itself probative of any relevant proposition and is taken to lead to undeserved verdicts for plaintiffs and exaggerated awards which jurors will readily load on faceless insurance companies supposedly paid for taking the risk." Id. Therefore, Saybrook requests a ruling precluding reference of insurance because evidence of insurance would be highly prejudicial to the defendant, and objection to such evidence or reference at the time the evidence is offered, even if sustained by this Court with proper instructions to the jury, would not remove or cure the prejudicial effect of the evidence or reference to insurance.

VII.    REQUESTED AMENDMENTS TO THE PLEADINGS

No amendments are requested at this time.   The parties reserve the right to amend

the pleadings by agreement, or with leave of court, prior to trial.

VIII.    ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THIS CASE

The parties have agreed to engage in mediation prior to trial.

IX.    PROBABLE LENGTH OF TRIAL

The parties estimate that trial will be completed in eight to ten trial days.

X.    WITNESSES

A.    Plaintiff's List of Witnesses.

1.    Susan Cooney    (Plaintiff)
1445 Centre Street
Newton Corner, MA 02459

2.    William Bruff   (Current Saybrook employee)
823 59th Street
Oakland, CA

3.    Marsha V. Hammond, Ph.D (Former Saybrook employee)
168 Virginia Avenue
Ashville, NC  28806

4.    Dana C. Hewins, Ph.D. (Expert Witness)
Economic Consultant
1 Tamett Brook Road
Lakeville, Massachusetts  02347

5.    Norman C. Hursh, Sc.D  (Expert Witness)
Associate Professor
Sargent College of Health and Rehabilitation Sciences
635 Commonwealth Avenue
Boston, MA  02215

6.     Maureen O'Hara  (Former Saybrook President)
       7014 Wisteria Way
       Carlsbad, CA 92011

7.     Mr. John W. Reho  (Current Saybrook Officer)
       2265 Gladwin Drive
       Walnut Creek, CA

8.     David A. Riesen  (Fact Witness)
       209 Harvard Street
       Brookline, MA  02446

9.     Kathy M. Sanders, M.D.  (Fact Witness)
       Acute Psychiatry Service
       55 Fruit Street
       Boston, MA  02114

10.    Karen Schwartz, Ph.D.  (Fact Witness)
       56 Lincoln Street
       Watertown, MA 02472

11.    Eugene Taylor, Ph.D.  (Current Saybrook Professor)
       33 Ridgedale Avenue # 205
       Cambridge, MA

12.    Plaintiff reserves the right to call any witnesses listed by the
defendant, to call other witnesses for purposes of rebuttal, and to amend or to supplement
this disclosure prior to trial.

B.     Defendant's List of Witnesses

1.     Susan Cooney  (Plaintiff)
       1445 Centre Street
       Newton, MA  02459

2.     Ruth Richards  (Saybrook Faculty and Plaintiff's Advisor)
       Saybrook Graduate and Research Center
       747 Front Street, 3rd Floor
       San Francisco, CA 94111-1920

3.     Dr. Maureen O'Hara  (Former Saybrook President)
       7014 Wisteria Way
       Carlsbad, CA 92011

4. Dr. William Bruff  (Saybrook Faculty)
Saybrook Graduate and Research Center
747 Front Street, 3rd Floor
San Francisco, CA 94111-1920

5. Donald Cooper  (Saybrook's Director of Alumni Affairs)
Saybrook Graduate and Research Center
747 Front Street, 3rd Floor
San Francisco, CA 94111-1920

6. Eugene Taylor  (Saybrook Faculty)
126 Clifton Street, #3
Cambridge, MA

7. Jack Reho  (Saybrook's CFO)
Saybrook Graduate and Research Center
747 Front Street, 3rd Floor
San Francisco, CA 94111-1920

8. Karen Schwartz  (Mass. Board of Registration of Psychologists)
56 Lincoln Street
Watertown, MA

9. Dr. Dennis Norman  (Chief of Psychology, MGH)
10 Fieldstone Way
Boxford, MA

10. Nancy Segreve, MA, CRC  (Defendant's Vocational Expert)
Occupational Resource Network
19 Flintlock Road
Lexington, MA 02420

11. Elizabeth L. Leonard, Ph.D.  (Defendant's Psychological Expert)
Neurocognitive Associates, P.C.
20 Hope Avenue Suite G01
Waltham, MA 02553

12. Robert McCarthy  (Rebuttal Witness)
4603 Oleander Drive, Suite 1
Myrtle Beach, S.C. 29577

13. Defendant reserves the right to call any and all of plaintiff's listed
witnesses and to call additional witnesses for purposes of rebuttal,
and to amend or to supplement this disclosure prior to trial.

