UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572  JLT

*******************************************

SUSAN COONEY,
    Plaintiff         )
               )
               )
v.               )
               )
SAYBROOK GRADUATE SCHOOL AND  )
    RESEARCH CENTER,      )
    Defendant        )

*******************************************

## FINAL JOINT PRETRIAL MEMORANDUM

Pursuant to the Court's Trial Order dated January 24, 2007, the parties jointly submit this Final Pretrial Memorandum for the February 6, 2007 conference.

I.    SUMMARY OF EVIDENCE REGARDING LIABILITY AND DAMAGES

    A.    PLAINTIFF'S SUMMARY

Plaintiff Susan Cooney has asserted claims against Saybrook Graduate School and Research Center ("Saybrook") for breach of contract, promissory estoppel, and unfair and deceptive business practices (M.G.L. c. 93A). Plaintiff expects the evidence to show the following:

At all times relevant to the Complaint, Cooney was and is a Massachusetts resident. Saybrook was and is a California graduate school, which offers training in humanistic psychology through a "distance learning" model to students in various jurisdictions, including Massachusetts. Between 1995 and 2002, Cooney pursued a doctoral degree in psychology at Saybrook in order to become a licensed psychologist in

Massachusetts. During the entire period of Cooney's studies at Saybrook, Saybrook was aware that its graduates would face significant barriers or outright disqualification if they applied to become licensed psychologists in Massachusetts, but Saybrook failed to inform Cooney.

Through her application and through communications with faculty, Cooney informed Saybrook that her professional objective was to become a licensed clinical psychologist in Massachusetts. In its <u>1994-95 Interim Catalogue</u> ("Catalogue"), Saybrook advised prospective students that its graduates had been licensed in many jurisdictions, including Massachusetts. Saybrook assured Cooney and other students that Saybrook would assist students to become licensed in the state of their choice. Id. ("To this end, the Institute is a member of the Consortium of Diversified Psychology Programs (CDPP), which is active in state-by-state efforts to monitor and influence existing and changing regulations...").

Saybrook advised Cooney and other clinical students to "contact the licensing board in the state in which they plan to practice to obtain the detailed requirements, because regulations differ from state to state." <u>Id</u>. After students have obtained licensure requirements, Saybrook does not direct students to monitor regulatory changes—a function that Saybrook and CDPP agreed to perform. <u>Id</u>. Saybrook students are bound by the catalogue governing the academic year in which they are admitted. Saybrook did not mail or distribute subsequent catalogues to Cooney or her classmates absent a specific request.

Cooney contacted the Massachusetts Board of Registration of Psychologists ("the Board") in the summer of 1995 and obtained licensure standards for psychologists. At an orientation conference in the Fall of 1995, Cooney met with a Saybrook representative,

who reviewed Massachusetts regulations and advised her that Saybrook's program complied with Massachusetts requirements for licensure. In or about the Fall of 1995, Saybrook provided Cooney with a list of jurisdictions that do not accept Saybrook degrees for licensure as a psychologist. The list included Oregon, Iowa, Connecticut, Georgia, and Maryland. Cooney was informed that Saybrook would stay abreast of licensure standards and changes.

Saybrook's Interim President, Rudy Melone, represented Saybrook on the CDPP and served as its co-chair. Before Cooney matriculated at Saybrook in the Fall of 1995, Saybrook, Melone and other Saybrook faculty were aware that Saybrook students would face licensure obstacles in Massachusetts. Several months before Cooney began her studies at Saybrook, Melone contacted the Board to express Saybrook's concern that the Board had initially rejected Dr. Burke's application for licensure. Saybrook did not inform Cooney of the Board's rejection of Burke in 1995, and Saybrook did not advise Cooney of its knowledge that Burke required legal assistance to secure licensure in Massachusetts in or about 1997.

On behalf of Saybrook, Melone monitored regulatory changes in Massachusetts and other states in 1994 and thereafter. In early 1996, Melone led a CDPP conference call regarding five states that were considering regulations that could harm students from humanistic psychology programs. CDPP identified five "Hot spots," including Massachusetts. Id., p. 4. Melone noted the need for "continued vigilance." Id. In February, 1996, Melone wrote two letters to the Board to protest a proposed regulation to amend Massachusetts residency standards for graduate schools. In or about late 1996, Dr. Gerald Bush assumed the presidency of Saybrook. Gerald Bush was also aware of emerging licensure obstacles facing Saybrook graduates from Massachusetts in or about

1996, but he also failed to advise Cooney.

In 1996 and early 1997, the Board proposed and adopted a new regulation to require applicants for Massachusetts licensure to have graduate degrees from schools that are designated by the Association of State and Provincial Psychology Boards ("ASPPB") for applications filed after September 1, 2000. Melone and Saybrook received notice of these developments from Union Institute, but failed to inform Cooney.

Maureen O'Hara joined Saybrook as a vice-president and faculty member in early 1997 and became president in 1999. Prior to joining Saybrook, O'Hara had published an article to inform humanistic psychology schools that many jurisdictions were considering new regulations to mandate that prospective psychologists graduate from ASPPB-approved schools. "Wake Up Call for Humanistic Warriors," AHP Perspective, January/February, 1995. O'Hara warned humanistic psychology schools that once students become aware that "degrees from alternative schools will fare badly in the marketplace, graduate opportunities for humanistic psychology will dry up." Id.

