**EXHIBIT 2**





**The Union Institute**

440 East McMillan Street
Cincinnati, Ohio 45206-1925
513/861-6400 ◆ 800/486-3116
TDD 800/486-9968 ◆ FAX 513/861-0779

Office of the Dean
The Graduate School

February 28, 1997

Robert G. Coutu, Ph.D. Chair
Board of Registration of Psychologists
L. Saltonstall Building
Government Center
100 Cambridge St, 15th Floor
Boston, MA 02202

Dear Dr. Coutu,

The purpose of this letter is to register an official expression of protest regarding the changes proposed to the educational qualifications required for eligibility for psychologist licensure in Massachusetts.

First, let me thank your office for forwarding to me the copy of the proposed changes. That copy was received on February 18, 1996. The copy which I received did not include any notice of the public hearing regarding the changes. On this date, I phoned the Board office and learned that the public hearing will be March 14, 1997. As the Dean of the Union Institute Graduate College of Professional Psychology, my office has corresponded with your office many times. In each instance The Union Institute has identified itself as an interested and impacted party, since The Union Institute has a number of current and potential students and graduates who are currently in the process of seeking or who will eventually seek psychologist licensure in Massachusetts. As an interested party, I sincerely wish that you would have informed me of the date of the hearing so that I could have made plans to attend the public hearing. Like many behaviors that the Massachusetts Board has demonstrated in the past, this public constituent once again feels excluded. In the future, I respectfully request that you inform me, as an interested and impacted party, of any public hearings regarding proposed changes to your laws/rules.

Secondly, please consider the following points in opposition to the proposed changes:

1. The Association of State and Provincial Psychology Boards (ASPPB) like The American Psychological Association (APA) is a private organization. A state government should not include in its laws/rule provision for exclusive affiliation with a private organization. In a free and democratic society there are many reasons why citizens might choose not

to have direct or indirect affiliation with a private organization. If a private organization is included or named in its laws/rules because of its representation of the standards of the profession, there should be provision for the demonstration of equivalence to those standards.

2. In addition, since ASPPB is essentially a professional guild, its primary mission is to look out for the interests of its members and constituents. ASPPB does not necessarily represent the full spectrum of consumer issues (especially those of equal opportunity, access, and restraint of trade) which are the responsibility of the Massachusetts Board of Psychology in its role as a public body supported by public monies. In fact, the interests of ASPPB as a professional guild are likely to be contrary to the issues of equal opportunity and access.

3. ASPPB is not an agency which has any official governmental recognition. ASPPB is not an accrediting body, nor is it recognized by the U. S. Department of Education. As a result, its ability to represent the standards of the profession are questionable.

4. In the past, the ASPPB designation list has been sharply criticized by a number of significant APA figures and by other eminent scholars in the field of psychology. Systematic studies of the ASPPB designation list have revealed that many of the programs which have ASPPB designation do not actually meet the criterion stated by ASPPB. The proposed rule/law revision will open the door for the professional licensure as psychologists in the Commonwealth of Massachusetts graduates of numerous programs who have not had appropriate training for the professional practice of psychology.

5. While the ASPPB designation list includes several hundred programs, it does not include numerous quality regionally accredited doctoral programs in The United States and Canada programs whose philosophy, mission and curriculum are specially designed to prepare psychologists for professional practice. The proposed revision will "carte blanche" exclude hundreds of graduates of those quality accredited doctoral programs. The basic impact of the rule/law revision will be exclusion and potential discrimination. State laws and rules should be revised to weed out such discriminatory or potentially discriminatory clauses.

6. The proposed rule revision does not provide any mechanism for licensure applicants from non-ASPPB designated programs to demonstrate equivalence to the ASPPB designation criteria. That exclusion increases the discriminatory nature of the proposed rule/law change. It provides the opportunity for discrimination which will impact hundreds of individuals (especially women, minorities, older individuals and

handicapped individuals), who have chosen to further their education and professional standing by completing quality regional accredited doctoral programs in programs which do not have ASPPB designation.

7. The proposed revision unfairly privileges graduates of foreign educational institutions, by granting them the opportunity to achieve acceptance for licensure eligibility, by providing a mechanism for demonstrating that they meet the standards of domestic recognized institutions. This is a significant breach of equal opportunity. If graduates of foreign institutions (which are not ASPPB designated) are afforded the opportunity to demonstrate equivalence to the ASPPB standards, it is only fair that graduates of non-ASPPB designated domestic institutions (U. S. and Canadian) should also be afforded the opportunity to demonstrate equivalence to the ASPPB standards.

8. If enacted, the revision will have serious and drastic consequences for hundreds of candidates who have matriculated in and invested their energy, time and funds in quality regionally accredited doctoral programs which are not ASPPB designated without providing them an opportunity to complete their doctoral programs and other experience requirements and to qualify for licensure in Massachusetts without being severely harmed by the proposed law/rule change. Most doctoral programs in professional psychology take approximately five post-baccalaureate years. Most professional psychology program graduates take an additional one to three years to acquire the required post doctoral experience before they apply for licensure. The proposed enactment of rule/law change for September 1, 2000, does not allow for enough time for currently matriculated students to complete their programs and to have an appropriate amount of time to acquire the post doctoral supervised experience. Again, the proposed rule/law change has very damaging impact on many current Massachusetts residents and potential Massachusetts residents.

9. The enactment of the proposed rule/law change will represent serious over-regulation and over-reaching of governmental function. In addition, the proposed change inter-links the bureaucracies of a private organization (ASPPB) with the business of government in Massachusetts.

10. Like the changes proposed in 1996, the current proposed change is contrary to the original intent of the Massachusetts law which was clearly written to provide alternative paths for completing the educational requirements for psychologist licensure. The proposed change restricts the path to professional licensure. The Commonwealth of Massachusetts has a long history of equitable government and affirmative concern for law, order, nondiscriminatory access and inclusion and for the voices and rights of citizens. The

proposed change is contrary to those tenets. The proposed change is representative of unnecessary additional governmental control, and unnecessary additional government restriction and interference with trades and professions.

Thank you for your consideration.

Sincerely,

Lawrence J. Ryan, Ph.D.
Licensed Psychologist
Dean

LJR/cam

cc: Massachusetts File
    William F. Weld, Governor
    L. Scott Harshbarger, Attorney General
    William Wood, Director
    Craig Chamberlain
    David Ramsey
    Atty. Joel Stein, General Counsel
    Rude Melone
    Robert Lee
    Marsha Hammond
    Clark Moustakas