# EXHIBIT 3

# EXHIBIT 3

**The Union Institute**

440 East McMillan Street
Cincinnati, Ohio 45206-1925
513/861-6400 ♦ 800/486-3116
TDD 800/486-9968 ♦ FAX 513/861-0779

Office of the Dean
The Graduate School

May 8, 1997

William G. Wood, Director
Commonwealth of Massachusetts
Division of Registration
Leverett Saltonstall Building, Government Center
100 Cambridge Street
Boston, MA  02202

Dear Mr. Wood,

Thank you for your letter dated May 1, 1997. It is good to know that someone from your agency received and read the letter which I sent pertaining to the proposed changes in the licensure laws/rules for psychologists in Massachusetts. While your response is greatly appreciated, your letter did not substantively engage most of the issues which I raised in my February 28, 1997 letter. I hope that you will read it again.

In addition, I sincerely implore you to intervene in the implementation of the proposed revisions to the laws/rules. Please consider the following three points:

1.  I am aware that at the only public hearing regarding this matter conducted on March 14, 1997, expressed opinion was unanimously against the proposed revisions to the psychology licensure laws. At that hearing absolutely noone spoke in favor of the revisions. In fact, a broad diversity of constituents, including the representatives from the Massachusetts Psychological Association and the Massachusetts School of Professional Psychology as well constituents from The Union Institute among others, presented logical and reasoned opposition to the proposed changes. I am also aware that at its subsequent meeting on April 11, 1997 the Board, nonetheless voted to adopt the proposed revisions. I am aware that the Board had not presented to the public any rationale for the adoption of the new rules. Does the above course of events make sense in a country and state/commonwealth which are supposed to be known for their democratic processes?

2.  The implication in your letter that the proposed changes constitute no essential change in the law is an oversimplification of the matter. When one examines the situation carefully, by adopting the proposed

rule/law changes The Commonwealth of Massachusetts is institutionalizing an affiliation with a private organization, ASPPB. While ASPPB purports to represent the interests of state licensure boards, it remains a private, exclusionary and guild type of organization. There are many reasons why an individual or an institution may choose not to seek affiliation with a private organization. Some of those reasons may be theoretical, organizational or even financial. Many academic institutions consider organizations such as ASPPB and others to constitute a threat to the concept of academic freedom which the institutions have a responsibility for upholding. To have such affiliation required and imposed by governmental rule for an individual to advance in his/her chosen profession should be unconstitutional. The proposed rule changes in Massachusetts impose such an affiliation and will ultimately serve to disadvantage and exclude a group of individuals who have chosen to complete doctoral level professional psychology training in quality regionally accredited programs which do not have an affiliation with ASPPB. Those individuals are primarily older individuals, women, minorities and disabled persons. Does it make sense for Massachusetts to exclude such individuals from advancing in their chosen profession?

3. In your letter you imply a dicotomotization between "Non-traditional programs" and traditional programs. In today's environment of rapidly changing educational technology and program innovation, especially at the doctoral level, such a dicotomization is meaningless. What are perceived as traditional doctoral programs frequently operate with models, methods and formulae which one might characterize as non-traditional. On the converse frequently what are perceived as non-traditional doctoral programs operate with very traditional methods. Exactly how do you define traditional? Furthermore, how do you assure that the definition is applied equally to each institution and program?. Is it just and in the service of the current and future citizens of Massachusetts to delegate the enforcement of that standard to ASPPB, a private organization which is not even recognized by the U. S. Department of Education as an accrediting agency? Is it not more equitable to delegate what constitutes a viable doctoral program to one of the six regional accrediting agencies which are recognized by the U. S. Department of Education?

I will look forward to your response to the above items.

Sincerely,

Lawrence J. Ryan, Ph.D.
Dean
Licensed Psychologist

LJR/cam

cc: Clark Moustakas, Ph.D.
    Rudy Melone, Ph.D.
    Marsha Hammond, Ph.D.
    Robert Lee, Ph.D.
    Arletta Ciofari
    Susan goeller
    Larry Shobert
    Miller Newton
    Dan Dill
    Robert DuWors
    Donna Janas
    Paul Youd
    Stan Edelson
    Robert Macy
    Kenneth Bennet
    Steven James
    Walter Dybik
    Jude Sokol
    Ronna Hoffman
    Linda Hartling
    Robert Coutu, Ph.D.
    Karen Schwartz, Ph.D.
    William F. Weld, Governor
    L. Scott Harshbarger, Attorney General
    Craig Chamberlain
    David Ramsey
    Atty. Joel Stein
    Representative Chip Clancy