**EXHIBIT 5**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO:  04 11572 JLT

| | |
|---|---|
| SUSAN COONEY,<br>　　　　　Plaintiff,<br><br>v.<br><br>HUMANISTIC PSYCHOLOGY<br>INSTITUTE, d/b/a SAYBROOK<br>INSTITUTE and MAUREEN O'HARA,<br>Individually,<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## THOMAS GREENING, PH.D.'s ANSWERS TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

Thomas Greening, Ph.D. ("Dr. Greening"), pursuant to Fed. R. Civ. P. 33, answers the Plaintiff's First Set of Interrogatories without waiving the following:

(i)     the right to object on any grounds to the use of any of the following answers in any other subsequent proceedings or at the trial of this or any other action;

(ii)    the right to object on any grounds to any demand for further answers to these Interrogatories or any other discovery procedure relating to the subject matter of these Interrogatories; and

(iii)   the right at any time to revise, correct, add to or clarify any of the following answers.

## GENERAL OBJECTIONS

1.      Dr. Greening objects to the Interrogatories to the extent they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure.

1001721v1

2.      Dr. Greening objects to the Interrogatories to the extent that they are overly broad, duplicative, vague and ambiguous, or unduly burdensome.

3.      Dr. Greening objects to the Interrogatories to the extent that they call for information protected from discovery because it is subject to the attorney-client privilege or constitutes materials prepared by or for Dr. Greening or his representatives in anticipation of litigation or for trial and/or which would disclose the mental impressions, conclusions, opinions or legal theories of counsel.

4.      Dr. Greening objects to the Interrogatories to the extent that they call for information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to discovery of admissible evidence.

5.      Dr. Greening objects to the Interrogatories to the extent that they seek information not within his possession, custody or control.

6.      Dr. Greening objects to the Interrogatories as inherently burdensome and oppressive to the extent that they seek information already in the possession of the plaintiff.

7.      Dr. Greening failure to object to the Interrogatories on a particular ground shall not be construed as a waiver of his right to object on that ground or any additional grounds at a later time.

8.      Dr. Greening incorporates by reference, as if set forth at length, the General Objections to the Interrogatories into each and every Answer below.

1001721v1

## INTERROGATORIES

### INTERROGATORY NO. 1

Describe the date and substance of any oral or written communications that you have had with any Saybrook faculty members, administrators, or employees, and identify all persons who participated in such oral or written communications, regarding any of the following subjects:

a)      Susan Cooney's efforts to become licensed as a Massachusetts psychologist;

b)      Susan Cooney's legal claims against Saybrook and Maureen O'Hara; and

c)      Your response to these interrogatories.

### ANSWER NO. 1

Dr. Greening objects to this Interrogatory to the extent it seeks communications with counsel, which are protected by the attorney-client privilege. Notwithstanding nor waiving that objection, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

a)      I have had no such discussions.

b)      I have had no such discussions, other than that referred to in Answer "c" below.

c)      During the week of April 24, 2006, I had communications with John Reho of Saybrook. The substance of those communications involved my asking why I was going to have to answer questions about Susan Cooney, an individual whom I have no knowledge of, and whether I would be compensated for my time. In response to my inquiry, I was told that Susan Cooney had brought a lawsuit against Saybrook due to her inability to obtain a license as a psychologist in Massachusetts. John Reho informed me that, as part of that lawsuit, the Court had

1001721v1

ordered that I respond to questions and that I would not be compensated for my time.

## INTERROGATORY NO. 2

Please describe all positions and offices that you have held at any time with Saybrook, including a detailed description of your duties and dates of service for each position or office.

## ANSWER NO. 2

From 1990 to the present, I have been an Executive Faculty member of Saybrook. I have not held any other positions or offices. As an Executive Faculty member, I teach courses in personality theory, ethics in psychotherapy, humanistic psychology and psychotherapy, group therapy, and citizen diplomacy. From approximately 1980-1990, I was employed by Saybrook as a part-time essay reader to read the essays submitted for the Thuss Award.

