# Commonwealth of Massachusetts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN COONEY,<br>Plaintiff<br><br>VS<br><br>SAYBROOK GRADUATE SCHOOL<br>AND RESEARCH CENTER, and<br>MAUREEN O'HARA, Individually,<br>Defendants | Exhibits: 88-112<br><br><br>DOCKET NO.<br>04 11572 JLT |

DEPOSITION of **DR. KAREN SCHWARTZ**, a Witness called by Counsel on behalf of the **Plaintiff**, taken pursuant to the applicable provisions of the Massachusetts Rules of Civil Procedure, before Anne Boyer, a Certified Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Division of Professional Licensure, 239 Causeway Street, Boston, Massachusetts, on Friday, April 28, 2006, commencing at 10:30 a.m.



*Accurate Reporting Services*
*36 West Street*
*Whitman, MA 02382*
*(781) 447-9520*

Page 54

1   comment from the Consortium for Diversified
2   Psychology Programs?
3  A  Yes.
4  Q  Do you know if you ever reviewed that prior to
5     responding to the deposition subpoena?
6  A  I would have had it perhaps pass through my hands
7     in 1995, but I don't remember specifically reading
8     it. What I do remember is that we got a series of
9     letters that all said the same thing from all
10    different people. They were the same letter, so
11    they didn't require reading.
12 Q  Do you know who Rudy Melone is?
13 A  No.
14 Q  Did you ever come to learn that he was a former
15    president of Saybrook Institute?
16          MS. GARCIA: Objection.
17 A  No.
18          MR. MORENBERG: I'm going to mark the
19    next two exhibits together.
20              (Exhibit Number 95, Letter from
21              Rudy Melone to Robert Coutu dated
22              February 13, 1996, was Marked for
23              Identification.)
24              (Exhibit Number 96, Letter from

Page 55

1  Rudy Melone to David Ramsey dated
2  February 13, 1996, was Marked for
3  Identification.)
4  Q   I'm putting before you Exhibits 95 and 96.  Dr.
5      Schwartz, if you could tell me if Exhibits 95 and
6      96 are public comments regarding the completed in
7      residency regulation that you or the board
8      received in 1996?
9  A   They are.
10 Q   Are these among the letters that you produced in
11     response to our deposition subpoena?
12 A   Yes.
13 Q   Do you know if you ever had occasion to review
14     these letters prior to responding to the
15     deposition subpoena?
16 A   I just produced them.  I didn't read them.
17 Q   Earlier, you indicated that the letter from the
18     Consortium for Diversified Psychology Programs may
19     have passed through your hands in 1995.  Do you
20     know if these letters from Saybrook may have
21     passed through your hands?
22              **MS. GARCIA:**  Objection.
23 A   They may have.
24 Q   Were you aware that Saybrook's interim president,

1     Rudy Melone, was expressing opposition to the
2     proposed regulation in or about February 13, 1996?
3 A I don't remember what I was aware of in 1996.
4 Q Based on the notation on Exhibits 95 and 96, does
5     this stamp indicate that the Board of Registration
6     of Psychologists received these letters from Rudy
7     Melone, Interim President of Saybrook, on or about
8     February 16, 1996?
9 A Yes.
10 Q Was it the usual practice of the board to stamp
11     letters that constituted public comments regarding
12     regulations on the date they were received?
13 A Not necessarily.  It was the date the envelope was
14     opened.
15 Q Was it the usual practice of the board to date-
16     stamp public comments regarding proposed
17     regulatory changes on or about the date that the
18     document was opened?
19 A It wasn't specific to public comment.  Basically,
20     the person who opened the mail date-stamped
21     everything she opened.
22 Q Do you know who that person would have been in
23     1996?
24 A I think it would have been Susan Carson.

```
 1   Q   Was she the administrative assistant?
 2   A   Yes.
 3   Q   Did the board itself receive a copy of all these
 4       public comments?
 5   A   Yes.  May I amend that?
 6   Q   Sure.
 7   A   I do not remember if copies were made of these.
 8       The board would have seen the folder.
 9   Q   Is it fair to say that what you've produced in
10       response to the deposition subpoena, which
11       includes Exhibits 95 and 96, were part of the
12       public comments folder that was available to the
13       board?
14   A   Yes.
15   Q   Would it appear from the nature of this document
16       and the fact that it was in the public comments
17       folder that the board itself received notice that
18       Saybrook, through its interim president, was
19       objecting to the proposed regulation on completed
20       in residence?
21   A   Yes.
22   Q   These letters, Exhibits 95 and 96, are addressed
23       to David Ramsey and Robert Coutu.  Was Mr. Coutu
24       the chair of the Board of Registration of
```

Page 63

1  MR. BORRE: As we go along. I just
2  don't want to have her say that she can produce
3  these minutes, and then at the end of it, it turns
4  out that they're not there. So that's why I'd
5  rather just have the request just come to me, and
6  I will take care of it.
7  MR. MORENBERG: That's acceptable.
8  MR. BORRE: Thanks.
9  MS. GARCIA: May I ask to be copied on
10 the request to Attorney Borre?
11 MR. MORENBERG: Sure, that's fine.
12 (Exhibit Number 98, Letter from
13 Union Institute to Robert Coutu
14 Regarding Second Regulatory Change
15 Proposed by the Board dated
16 February 28, 1997, was Marked for
17 Identification.)
18 Q I've put before you what I've marked as Exhibit 98
19   for identification, and I'm going to try to avoid
20   the word recognize. If you could take a look at
21   this document and tell me if this is among the
22   documents that were produced in response to my
23   deposition subpoena?
24 A Yes.

