UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04
11572 JLT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
SUSAN COONEY,                              )
    Plaintiff                               )
v.                                         )
                                           )
SAYBROOK GRADUATE SCHOOL AND               )
RESEARCH CENTER                            )
    Defendant                               )
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF SUSAN COONEY'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM CALLING DRS. BOHART, VAUGHAN, AND GREENING, FROM INTRODUCING PROPOSED EXHIBITS, AND TO PRECLUDE ADVERSE INFERENCE ARGUMENT OR INSTRUCTION**

Plaintiff Susan Cooney ("Cooney"), by her counsel, respectfully opposes Saybrook's motion in limine to exclude the testimony of three Saybrook employees, Drs. Bohart, Vaughan, and Greening, to bar three proposed exhibits, and to preclude an adverse inference argument or instruction. Plaintiff asserts that the testimony of Drs. Bohart, Vaughan, and Greening is relevant to plaintiff's claims, and the proposed exhibits are relevant and highly probative of plaintiff's claims. In the event that Saybrook fails to produce witnesses under its exclusive control, plaintiff is entitled to argue that an adverse inference should be drawn from the absence of these witnesses.

**I.     ARGUMENT**

A.     **The Proposed Witnesses and Documents are Relevant to Plaintiff's Claims**

    1.     **Dr. Arthur Bohart**

Dr. Bohart has knowledge of Saybrook's internal discussions of licensure obstacles in or about 2000, and its belated efforts to inform students in or about 2003.

Dr. Bohart testified that Dr. Maureen O'Hara informed him in 2000 or 2001 that changing licensure standards that would impact Saybrook graduates:

> Q: Can you give any approximate time frame for when you first talked to Dr. O'Hara about this concern regarding the ASPPB list of designated psychology programs?
>
> Attorney Vartain:   Objection.
>
> A: 2000, 2001, somewhere around there.

Bohart Deposition, pp. 24-25. **Exhibit 1** to Opposition.

> Q. Dr. you recall anything else she [Dr. O'Hara] said to you about these licensure restrictions in or about 2000 or 2001?
>
> Attorney Garcia:    Objection.
> Attorney Vartain:   That's about the fourth time you've asked the question.
>
> Q: Dr. Bohart, you may answer.
>
> A: All I recall is a general discussion about the fact that there were some states that had requirements that made it difficult for Saybrook students to get licensed.

Bohart Deposition, pp. 27-28. **Id.**

Dr. Bohart also has critical knowledge that Saybrook obtained a report from the ASPPB about licensure standards in all fifty states in or about 2001 or 2003. While Dr. Bohart claims the report was downloaded in 2003, Dr. Bohart testified that the document was published in 2001. An excerpt from the document is attached as Exhibit 1 to Defendant's motion. Dr. Bohart added a handwritten notation, "2001 I think." See **Exhibit 1** and **Exhibit 4** to Plaintiff's Motion. Dr. Bohart also testified that a cover page, which was not produced, also reveals a publication date of 2001. Dr. Bohart could not explain how Saybrook obtained a 2001 publication in 2003. Dr. Bohart's testimony and the exhibit itself would allow the jury to conclude that Saybrook obtained the ASSPB

report (and its information about Massachusetts licensure restrictions) in 2001, <u>before</u> Cooney graduated in 2002.

2.  **Dr. Greening**

Dr. Greening possesses critical information about Saybrook's internal discussions and communications regarding licensure generally and specific licensure obstacles in Massachusetts. On or about March 24, 1997, Dr. Greening published a memorandum entitled "Should Saybrook Seek APA Accreditation." **Exhibit 2** to <u>Defendant's Motion</u>. Saybrook argues that Dr. Greening's testimony is irrelevant because Cooney was not counting on Saybrook to obtain APA accreditation. However, Saybrook's argument ignores the fact that Dr. Greening's memorandum describes a senior faculty member's understanding of Saybrook policies on licensure as of 1997:

> Although advisors cannot be expected to know the requirements for licensing in all states, it is important that they work closely with students to obtain and evaluate this information in relation to students' intentions regarding licensing.
>
> <u>Greening Memorandum</u>, p. 5 (Bates # S00264).

