1

 **COPY**

VOLUME: II
PAGES: 1 - 325
EXHIBITS: 17 - 28

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

---

SUSAN COONEY,                            )
    Plaintiff,                       )
vs.                                      )
                                         )
HUMANISTIC PSYCHOLOGY INSTITUTE,         )
d/b/a SAYBROOK INSTITUTE and             )
MAUREEN O'HARA, Individually,            )
    Defendants.                      )

---

**AUDIOVISUAL DEPOSITION OF SUSAN COONEY**, taken

on behalf of the Saybrook Institute, pursuant to the

Federal Rules of Civil Procedure, before Kristin L.

Tucker, Notary Public and Certified Shorthand Reporter

within and for the Commonwealth of Massachusetts, at the

Law Offices of Morrison Mahoney LLP, 250 Summer Street,

Boston, Massachusetts, on January 27, 2006, at 9:10

a.m., as follows:

**DANILECKI REPORTING**
234 Governors Road
Quincy, Massachusetts 02169
(617) 745-9786

59

1       Q.    Setting aside the Saybrook '94/'95 Interim

2  Catalog --

3       A.    Yes.

4       Q.    -- did Saybrook ever promise you that it

5  would keep you informed of changes in licensing laws

6  specifically?

7       A.    When I went out to the orientation and I was

8  supposed to bring my regulations, we met with that

9  person who went over each person's regulations and she

10 said that Massachusetts met the criteria and -- and she

11 said, You're good to go.

12      Q.    Is that all she said?

13      A.    To the best of my recollection.

14      Q.    What else, if anything, did that person say

15 about future changes, if any, that might happen in

16 Massachusetts?

17      A.    Nothing that I can recall.

18      Q.    Didn't she promise you that -- Didn't she say

19 to you, We are going to track Massachusetts laws and

20 keep you informed?

21      A.    Did I say that?

22            MR. MORENBERG:  Answer the question.

23      A.    No.

24      Q.    She never said that?

60

1    A.    No.

2    Q.    She never said anything to that effect; is

3 that correct?

4    A.    It was 11 years ago.  I would say she

5 basically said, You meet the criteria.  We'd love to

6 have you come here, and, you know, we understand you

7 want to be a psychologist in Massachusetts and you'll be

8 able to be.

9    Q.    That's what she said?

10    A.    Yes.

11    Q.    Did she say to you that she would, or

12 Saybrook would, monitor the regulations over the years

13 that you would be at Saybrook and keep you informed?

14    A.    It was an understanding.

15    Q.    I didn't -- I know you -- Did she say that?

16    A.    Did she specifically?  I don't recall.

17    Q.    She never said that as best you can recall,

18 correct?

19    A.    I can't recall.  It was a long time ago.  I

20 can't recall specific conversation.  The tone was

21 that --

22    Q.    I'm not interested --

23    A.    -- they would be on top of it.

24    Q.    I'm not interested in the tone.  I'm

61

1  interested in, is it your sworn testimony that the

2  person you met with in the fall of 1995 to go over

3  these -- the Massachusetts regulations never promised

4  you that Saybrook would stay up on changes, future

5  changes in Massachusetts regulations and inform you of

6  any?  Do you want the question --

7       A.    I just -- I can't recall specifically.  I

8  can't say yes to that, and I can't say no to that.

9       Q.    So you have no --

10      A.    The way you've placed the question, I can't.

11      Q.    You have no clear recollection that that

12  person told you that Saybrook would stay on top of

13  future changes in Mass. law and keep you informed,

14  correct?

15      A.    My understanding -- And I'm supposed to say

16  yes or no?  I can't say them to that.

17                  MR. VARTAIN:  I'm gonna have the

18  question read back, because I want no complications

19  here.  Would you like that?

20                  THE WITNESS:  Fine.

21                  (Question read.)

22      A.    Not correct.

23      Q.    So you do have a clear recollection?

24      A.    Not a clear recollection, but I have a -- I

62

1  cannot give you her exact words, but I can tell you that

2  the conversation went as such, that she was saying that

3  I was -- met the criteria, that Massachusetts met the

4  criteria, and that they work hand-in-hand with you and

5  that we were a team, was the word she used, and that

6  they would -- that I was going to pay them money and

7  that I was going to be able to get my license in

8  Massachusetts.

9          And, therefore, with the things that I saw in

10 the catalog saying that they were committed to assisting

11 students and that they were part of the CDPP and would

12 be monitoring things, that I was quite safe to proceed

13 and that they would alert me if there were any changes.

14    Q.    Where did it say in the catalog that they

15 would alert you to any changes?  It never specifically

16 said that.

17    A.    Well, they're specifically saying we're

18 committed to assisting students and we monitor what's

19 going on.  I would think that -- I would have thought

20 that if they knew of a change, that they would have

21 passed it on as opposed to not passing it on.

22    Q.    Does it say specifically anywhere in the

23 catalog that Saybrook would give you information about

24 changes in Mass. law?

63

1    A.    I believe it says something in the bulletin

2  about they would let you know about changes.

3    Q.    We've already talked about that you don't

4  have a specific recollection of the bulletin; is that

5  correct?

6    A.    Of anything specific.  You're saying, do you

7  have a direct memory of sitting down with the bulletin.

8  I don't.  But I believe there was something mentioned in

9  there.

10    Q.    And that's something you have no specific

11  recollection of, correct?

12    A.    It's a general recollection.

13    Q.    What's the difference between a general

14  recollection --

15    A.    You taught me.  You said earlier, that's not

16  specific.  That's just general.  One is more detailed.

17    Q.    Do you have -- What's -- Do you have a date

18  or -- that you read this in the bulletin?

19    A.    That would be specific, no.

20    Q.    Do you have a year?

21    A.    I don't.  It's a decade ago.

22    Q.    Coming back to the catalog, do you have --

23  Did you have that catalog with you when you went out to

24  Saybrook in 1995?

64

1      A.    I'm pretty sure I did.

2      Q.    You did.  Okay.  Let's come back to the

3  conversation with the person in 1995 when you were going

4  over the regs.

5      A.    Um-huh.

6      Q.    Did she say to you that Saybrook would inform

7  you of any changes in Mass. law?

8      A.    She said that they would inform us of any

9  changes.  Specific to Mass. law, she did not say.  They

10  would inform us.  They would keep on top of everything.

11      Q.    Did she say that?

12      A.    She said that they were going to work

13  hand-in-hand with us in a team and that as it stands,

14  come on board, I can get my psychology license in

15  Massachusetts.

16      Q.    She guaranteed you that you could get your

17  psychology license?

18                   MR. MORENBERG:   Objection.

19      A.    She said that.

20      Q.    She said that?

21      A.    Yes.

22      Q.    Did you take any notes of that conversation?

23      A.    No.

24      Q.    You told me before that this is all 11 years