UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

*******************************************
SUSAN COONEY,                              )
    Plaintiff                              )
v.                                         )
                                           )
SAYBROOK GRADUATE SCHOOL AND               )
RESEARCH CENTER                            )
    Defendant                              )
*******************************************

### PLAINTIFF SUSAN COONEY'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF MARSHA HAMMOND

Plaintiff Susan Cooney ("Cooney"), by her counsel, respectfully opposes Saybrook's motion in limine to exclude the testimony of Dr. Marsha Hammond, who was Saybrook's former licensing coordinator as well as a member of the Consortium of Diversified Psychology Programs ("CDPP"). Defendant has oversimplified the expected testimony of Dr. Hammond to argue that her testimony is irrelevant to plaintiff's claims of breach of contract, promissory estoppel, and violation of M.G.L. c. 93A. On the contrary, Dr. Hammond's testimony is probative and relevant to all of plaintiff's claims.

I.    ARGUMENT

A.    **Dr. Hammond's Expected Testimony Is Highly Relevant to Plaintiffs Claims of Breach of Contract, Promissory Estoppel, and Violation of Chapter 93A.**

Dr. Hammond will offer important evidence that is relevant to the plaintiff's contract and Chapter 93A claims. In a desperate attempt to exclude an important witness, Saybrook now argues that its former licensing coordinator would not offer testimony that is relevant to

plaintiff's claims that Saybrook breached a contractual obligation to monitor and disclose licensure obstacles. However, Saybrook and Dr. O'Hara previously identified Dr. Hammond as a person with knowledge of Saybrook's assistance to students regarding licensure in their answers to interrogatories.

Fed. R. Evid. 401 contains a broad definition of relevance, which embraces "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under this standard, Dr. Hammond's expected testimony is plainly relevant to each of plaintiff's claims.

Dr. Hammond is expected to testify that Saybrook and other humanistic psychology schools closely monitored changing licensure standards through the CDPP in the mid to late 1990s. Dr. Hammond is expected to testify that Saybrook and the CDPP identified Massachusetts as a regulatory hot spot by the mid-1990s. Consequently, Saybrook and the CDPP closely monitored proposed regulatory changes in Massachusetts in 1996 and 1997. Saybrook and the CDPP discovered that Massachusetts had passed strict new regulations on licensure in 1997 that would effectively disqualify Saybrook graduates from applying for licensure after 2000. Dr. Hammond will testify that Saybrook and its senior officers participated in discussions that Massachusetts would require graduate programs to be designated by the Association of State and Provincial Psychology Boards ("ASPPB"). Dr. Hammond will testify that she recalls having such discussions with Drs. Rudy Melone and Marsha Hammond at CDPP and other conferences in or about 1997 and/or 1998. Finally, Dr. Hammond is expected to testify that Saybrook hired her as a licensing coordinator in or about 2000, but disregarded her recommendation that Saybrook inform all of its students of known licensure obstacles in

2

Massachusetts and other states.

Dr. Hammond's expected testimony is plainly relevant to plaintiff's claims under Rule 401. Dr. Hammond's testimony supports plaintiff's claim that Saybrook undertook an obligation to monitor changing licensure standards through its active affiliation with the CDPP. Although Saybrook learned that Massachusetts had adopted new regulations on ASPPB designation in or about 1997, Saybrook failed to inform its Massachusetts students. Indeed, after Dr. Hammond joined Saybrook in 2000, she specifically recommended that Saybrook inform its entire student body of known licensure obstacles in Massachusetts and other states, but Saybrook ignored this advice. Dr. Hammond's expected testimony will establish that Saybrook breached a contractual obligation to monitor licensure changes and to advise students to assist them to become licensed in the jurisdiction of their choice. Dr. Hammond's testimony also supports plaintiff's Chapter 93A claim, as it constitutes evidence that Saybrook knowingly withheld information about the new Massachusetts regulations from Cooney. Dr. Hammond's testimony will allow the plaintiff to establish that Saybrook willfully and deceitfully collected tuition and fees from Cooney after learning that a Saybrook degree would not enable her to sit for licensure.

## II.    CONCLUSION

For all of the foregoing reasons, plaintiff requests that the Court deny Saybrook's motion in limine.

Respectfully submitted,

SUSAN COONEY,
By her counsel,

/s/ Paul W. Morenberg

---
E. Steven Coren, Esq. BBO# 099740
Paul W. Morenberg, BBO# 631101
Kerstein Coren Lichtenstein Finkel LLP
60 Walnut Street
Wellesley, MA 02481

# CERTIFICATE OF SERVICE

I certify that this Motion has been served upon all counsel of record in compliance with

Fed.R.Civ.P.                           /s/ Paul W. Morenberg

DATED:    February 6, 2007