UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04
11572 JLT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUSAN COONEY,                                )
    Plaintiff                          )
v.                                           )
                                             )
SAYBROOK GRADUATE SCHOOL AND                 )
RESEARCH CENTER                              )
    Defendant                          )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF SUSAN COONEY'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OR TESTIMONY REGARDING SAYBROOK'S POLICIES, PROCEDURES, OR ENROLLMENT AFTER PLAINTIFF'S GRADUATION

Plaintiff Susan Cooney ("Cooney"), by her counsel, respectfully opposes Saybrook's motion in limine to preclude plaintiff from offering evidence or testimony regarding Saybrook's policies, procedures, or enrollment after Cooney's graduation. Saybrook claims that evidence regarding such matters is irrelevant to plaintiff's claims. However, plaintiff fails to advise the court that the disputed exhibits and topic areas reveal important facts regarding Saybrook's failure to disclose its full knowledge of licensure obstacles as well as Saybrook's motives in concealing this information.

## I.     ARGUMENT

### A.     The Proposed Documents and Topic Areas Are Relevant to Plaintiff's Claims

Fed. R. Evid. 401 contains a broad definition of relevance, which embraces "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under this broad standard, all of the proposed documents and topic areas to which defendant objects are plainly admissible.

### 1.     February 18, 2004 Correspondence re Licensure Obstacles

On or about February 18, 2004, Saybrook belatedly advised its current students of Saybrook's knowledge of licensure obstacles in twenty-five states, including Massachusetts. The authors of the report claim that "several students" had advised Saybrook of recent difficulties with licensure. When Cooney matriculated at Saybrook in 1995, it is noteworthy that Saybrook had disclosed its knowledge of licensure obstacles in five or six states. *See* Information About the CDPP, **Exhibit 1** to Defendant's Motion in Limine re CDPP Documents and Saybrook Participants (Doc. 67). In the span of eight years, Saybrook became aware of a five-fold increase in jurisdictions with licensure obstacles, but chose not to release this information until early 2004. Plaintiff asserts that the jury is entitled to learn of the dramatic increase in states with licensure obstacles that coincided with Cooney's studies at Saybrook. Such evidence suggests that Saybrook

concealed its developing knowledge of licensure obstacles to protect enrollment levels and tuition revenues.

Plaintiff asserts that the February 18, 2004 letter also contain relevant information concerning Saybrook's analysis of licensure obstacles. Saybrook divides the licensure obstacles in two categories: (1) an "APA Obstacle" and/or a (2) "Residence Obstacle." The former category includes states that require graduate programs to be designated by the Association of State and Provincial Psychology Boards ("ASPPB"), including Massachusetts.

When this document is read together with other statements by former Saybrook president Maureen O'Hara, it creates a strong inference that Saybrook feared that the disclosure of licensure obstacles would harm enrollment. For example, in or about 1994 or early 1995, O'Hara published the article, "Wake Up Call for Humanistic Warriors." In this article, Dr. O'Hara opines that graduate opportunities in humanistic psychology will "dry up" once students become concerned about the viability of humanistic degrees in the marketplace:

> A third threat to humanistic psychology professionals comes from changes underway in accreditation criteria being applied by states for the right to sit for licensure. Pushed by the same "turf war" forces, many state psychology boards are attempting to make graduation from a doctoral program on the designated list of the *State and Provincial Psychology Board/National Register* a prerequisite for licensure. Very few such programs allow a student to focus on humanistic psychology…. As it becomes clear that degrees from alternative schools will fare badly in the marketplace, graduate opportunities for humanistic studies will dry up.

**Exhibit 1** to Plaintiff's Opposition, p. 2

3

2.    **Saybrook's President Report Dated November, 2004**

Defendant argues that Saybrook's President Report is irrelevant to plaintiff's

claims since any variations in student enrollment figures would not be probative of

plaintiff's contract claims.   However, defendant overlooks that Dr. O'Hara offers her

own analysis as to why enrollment declined.   Dr. O'Hara informed Saybrook's Board

that she had anticipated external pressures would impact enrollment in 1998.   These

external forces included , "accreditation issues arising in professional licensing…"

President's Report.   After Saybrook belatedly informed students of licensure obstacles in

twenty-five jurisdictions in February, 2004, new student enrollment at Saybrook began to

plunge.   When read in conjunction with Dr. O'Hara's other writings, the President's

Report suggests that Saybrook attempted to delay the disclosure of emerging

accreditation issues in various in order to protect enrollment levels for as long as

possible.   Even though defendant was anticipating in 1998 that accreditation issues would

deter students from enrolling at Saybrook, defendant failed to disclose its knowledge of

these accreditation issues until after Cooney filed a Chapter 93A demand letter in

September, 2003.   Fear of liability motivated Saybrook to disclose its knowledge of

licensure obstacles in February, 2004.

3.    **Changes to Saybrook's Admissions Policies After Cooney's
      Graduation**

Plaintiff contends that changes in Saybrook's admissions and application policies

are relevant to her claim that Saybrook breached a contract to assist her to achieve

licensure and to monitor licensure changes.   Saybrook has claimed it was unable to

4

discern if Susan Cooney had a clinical focus and whether she intended to become a licensed psychologist. In reality, Cooney's intentions were well known to her advisors and other Saybrook faculty. Nonetheless, Saybrook administrators have attempted to hide behind their poor documentation of student objectives. Saybrook's changes in its application and admissions policy demonstrate that Saybrook was able to track student's intent regarding licensure, but neglected to do so earlier. Saybrook's neglectful policies are evidence that it breached its obligation to assist Cooney to become licensed.

### 4.    Changes to Enrollment Statistics After Cooney Graduated

For reasons that are more fully explained in the first and second section of this Opposition, plaintiff alleges that Saybrook predicted and feared that the disclosure of licensure obstacles would hurt student enrollment. Statistical evidence that enrollment plummeted after Saybrook advised students of known licensure obstacles is probative of plaintiff's claim that Saybrook intentionally concealed this information to protect its financial interests.

**5.    Saybrook's Draft Principles of Ethical Business Conduct**

Even though this Saybrook document was published shortly after Cooney's graduation in or about December, 2002, Saybrook employees have testified that this document reflected ethical practices that existed at Saybrook for many years.    Plaintiff contends that Saybrook violated its own ethical policies, which prohibit misrepresentations as well as conduct that allows students to have unrealistic expectations.    Plaintiff contends that Saybrook violated its own ethical guidelines by withholding its knowledge of licensure obstacles.    Plaintiff asserts that such evidence is probative of Cooney's claim that Saybrook engaged in unfair and deceitful business practices.    Saybrook is free to question the applicability of these guidelines to the period when Cooney attended Saybrook.    However, Saybrook's objections go to the weight accorded to this evidence, and not its admissibility.

## CONCLUSION

For all of the foregoing reasons, the plaintiff requests that this court deny defendant's motion in limine.

Respectfully submitted
By Plaintiff's attorneys,

/s/ Paul W. Morenberg

E. Steven Coren, Esq. BBO# 099740
Paul W. Morenberg, BBO# 631101
Kerstein Coren Lichtenstein Finkel LLP
60 Walnut Street
Wellesley, MA 02481
(781) 997-1600

6

## <u>CERTIFICATE OF SERVICE</u>

I certify that this Motion has been served upon all counsel of record in compliance with the Federal rules.

*/s/ Paul W. Morenberg*

_____
Paul W. Morenberg

DATED:        February 6, 2007