UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 04 11572 JLT

*******************************************
SUSAN COONEY,                           )
    Plaintiff                           )
v.                                      )
                                        )
SAYBROOK GRADUATE SCHOOL AND            )
    RESEARCH CENTER                     )
    Defendant                           )
*******************************************

## (PLAINTIFF'S) PROPOSED JUDGMENT

After a jury trial, and following oral argument on plaintiff's Chapter 93A claim, it is hereby ordered, adjudged, and declared that:

1. A jury found that Saybrook breached a contract and promise to monitor and to advise Cooney of changes in Massachusetts licensure requirements, thereby causing Cooney actual damages in the amount of $137,000.

2. At all relevant times, Saybrook was engaged in a trade or business. Saybrook failed to meet its burden to prove its charitable status. A corporate charter is prima facie evidence of charitable character and purpose. Boxer v. Boston Symphony Orchestra, Inc., 342 Mass. 537, 538 (1961); 339 Mass. 369, 373. Barrett v. Brooks Hosp. Inc. 338 Mass. 754, 758--760. Saybrook did not offer its charter into evidence, and failed to proffer any admissible evidence of its alleged non-profit status.

3. A defendant alleging an affirmative defense based on its charitable status has the burden of proving it. See Barrett v. Brooks Hospital Inc., 338 Mass. 754, 756 (1959). Saybrook offered no proof of its purported non-profit status, though it elicited inadmissible hearsay testimony from Mr. John Reho, who became Saybrook's Chief

      Financial Officer in or about the Spring of 2002. Oral testimony favorable to the party having the burden of proof, which could be disbelieved by the fact finder, must be disregarded by the court. Barrett, 338 Mass at 756.

4. Even if the court credited Reho's testimony that Saybrook was a non-profit, the court finds that Saybrook was engaged in trade or commerce pursuant to the holding of Linkage Corp v. Boston University, 425 Mass 1 (1997). Charitable status is not dispositive of whether Chapter 93A applies. Linkage, 425 Mass at 24 (citation omitted). Chapter 93A is designed to promote "equitable behavior in the marketplace ... [and to impose] liability on persons seeking to profit from unfair practices." Linkage, 425 at 25 (citations omitted).

5. The delivery of educational services by a charitable entity can occur in a business context. Linkage, 425 Mass. at 26 ("an institution's business motivations, in combination with the nature of the transaction and the activities of the parties, establish a 'business context'"). Though Boston University's contract with Linkage concerned vocational courses, which are educational in nature, the interaction of the parties demonstrated a "business context" Id. at 26 (n. 36). While pursuing the "lucrative earning potential" of the corporate education market, Boston University engaged in unfair practices by acting to destroy its competitor. Id. at 25-26.

6. Saybrook was operating in a business context when it continued to train Cooney in clinical psychology after learning that the Board adopted new regulations in 1997. Saybrook concealed its knowledge of Massachusetts licensure obstacles to induce

Cooney to pay tuition to pursue a worthless degree. Between 1997 and 2002, Saybrook's president, Maureen O'Hara, focused on growing Saybrook's enrollment and building its cash reserves. *See* <u>Resume of O'Hara</u>, **Defendant's Trial Exhibit L**. Saybrook's decision to train Cooney between 1997 and 2002, while concealing its knowledge of Massachusetts licensure obstacles, indicates that Saybrook acted in a business context.

7. The Massachusetts Attorney General has issued consumer protection regulations governing "private home study" schools, which broadly apply to schools offering "vocational or career skills.. for profit or tuition charge." 940 C.M.R. 3.01. It is an unfair and deceptive trade practice whenever a school "misrepresents the course of study or instruction covered or completed or the accomplishments or standing of the student receiving such certificate, diploma, or degree." 940 CMR 3.10(11). Moreover, it is an unfair and deceptive act to enroll <u>or retain</u> any student for "instruction or training for a job or position for which the school knows or has reason to know the student is unfit by reason of educational or permanent physical disqualification." 940 CMR 3.10(17). Saybrook's failure to advise Cooney of its knowledge that she would be educationally disqualified from seeking licensure as a Massachusetts psychologist violates 940 CMR 3.10 (11)(17) and constitutes an unfair and deceptive trade practice.

8. Intentional nondisclosure of material facts constitutes a willful and knowing violation of Chapter 93A, Section 2. *See e.g.* <u>Heller v. Silverbranch Constr. Corp.</u>, 376 Mass. 621, 626 (1978) (seller's failure to disclose serious drainage problem is 93A violation);

Grossman v. Waltham Chemical Co., 14 Mass.App. 932, 934 (1982) (failure of inspector to disclose known deficiencies is 93A violation); Schwartz v. Rose, 418 Mass. 41, 43-47 (1994) (93A violation where seller suggested that construction was permitted on wetlands but concealed letter from Conservation Commission that prior approval was required).

9. The court can award multiple damages of two to three times actual damages for any willful or knowing violation of 93A. A knowing state of mind exists where the defendant knows its conduct is unfair or deceptive. A willful state of mind can be shown where a defendant acts in reckless disregard of whether its representations are true or false. Computer Systems Engineering, Inc. v. Qantel Corp, 571 F. Supp. 1365, 1375 (1983, DC Mass). Intentional nondisclosure of material facts has been held to be a knowing and willful violations of Chapter 93A that warrants multiple damages. Shawmut Community Bank, N.A. v. Zagami, 30 Mass.App.Ct. 371, 375, review granted, 410 Mass. 1103 (1991).

10. If a defendant's violation of Chapter 93A is not found to be willful or knowing, there is an independent basis for multiple damages under Section 9 when the defendant fails to respond to a Chapter 93A demand letter with a reasonable offer of settlement, and where the plaintiff prevails at trial. Piccuirro v. Gaitenby, 20 Mass. App. Ct. 286, 292 (1985). The court may award two or three times actual damages if the defendant refuses to grant relief in bad faith with either knowledge or reason to know that the disputed conduct violates Section 2. M.G.L. c. 93A, § 9(3).

11. Cooney served a valid Chapter 93A demand letter on agents of Saybrook on or about September 15, 2003 pursuant to the requirements of M.G.L. Chapter 93A, Section 9. **Plaintiff's Trial Exhibits, No. 40**. Cooney notified Saybrook of her claim that Saybrook engaged in unfair and deceptive trade practices, and demanded a full refund of her tuition. Through its attorney and agents, Saybrook failed to tender any offer of settlement. In discussions with Cooney, Saybrook offered to defray $2,500 in legal fees if Cooney filed an expensive and frivolous legal action against the Board. In failing to offer Cooney any financial settlement in response to her demand letter, Saybrook acted in bad faith.

12. Plaintiff is entitled to multiple damages in the amount of $411,000, which is three times the jury award of $137,000 (plaintiff's actual damages).

13. Plaintiff is also entitled to an award of her reasonable attorney's fee in the prosecution of this claim. Plaintiff's counsel shall submit an affidavit of attorney's fees and costs within fourteen (14) days of the court's judgment.

_____
Judge Tauro

Entered: _____

**CERTIFICATE OF SERVICE**

I certify that this Opposition has been served upon all counsel of record in compliance with the federal rules.

Dated:    May 30, 2007            /s/ Paul W. Morenberg
                                   _____