UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO:  04 11572 JLT

|  |  |
|---|---|
| SUSAN COONEY,<br>Plaintiff,<br><br>v.<br><br>SAYBROOK GRADUATE AND<br>RESEARCH CENTER,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S PROPOSED JUDGMENT

With respect to Count III of Plaintiff's Amended Complaint, based on evidence submitted during a jury trial, and oral argument held on May 30, 2007, this Court finds the following facts and makes the following Order:

1.      From September 1995 to October 2002, the plaintiff Susan Cooney ("Dr. Cooney") was a student at Saybrook.

2.      During this time, based on the testimony of Jack Reho, as well as the Articles of Incorporation and Certificate of Amendment of Articles of Incorporation (Defendant's Exhibit A offered at May 30, 3007 hearing), and correspondence of the Treasury, The Internal Revenue Service dated May 13, 2004 (Defendant's Exhibit B offered at May 30, 3007 hearing), I find that Saybrook was a non-profit educational institution.

3.      For a violation of Mass. Gen. Laws. ch. 93A, the alleged unfair act or practice must be done "in the conduct of any trade or commerce." See Mass. Gen. Laws. ch. 93A, § 2.

4.      "A nonprofit or charitable corporation is not engaged in trade or commerce 'if, in the transaction in question, the nonprofit is merely engaged in the customary business necessary to meet its charitable purpose.'" Trustees of Boston Univ. v. ASM Commc'ns, Inc., 35 F. Supp.

2d 66, 77 (D. Mass. 1998), quoting, Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n, 952 F. Supp. 884, 890 n.4 (D. Mass. 1997). Thus, for nonprofit educational institutions, a school is not engaged in trade or commerce when its activities are merely in furtherance of its mission. Thorton v. Harvard Univ., 2 F. Supp. 2d 89 (D. Mass. 1998).

5.    The promotion of education by nonprofit institutions is recognized as public purpose. The fact that a nonprofit educational "institution charges fees for its services does not destroy the public character of its purpose." City of Worcester v. New England Inst. and New England Sch. of Acc., Inc., 335 Mass. 486, 489, 493(1957).

6.    On March 29, 2007, a jury found that Dr. Cooney and Saybrook Graduate School and Research Center ("Saybrook") "enter[ed] into a valid and binding contract in which Saybrook was obligated to both monitor and inform Susan Cooney of changes in Massachusetts state psychology licensing laws while she was a student."

7.    Plaintiff claims that Saybrook knowingly provided graduate training in clinical psychology that would not qualify Dr. Cooney for licensure as a Massachusetts psychologist, and knowingly deceiving Dr. Cooney by withholding information that Massachusetts did not recognize Saybrook as a qualified graduate program stem from this contract.

8.    Based on plaintiff's allegations, as well as the jury finding a contract between the parties to monitor and inform of changing licensing laws, I find that similar to BU v. ASM Commc'ns and Thorton v. Harvard Univ., all of Saybrook's actions and inactions in were incidental to their ordinary business and educational mission. See also All Seasons Servs., Inc. v. Comm'n. of Health and Hosps. of Boston, 416 Mass. 269 (1993) (a hospital's contracting for food service is merely incidental to operating a hospital). Therefore, I find that Saybrook was

2

not engaged in "trade and commerce," and cannot be held liable under Mass. Gen. Laws ch.

93A.

9.      Although there is no need to go further, as I have found that Saybrook was not

engaged in trade or commerce, I also find that Saybrook did not commit an unfair or deceptive

act or practice.  Dr. Cooney cannot base her Chapter 93A claim merely on her breach of contract

or promissory estoppel claims.  See generally Canal Elec. Co. v. Westinghouse Elec. Corp., 756

F. Supp. 620, 629-631 (D. Mass. 1991); Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 763

(1989).  Rather, in addition, Dr. Cooney has the burden of proving an unfair or deceptive act or

practice.  She has failed in this burden.

10.     Under Mass. Gen. Laws. Ch. 93A § 2(b), courts are guided by the interpretations

of "unfair and deceptive" given by the Federal Trade Commission ("FTC").  To justify a finding

of unfairness, a plaintiff must satisfy the following three part test: (1) the injury must be

substantial; (2) the injury must not be outweighed by any countervailing benefits that the practice

produces; and (3) it must be an injury that consumers themselves could not reasonably have

avoided.  See Letter of FTC to Senators Ford and Danforth, Senate Committee on Commerce,

Science and Transportation, dated December 17, 1980 at 5 setting forth the FTC's Policy on

"Unfairness" (Defendant's Exhibit C offered at May 30, 3007 hearing).

11.     As the injury must outweigh the benefit, a practice is not unfair "unless it is

injurious in its net effects." Id. at 6.  During trial, there was testimony from Nancy Segreve, Dr.

Kathy Sanders and Norman Hursh.  Ms. Segreve testified that the Ph.D. that the plaintiff

received from Saybrook would give her the ability to earn significantly more pay than without

the degree.  Dr. Kathy Sanders testified that Dr. Cooney's course work at Saybrook made her a

3

better clinician.  Dr. Norman Hursh also testified that the Ph.D. was valuable.  As such, any

injury Dr. Cooney may have received is not outweighed by the benefit she has received.

12.     Additionally, consumers are expected to "survey [] available alternates, choose

those that are most desirable, and avoid those that are inadequate or unsatisfactory."  Id. at 7.

