UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN COONEY, | * |
| | * |
| Plaintiff, | * |
| | *   Civil Action No. 04-11572-JLT |
| v. | * |
| | * |
| SAYBROOK GRADUATE SCHOOL | * |
| AND RESEARCH CENTER, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

July 17, 2007

TAURO, J.

Following a jury trial, Plaintiff Susan Cooney was awarded $137,000 for her breach of contract and promissory estoppel claims. Presently at issue is Plaintiff's sole remaining claim, that Defendant Saybrook Graduate School and Research Center ("Saybrook") engaged in unfair and deceptive acts, in violation of Mass. Gen. Laws. ch. 93A, by accepting Plaintiff's tuition while simultaneously withholding information that Plaintiff could not receive licensure as a psychologist in the State of Massachusetts.

After listening to oral arguments, examining the Parties' submissions and exhibits and reviewing the trial record, the court concludes the following:

Saybrook has met its burden of proving its charitable status as a non-profit educational institution, as demonstrated by the Articles of Incorporation and Certificate of Amendment of Articles of Incorporation submitted to this court.

For a violation of Mass. Gen. Laws. ch. 93A, the alleged unfair act or practice must be

done "in the conduct of any trade or commerce."[1] A non-profit is not engaged in a trade or commerce when it "undertakes activities in furtherance of its core mission"[2] or "'if, in the transaction in question, the nonprofit is merely engaged in the customary business necessary to meet its charitable purpose.'"[3] But Chapter 93A liability does apply when a non-profit institution's "business motivations, in combination with the nature of the transaction and the activities of the parties, establish a 'business context' . . . ."[4] Assessing these motivations is a fact-specific inquiry.[5]

In Linkage Corp. v. Boston University, the Supreme Judicial Court of Massachusetts ("SJC") held that Boston University was liable under Chapter 93A, despite its non-profit status.[6] There, Boston University entered a contract with Linkage Corporation that called for Linkage to create and provide educational programs for professionals at a facility owned by Boston

---

[1] See Mass. Gen. Laws. ch. Chapter 93A, § 2.

[2] Linkage Corp. v. Trs. of Boston Univ., 679 N.E.2d 191, 209 (Mass. 1997). Put in slightly different words, Chapter 93A liability does not attach where the challenged activity is incidental to the non-profit institution's mission. See id., at 208 ("The relationship did not involve anything that could be said to be purely incidental to the university's educational mission, as might be a contract for services or equipment."); All Seasons Servs., Inc., v. Comm'n. of Health and Hosps. of Boston, 620 N.E.2d 778, 779-80 (Mass. 1993) (finding that Chapter 93A did not apply where a hospital's food service contract was incidental to its primary activity of operating the hospital).

[3] Trs. of Boston Univ. v. ASM Commc'ns, Inc., 35 F. Supp. 2d 66, 77 (D. Mass. 1998) (quoting, Mass Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 952 F. Supp. 884 890 n.4 (D. Mass. 1997).

[4] Linkage, 679 N.E.2d at 209.

[5] Id. ("[W]e emphasize the fact-specific nature of the inquiry.").

[6] 679 N.E.2d at 207-08.

University.[7] After Linkage launched the program, Boston University terminated its relationship with Linkage, took over management of the facility, and hired away Linkage's employees.[8] The jury determined that Boston University had breached its contract with Linkage and contravened the no-hire provision of their agreement.[9] The SJC held that Chapter 93A was applicable because Boston University was engaged in a "trade or commerce." This conclusion was premised on the finding that Boston University had entered and maintained its contractual relationship with Linkage to expand its reach in the corporate market and to realize lucrative earnings potential.[10]

Plaintiff argues that Linkage extends to the case at hand, and that Saybrook operated in a business context when it continued to accept Plaintiff's tuition, even after learning that the Massachusetts Board had adopted new regulations for licensure of psychologists. This court does not read Linkage quite so broadly. After an eight-day jury trial, the court finds that Saybrook's acceptance of Plaintiff's tuition was part of its customary business necessary to meet its charitable purpose, namely, to teach its students humanistic psychology.[11] Receiving tuition from its students is central to Saybrook's core mission as a non-profit graduate school. This is distinguishable from Boston University's subsidiary effort to launch a joint program with another corporation to realize lucrative profits.

---

[7] Id. at 196-97.

[8] Id. at 200.

[9] Id. at 195, 205.

[10] Id. at 208.

[11] According to its 1994-95 Course Catalog, Saybrook's mission is to "provide a unique and creative environment for graduate study, research, and communication in humanistic psychology and human science, focused on understanding and enhancing the human experience."

Saybrook's actions in receiving Plaintiff's tuition were incidental to its ordinary educational mission.[12]  As such, Saybrook was not engaged in trade or commerce, and therefore, cannot be held liable under Chapter 93A.  Accordingly, Plaintiff's claim for liability under Chapter 93A fails.  This case is closed.

    IT IS SO ORDERED.

                                                    /s/ Joseph L. Tauro
                                          United States District Judge

---

[12] See Thornton v. Harvard Univ., 2 F. Supp. 2d 89 (D. Mass. 1998) (finding that Harvard University's administration of student aid does not qualify as a "trade or commerce" for purposes of Chapter 93A).