XI.    PROPOSED EXHIBITS

    **A.**    Agreed Exhibits

        1.    Susan Cooney's Application to Saybrook  (Saybrook Documents; Bates Nos. S01901-02).

        2.    Susan Cooney's Application Essay (Saybrook Documents; Bates Nos. S01907-10)

        3.    Saybrook's Interim Catalogue 1994-95.  Plaintiff's Responses to Document Requests.

        4.    Saybrook 1994-95 Student Handbook.   Plaintiff's Responses to Document Requests.

        5.    Saybrook 1996-97 Student Handbook.   Plaintiff's Responses to Document Requests.

        6.    Massachusetts Regulations re Psychologists (12/1/93), Plaintiff's Responses to Document Requests Bates No. 0000205-0000231; **Ex. 91** (Schwartz Deposition).

        7.    Presentations and Workshops, P. 12.   (Saybrook Documents; Bates No. S00126).

        8.    Susan Cooney's Resume (circa 1995) (Saybrook Documents; Bates S01905-06).

        9.    Susan Cooney Transcript – Harvard University (Saybrook Documents; Bates No. S01826-27).

      10.    Susan Cooney Transcript – Boston University (Saybrook Documents; Bates No. 1828).

      11.    Susan Cooney Transcript – Northeastern University  (Saybrook Documents; Bates No. 1824-25).

      12.    Susan Cooney Transcript – Saybrook Graduate School (Saybrook Documents; Bates No. S01810-S01811).

      13.    Letter of Ruth Richards re Susan Cooney dated December 15, 2000  (Saybrook Documents; Bates No. 2071).

14.  Susan Cooney's September 15, 2003 Correspondence to Attorney Vartain and Saybrook, Plaintiff's Document Responses; Saybrook Documents.

15.  Attorney Michael Vartain's October 21, 2003 Correspondence to Susan Cooney; Plaintiff's Document Responses; Saybrook Documents.

16.  Curriculum Vita of Maureen O'Hara (Saybrook Documents; Bates No. S01778-S01783).

17.  Saybrook Student Handbook (Revised September 1999). (Saybrook's Disclosures - F.R.C.P Rule26(a)(1)).

18.  Saybrook Catalogue – 1996-1998 (Saybrook's Disclosures - F.R.C.P Rule26(a)(1)).

19.  Saybrook Catalogue – 1998-99 (Saybrook's Disclosures - F.R.C.P  Rule26(a)(1)).

20.  Saybrook Catalogue – 1999-2000 (Saybrook's Disclosures - F.R.C.P Rule26(a)(1)).

21.  Saybrook Catalogue – 2000-2001 (Saybrook's Disclosures - F.R.C.P Rule26(a)(1)).

22.  Saybrook Catalogue – 2001-2002 (Saybrook's Disclosures - F.R.C.P Rule26(a)(1)).

23.  Saybrook Bursar and Financial Aid Records (Saybrook's Disclosures - F.R.C.P Rule26(a)(1)).

24.  Massachusetts General Hospital Evaluation of Susan Cooney Dated June 20, 1995 (Plaintiff's Document Responses; MGH Response to K.O.R. Subpoena)

25.  Massachusetts General Hospital Evaluation of Susan Cooney Dated August 13, 1997 (Plaintiff's Document Responses; MGH Response to K.O.R. Subpoena)

26.  Curriculum Vita of Dr. Hursh (Plaintiff's Vocational Expert)

27.  Curriculum Vita of Dr. Hewins  (Plaintiff's Economic Expert)

28.    Signed Offers of Acceptance dated January 8, 1995 and April 26, 1995 (Saybrook Documents Bates No. S01794, S01791)

29.    Kathy Sanders' November 20, 1994 recommendation of S. Cooney (Plaintiff's Documents, Saybrook Documents Bates No. S01925)

30.    August 22, 2003 letter from J. Reho to S. Cooney offering assistance to S. Cooney (Plaintiff's Document Responses; Saybrook Documents, Bates No. S00339-S00341) ;

31.    Oct. 18, 2001 e-mail to Art Bohart (Defendant's Documents Bates No. S01966-S01967)

32.    July 3, 2003 Saybrook memorandum re: Cooney's attendance at Saybrook (Defendant's Documents Bates No. S01809)

33.    Bill Bruff e-mail to Susan Cooney dated 15 July 2003 (Plaintiff Responses Plaintiff Responses and Defendant's Documents Bates No. S02039)