In 1997, O'Hara learned that Saybrook graduates would face obstacles in obtaining a license as a psychologist in Massachusetts. Dr. O'Hara claims that she was unaware, in 1997, that Massachusetts had adopted regulations mandating ASPPB-designation of graduate programs in psychology. However, the Union Institute had informed both Rudy Melone (Saybrook's then president) and Marsha Hammond (a CDPP member and future licensing coordinator at Saybrook) in May of 1997. At this time, Maureen O'Hara was a vice-president at Saybrook. The evidence is also expected to show that O'Hara participated in CDPP meetings and other communications in or about 1997 and 1998 regarding the Massachusetts regulations. The evidence is also expected to show that Saybrook and O'Hara rejected recommendations of its former licensing

4

coordinator, in or about 2000, to inform students of known licensure obstacles in Massachusetts and other "hot spots."

In or about late 2000, Richard Francis advised Saybrook that he was rejected for licensure in Massachusetts. The Board determined that Saybrook students like Dr. Francis did not meet the Board's residency requirements under pre-1997 standards. Nonetheless, the Board granted licensure to Francis expressly on account of his physical disability. Id. The evidence is expected to show that Saybrook and O'Hara were aware of Dr. Francis's difficulty in applying for licensure, but failed to inform Cooney.

In 2003, Saybrook requested that Dr. Alan Vaughan develop a web page to help students understand licensing standards in various jurisdictions. Dr. Vaughan determined that Massachusetts and many other states would not accept Saybrook graduates for licensure. On or about February 18, 2004, Saybrook provided notice to then current students about licensure obstacles in twenty-five jurisdictions, including Massachusetts. At or about this time, Saybrook also began to require new students to declare their intentions regarding licensure, to read a disclosure statement regarding known licensure obstacles, and to agree that Saybrook was not responsible to monitor licensure standards.

Between March, 2000 and March, 2003, Saybrook's total enrollment increased from 430 to 521. For the same period, enrollment of new and readmitted students increased from 138 (1999-2000) to 191 (2002-2003). However, for the 2003-2004 academic year, Saybrook's new enrollment figure declined to 156. According to Jack Reho's data for 2004-2005, new enrollment further declined to about 120.

In or about October, 2004, O'Hara reported to Saybrook's Board that Saybrook's enrollment had declined because "external pressures we were anticipating in 1998 are accelerating." President's Report of Dr. O'Hara to Saybrook's Board. These pressures

included "accreditation issues arising in professional licensing...." Id. Dr. O'Hara noted that "in some 17 states a clinical student from Saybrook may not be eligible to sit for licensing as a clinical psychologist... <u>On advice from counsel we have moved to warn students wishing to sit for licensing that Saybrook may not be the right school...</u>." Id., p. 5.

Cooney graduated from Saybrook with a doctoral degree in psychology in or about October, 2002. In or about 2003, the Board advised Cooney that she was ineligible for licensure as a Massachusetts psychologist, as she had not attended an ASPPB-designated program. The Board advised Cooney that 251 CMR 3.03(1)(b) went into effect on May 2, 1997. Id. As Cooney did not graduate from an ASPPB-designated program, there was nothing she could do to become eligible for licensure with a Saybrook degree.

Saybrook's failure to alert Cooney about its knowledge of existing and emerging licensure obstacles in Massachusetts was a breach of its contractual obligations and promises to Cooney. Saybrook breached its obligation to monitor licensure changes and issues and to disclose this information to assist Cooney in achieving licensure in Massachusetts. Saybrook's breach of these contractual obligations caused substantial damages to Cooney. She devoted seven years of her life to obtain a Saybrook degree, and paid substantial sums in tuition, fees, and interest, for which she did not receive the bargained-for value. Cooney explored all possible avenues to qualify for licensure, but the Board informed Cooney that she was ineligible under current regulations. As a result of Saybrook's breach of its contractual obligations, Cooney cannot pursue her academic and vocational objective to become a Massachusetts psychologist, and Cooney will be deprived of the additional earnings that she could achieve as a licensed psychologist. Cooney is now 51 years old and does not have the resources to pursue another doctoral

degree in psychology.

Plaintiff expects that the expert testimony of Norman Hursh, ScD, CRC, CVE, a vocational rehabilitation expert, will reflect the detailed opinions that Dr. Hursh provided in his expert report dated June 9, 2006, which was provided to defendant's counsel on June 13, 2006. Dr. Hursh's expert report is attached hereto as Exhibit A. Based on his interviews with the plaintiff and his review of pertinent records and vocational data, Dr. Hursh is expected to testify that Dr. Cooney would have been successful in her plan to work as a clinical psychologist but for her ineligibility to sit for licensure because Saybrook is not properly accredited. To a reasonable degree of vocational certainty, Dr. Hursh is expected to testify that Dr. Cooney would have qualified for licensure in late 2003 or early 2004, and would have been able to practice clinical psychology for twenty-five years and would have earned the average income for a clinical psychologist.

Plaintiff expects that the expert testimony of Dana C. Hewins, Ph.M., an economist, will reflect the detailed opinions that Dr. Hewins provided in his expert report dated June 10, 2006, which was provided to defendant's counsel on June 13, 2006. The expert report of Dr. Hewins is attached as Exhibit B. Based on his review of pertinent reports, records and data, Dr. Hewins is expected to testify that Susan Cooney's inability to practice as a clinical psychologist has resulted in an overall net loss of compensation equal to $1,056,095 (net present value).