## INTERROGATORY NO. 3

Please describe your participation in any Saybrook committees from 1995 through the present, providing a detailed description of each committee, the goals and objectives of each committee, any leadership positions you occupied within the committee, and your dates of service for each committee; and identifying all persons who serve on each committee.

## ANSWER NO. 3

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I have been on the following committees since 1995:

1001721v1

4

(1) Curriculum Committee. I was the chair of this Committee from approximately 1995 through 1998. The Curriculum Committee's responsibility was to review the learning guides for all new courses and any guides that required revision. The members of the Committee changed from time to time and I do not have a memory of who was on the Committee. I believe the following individuals may have participated on the Committee at some time: Maureen O'Hara, Dennis Jaffe, Tony Stigliano, Ruth Richards, and Jeannette Diaz-Veizades.

(2) Rollo May Scholarship Committee- I have been the chair of this Committee since 2002. This Committee is an academic committee that awards the Rollo May Scholarship. The other members of this Committee are: Robert Abzug, Jeanne Achterberg, and Ed Mendleowitz.

(3) Committee on APA Accreditation – I was a member of this Committee in approximately 1996-1997. I believe this Committee was formed for only a short period of time to explore and weigh the pluses and minuses of whether seeking APA accreditation was appropriate for Saybrook. I am not sure who was part of the Committee other than myself. I believe Amedeo Giorgi may have had some participation. Additionally, based on my review of a document, which I have been informed was produced to plaintiff as Bate-Stamped document S00255-S00280, I believe that Rudy Melone and Ian Wickram participated on the Committee. It is possible, although I cannot recall with any accuracy, that Gerry Bush, Maureen O'Hara, and/or Bill Littleton may have had some participation on the Committee.

5



## INTERROGATORY NO. 4

For the years 1995 to the present, please describe your knowledge of the dates and substance of all meetings of Saybrook's Committee on APA Accreditation or any other committees or meetings in which APA accreditation was discussed.

## ANSWER NO. 4

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I cannot recall any meetings of Saybrook's Committee on APA Accreditation. Although I believe there could have been one meeting, I have no memory of it. Additionally, I have made a complete and diligent search of my records, and cannot find any documents that would assist me in answering this Interrogatory. There is one document that I drafted, which I have been informed has been produced to plaintiff as Bate-Stamped documents S00255-S00280, which contains some collections of opinions and comments on the subject.

In addition to the Committee on APA Accreditation, the question of whether Saybrook should seek APA accreditation has been mentioned from time to time, throughout my employment as an Executive Faculty Member. When the issue of APA accreditation has been mentioned, faculty has been divided on the subject. I do not have any recollection of any particular meeting in which APA accreditation was discussed except for one faculty meeting approximately one or two years ago. During this meeting, the faculty discussed the possibility of

6



creating a Psy.D. program, which Saybrook would then seek to have accredited by the APA. To my knowledge, this program was put on hold and was not done.

## INTERROGATORY NO. 5

Please describe the date, title and author of all draft and final reports and memoranda issued or received by Saybrook's Committee on APA accreditation, including but not limited to the memorandum, "Should Saybrook Seek APA Accreditation?" For any reports or memoranda that you identify, please identify all person(s) at Saybrook that received a copy of the document.

## ANSWER NO. 5

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I have no personal memory of any documents, including reports or memoranda, issued or received by Saybrook's Committee on APA accreditation. I drafted one document, however, which is dated March 24, 1997 and as its "Re" line states "Should Saybrook Seek APA Accreditation?" I have been informed that this document has been produced to plaintiff as Bate-Stamped document S00255-S00280. I have done a diligent and complete search of my records and cannot find any drafts, memorandum, or reports, other than that produced, relating to Saybrook's Committee on APA Accreditation or on the issue of APA accreditation.

## INTERROGATORY NO. 6

Please identify the date, title and author of all letters, memoranda, or other comments that you received from Rudy Melone, Gerry Bush, or Maureen O'Hara in response to your memoranda, "Should Saybrook Seek APA Accreditation" or in response to any similar reports.    For all

7

documents that you identify, please identify all person(s) at Saybrook that have copies of these documents.

## ANSWER NO. 6

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence.  Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I do not have a memory of receiving any letters, memoranda, or comments on the issue of this Interrogatory.  Additionally, I have done a diligent and complete search of my records and cannot find any such records.