Page 64

| | | |
|---|---|---|
| 1 | Q | Could you take a moment and review this document |
| 2 | | for purposes of telling me if you're familiar with |
| 3 | | it? |
| 4 | A | Well, familiar is a strong word. This is a letter |
| 5 | | from the Union Institute regarding the second |
| 6 | | regulatory change that was proposed by the board. |
| 7 | Q | Do you know if you saw this letter in or about |
| 8 | | March of 1997? |
| 9 | A | It would have passed through my hands. |
| 10 | Q | Would this have been added to the public comment |
| 11 | | folder that you referenced earlier? |
| 12 | A | So now we're in a different public comment folder, |
| 13 | | and I personally didn't have the '97 folder. I |
| 14 | | found the '96 folder among my things. I did not |
| 15 | | find the '97 folder among my things. That was |
| 16 | | found in the legal office, in Alex's office. So I |
| 17 | | would imagine board counsel must have kept the |
| 18 | | public comments for the '97 thing, and it was |
| 19 | | probably an error that I had the '96 ones. I |
| 20 | | didn't even know I had them. |
| 21 | Q | Do you have any recollection of receiving this |
| 22 | | letter in or about March 1997? |
| 23 | A | Larry Ryan who was the licensed whatever he was, |
| 24 | | the dean of Union Institute, was sending us stuff |

1    in the mail constantly, and so -- not just about
2    proposed regulatory hearings, about all the
3    applicants that were being denied licensure in
4    Massachusetts, and so this was one among many,
5    many letters that he sent.
6  Q  Were you aware that Dr. Ryan was copying this
7    correspondence to representatives from other
8    schools?
9        **MS. GARCIA:** Objection.
10 A  No, I was not. And according to the cc list --
11   actually, I wouldn't have known who some of these
12   people were.
13 Q  Are you now aware that the cc that's fourth from
14   the bottom is a representative of Saybrook?
15       **MS. GARCIA:** Objection.
16 A  Rude Melone is on the cc list, but I don't know
17   who that is, and I've seen it now on the document
18   you produced for me today, but I certainly
19   couldn't have told you that in 1997.
20 Q  Do you know who Marsha Hammond is?
21 A  No.
22 Q  Did you ever come to learn that she was a Saybrook
23   faculty member?
24       **MS. GARCIA:** Objection.

Page 76

1  Q   Was one of the pathways an individual could take
2      receiving notice from the graduate school they
3      attended of the regulatory change?
4          **MS. GARCIA:**  Objection.
5  A   It's my opinion that -- and this is just based on
6      my experience in the 11 years here -- that
7      graduate programs tend to track regulations for
8      the state in which they're located.  And given
9      that there are 50 states plus the territories and
10     the Canadian jurisdictions, that graduate
11     programs, in my experience, don't track individual
12     state regulations.  It's my experience that they
13     tell their students to make inquiries about any
14     state in which they're seeking licensure.
15 Q   Where a graduate program in psychology has
16     specific information about a regulatory change in
17     another jurisdiction, is it the board's
18     expectation that they'll inform students from that
19     jurisdiction?
20         **MS. GARCIA:**  Objection.
21 A   I don't have an answer to that.
22         **MR. MORENBERG:**  Could you mark this as
23     101.
24         (Exhibit Number 101, Letter from

Page 77

1        Union Institute to William Wood
2        dated May 8, 1997, was Marked for
3        Identification.)
4    Q   Can you take a look at the document I've put
5        before you that's been marked as Exhibit 101 for
6        identification?
7        (Witness complies.)
8    A   Okay.
9    Q   Is this among the documents that you produced in
10       response to our deposition subpoena?
11   A   Yes.
12   Q   Is this a document that was maintained in the
13       ordinary course of the business of the board?
14   A   Yes.
15   Q   Is this a public record maintained by the board?
16   A   Yes.
17   Q   Do you know if you reviewed this document prior to
18       responding to the subpoena?
19       **THE WITNESS:** Just I can't even say if I
20       produced it or you produced it.
21   A   Probably I produced it, and I did not read it.
22   Q   If you could read Paragraph 1 on the first page of
23       this document.
24   A   "I am aware that at the only" --

Page 78

1  Q   Just read it to yourself, please, and tell me when
2      you're done.
3      (Witness complies.)
4  A   Okay.
5  Q   Does Paragraph 1 of this document seem to indicate
6      that Union Institute believes the board approved a
7      regulatory change on or about April 11, 1997?
8  A   Yes.
9  Q   And where a school advises the board that it knows
10     of a regulatory change affecting Massachusetts,
11     did the board have any expectation that the school
12     would advise students from Massachusetts?
13         **MS. GARCIA:**  Objection.
14 A   The board doesn't think about those things.
15 Q   If you could turn to the last page of this
16     document, were you aware that this letter was
17     copied to Saybrook representatives?
18         **MS. GARCIA:**  Objection.
19 A   No.  The majority of the people on this cc list
20     are Union Institute students who were turned down
21     for licensure.
22 Q   Was Rudy Melone a Union Institute student?
23         **MS. GARCIA:**  Objection.
24 A   I don't know who Rudy -- at the time I got this, I