Dr. Greening's memorandum is also probative that Saybrook knew that its recent graduate, John Burke, required legal assistance to fight for licensure in Massachusetts. Saybrook never informed Cooney of Dr. Burke's legal battle to become licensed in Massachusetts in or about 1997. Dr. Greening's memorandum quoted from an e-mail of Saybrook professor, Eugene Taylor, who reported as follows:

> "Fourth, Saybrook students have on occasion hired themselves a lawyer, presented their individual state licensing boards with full transcripts and course guides and indicated that a suit would be pending if they were not given a fair hearing or permitted to sit for the licensure exam. John Burke was successful in so challenging the Massachusetts board and he won the right to sit for the exam, which he passed."

<u>Greening Memorandum</u>, p. 13 (Ex. 2 to Saybrook's Motion).

While the above statement contains hearsay, Professor Taylor is expected to testify that he wrote this statement. Moreover, the above statement constitutes the admission of a party opponent. Fed. R. Evid. P. Rule 801(d)(2). Greening's memorandum was distributed to Dr. O'Hara and to the entire Saybrook faculty.

Greening's memorandum also contains evidence that Saybrook knew of Cooney's clinical career goal. Greening notes that Susan Cooney had completed a clinical internship at Massachusetts General Hospital by January, 1997. **Ex. 2** to <u>Saybrook's Motion</u> (Doc. 69), Bates No. S00257.

Finally, Dr. Greening's document contains evidence that Saybrook understood that about 60% of its psychology graduates intend to apply for licensure. In his interrogatory answers, Dr. Greening acknowledges he is the author of this estimate, though he cannot recall its source. **Exhibit 5** to <u>Defendant's Motion in Limine</u> (Interrogatory Answer No. 12). As Saybrook has repeatedly claimed that its mission is research rather that clinical training, Dr. Greening's statement constitutes the admission of a party opponent that Saybrook knew that most of its psychology graduates intended to sit for licensure. Fed. R. Evid. P. Rule 801(d)(2).

3.   **Alan Vaughan**

Dr. Vaughan possesses critical information about Saybrook's efforts, in or about 2003, to inform the Saybrook community of all known licensure obstacles. Dr. Vaughan authored a report entitled "Psychology Licensing Information Bulletin," which discloses Saybrook's awareness of licensure obstacles in various states, including Massachusetts. The document also requires students to attest to their individual

responsibility to evaluate licensure standards and to obtain yearly updates. That Saybrook undertook the above efforts in or about July 2003 does not diminish its relevance for two reasons. First, Dr. Vaughan's efforts demonstrate that Saybrook was capable of researching and reporting on licensure obstacles. Second, Dr. Vaughan's document shows that Saybrook felt that its recent attempts to hold students responsible to monitor licensure requirements were either ambiguous or legally insufficient to protect Saybrook from liability. Saybrook's remedial efforts constitute evidence that Saybrook could have informed Cooney of licensure obstacles, and that Saybrook knew that many of its students had looked to Saybrook for such information.

Finally, plaintiff intends to introduce evidence from Dr. Vaughan that Saybrook discarded documents from the Consortium of Diversified Psychology Programs (CDPP), which Dr. Vaughan consulted to prepare his licensure bulletin. <u>Deposition of Vaughan</u>, pp. 25-29. Though Dr. Vaughan does not recall the contents of these documents, other CDPP documents contain information about licensure obstacles in Massachusetts between 1994 and 1996. Dr. Vaughan's testimony establishes that Saybrook has destroyed documents, in or about 2006 and well after the filing of plaintiff's suit, that could be relevant to timing of Saybrook's discovery of new Massachusetts regulations. <u>Id</u>.

B.     **<u>Plaintiff Is Entitled to Request an Adverse Inference Instruction If Defendant Fails to Call a Witness Whose Testimony May be Favorable</u>**

When a party fails to call a witness whose testimony would be of distinct importance in the case and whose testimony would be expected to be favorable or at least not hostile, the failure to call the witness should allow the jury to infer that the witness'

testimony would have been unfavorable. *See e.g.* Graves v. R.M. Packer, Inc., 45 Mass.App. 760, 770 (1998). Should plaintiff fail to call Dr. Greening, plaintiff should be entitled to an adverse inference instruction to the jury. In the event that Drs. Bohart or Vaughan are unavailable, plaintiff should be entitled to introduce sections of their transcript.

## II.     CONCLUSION

For all of the foregoing reasons, plaintiff requests that the Court deny Saybrook's motion in limine.

Respectfully submitted,

SUSAN COONEY,
By her counsel,

_____

E. Steven Coren, BBO #
Paul W. Morenberg, BBO # 631101
Kerstein, Coren, Lichtenstein & Finkel, LLP
233 Needham Street
Newton, Massachusetts   02464
(781) 997-1600

Dated:        February 5, 2007