During the trial, Dr. Cooney admitted that other than one meeting with an unidentified individual

at a residential orientation in September 1995, while she was a student, she did not investigate or

make any inquiry of Saybrook faculty, of the Massachusetts Board of Registration of

Psychologist, or any other person or entity whether she would be eligible for licensure if she

graduated from Saybrook.  As such, based on the benefit that Dr. Cooney received from

Saybrook, as well as her failure to survey available information, I do not find that Saybrook

engaged in an act or practice that was unfair.

13.     In order for the plaintiff to prove a deceptive act or practice, she must prove the

following: (1) the representation, omission or practice must be one that is likely to mislead the

consumer; (2) the consumer must be acting reasonable in the circumstances; and (3) the

representation, omission or practice must be a material one.  See Letter of FTC to Representative

Dingell, House Committee on Energy and Commerce, dated Oct. 14, 1983 at 2 and 3 setting

forth the FTC's Policy on "Deceptive Act or Practice" (Defendant's Exhibit C offered at May 30,

3007 hearing).

14.     At trial, Dr. Cooney testified that she went to a Residential Orientation in the

September of 1995, at which point she was told that she was "Good to go," by an unidentified

individual who she believed was affiliated with Saybrook.  At that time in 1995, the evidence at

trial, through the testimony of Dr. Karen Schwartz and through the Massachusetts Regulations

governing licensing of psychologists (Plaintiff's Trial Exhibits 1 and 15), showed that

4

Massachusetts had not adopted or changed its regulations to require an applicant graduate from a school designated by the Association of State and Provincial Psychology Boards("ASPPB").  It is the requirement that an applicant graduate from a school with the ASPPB designation, adopted in 1997, but only went into effect for applicants after September 1, 2000 (see Plaintiff's Trial Exhibit 15) that the plaintiff testified was her bar to obtaining her license.

15.    In Saybrook's 1994-95 Interim Catalogue (Defendant's Trial Exhibit C), Saybrook informed those students who wish to work as licensed psychologists, that they "are advised that they should contact the licensing board in the state in which they plan to practice to obtain the detailed requirements, because regulations differ from state to state."  Further, the Catalogue informed students that they "are to be advised, however, that states review applications individually to be sure all requirements of the state licensing board have been met. Regulations are constantly changing."  Under the circumstances, and in light of the written document, plaintiff's failure to investigate or make inquiry of the Board during a seven year period, starting from after the September 1995 Residential Orientation to a time after she graduated Saybrook in October 2002, is unreasonable.  Therefore, I find that the plaintiff failed to present evidence that would support a finding that Saybrook engaged in any unfair or deceptive acts or practice in connection with the education provided to her.

16.    Furthermore, although I find that Saybrook was not engaged in trade or commerce, and did not perform an unfair or deceptive act or practice, Dr. Cooney would not be entitled to any award of damages, attorney fees or costs under her Chapter 93A claim based on the evidence.

17.    Under Mass. Gen. Laws ch. 93A § 9(3), only if the act or practice was a willful or knowing violation, can the damages be doubled or trebled.  An act or practice is "willful" where

5

the defendant acts with the intention, or with the conscious objective to cause a deceptive result. Computer Sys. Eng'g, Inc. v. Qantel Corp. 571 F. Supp. 1365, 1374-75 (D. Mass 1983). A "knowing violation" is one that has the state of mind at the time of the acting. Id. Negligence, even gross negligence, does not satisfy this test. Id.

18.    Plaintiff has failed to prove that Saybrook had a state of mind that would show a knowing or willful violation. At trial, through the testimony of Drs. Cooney, O'Hara, and Richards, the evidence showed that Susan Cooney had not informed Saybrook of her intention to be a licensed psychologist, but rather informed Saybrook of her intention to continue working as a clinician. There was also testimony from Drs. O'Hara, Richards and Bruff that had Dr. Cooney asked about licensure, she would have been told to check with the board in her state. Furthermore, Dr. Marsha Hammond testified that she was hired by Saybrook to answer all questions regarding licensure that a student would ask her. Dr. Hammond also admitted that Saybrook never prohibited her from sharing the information she knew about licensing regulations with students. Based on this testimony, there is no evidence of a willful or knowing intent to misrepresent or deceive the plaintiff.

19.    Furthermore, I find that a demand letter was sent to Saybrook by the plaintiff. The plaintiff, however failed to prove when the demand was actually served. I also find that Saybrook responded with a reasonable tender to the demand letter within thirty days of receipt. See Attorney Michael J. Vartain's correspondence dated October 21, 2003 (Trial Exhibit T), incorporating Jack Reho's correspondence of August 22, 2003 (Trial Exhibit S) and Affidavit of Michael J. Vartain, Esquire (Defendant's Hearing Exhibit D). Based Mass. Gen. Laws. Ch. 93A, § 9(3) and (4), the plaintiff is not entitled to further damages, or attorney fees based on the written offer of settlement.

6

1065549v1

20.    I therefore find that the plaintiff Susan Cooney failed to satisfy her burden of

proof on her Mass. Gen. Laws. Ch. 93A claim.  Judgment for defendant on Count III of the

Amended Complaint.

_____
Honorable Joseph L. Tauro



Submitted By:

Defendant,
Saybrook Graduate and Research Center
By its attorneys,

*/s/ Grace V. Bacon Garcia*

_____
Thomas C. Federico, BBO# 160830
Grace V. Bacon Garcia, BBO# 640970
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500


## CERTIFICATE OF SERVICE

I certify that this document has been served upon all counsel of record in compliance with the F.R.C.P.

*/s/ Grace V. Bacon Garcia*

_____
Grace V. Bacon Garcia


Date: June 4, 2007

1065549v1