34.    Curriculum Vita of Elizabeth L. Leonard, Ph.D.  (Defendant's Psychological Expert, Docket No. 46, Exhibit D)

35.    Curriculum Vita of Nancy Segreve, MA, CRC  (Defendant's Vocational Expert, Docket No. 46, Exhibit B)

36.    Susan Cooney Letter to Maureen O'Hara dated June 10, 2003. (Saybrook Documents; Bates Nos. S01807-08).


B.    Plaintiff's List of Contested Exhibits

1.    Information About the Consortium for Diversified Psychology Programs.  Plaintiff's Responses to Document Requests.

2.    Residential Conference Calendar (June 17-23, 1996).  (Saybrook Documents; Bates No. S00015).

3.    Letter of Kathy Sanders re Clinical Internship Dated January 27, 1997 (Plaintiff's Document Responses).

4.    Maureen O'Hara Letter re Cooney's Graduation  (Saybrook Documents; Bates No.      ).

5.    Susan Cooney, Ph.D., <u>Caregivers, Trauma and the Road to Resiliency.</u>  (Plaintiff's Disclosures - F.R.C.P Rule26(a)(1)).

6.    <u>Proposed Massachusetts Regulations re Registration of Psychologists</u>, 251 CMR 3.00 (12/17/96 draft), **Ex. 110** (Schwartz Deposition).

7.    <u>Massachusetts Regulations re Registration of Psychologists</u>, 251 CMR 3.00 (5/2/97), **Ex. 100** (Schwartz Deposition).

8.    <u>E-Mail from Dr. Schwartz to Saybrook dated March 21, 2003</u> (**Ex. 93** (Schwartz Deposition).

9.    <u>Susan Cooney Return Receipt to her Chapter 93A Demand Letter</u>

10.   <u>Susan Cooney Letter to Dr. Schwartz dated November 7, 2003</u> **Ex. 102** (Schwartz Deposition).

11.   <u>Letter from Susan Cooney to Dr. Schwartz dated September 27, 2004</u>, **Ex. 103**  (Schwartz Deposition).

12.   <u>Letter from Board to Susan Cooney dated October 20, 2004</u>, **Ex. 104**  (Schwartz Deposition).

13.   Maureen O'Hara, "Wake Up Call to Humanistic Warriors," AHP Perspective (January/February 1995).  **Ex. 61** (O'Hara Deposition).

14.   Art Warmoth's December 5, 1994 Memorandum to CDPP Members.  (Saybrook Documents; Bates S01992-95).

15.   Rudy Melone's Letter to Board of March 20, 1995 (**Ex**. 109, Schwartz Depo).

16.   <u>Lawrence Ryan Letter of January 16, 1996 with Note from "Gerry" to "Rudy."</u>  (Saybrook Documents; Bates S01985.-87).

17.   <u>CDPP Documents re January 24, 1996 Conference Call.</u> (Saybrook Documents; Bates Nos. S01979-84).

18.   <u>Rudy Melone's Letters to Robert Coutu of February 13, 1996</u> (**Ex. 95**, Schwartz   Depo.)

19.   Rudy Melone's Letters to David Ramsey of February 13, 1996 (**Ex. 96**, Schwartz Depo.)

20.   Thomas Greening's APA Accreditation Memorandum of March 24, 1997 Memorandum. (Saybrook Documents; Bates S00255-80). *

21.   Lawrence Ryan Letter to Board Dated February 28, 1997 (**Ex. 98**, Schwartz Deposition)

22.   Lawrence Ryan Letter to Board Dated May 8, 1997 (**Ex.101**, Schwartz Deposition)

23.   Letter from William Bruff (Saybrook) to the Board dated November 30, 2000 (Board's Response to Deposition Subpoena).

24.   Letter from the Board to Richard Francis Dated November 6, 2001 (**Ex.101**, Schwartz Deposition)

25.   Saybrook's Principles of Ethical Business Conduct. (**Ex. 35**, O'Hara Deposition).

26.   ASPPB Handbook of Licensing and Certification Requirements. (Ex 118, Bohart Depo). **

27.   Saybrook's Letter re 18 States with APA or Residence Obstacles. (Saybrook Documents; Bates Nos. S01926-28).

28.   Saybrook – Psychology Licensing Information Bulletin (Saybrook Web Site: https://www.saybrook.edu/ downloads/ licensure/ overview.pdf) ***

29.   Susan Cooney Federal Tax Returns (2002 to 2005). (Plaintiff's Disclosures - F.R.C.P Rule26(a)(1)); Plaintiff's Document Responses).

30.   Student Loan Documents – Sallie Mae). (Plaintiff's Disclosures - F.R.C.P Rule26(a)(1); Plaintiff's Document Response).