Plaintiff expects the evidence to show that Cooney should prevail on her related claim of promissory estoppel. Based on the factual allegations that are described above, the evidence is expected to show that Saybrook promised Cooney that it would assist her in obtaining licensure in Massachusetts. Saybrook made the related promise that it would monitor licensing standards and regulatory changes. Saybrook knew or reasonably

should have forseen that Cooney would rely on its pledges, and that Saybrook's pledges would induce Cooney to pursue her graduate studies at Saybrook and to pay tuition and fees. By enrolling at Saybrook and devoting seven years of her life to obtaining her degree, Cooney took action of a definite and substantial character. If Saybrook disclosed its knowledge of licensure obstacles in Massachusetts before or during Cooney's studies, it is likely that Cooney would have declined to attend Saybrook or would have sought to transfer to another program. Saybrook has breached its promises to Cooney by failing to inform her of licensures obstacles in Massachusetts, which were known to Saybrook before and after Cooney matriculated. Cooney invested seven years of money and time into her Saybrook degree, which she cannot utilize to qualify for licensure in Massachusetts, and she has lost her expected ability to earn increased income as psychologist. As a result, injustice can only be avoided if the Court enforces Saybrook's promises and awards damages that are equivalent to Cooney's breach of contract damages, which are described above.

Plaintiff expects the evidence to show that Saybrook engaged in unfair and deceptive trade practices, in violation of M.G.L. Chapter 93A. Plaintiff alleges that Saybrook engaged in a trade or commerce when it provided services to Cooney that did not meet her stated educational objective—to receive a degree that would qualify her to apply for licensure as a Massachusetts psychologist. Before Cooney matriculated, Saybrook knew that its "distance learning" model may not satisfy the Board's "residency" standards. In or about the Spring of 1997, Saybrook learned that Massachusetts had passed new regulations that require prospective psychologists to attend ASPPB-designated schools. Although Saybrook lacked ASPPB approval, Saybrook continued to provide Cooney with graduate studies that could not possibly meet

8

Cooney's educational objective.  Saybrook's apparent motive was to collect tuition and fees from Cooney and other Massachusetts students.  The foregoing facts create a triable issue as to whether Saybrook provided Cooney with educational services to further its charitable mission, or rather to maintain enrollment levels and tuition revenues.

Plaintiff has also alleged facts that suggest Saybrook intentionally withheld critical information about licensure obstacles in order to protect its enrollment levels.  For example, in Dr. O'Hara's report to Saybrook's Board about declining enrollment levels in 2004, she explained that "external pressures we were anticipating in 1998 are accelerating."  Indeed, after Saybrook took steps to inform current and prospective students of licensure obstacles in seventeen to twenty-five jurisdictions in February, 2004, Saybrook's new student enrollment levels began to plunge.

Charitable status does not insulate a party from liability under Chapter 93A for unfair business conduct.  Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 25 (1997).  In Linkage, the Court found that defendant Boston University, a non-profit entity, was engaged in a predominantly commercial transaction with the plaintiff, as its primary objective was to deliver educational services for lucrative compensation.  Chapter 93A is designed "to encourage more equitable behavior in the marketplace . . . [and to impose] liability on persons seeking to profit from unfair practices." Poznik, 417 Mass. at 53 (citing Manning v. Zuckerman, 388 Mass. 8, 12 (1983).  When charitable entities engage in unscrupulous or unethical business practices to secure a financial advantage, it is appropriate to hold the so-called charity accountable under Chapter 93A.  Linkage, 425 Mass at 25.

B.    DEFENDANT'S SUMMARY

Defendant, Saybrook Graduate School and Research Center ("Saybrook") expects the evidence will show that it never had a contract or an enforceable promise with the plaintiff to monitor and inform her of licensing regulations.  Rather, the only agreement Saybrook had with Cooney was to provide her with education leading to a doctorate in psychology, which it did.  As such, Saybrook expects to show that it is not liable to the plaintiff on any of her three claims, including, breach of contract, promissory estoppel or violation of Mass. Gen. Laws. Ch. 93A, and therefore, cannot be held liable for any of her alleged damages.

Saybrook is a distance learning school based on a one-to-one mentoring model. The education it provides concentrates on humanistic psychology.  It is fully accredited by the Western Association of Schools and Colleges.

In 1995, at the time of Cooney's matriculation to Saybrook, Saybrook informed its prospective and current students through its 1994-1995 Interim Catalogue that the institution's mission and primary emphasis is to "prepare its graduates as scholars and researchers in the broad domain of human experience."  With this in mind, Saybrook informed those students who wish to work as licensed psychologists, that they "are advised that they should contact the licensing board in the state in which they plan to practice to obtain the detailed requirements, because regulations differ from state to state."  Further, the Catalogue informed students that they "are to be advised, however, that states review applications individually to be sure all requirements of the state licensing board have been met.  Regulations are constantly changing."  Prior to entering Saybrook, Cooney signed two documents that confirmed her understanding that the conditions of her admission into Saybrook were as stated in the 1994-1995 Catalogue.

At no time during Cooney's matriculation at Saybrook did she inform anyone at Saybrook of an intent to become a licensed psychologist. In fact, Cooney's academic advisor, Ruth Richards, when she recommended Susan Cooney for candidacy, relayed to the Committee what Cooney had told her – namely, that she wanted to do crisis work in the public sector as well as to perform "related research and writing." Saybrook expects the evidence to show that performing crisis work, including clinical work, does not require one to be a licensed psychologist. Thus, any reference to clinical work that Cooney made while at Saybrook, did not inform Saybrook of an intent that Cooney would seek licensure.