## INTERROGATORY NO. 7

Please identify the author of the following: "Although advisors cannot be expected to know the requirements for licensing in all the states, it is important that they work closely with students to obtain and evaluate this information in relation to students' intentions regarding licensing." "Should Saybrook Seek APA Accreditation?," 3/24/1997, p. 5, Bates # S00264.

## ANSWER NO. 7

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence.  Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I believe I wrote that statement.

8



## INTERROGATORY NO. 8

For the years 1990 to the present, identify the name and address of every Saybrook student or graduate from Massachusetts for whom you served as a faculty advisor, dissertation chair, or dissertation committee member.

## ANSWER NO. 8

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I was the Dissertation Chair for John Burke and Dorothy Appleton-Carino and was on the Dissertation Committee for Richard Francis. I believe all three students had Massachusetts addresses, but I do not know the current addresses for any of these three individuals. To my knowledge, I have not served as a faculty advisor to any Saybrook student with a Massachusetts address.

## INTERROGATORY NO. 9

For each student identified in your answer to Interrogatory No. 8, describe the dates and substance of all oral or written communications that you made, heard, sent or received regarding Massachusetts standards for the licensure of psychologists or applications by Saybrook students or graduates to become licensed as Massachusetts psychologists. In answering this interrogatory, you are instructed to disclose any communications between you and the student or graduate, between you and another Saybrook employee, or between you and the Massachusetts Board of Registration of Psychologists ("the Board").

## ANSWER NO. 9

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably

9

1001721v1

calculated to lead to discovery of admissible evidence.  Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I recall that Richard Francis informed me that the Massachusetts Board of Registration of Psychologists ("Board") asked him for further information to evaluate his application for licensure.  In response, I did write a letter, which I sent to Richard Francis, not the Board.  I have been informed that plaintiff's counsel has a copy of this letter, which was dated November 16, 2000.  At some point in time, I believe that Mr. Francis informed me that he did in fact obtain his license in Massachusetts, but I do not recall when he informed me of such.  I have no recollection, and have no document of having any other communications with Mr. Francis regarding licensure.

Additionally, at some point in time, John Burke informed me he was in the process of applying for licensure in Massachusetts and was looking to obtain course learning guides.  As far as I am aware, Saybrook supplied those course learning guides to Mr. Burke.  I have no recollection, and have no document of having any other communications with Mr. Burke regarding licensure.  I believe, however, that Mr. Burke informed me that he did obtain his license to practice as a psychologist in Massachusetts, but I do not recall when he informed me of this information.

Additionally, to my knowledge, I have not had any communications with Dorothy Appleton-Carino regarding Massachusetts standards for licensure of psychologists or any

10



application for licensure. In fact, I have no knowledge that Dorothy Appleton-Carino has ever applied for licensure in any state.

In further answering, other than the one letter that I referenced above, which I gave to Mr. Francis, not the Board, I have had no communications with the Board.

## INTERROGATORY NO. 10

Please describe each and every occasion when you reviewed Massachusetts regulations for licensure of psychologists, describing the approximate date or year of your review and the name of the students(s) for whom you performed this review.

## ANSWER NO. 10

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I have never reviewed Massachusetts regulations for licensure of psychologists.

## INTERROGATORY NO. 11

Describe, in detail, your knowledge of all research, consulting, or other assistance that Saybrook conducted or provided to assist its faculty, staff, students or graduates in understanding regulations and standards for the licensure of psychologists in Massachusetts or other jurisdictions, including but not limited to any research, consulting, or assistance provided by any of the following:

a)    Thomas Greening;
b)    Rudy Melone;
c)    Gerry Bush;
d)    Maureen O'Hara;
e)    Marcia Hammond;
f)    Alan Vaughan;

g)    other faculty, staff, or administrators of Saybrook; and

h)    other individuals, consultants, committees, agencies, or schools, including but not limited to the Consortium for Diversified Psychology Programs and its members and the National Psychology Advisory Association and its members.