31.   Letter of Kathy Sanders, M.D. Dated April 27, 2004 (Plaintiff's Document Responses).

32.   Records produced by Dr. David Reisen in Response to KOR, including Affidavit of Keeper of Records plus 6 pages of records :

33.  Saybrook President's Report (Saybrook Documents; Bates Nos. S00298-307).

34.  Plaintiff reserves the right to amend this list prior to trial, and to introduce additional exhibits for purposes of impeachment or rebuttal.

\*    As this exhibit is contested, plaintiff reserves the right to call Saybrook faculty member, Thomas Greening, as a witness.

\*\*   As this exhibit is contested, plaintiff reserves the right to call Saybrook faculty member, Arthur Bohart, as a witness.

\*\*\*  As this exhibit is contested, we reserve the right to call Saybrook faculty member, Alan Vaughan, as a witness.

C.  Defendant's List of Contested Exhibits

1.  November 24, 2002 Cover Letter from S. Cooney to Roslin Moore; (Plaintiff's Documents, **Ex. 5** to Cooney Deposition)

2.  Records produced by Dr. David Reisen in Response to KOR, including Affidavit of Keeper of Records plus 6 pages of records ;

3.  Charles McCabe's November 24, 1994 recommendation of S. Cooney (Plaintiff's Documents, Saybrook Documents Bates No. S01923)

4.  Robert McAnaw's November 15, 1994 recommendation of S. Cooney (Plaintiff's Documents, Saybrook Documents Bates No. S01924)

5.  March 5, 1999 Saybrook correspondence to S. Cooney (Defendant's Documents Bates No. S01786)

6.  March 26, 1998 Saybrook correspondence to S. Cooney (Defendant's Documents Bates No. S01787)

7.  October 1, 1997 Saybrook correspondence to S. Cooney (Defendant's Documents Bates No. S01789)

8.  March 14, 1997 Saybrook correspondence to S. Cooney (Defendant's Documents Bates No. S01790)

9.  March 5, 1999 Saybrook correspondence to S. Cooney
    (Defendant's Documents Bates No. S01817)

10. January 12, 2004 WASC correspondence to Susan Cooney 2 pages
    (Plaintiff Responses and Defendant's Documents Bates No. S00333-
    S00334)

11. Study of the Effects of Pet therapy on elderly Patients Level of
    Depression by Susan Cooney, submitted as part of her Saybrook
    application (Defendant's Documents Bates No. S01911-S01922)

12. Curriculum Vitae of Art Bohart (**Ex. 117** to Bohart Deposition)

13. Curriculum Vitae of William K. Bruff (**Ex. 70** to Bruff Deposition)

14. Curriculum Vitae of Alan G. Vaughan (**Ex. 83** to Vaughn Deposition)

15. Curriculum Vitae of Eugene Taylor (**Ex. 87** to Taylor Deposition)

16. Licensed Alumni by State, Massachusetts (Defendant's Documents
    Bates No. S00007-S00008)

17. Business Record Certification dated March 1, 2006 from Partners
    HealthCare System (produced in response to KOR Subpoena to MGH)

18. May 30, 2003 Correspondence from Partners HealthCare System, Inc.
    to S. Cooney terminating her from Massachusetts General Hospital
    (produced in response to KOR Subpoena to MGH)

19. June 3, 1994 Application for Employment by Susan Cooney (produced
    in response to KOR Subpoena to MGH)

20. December 1, 1999 Application for Employment by Susan Cooney
    (produced in response to KOR Subpoena to MGH)

21. Report of Elizabeth L. Leonard, Ph.D. (Docket No. 46, Exhibit C)

22. Report of Nancy Segreve, MA, CRC (Docket No. 46, Exhibit A)

23. Defendant reserves the right to amend this list prior to trial, and to
    introduce additional exhibits for purposes of impeachment or
    rebuttal.

SUSAN COONEY,

By Plaintiff's Counsel

/s/ *Paul W. Morenberg*
_____
E. Steven Coren, BBO # 099740
Paul W. Morenberg, BBO # 631101
Kerstein, Coren, Lichtenstein & Finkel, LLP
60 Walnut Street
Wellesley, MA   02481
(781) 997-1600

SAYBROOK GRADUATE
SCHOOL AND RESEARCH CENTER,
By Defendant's Counsel:

/s/*Grace V.B. Garcia*
_____
Michael F. Aylward, BBO # 024850
Thomas C. Federico, BBO #160830
Grace V.B. Garcia, BBO # 640970
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210
(617) 439-7500

Dated:          November 7, 2006

## Certificate of Service

I hereby certify that this documents(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 7, 2006

/s/*Grace V.B. Garcia*
_____
Grace V. B. Garcia