Cooney failed to fulfill her responsibility to verify the licensure requirements of Massachusetts and to regularly check such requirements. Although Saybrook graduates have in fact become licensed as psychologists in Massachusetts, Saybrook never made any guarantee that future students would be licensed or that licensing laws would not be changed. The evidence will show that Cooney waited until 2003 before she "inquired" of the Massachusetts Board of Registration of Psychologists (the "Board") concerning the procedures for obtaining a license to practice as a psychologist within the Commonwealth of Massachusetts. At that time, the Board informed Cooney that in order to obtain her license, the new regulation required that applicants after September 1, 2000 graduate from a program designated by the Association of State and Provincial Psychology Boards.

With respect to plaintiff's allegations, Saybrook will show that (1) Plaintiff has no evidence of a contract with Saybrook that would guarantee her licensure in Massachusetts; (2) there is no evidence that Saybrook promised the plaintiff that she would be eligible for licensure, or that any reliance by the plaintiff on such an alleged

promise was reasonable; and (3) there is no evidence that defendant acted unfairly or deceptively, or was engaged in trade or commerce. Specifically, Saybrook will show that it was under no obligation, contractual or otherwise to monitor or inform students of licensure changes in all states. Rather, through its Catalogues as well as through all communications with the students, Saybrook was clear that keeping up to date with the licensing laws was the students' responsibility.

In addition, Saybrook expects to show that the plaintiff has not sustained damage to the extent she alleges. Saybrook will show that Cooney has received a valuable education that would allow her to work in a clinical setting if she so choose. Saybrook will show that despite Cooney's education, license as a social worker, and her experience, she has failed to mitigate her damages by failing to seek and obtain positions in the clinical area. The evidence regarding her damages with come through John Reho (CFO of Saybrook), Nancy Segreve, MA, CRC (Defendant's Vocational Expert). Nancy Segreve will testify in conformity to her report as previously disclosed to the plaintiff.

## II.    AGREED FACTS

The parties stipulate that the following facts are agreed:

1.    At all times relevant to the complaint, Susan Cooney has been and is a resident of Massachusetts.

2.    At all times relevant to the complaint, Saybrook Graduate School and Research Center has been located in San Francisco, CA.

3.    Saybrook offers doctoral degrees in psychology, and trains students in Massachusetts and other states through a "distance learning" model.

4.    The plaintiff received and reviewed Saybrook's 1994-95 Interim Catalog in 1995.

5.    Cooney pursued graduate studies at Saybrook between 1995 and 2002, and received a Ph.D in or about October, 2002.

## III.    CONTESTED ISSUES OF FACT

All factual issues that are not identified as Agreed Facts (Section II, supra) are contested.  See Section I, which provides each party's summary of the evidence.

## IV.    JURISDICTIONAL QUESTIONS

There are no jurisdictional questions before the Court.

## V.    QUESTIONS RAISED BY PENDING MOTIONS

There are no pending motions, other than motions in limine which the defendant will be filing on February 1, 2007, which are listed in part XII of this Memorandum.

## VI.    ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS

### A. Plaintiff's Issues of Law

1.    Whether the Court or the jury will determine if Saybrook committed violations of M.G.L. Chapter 93A and the measure of damages.

2.    Recently, Saybrook has agreed to produce several of its employees as witnesses at trial, including all of the following:

      a.    William Bruff, Oakland, CA  (Saybrook's associate vice-president and a current faculty member);

      b.    Maureen O'Hara, Greenbrae, CA (Saybrook's former president and current faculty member);

c.    John Reho, Walnut Creek, CA (Saybrook's current vice-president, who answered Saybrook's interrogatories.); and

d.    Eugene Taylor, Cambridge, MA  (Saybrook faculty member).

However, Saybrook now asserts that plaintiff should not be permitted to introduce deposition testimony from Drs. Arthur Bohart or Alan Vaughan, and should not be allowed to call Dr. Thomas Greening as a trial witness. Dr. Greening was not deposed, though plaintiff sought leave of court to depose him.  Plaintiff maintains that Saybrook has control of its employees, including Drs. Bohart, Greening, and Vaughan.  The court should compel Saybrook to produce these witnesses at trial, and/or permit the plaintiff to introduce testimony from the deposition transcripts of Drs. Bohart and Vaughan.

3.    Upon information and belief, Defendant will be filing a trial brief regarding plaintiff's claim for violation of Chapter 93A (Count III).   As summary judgment was denied, this "legal issue" is not before the court.

B. Defendant's Issues of Law

1.    Several of defendant's witnesses, Jack Reho, Dr. William Bruff, Dr. Ruth Richards, and Donald Cooper are flying in from California for this trial.  One witness, Dr. Maureen O'Hara, will be flying in from the United Kingdom.  The plaintiff intends to call all of these witnesses, but Dr. Richards and Mr. Cooper, in her case-in-chief. Further, plaintiff has requested the testimony of Drs. Arthur Bohart, Thomas Greening and Alan Vaughan, which Saybrook has opposed.  If the Court denies Saybrook's motions to exclude their testimony, these three witnesses will also have to travel from California.  Many of these witnesses are only available the first week of trial (February 12th through 16th, 2007).  Specifically, Drs. Maureen O'Hara, William Bruff, and Thomas Greening are not available if this trial goes into a second week.  Dr. Ruth Richards is only available the first week, as well as February 26th and 27th.  Due to the distance that these witnesses will be traveling, as well as making flight arrangements, the defendant would

14

request permission for these witnesses to be taken out of order if necessary. Also, to the extent these witnesses are listed as defendant's witnesses, Saybrook requests permission to perform a direct examination of them, if needed, during the first week of trial.