## ANSWER NO. 11

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence.  Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I am neither aware of any research Saybrook has conducted nor any consulting it has provided to assist its faculty, students, staff or graduates in understanding various state licensure regulations.  I am aware that Saybrook routinely informs all of its students that it is the students' responsibility to check on the state licensure laws in the state or states the student has an interest in obtaining licensure, as well as that it is the students' responsibility to monitor those laws.  I have emphasized this by telling my students to read carefully the section on licensing contained in Saybrook's Catalogues.  Such Catalogues have always communicated to the students that it was their responsibility to contact their local licensing boards in the state in which they planned to practice in order to obtain detailed licensure requirements.  It further informs students that because the legal regulations change constantly, they should monitor the regulations.

I am not aware of anyone on behalf of Saybrook who has conducted research on the area of regulations and standards for licensure.  In the event that is a question regarding licensure, I believe that Alan Vaughan is the current person who faculty and students will refer such

12

questions to. Prior to Alan Vaughan, I am not aware that there was a person at Saybrook that such questions were referred to.

## INTERROGATORY NO. 12

Please describe the source(s) for the following statements of Thomas Greening, which appear on page 10 of "Should Saybrook Seek APA Accreditation?" (Bates # S00269):

      a)      "Rudy Melone keeps up to date on the ever-changing licensing scene..."

      b)      "Over 60% of Saybrook graduates take the psychology licensing exams in their states."

## ANSWER NO. 12

      Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

      (a) and (b): Although I do not have an independent memory of these statements, due to the location in the document, Bate Stamped S00269, I would believe I was the author of the statements. I do not recall the source I used for these statements. Furthermore, I have made a diligent and complete search of my records and cannot find anything that would assist me in determining the source of these statements.

## INTERROGATORY NO. 13

Please state the name and address of the student who wrote the letter to Amedeo Giogi, Acting Dean, which appears on pages 11 through 13 of "Should Saybrook Seek APA Accreditation?" (Bates # S00270 – 272).

13



**ANSWER E NO. 13**

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I do not recall the name of the student who appears to have written a letter to Amedeo Giorgi. I have made a diligent and complete search of my records and cannot find anything that would assist me in determining the identity of this student.

**INTERROGATORY NO. 14**

Please describe the date and substance of all discussions that you had with Richard Francis about his desire to "tailor his program so that he could be licensed in Massachusetts" and building a strong clinical orientation "with a close eye on Massachusetts regulations." See Letter of Thomas Greening to the Board, 11/16/2000, as furnished by Daniel Finn and the Board.

**ANSWER NO. 14**

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I have no independent memory of having any such communications with Richard Francis regarding licensure, other than a request from him for a letter to the Board, which I referred to in Answer No. 9. I therefore have no memory of having any communications with Mr. Francis

14

1001721v1

regarding him wanting to "tailor his program so that he could be licensed in Massachusetts" and him keeping "a close eye on Massachusetts regulations." I have made a diligent and complete search of my records and cannot find anything that would assist me in determining whether I had any such communications.

## INTERROGATORY NO. 15

Please describe the date and substance of all oral or written communications that you had with Saybrook students or graduates, other than Richard Francis, about tailoring the student's program so that the student could be licensed as a Massachusetts psychologist or about building a strong clinical orientation with a close eye on Massachusetts regulations. For each communication that is described in your answer to this interrogatory, you are instructed to state the name and address of the Saybrook student or graduate.

## ANSWER NO. 15

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I have no memory of having any such communications with any student. Furthermore, I have made a diligent and complete search of my records and cannot find any records that would indicate I ever had such communications.

## INTERROGATORY NO. 16

Please describe the date and substance of all oral or written communications you had with Richard Francis, or on behalf of Dr. Francis, regarding obstacles that Dr. Francis encountered in applying and/or qualifying for licensure as a psychologist in Massachusetts.

15

1001721v1



## ANSWER NO. 16

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I recall that Richard Francis informed me that the Massachusetts Board of Registration of Psychologists ("Board") asked him for further information to evaluate his application for licensure. In response, I did write a letter, which I sent to Richard Francis, not the Board. I have been informed that plaintiff's counsel has a copy of this letter, which was dated November 16, 2000. At some point in time, I believe that Mr. Francis informed me that did in fact obtain his license in Massachusetts, but I do not recall when he informed me of such. I have no recollection, and have no document of having any other communications with Mr. Francis regarding licensure.