2.    During a Pre-Trial Conference before this Court on November 7, 2006, this Court stated that the plaintiff was not entitled to subpoena any witness who resides in California. At the time Conference, Saybrook informed the Court that it would willingly produce John Reho, Saybrook's Vice President. Notwithstanding the conversation before the Court, the plaintiff has issued a Subpoena Duces Tecum to John Reho, requesting he bring various documents to the trial. Although Saybrook still intends to produce John Reho, Saybrook requests that the Court quash the subpoena to the extent that it requests Mr. Reho to bring documents, as it was improperly served and is not needed. Specifically, some of the documents the plaintiff requested were previously produced by Saybrook during discovery, and the remaining documents plaintiff requested in the subpoena were either produced by the plaintiff or by other third-parties during discovery, and were not originally in Saybrook's possession. Thus, the plaintiff already has in her possession all of the requested documents.

3.    Whether the defendant may use chalks containing documents that are "Agreed Upon Exhibits" in its opening to the jury?

VII.    REQUESTED AMENDMENTS TO THE PLEADINGS

With the assent of defendant, plaintiff recently filed a voluntary dismissal of Count V (Negligent Infliction of Emotional Distress).

VIII.  <u>ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THIS CASE</u>

The parties engaged in mediation prior to trial, which was unsuccessful.

The parties have agreed that the parties, witnesses and counsel involved in this action will not make any reference to insurance during trial.

IX.  <u>PROBABLE LENGTH OF TRIAL</u>

The parties estimate that trial will be completed in eight to ten trial days.

X.  <u>WITNESSES</u>

A.  <u>Plaintiff's List of Witnesses</u>.

1.  Susan Cooney    (Plaintiff)
    1445 Centre Street
    Newton Corner, MA 02459

    Estimated Direct:    4 to 5 hours.
    Estimated Cross:     3 to 4 hours.

2.  William Bruff   (Current Saybrook employee)
    823 59th Street
    Oakland, CA

    Estimated Direct:    1 to 2 hours.
    Estimated Cross:     1 hour

3.  Marsha V. Hammond, Ph.D (Former Saybrook employee)
    168 Virginia Avenue
    Ashville, NC  28806

    Estimated Direct:    3 to 4 hours.
    Estimated Cross:     1 hour.

4.      Dana C. Hewins, Ph.D. (Expert Witness)
Economic Consultant
1 Tamett Brook Road
Lakeville, Massachusetts  02347

Estimated Direct:    2 hours.
Estimated Cross:    1 hour

5.      Norman C. Hursh, Sc.D  (Expert Witness)
Associate Professor
Sargent College of Health and Rehabilitation Sciences
635 Commonwealth Avenue
Boston, MA  02215

Estimated Direct:    2 to 3 hours.
Estimated Cross:    1 hour

6.      Maureen O'Hara  (Former Saybrook President)
7014 Wisteria Way
Carlsbad, CA 92011

Estimated Direct:    4 to 5 hours.
Estimated Cross:    2 hours

7.      Mr. John W. Reho  (Current Saybrook Officer)
2265 Gladwin Drive
Walnut Creek, CA

Estimated Direct:    3 to 4 hours.
Estimated Cross:    90 minutes

8.      Kathy M. Sanders, M.D.  (Fact Witness)
Acute Psychiatry Service
55 Fruit Street
Boston, MA  02114

Estimated Direct:    1 to 2 hours.
Estimated Cross:    1 hour

9.    Karen Schwartz, Ph.D.  (Fact Witness)
      56 Lincoln Street
      Watertown, MA 02472

      Estimated Direct:    1 to 2 hours.
      Estimated Cross:     1 hour

10.   Eugene Taylor, Ph.D.  (Current Saybrook Professor)
      33 Ridgedale Avenue # 205
      Cambridge, MA

      Estimated Direct:    1 hour.
      Estimated Cross:     1 hour

11.   Thomas Greening, Ph.D. (Current Saybrook Professor)

      Estimated Direct:    1 to 2 hours.
      Estimated Cross:     1 hour

12.   Arthur Bohart, Ph.D (Current Saybrook Professor and former
      president).

      Estimated Direct:    1 hour.
      Estimated Cross:     1 hour

13.   Alan Vaughan, Ph.D. (Current Saybrook Professor and Saybrook
      "licensing coordinator."

      Estimated Direct:    1 to 2 hours.
      Estimated Cross:     1 hour

14.    Plaintiff reserves the right to call any witnesses listed by the
defendant, to call other witnesses for purposes of rebuttal, and to amend or to supplement
this disclosure prior to trial.

B.    Defendant's List of Witnesses

      1.    Susan Cooney  (Plaintiff)
            1445 Centre Street
            Newton, MA  02459

            Defendant only intends to cross-examine this witness.

2.  Ruth Richards  (Saybrook Faculty and Plaintiff's Advisor)
    Saybrook Graduate and Research Center
    747 Front Street, 3rd Floor
    San Francisco, CA 94111-1920

    Estimated Direct: 1 hour
    Estimated Cross: 1 hour

3.  Dr. Maureen O'Hara  (Former Saybrook President)
    7014 Wisteria Way
    Carlsbad, CA 92011

    Estimated Direct: 90 minutes
    Estimated Cross: 1 hour

4.  Dr. William Bruff  (Saybrook Faculty)
    Saybrook Graduate and Research Center
    747 Front Street, 3rd Floor
    San Francisco, CA 94111-1920

    Estimated Direct: 1 hour
    Estimated Cross: 1 hour

5.  Donald Cooper  (Saybrook's Director of Alumni Affairs)
    Saybrook Graduate and Research Center
    747 Front Street, 3rd Floor
    San Francisco, CA 94111-1920