## INTERROGATORY NO. 17

Please describe the date and substance of all oral or written communications you had with John Burke, or on behalf of Dr. Burke, regarding obstacles that Dr. Burke encountered in applying and/or qualifying for licensure as a psychologist in Massachusetts.

## ANSWER NO. 17

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these

16

objections, and subject to the General Objections specifically incorporated herein, Dr. Greening

answers as follows:

At some point in time, John Burke informed me he was in the process of applying for

licensure in Massachusetts and was looking to obtain course learning guides. As far as I am

aware, Saybrook supplied those course learning guides to Mr. Burke. I have no recollection, and

have no document of having any other communications with Mr. Burke regarding licensure. I

believe, however, that Mr. Burke informed me that he did obtain his license to practice as a

psychologist in Massachusetts, but I do not recall when he informed me of this information.

**INTERROGATORY NO. 18**

Please describe the date and substance of all communications you had with any Saybrook student
or graduate, or about any Saybrook student or graduate, other than Richard Francis or John
Burke, regarding obstacles that the student or graduate encountered in applying and/or qualifying
for licensure as a psychologist in Massachusetts. For each communication that is described, you
are instructed to state the name and address of the Saybrook student or graduate.

**ANSWER NO. 18**

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and

request information that is not relevant to the subject matter of this litigation and not reasonably

calculated to lead to discovery of admissible evidence. Notwithstanding nor waiving these

objections, and subject to the General Objections specifically incorporated herein, Dr. Greening

answers as follows:

I have no memory of having any communications with students other than those

communications referenced in my Answers to Interrogatory Nos. 9, 16 and 17, regarding

obstacles that a student or graduate encountered in applying for or qualifying for licensure in

17

Massachusetts.  I have made a diligent and complete search of my records and cannot find anything that indicates I have ever had such communications.

## INTERROGATORY NO. 19

Please describe any and all steps that Saybrook or you have taken, at any time between 1990 and the present, to have Saybrook designated as a doctoral program in psychology by the Association of State & Provincial Psychology Boards.

## ANSWER NO. 19

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence.  Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

I have not taken any steps to have Saybrook designated as a doctoral program in psychology by the Association of State & Provincial Psychology Boards, and to my understanding, Saybrook has not taken any such steps.

## INTERROGATORY NO. 20

Describe the dates, subjects, and outcomes of any meetings of Saybrook's Board of Trustees, or any Trustee committees, in which you participated and during which there was an agenda item, discussion, presentation, vote, order, or recommendation related to any of the following subjects:

    (a)    Statutory, regulatory, or other restrictions that limit the ability of Saybrook graduates  to qualify for licensure as a psychologist in Massachusetts or any other jurisdiction;

    (b)    accreditation of Saybrook by the American Psychological Association;

    (c)    designation of Saybrook as a doctoral program in psychology by the Association of State & Provincial Psychology Boards; and

18

1001721v1



(d)    legal claims initiated by or against Saybrook or by or against Saybrook students related, in any way, to obstacles facing Saybrook graduates in qualifying for licensure as a psychologist.

## ANSWER NO. 20

Dr. Greening objects to this Interrogatory as it is over broad, unduly burdensome and request information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence.   Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Dr. Greening answers as follows:

To my knowledge, I have never participated in any meetings of Saybrook's Board of Trustees.

1001721v1

SIGNED UNDER THE PENALTIES OF PERJURY THIS ___17___ DAY OF MAY 2006.

Dr. Thomas Greening

THOMAS GREENING, Ph.D.
Suite 205
1314 Westwood Boulevard
Los Angeles, CA 90024

As to Objections:

Michael F. Aylward, BBO #024850
Grace V. Bacon Garcia, BBO# 640970
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210-1181
617-439-7500

I hereby certify that a true copy of the
above document was served upon (each
party appearing pro se and) the attorney
of record for each (other) party by mail~facsimile
(by hand) on 5/22/06

1001721v1