    Estimated Direct: 90 minutes
    Estimated Cross: 1 hour

6.  Eugene Taylor  (Saybrook Faculty)
    126 Clifton Street, #3
    Cambridge, MA

    Estimated Direct: 1 hour
    Estimated Cross: 30 minutes

7.  Jack Reho  (Saybrook's CFO)
    Saybrook Graduate and Research Center
    747 Front Street, 3rd Floor
    San Francisco, CA 94111-1920

    Estimated Direct: 1 hour
    Estimated Cross: 1 hour

8.    Karen Schwartz (Mass. Board of Registration of Psychologists)
56 Lincoln Street
Watertown, MA

Estimated Direct: 1 hour
Estimated Cross: 30 minutes

9.    Dr. Dennis Norman (Chief of Psychology, MGH)
10 Fieldstone Way
Boxford, MA

Estimated Direct: 1 hour
Estimated Cross: 1 hour

10.   Nancy Segreve, MA, CRC (Defendant's Vocational Expert)
Occupational Resource Network
19 Flintlock Road
Lexington, MA 02420

Estimated Direct: 2 hours
Estimated Cross: 1-2 hours

11.   Defendant reserves the right to call any and all of plaintiff's listed
witnesses and to call additional witnesses for purposes of rebuttal,
and to amend or to supplement this disclosure prior to trial.

XI.    PROPOSED EXHIBITS

A.    Agreed Exhibits

1.    Susan Cooney's Application to Saybrook (Saybrook Documents;
Bates Nos. S01901-02).

2.    Susan Cooney's Application Essay (Saybrook Documents; Bates
Nos. S01907-S01910).

3.    Saybrook's Interim Catalogue 1994-95. Plaintiff's Responses to
Document Requests.

4.    Saybrook 1994-95 Student Handbook. Plaintiff's Responses to
Document Requests.

5. <u>Saybrook 1996-97 Student Handbook</u>.  Plaintiff's Responses to Document Requests.

6. <u>Massachusetts Regulations re Psychologists</u> (12/1/93), Plaintiff's Responses to Document Requests Bates No. 0000205-0000231; **Ex. 91** (Schwartz Deposition).

7. <u>Presentations and Workshops, P. 12</u>.  (Saybrook Documents; Bates No. S00126).

8. <u>Susan Cooney's Resume</u> (circa 1995) (Saybrook Documents; Bates S01905-06).

9. <u>Susan Cooney Transcript – Harvard University</u> (Saybrook Documents; Bates No. S01826-27).

10. <u>Susan Cooney Transcript – Boston University</u> (Saybrook Documents; Bates No. 1828).

11. <u>Susan Cooney Transcript – Northeastern University</u>  (Saybrook Documents; Bates No. 1824-25).

12. <u>Susan Cooney Transcript – Saybrook Graduate School</u> (Saybrook Documents; Bates No. S01810-S01811).

13. <u>Letter of Ruth Richards re Susan Cooney dated December 15, 2000</u>  (Saybrook Documents; Bates No. 2071).

14. <u>Susan Cooney's September 15, 2003 Correspondence to Attorney Vartain and Saybrook</u>, Plaintiff's Document Responses; Saybrook Documents.

15. <u>Attorney Michael Vartain's October 21, 2003 Correspondence to Susan Cooney</u>; Plaintiff's Document Responses; Saybrook Documents.

16. <u>Curriculum Vita of Maureen O'Hara</u>  (Saybrook Documents; Bates No. S01778-S01783).

17. <u>Saybrook Student Handbook</u> (Revised September 1999). (Saybrook's Disclosures - F.R.C.P Rule26(a)(1)).

18.     Saybrook Catalogue – 1996-1998  (Saybrook's Disclosures -
        F.R.C.P Rule26(a)(1)).

19.     Saybrook Catalogue – 1998-99 (Saybrook's Disclosures -
        F.R.C.P  Rule26(a)(1)).

20.     Saybrook Catalogue – 1999-2000 (Saybrook's Disclosures -
        F.R.C.P Rule26(a)(1)).

21.     Saybrook Catalogue – 2000-2001 (Saybrook's Disclosures -
        F.R.C.P Rule26(a)(1)).

22.     Saybrook Catalogue – 2001-2002 (Saybrook's Disclosures -
        F.R.C.P Rule26(a)(1)).

23.     Saybrook Bursar and Financial Aid Records (Saybrook's
        Disclosures - F.R.C.P Rule26(a)(1)).

24.     Massachusetts General Hospital Evaluation of Susan Cooney
        Dated June 20, 1995 (Plaintiff's Document Responses; MGH
        Response to K.O.R. Subpoena)

25.     Massachusetts General Hospital Evaluation of Susan Cooney
        Dated August 13, 1997 (Plaintiff's Document Responses; MGH
        Response to K.O.R. Subpoena)

26.     Curriculum Vita of Dr. Hursh (Plaintiff's Vocational Expert)

27.     Curriculum Vita of Dr. Hewins  (Plaintiff's Economic Expert)

28.     Signed Offers of Acceptance dated January 8, 1995 and April 26,
        1995 (Saybrook Documents Bates No. S01794, S01791)

29.     Kathy Sanders' November 20, 1994 recommendation of S. Cooney
        (Plaintiff's Documents, Saybrook Documents Bates No. S01925)

30.     August 22, 2003 letter from J. Reho to S. Cooney offering
        assistance to S. Cooney (Plaintiff's Document Responses;
        Saybrook Documents, Bates No. S00339-S00341) ;

31.     Oct. 18, 2001 e-mail to Art Bohart (Defendant's Documents Bates
        No. S01966-S01967)

32.     July 3, 2003 Saybrook memorandum re: Cooney's attendance at
        Saybrook (Defendant's Documents Bates No. S01809)

33.   Bill Bruff e-mail to Susan Cooney dated 15 July 2003 (Plaintiff
Responses Plaintiff Responses and Defendant's Documents Bates No.
S02039)

34.   Curriculum Vita of Nancy Segreve, MA, CRC (Defendant's
Vocational Expert, Docket No. 46, Exhibit B)

35.   Susan Cooney Letter to Maureen O'Hara dated June 10, 2003.
(Saybrook Documents; Bates Nos. S01807-08).


B.   Plaintiff's List of Contested Exhibits

1.   Information About the Consortium for Diversified Psychology
Programs.  Plaintiff's Responses to Document Requests.

2.   Residential Conference Calendar (June 17-23, 1996).  (Saybrook
Documents; Bates No. S00015).

3.   Letter of Kathy Sanders re Clinical Internship Dated January 27,
1997 (Plaintiff's Document Responses).

4.   Maureen O'Hara Letter re Cooney's Graduation (Saybrook
Documents; Bates No.      ).

5.   Susan Cooney, Ph.D., Caregivers, Trauma and the Road to
Resiliency.  (Plaintiff's Disclosures - F.R.C.P Rule26(a)(1)).

6.   Proposed Massachusetts Regulations re Registration of
Psychologists, 251 CMR 3.00 (12/17/96 draft), **Ex. 110** (Schwartz
Deposition).

7.   Massachusetts Regulations re Registration of Psychologists, 251
CMR 3.00 (5/2/97), **Ex. 100** (Schwartz Deposition).

8.   E-Mail from Dr. Schwartz to Saybrook dated March 21, 2003 (**Ex.
93** (Schwartz Deposition).

9.   Susan Cooney Return Receipt to her Chapter 93A Demand Letter

10.   Susan Cooney Letter to Dr. Schwartz dated November 7, 2003
**Ex. 102** (Schwartz Deposition).

11.     Letter from Susan Cooney to Dr. Schwartz dated September 27, 2004, **Ex. 103** (Schwartz Deposition).

12.     Letter from Board to Susan Cooney dated October 20, 2004, **Ex. 104** (Schwartz Deposition).

13.     Maureen O'Hara, "Wake Up Call to Humanistic Warriors," AHP Perspective (January/February 1995). **Ex. 61** (O'Hara Deposition).

14.     Art Warmoth's December 5, 1994 Memorandum to CDPP Members. (Saybrook Documents; Bates S01992-95).

15.     Rudy Melone's Letter to Board of March 20, 1995 (**Ex. 109**, Schwartz Depo).

16.     Lawrence Ryan Letter of January 16, 1996 with Note from "Gerry" to "Rudy." (Saybrook Documents; Bates S01985.-87).

17.     CDPP Documents re January 24, 1996 Conference Call. (Saybrook Documents; Bates Nos. S01979-84).

18.     Rudy Melone's Letters to Robert Coutu of February 13, 1996 (**Ex. 95**, Schwartz   Depo.)

19.     Rudy Melone's Letters to David Ramsey of February 13, 1996 (**Ex. 96**, Schwartz Depo.)

20.     Thomas Greening's APA Accreditation Memorandum of March 24, 1997 Memorandum. (Saybrook Documents; Bates S00255-80). *

21.     Lawrence Ryan Letter to Board Dated February 28, 1997 (**Ex. 98**, Schwartz Deposition)

22.     Lawrence Ryan Letter to Board Dated May 8, 1997 (**Ex.101**, Schwartz Deposition)

23.     Letter from William Bruff (Saybrook) to the Board dated November 30, 2000 (Board's Response to Deposition Subpoena).

24.     Letter from the Board to Richard Francis Dated November 6, 2001 (**Ex.101**, Schwartz Deposition)

25.    <u>Saybrook's Principles of Ethical Business Conduct.</u> (**Ex. 35,** O'Hara Deposition).

26.    <u>ASPPB Handbook of Licensing and Certification Requirements.</u> (Ex 118, Bohart Depo). **

27.    <u>Saybrook's Letter re 18 States with APA or Residence Obstacles.</u> (Saybrook Documents; Bates Nos. S01926-28).

28.    <u>Saybrook – Psychology Licensing Information Bulletin</u> (Saybrook Web Site: <u>https://www.saybrook.edu/ downloads/ licensure/ overview.pdf</u>) ***

29.    Susan Cooney Federal Tax Returns (2002 to 2005). (Plaintiff's Disclosures - F.R.C.P Rule26(a)(1)); Plaintiff's Document Responses).

30.    Student Loan Documents – Sallie Mae). (Plaintiff's Disclosures - F.R.C.P Rule26(a)(1); Plaintiff's Document Response) and records requested through a trial subpoena.

31.    Student Loan Documents – Citibank. (Plaintiff's Document Responses) and records requested through a trial subpoena.

32.    <u>Letter of Kathy Sanders, M.D. Dated April 27, 2004</u> (Plaintiff's Document Responses).

33.    <u>Saybrook President's Report</u> (Saybrook Documents; Bates Nos. S00298-307).

34.    Plaintiff reserves the right to amend this list prior to trial, and to introduce additional exhibits for purposes of impeachment or rebuttal.

*    As this exhibit is contested, plaintiff reserves the right to call Saybrook faculty member, Thomas Greening, as a witness.

**    As this exhibit is contested, plaintiff reserves the right to call Saybrook faculty member, Arthur Bohart, as a witness.

***    As this exhibit is contested, we reserve the right to call Saybrook faculty member, Alan Vaughan, as a witness.

C.    Defendant's List of Contested Exhibits

1.    November 24, 2002 Cover Letter from S. Cooney to Roslin Moore; (Plaintiff's Documents, **Ex. 5** to Cooney Deposition)

2.    Charles McCabe's November 24, 1994 recommendation of S. Cooney (Plaintiff's Documents, Saybrook Documents Bates No. S01923)

3.    Robert McAnaw's November 15, 1994 recommendation of S. Cooney (Plaintiff's Documents, Saybrook Documents Bates No. S01924)

4.    March 5, 1999 Saybrook correspondence to S. Cooney (Defendant's Documents Bates No. S01786)

5.    March 26, 1998 Saybrook correspondence to S. Cooney (Defendant's Documents Bates No. S01787)

6.    October 1, 1997 Saybrook correspondence to S. Cooney (Defendant's Documents Bates No. S01789)

7.    March 14, 1997 Saybrook correspondence to S. Cooney (Defendant's Documents Bates No. S01790)

8     March 5, 1999 Saybrook correspondence to S. Cooney (Defendant's Documents Bates No. S01817)

9.    January 12, 2004 WASC correspondence to Susan Cooney 2 pages (Plaintiff Responses and Defendant's Documents Bates No. S00333-S00334)

10.   Study of the Effects of Pet therapy on elderly Patients Level of Depression by Susan Cooney, submitted as part of her Saybrook application (Defendant's Documents Bates No. S01911-S01922)

11.   Curriculum Vitae of Art Bohart (**Ex. 117** to Bohart Deposition)

12.   Curriculum Vitae of William K. Bruff (**Ex. 70** to Bruff Deposition)

13.   Curriculum Vitae of Alan G. Vaughan (**Ex. 83** to Vaughn Deposition)

14.   Curriculum Vitae of Eugene Taylor (**Ex. 87** to Taylor Deposition)

15.   Licensed Alumni by State, Massachusetts (Defendant's Documents Bates No. S00007-S00008)

16.  Business Record Certification dated March 1, 2006 from Partners HealthCare System (produced in response to KOR Subpoena to MGH)

17.  May 30, 2003 Correspondence from Partners HealthCare System, Inc. to S. Cooney terminating her from Massachusetts General Hospital (produced in response to KOR Subpoena to MGH)

18.  June 3, 1994 Application for Employment by Susan Cooney (produced in response to KOR Subpoena to MGH)

19.  December 1, 1999 Application for Employment by Susan Cooney (produced in response to KOR Subpoena to MGH)

20.  Report of Nancy Segreve, MA, CRC  (Docket No. 46, Exhibit A)

21.  Curriculum Vitae of Dr. Ruth Richards

22.  Curriculum Vitae of Dr. Maureen O'Hara (updated as of January 2007).

23.  Defendant reserves the right to amend this list prior to trial, and to introduce additional exhibits for purposes of impeachment or rebuttal.

## XII.  MOTIONS IN LIMINE.

### A.  Plaintiff's Motions.

Plaintiff does not intend to file motions in limine at this time, but reserves her right to file such motions prior to trial.

### B.  Defendant's Motions

1. Defendant's Motion in Limine To Exclude All Documents Relating to the Consortium of Diversified Psychology Programs and Any Alleged Participation by Rudy Melone and Gerry Bush as Such is Hearsay.

2. Defendant's Motion in Limine to Preclude the Plaintiff from Calling Arthur Bohart, Alan Vaughan and Thomas Greening as Witnesses and

Three Accompanying Proposed Exhibits as Their Expected Testimony is Irrelevant.

3. Defendant's Motion in Limine to Preclude Plaintiff from Offering Hearsay Statements of an Unknown Individual.

4. Defendant's Motion in Limine to Preclude Plaintiff from Offering into Evidence Any Sallie Mae, or Other Loan Documents.

5. Defendant's Motion in Limine To Preclude Plaintiff From Offering Into Evidence Any Documents or Testimony Regarding Saybrook's Policies, Procedures or Enrollment After Plaintiff's Graduation.

6. Defendant's Motion in Limine To Preclude The Plaintiff From Offering Into Evidence Any Alleged Problems Two Saybrook Alumni Faced in Obtaining Licensure as Psychologists.

7. Defendant's Motion in Limine to Preclude Plaintiff from Offering Proposed Exhibits into Evidence Which Contain Inadmissible Hearsay or are Irrelevant to the Claim.


SUSAN COONEY,

By Plaintiff's Counsel

/s/ Paul W. Morenberg /gg/*
_____
E. Steven Coren, BBO # 099740
Paul W. Morenberg, BBO # 631101
Kerstein, Coren, Lichtenstein & Finkel, LLP
60 Walnut Street
Wellesley, MA   02481
(781) 997-1600


SAYBROOK GRADUATE
SCHOOL AND RESEARCH CENTER,
By Defendant's Counsel:

/s/ *Grace V. Bacon Garcia*
_____
Michael F. Aylward, BBO # 024850
Thomas C. Federico, BBO #160830
Grace V. B. Garcia, BBO # 640970
Morrison Mahoney LLP
250 Summer Street
Boston, MA   02210
(617) 439-7500


Dated:          February 1, 2007


*Permission was granted by Paul W. Morenberg for Grace Garcia to electronically sign his name to this Memorandum.

28

## CERTIFICATE OF SERVICE

I certify that this document has been served upon all counsel of record in compliance with the F.R.C.P.

/s/ *Grace V. Bacon Garcia*

Grace V. Bacon Garcia

Date: February 1, 2007